## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | |
|---|---|
| DON BLANKENSHIP, | Case No.: 2:19-cv-00236 |
| Plaintiffs, | [Honorable John T. Copenhaver, Jr.] |
| vs. | State Civil Action No. 19-C-26 |
| HONORABLE ANDREW NAPOLITANO (RET.); FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC CABLE LLC; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; 35TH INC.; ASSOCIATED PRESS; BOSTON GLOBE MEDIA PARTNERS, LLC; BREITBART NEWS NETWORK, LLC; CLARITY MEDIA GROUP, INC.; THE WASHINGTON TIMES, LLC; TRIBUNE PUBLISHING COMPANY, LLC; WP COMPANY LLC d/b/a THE WASHINGTON POST; NEIL CAVUTO; CHRIS HAYES; SARAH ELIZABETH CUPP; BRADLEY BLAKEMAN; JOHN LAYFIELD; STEPHANIE HAMILL; KEVIN McLAUGHLIN; LEIGH ANN CALDWELL; MICHAEL PATRICK LEAHY; JOSH DAWSEY; JENNA JOHNSON; BEN WOLFGANG; MICHAEL WARREN; CATHLEEN DECKER; and DOES 1-50 inclusive, | [Honorable Miki J. Thompson] |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND TO STATE COURT

## I.      INTRODUCTION

In the months leading up to the May 8, 2018 West Virginia Republican senatorial primary election, the Defendants herein, and each of them, published defamatory falsehoods about plaintiff Don Blankenship ("Plaintiff") in order to destroy his candidacy for the Republican nomination, and many of them conspired with others to publish those defamatory falsehoods.  The Defendants who engaged in this conduct include the removing defendant Fox News Network, LLC ("Fox News"), as well as other individuals and entities, at least one of whom (35th Inc., a West Virginia political action committee, also known as 35th PAC) is a citizen of West Virginia.  Mr. Blankenship filed suit against the Defendants for defamation in Mingo County, West Virginia on March 14, 2019.

Fifteen days after Mr. Blankenship filed his complaint, and before Mr. Blankenship served any Defendant (including Fox News), Fox News removed the action to this Court.  In its removal papers, Fox News argued that the Court should ignore the fact that at least one Defendant is a West Virginia citizen because that Defendant had yet to be served, and thus according to Fox News, the home-state defendant bar to removal (28 U.S.C. § 1441(b)(2)) had not been triggered.  To quote the one United States District Court in the Southern District of West Virginia to consider Fox News's mistaken interpretation of section 1441(b)(2): "[such interpretation] is contrary to congressional intent and creates absurd results." *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 553 (S.D.W. Va. 2015).  In its removal petition, Fox News spills much ink arguing that Mr. Blankenship is not a citizen of West Virginia. To prevail on this motion to remand, Mr. Blankenship need not establish his own citizenship. Rather, the point is that regardless of whether he is a citizen of West Virginia, Nevada, or some other state, this action could not have ever been removed to the United States District Court because one of the originally-named defendants is a citizen of West Virginia.

In the alternative, Fox News incorrectly argues that the District Court should consider the defendant which is a West Virginia citizen, i.e., Defendant 35th Inc. (a.k.a. "35th PAC"), to

be a sham defendant, the citizenship of which should – according to Fox News – be disregarded for removal purposes.

This lawsuit is about the weaponizing of defamation for the purposes of manipulating the May 2018 Republican senatorial primary election in West Virginia. As alleged in Mr. Blankenship's complaint and his concurrently-filed First Amended Complaint, 35th PAC played a key role in the smear campaign against Mr. Blankenship. Not only did 35th PAC defame Mr. Blankenship (as alleged in the complaint, 35th PAC published one of the first defamatory statements about Mr. Blankenship on April 10, 2018), but Mr. Blankenship is informed and believes that 35th PAC thereafter played a key role in coordinating the efforts of some of the other defendants. Defendant 35th PAC is no sham defendant, but rather one of the ringleaders of the cabal. Plaintiff respectfully submits that this Court should therefore remand this action to the court from which it was removed, the Circuit Court of Mingo County, West Virginia.

## II.    <u>NO WAIVER OF RIGHT TO REMAND</u>

Because of concerns regarding the statute of limitations, Mr. Blankenship will be filing a First Amended Complaint (as a matter of right, as no responsive pleadings have been filed) soon after he files the instant motion to remand. By doing so, Mr. Blankenship does not "waive by litigation" his right to seek remand. Ordinarily, Mr. Blankenship would first ask that this Court resolve the remand motion before he files his amended pleading. However, that is not feasible given the one-year statute of limitations applicable in defamation actions. *See* W. Va. Code § 55-2-12(c).

## III.    <u>STATEMENT OF FACTS AND OF THE CASE</u>

As further discussed in the Complaint, this case arises out of a campaign of defamation and falsehood which Defendants and their associates waged against Plaintiff Don Blankenship as he campaigned for the Republican nomination for the United States Senate in 2018. Defendants made false and defamatory statements about Mr. Blankenship and conspired with others to do the same in an attempt to deny Mr. Blankenship the nomination. Defendant 35th PAC, a political action committee formed to support the candidacy of Patrick Morrisey (the

eventual nominee), served as one of the vanguards of this conspiracy, kicking off the whole affair with an April 10, 2018 tweet calling Mr. Blankenship a "convicted felon hurting West Virginia families." (*See* Dkt. #1-1 [Complaint], ¶ 77.)

Plaintiff began the instant action against 35th PAC, Fox News, and the other defendants by filing his Complaint in the Circuit Court of Mingo County on March 14, 2019. (Dkt #1-1 [Complaint], p. 1.)  A mere 15 days later (and months before the expiration of West Virginia's 120-day period for service of summons), Fox News filed its Notice of Removal. (Dkt #1 [Notice of Removal].)  As Fox News notes, Plaintiff had not yet procured any summons, much less served any, at the time that Fox News filed its Notice of Removal. (Dkt. #1 [Notice of Removal], ¶ 7.)

## IV.    LEGAL STANDARDS

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—[¶] (1) citizens of different States[.]"  28 U.S.C. § 1332(a).  "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  This is known as the forum-defendant rule.  *See Councell v. Homer Laughlin China Co.,* 823 F. Supp. 2d 370, 379 (N.D. W. Va. 2011).

"Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction."  *Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F. 3d 148, 151 (4th Cir. 1994), *citing Shamrock Oil & Gas Corp. v. Sheets,* 61 S. Ct. 868 (1941); *accord Phillips Construction, LLC v. Daniels Law Firm, PLLC,* 93 F. Supp. 3d 544, 547 (S.D. W. Va. 2015) ("Because removal of civil cases from state to federal court infringes state sovereignty, courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court.")

"To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.,* 187 F. 3d 422, 424 (4th Cir. 1999).  "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."  *Id.*  "Fraudulent joinder must be proved by clear and convincing evidence consisting of facts rightly leading to that conclusion…."  *Rinehart v. Consolidation Coal Co.,* 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987); *see also Garvin v. Southern States Ins. Exchange Co.,* 329 F. Supp. 2d 756, 758 (N.D. W. Va. 2004); *Dotson v. Elite Oil Field Services, Inc.,* 91 F. Supp. 3d 865, 869 (N.D. W. Va. 2015).  "Once the court identifies this glimmer of hope for the plaintiff," the fraudulent joinder inquiry is resolved in the plaintiff's favor.  *Hartley, supra,* 187 F. 3d at 426; *see also West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co.,* 354 F. Supp. 2d 660, 666 (S.D. W. Va. 2005) ("As the decision in *Hartley* illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. …At bottom, a plaintiff need only demonstrate a 'glimmer of hope'...")

## V.     FOX NEWS'S INTERPRETATION OF SECTION 1441(B)(2) IS "CONTRARY TO CONGRESSIONAL INTENT" AND "CREATES ABSURD RESULTS"

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—[¶] (1) citizens of different States[.]"  28 U.S.C. § 1332(a).  "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  This is known as the forum-defendant rule.  *See Councell v. Homer Laughlin China Co.,* 823 F. Supp. 2d 370, 379 (N.D. W. Va. 2011).

Federal courts are courts of limited jurisdiction, empowered only to hear those cases authorized by Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of American,* 511

U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). Because the removal of state civil cases to Federal courts infringes on state sovereignty, removal jurisdiction is strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109, 61 S. Ct. 868, 872 (1941); *see also Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F. 3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.") "The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied." *Shamrock Oil & Gas Corp., supra,* 313 U.S. at 104.

Although ordinarily the plain language of a statute will control its operation (the "Plain Meaning Rule"), there are two pertinent exceptions. The first is "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary." *Hillman v. I.R.S.,* 263 F. 3d 338, 342 (4th Cir. 2001), *citing Sigmon Coal Co. v. Apfel,* 226 F. 3d 291, 304 (4th Cir. 2000). The second exception is "when literal application of the statutory language at issue 'results in an outcome that can truly be characterized as absurd, *i.e.,* that is so gross as to shock the general moral or common sense....' *Hillman, supra,* 263 F. 3d at 342.

### A.  THE CONSENSUS IN THIS CIRCUIT IS THAT REMOVAL OF A FORUM DEFENDANT ACTION BEFORE SERVICE IS *IMPROPER*

Although courts have been divided on the issue of whether the forum defendant rule bars removal before service on any defendant, the trend that has emerged in the district courts of this circuit is that where a plaintiff has joined a forum defendant, but has not served any defendant, removal is not proper, at least, where the forum defendant has not been fraudulently joined.

Although 28 U.S.C. § 1441 *appears* to provide that a defendant may remove an action against a forum defendant prior to service on the forum defendant, the majority of courts in this circuit have recognized that such a rule leads to a result Congress plainly did not intend: an action which could not have been removed after service on all parties is somehow present in federal court, because a defendant has filed a notice of removal before *any* defendant has been

served.  The removal statute cannot be construed to operate in this manner.

The purpose of the language requiring that a forum defendant be "properly joined and served" is "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom [the plaintiff] does not intend to proceed, and whom [the plaintiff] does not even serve."  *Phillips Construction, supra,* 93 F. Supp. 3d at 553, *quoting Goodwin v. Reynolds,* 757 F. 3d 1216, 1221 (11th Cir. 2014); *see also Sullivan v. Novartis Pharmaceuticals Group,* 575 F. Supp. 2d 640, 645 (D. N.J. 2008).

Numerous courts of this circuit have reached the same conclusion and granted remand. *See Campbell v. Hampton Roads Bankshares, Inc.,* 925 F. Supp. 2d 800, 807 n. 14 (E.D. Va. 2013); *Oxendine v. Merck & Co., Inc.,* 236 F. Supp. 2d 517, 524-525 (D. Md. 2002); *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation,* 2016 WL 7338594 at *2 (D. S.C. 2016).  Section 1441 was **not** intended to engineer a "race" whereby a defendant may override the plaintiff's choice of forum by filing a notice of removal before service can be effected.  As the District of New Jersey has stated,

> As a matter of common sense, the court is confident, beyond any doubt, that Congress did not add the "properly joined and served" language in order to reward defendants for conducting and winning a race, which serves no conceivable public policy goal, to file a notice of removal before the plaintiffs can serve process. The court cannot imagine what Congressional policy goal…which would be furthered by rewarding defendants for such gamesmanship.

*Sullivan, supra,* 575 F. Supp. 3d at 646; *see also Oxendine, supra,* 236 F. Supp. 2d at 526 ("removability cannot rationally turn on the timing or sequence of service of process.")

This rule is good policy.  Rules for service vary from state to state, and permitting pre-service removal to be the order of the day would cause dramatic variance in the practical effect of the removal statute, which is intended to be uniform nationwide.  *See Shamrock Oil & Gas Corp., supra,* 313 U.S. at 104.  For instance, some jurisdictions do not allow immediate service of process after an action is filed, permitting speedy defendants to remove to Federal court before a forum defendant may be served.  *See Laugelle v. Bell Helicopter Textron, Inc.,* 212 WL

368220 at *2 (D. Del. February 2, 2012).  In West Virginia, plaintiffs need not serve a defendant
for 120 days after filing the complaint.  W. Va. R. Civ. P., Rule 4(k).  To allow a removing
defendant to force a plaintiff into a contested suit in Federal court before service would usurp
West Virginia's sovereign authority over the proceedings before its courts, in the service of a
result Congress did not intend, seemingly for no reason.  *See Holmstrom v. Harad,* 2005 WL
1950672 at *2 (N.D. Ill. 2005) (holding that because the "joined and served" language requires
that service occur before removal because no defendant need appear before service, and the
period for removal had not yet begun to run, remand was appropriate where the non-forum
defendant had removed before service).  In short, "where's the fire?"

## B. FOX NEWS'S PROFFERED AUTHORITY CANNOT APPLY HERE

In support of its removal petition, Fox News cites two out-of-circuit cases,
distinguishable both on their procedural circumstances and the controlling law of their circuits,
and cannot justify this Court's exercise of removal jurisdiction.

### 1. Gibbons v. Bristol-Myers Squibb Company

The *Gibbons* case involved a nationwide tapestry of multi-district litigation (MDL)
concerning the Eliquis blood-thinning medication manufactured by Bristol-Myers Squibb, a
Delaware corporation.  Seventeen lawsuits came before Judge Cote of the U.S. District Court for
the Southern District of New York, which selected a bellwether case and granted a motion to
dismiss it.  *Gibbons v. Bristol-Myers Squibb Company,* 2019 WL 1339013 at *2 (2d Cir. 2019).
Judge Cote's court then became the MDL Court, and the MDL panel transferred all remaining
Eliquis suits to it.  Judge Cote granted a second motion to dismiss the bellwether case, and
following the failure of the other sixty-eight MDL plaintiffs to show cause why their complaints
should not be dismissed on the same grounds, the Court dismissed all sixty-eight actions
pending before it in the Southern District.  *Id.*

While Judge Cote's dismissal affected all the MDL suits then pending before the
Southern District, some thirty-three actions were then awaiting transfer from California federal
courts to the Southern District of New York.  *Gibbons, supra,* 2019 WL 1339013 at *2.  Their

counsel, Salim-Beasley LLC, voluntarily dismissed these suits and refiled them in Delaware

state court, where the defendant was incorporated.  *Id.*  The defendant removed these actions

prior to service, and following the District of Delaware's denial of a remand motion on forum-

defendant grounds, had them transferred to the MDL Court, where Judge Cote dismissed the

actions pursuant to the bellwether holdings.  *Id.*  Following the dismissal of these transferred

actions, Salim-Beasley LLC began having *new* plaintiffs initiate lawsuits in Delaware state

court.  *Gibbons, supra,* 2019 WL 1339013 at *2.  These too were removed to Federal court, and

when remand was denied, transferred into the MDL and dismissed pursuant to the bellwether

holdings.  *Id.*

In holding that the District of Delaware properly denied the plaintiffs' motions for

remand, the *Gibbons* opinion addresses only one exception to the Plain Language Rule, that of

absurdity.  *Gibbons, supra,* 2019 WL 1339013 at *4.  Critically, the Second Circuit did not

address whether "literal application of the statutory language at issue produces an outcome that

is demonstrably at odds with clearly expressed congressional intent to the contrary."  *Cf.*

*Hillman, supra,* 263 F. 3d at 342.  Examining Congress's intent with respect to removal

jurisdiction is a critical step in the process, one which countless other courts of this and other

circuits have taken.  *See Phillips Construction, LLC, supra,* 93 F. Supp. 3d at 553 (S.D. W. Va.);

*Oxendine, supra,* 236 F. Supp. 2d at 524-525 (D. Md.); *Campbell, supra,* 925 F. Supp. 2d at 807

n. 14 (E.D. Va.); *In re Lipitor Litigation, supra,* 2016 WL 7338594 at *2 (D. S.C.), *inter alia.*[1]

By failing to consider whether the language produces an outcome conflicting with

Congressional intent and instead focusing solely on absurdity, *Gibbons* is out of step with the

Fourth Circuit's approach to the Plain Language Rule, one applied by numerous other courts,

and the *Gibbons* case cannot control.  *See Id.*

---

[1] *See also Sullivan, supra,* 575 F. Supp. 2d 640 (D. N.J); *Holmstrom, supra,* 2005 WL 1950672
at *2 (N.D. Ill.); *Ethington v. General Elec. Co.,* 575 F. Supp. 2d 855 (D. Oh. 2008); *Gentile v.
Biogen Idec, Inc.,* 934 F. Supp. 2d 313, 316 (D. Mass. 2013); *Perez v. Forest Laboratories, Inc.,*
902 F. Supp. 2d 1238 (E.D. Missouri 2012).

What is more, the procedural history of the *Gibbons* case as discussed above is one of cat-and-mouse gamesmanship on both sides.  None of this procedural intrigue is present here. Plaintiff did not file suit in West Virginia to evade the effect of any MDL bellwether ruling which might bar his relief, nor does his state-court filing threaten to frustrate the judicial efficiency aspect of multi-district litigation.  Instead, Plaintiff filed his suit in Mingo County, West Virginia because he has resided in Mingo County, and because the effect of the defendants' defamatory conduct was directed toward West Virginia.  *Gibbons* is simply entirely off the mark here.

### 2.    Encompass Insurance Company v. Stone Mansion Restaurant, Inc.

Like *Gibbons,* the *Encompass* case concerned itself solely with the extreme "absurdity" exception to the Plain Language Rule, ignoring the distinct "result demonstrably at odds with clearly expressed congressional intent" exception which is the law of the Fourth Circuit.  The *Encompass* court asked only whether applying section 1441's plain language "defies rationality or renders the statute nonsensical and superfluous."  *See Encompass Insurance Company v. Stone Mansion Restaurant, Inc.,* 902 F. 3d 147, 152 (3d Cir. 2018).  Per the court, "it remains for us to determine whether there has been a 'most extraordinary showing of contrary intentions' and consider whether this literal interpretation leads to 'absurd or bizarre results.'"  *Id.*  The court did not inquire whether the results of the plain language were "demonstrably at odds with clearly expressed congressional intent"; in fact, the Third Circuit stated that "[t]he legislative history provides no guidance[.]"  *Id.* at 153; *but see Phillips Construction, supra,* 93 F. Supp. 3d at 553 (examining legislative history); *Sullivan, supra,* 575 F. Supp. at 643-644 (same).  It is plain that the abundant authority cited herein, which examines the legislative history and applies the "Fourth Circuit's "demonstrably at odds with clearly expressed congressional intent" exception to the Plain Language Rule, forms the more reasoned position.  *See Hillman, supra,* 263 F. 3d at 342.

**C.**     **FOX NEWS'S GAMESMANSHIP USURPS THE SOVEREIGN**
           **AUTHORITY OF THE WEST VIRGINIA JUDICIAL SYSTEM**

Fox News's tactics illustrate (in a very practical sense) the absurdity of Fox News's

preferred interpretation of the forum defendant rule: Mr. Blankenship filed a lawsuit. Pursuant to

West Virginia law, Mr. Blankenship had 120 days to serve his complaint and summons. W. Va.

R. Civ. P., Rule 4(k).  Also pursuant to West Virginia law, Mr. Blankenship had the absolute

right to amend his pleading, including to amplify allegations against existing defendants and to

name new defendants so long as no defendant had filed a responsive pleading to the original

complaint. W. Va. R. Civ. P., Rule 15(a).  After filing his original complaint but before serving

the original complaint and summons (and well within the 120-day window established by West

Virginia's Rule 4(k) ), Mr. Blankenship elected to avail himself of his absolute right to amend.

Proceeding in this fashion was plain common sense: once a plaintiff determines that it makes

sense to amend his or her pleading, there is no sense in incurring the expense of serving a

pleading that will be superseded.

Extending Fox News's interpretation of section 1441 to its logical end, a plaintiff like

Mr. Blankenship does not *actually* have 120 days to serve a defendant (as West Virginia law

permits) lest his choice of forum be disturbed by an over-eager defendant.  In some states (like

Pennsylvania, where service must be effected by law enforcement), a plaintiff's choice of forum

would be entirely subject to the backlog of work faced by the civil division of the relevant

sheriff or marshal service. In other states (where plaintiffs commonly effect service by way of a

privately-hired process server), removability might hinge on the efficacy of an in-state

defendant's ability to evade service of process.  Such results are plainly absurd and fly in the

face of congressional intent.  *See Shamrock Oil & Gas Corp., supra,* 313 U.S. at 104 ("The

removal statute which is nationwide in its operation, was intended to be uniform in its

application, unaffected by local law definition or characterization of the subject matter to which

it is to be applied.")  The better interpretation of section 1441 is that adopted by the majority of

district courts in this circuit – that the naming of an in-state defendant (which is not a sham

defendant) precludes removability.

## VI.  MR. BLANKENSHIP HAS EASILY CLEARED THE LOW HURDLE OF ESTABLISHING THAT 35TH INC. -- A RINGLEADER IN THE CONSPIRACY TO DEFAME MR. BLANKENSHIP – WAS NOT FRAUDULENTLY JOINED

"To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.,* 187 F. 3d 422, 424 (4th Cir. 1999).  Because "all issues of law and fact [must be resolved] in the plaintiff's favor" … "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.* "Fraudulent joinder must be proved by clear and convincing evidence consisting of facts rightly leading to that conclusion…."  *Rinehart v. Consolidation Coal Co.,* 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987); *see also Garvin v. Southern States Ins. Exchange Co.,* 329 F. Supp. 2d 756, 758 (N.D. W. Va. 2004); *Dotson v. Elite Oil Field Services, Inc.,* 91 F. Supp. 3d 865, 869 (N.D. W. Va. 2015).  "Once the court identifies this glimmer of hope for the plaintiff," the fraudulent joinder inquiry is resolved in the plaintiff's favor.  *Hartley, supra,* 187 F. 3d at 426; *see also West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co.,* 354 F. Supp. 2d 660, 666 (S.D. W. Va. 2005) ("As the decision in *Hartley* illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. …At bottom, a plaintiff need only demonstrate a 'glimmer of hope'...")

Fox News does not claim that Plaintiff misrepresented any jurisdictional facts with respect to 35th PAC.  35th PAC is, as Plaintiff alleged, a West Virginia Corporation. (Declaration of Jeffrey S. Simpkins, Ex. A [Business Organization Detail].)  The only issue is therefore whether there is *any possibility* Plaintiff can state a cause of action against 35th PAC. under West Virginia law.  *Hartley, supra,* 187 F. 3d at 424. A careful dissection of the allegations of Mr. Blankenship's complaint illustrates that he has easily cleared this hurdle.

## A.   PERTINENT ALLEGATIONS OF PLAINTIFF'S COMPLAINT

36.  As to Defendant 35th Inc. ("35th PAC"), Plaintiff is informed and believes, and based thereon alleges, that 35th PAC is a West Virginia non-profit corporation.  35th PAC is an independent expenditure-only committee which received substantial contributions from persons and entities aligned with the Republican national establishment, including two mega-donors.  35th PAC describes itself as "supporting West Virginia Attorney General Patrick Morrisey's 2018 campaign for U.S. Senate."  [¶…¶]

77. On April 10, 2018, the political action committee ostensibly supporting Mr. Morrisey's campaign – Defendant 35th PAC – responded to a tweet by Mr. Blankenship, with the following defamatory tweet: "You are also a convicted felon hurting West Virginia families."  Mr. Blankenship communicated directly with the major funders of this PAC and advised that this tweet was false.  No correction was ever issued.  At the time this tweet was issued, the authors (and likely the PAC's top donors as well) knew that it was false, but nonetheless proceeded to publish because of their malice toward Mr. Blankenship.  [¶…¶]

100.  Defendants, and each of them, made statements of fact as set forth above, which were materially false, namely that Mr. Blankenship was a felon, and/or that Mr. Blankenship had been convicted of a felony, and/or that Mr. Blankenship went to jail for manslaughter. To the extent any of Defendants' above-described statements were statements of opinion (and they were not), each such purported opinion implied the existence of undisclosed defamatory facts as the basis for the opinion, in that such opinions would appear to a reasonable person to be based on the untrue and defamatory facts that Mr. Blankenship was a felon and/or had been convicted of a felony and/or had gone to jail for manslaughter.

101.  Defendants, and each of them, caused to be published the above-described defamatory statements about Mr. Blankenship.

102.  Defendants' statements were defamatory in that they reflected shame, contumely, and disgrace upon Mr. Blankenship by stating that he was a felon and/or had been convicted of a felony and/or had gone to jail for manslaughter.

103.  Defendants' statements were defamatory per se in that they were and are incapable of an innocent meaning and charged Mr. Blankenship with the commission of crimes of which he was acquitted, and were imputations as affecting his business, trade, profession, and/or office.

104.  Defendants' statements with respect to the Mr. Blankenship were materially and entirely false in that Mr. Blankenship is not a felon and has never been convicted of a felony, neither manslaughter nor any other felony, and in fact was acquitted of all felony charges with which he had ever been charged.

105.  Moreover, many of the defamatory statements were made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, innuendo, and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him, responsibility for murder.

106.  Defendants, and each of them, made their respective defamatory statements with actual malice, that is, actual knowledge of the falsity of their statements or, at a minimum, with reckless and willful disregard of the truth or falsity of the statements. Among other reasons and without limitation, Defendants' wrongful conduct was motivated by the matters discussed herein above.

107.  Anyone who consulted the freely-available public records of Mr. Blankenship's trial and conviction (including previous accurate reports of Mr. Blankenship's acquittals by the Defendant media organizations themselves), would know that Mr. Blankenship was acquitted of all felony charges, that Mr. Blankenship was convicted only of a misdemeanor, and that Mr. Blankenship has never been convicted of a felony, whether for manslaughter or any other reason.

108.  In addition, Mr. Blankenship is further informed and believes, and based thereon alleges, that the media organization Defendants, and each of them, failed to follow or comply with their own policies and procedures regarding the reporting of criminal convictions.

109.  Defendants, and each of them, intended to cause injury to Mr. Blankenship by publishing their false defamatory statements.

110.  Plaintiff is further informed and believes, and based thereon alleges, that Defendants NRSC, 35th PAC, and Kevin McLaughlin, along with DOES 26-50 the "Conspiracy Does," and together with NRSC, 35th PAC, and McLaughlin, the "Conspiracy Defendants"), and each of them, shared in a common plan for the commission of the tort of defamation.

111.  In particular, the Conspiracy Defendants shared the common plan of ensuring that Plaintiff did not win the West Virginia Primary Election. To that end, the Conspiracy Defendants agreed that McLaughlin and the Conspiracy Does would themselves disseminate, and cause and/or encourage others to disseminate, the false claim that Plaintiff was a "felon" or "convicted felon." The Conspiracy Defendants, and each of them, knew that this claim was untrue as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

112. McLaughlin committed overt acts in furtherance of the conspiracy as discussed above in paragraphs 18, 51, 81, and 82, by appearing on CNN as a "GOP Political Strategist" and stating that Plaintiff was a "convicted felon."

113. The Conspiracy Does, and each of them, also committed overt acts in furtherance of the conspiracy by publishing false and defamatory claims about Mr. Blankenship. Plaintiff will amend this

Complaint to allege further facts concerning the Conspiracy Does' overt
acts when the same are ascertained. (Dkt. #1-1 [Complaint].)

**B.** **MR. BLANKENSHIP HAS UNEQUIVOCALLY STATED A VIABLE
CLAIM FOR DEFAMATION AND FOR CIVIL CONSPIRACY TO
DEFAME AGAINST 35TH PAC**

"A candidate for political office is governed by the same rules with regard to recovery
for libel as a public official and can sustain an action for libel only if he can prove that: (1) the
alleged libelous statements were false or misleading; (2) the statements tended to defame the
plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published
with knowledge at the time of publication that they were false or misleading or were published
with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the
plaintiff through the knowing or reckless publication of the alleged libelous material." *Sprouse
v. Clay Communication, Inc.,* 158 W. Va. 427 at ¶ 1 (1975); *Pritt v. Republican Nat. Committee,*
210 W. Va. 446, 447 ¶ 6 (2001); *Chafin v. Gibson,* 213 W. Va. 167, 171-172 (2003).

"A civil conspiracy is a combination of two or more persons by concerted action to
accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by
unlawful means." *Dunn v. Rockwell,* 225 W. Va. 43 at ¶ 8.  That is, civil conspiracy "is a legal
doctrine upon which liability for a tort may be imposed on people who did not actually commit a
tort themselves but who shared a common plan for its commission with the actual
perpetrator(s)." *Id.* at 57; *cf. Adcock v. Brakegate, Ltd.,* 164 Ill. 2d 54, 62 (1994) ("Civil
conspiracy consists of a combination of two or more persons for the purpose of accomplishing
by some concerted action either an unlawful purpose or a lawful purpose by unlawful means.")

Plaintiff has clearly and precisely alleged a *prima facie* case against 35th PAC for
defamation and conspiracy, far more than a mere "glimmer of hope" for recovery.  *See Hartley,
supra,* 187 F. 3d at 426; *see also West Virginia ex rel. McGraw v. Minnesota Mining and Mfg.
Co., supra,* 354 F. Supp. 2d at 666.  Mr. Blankenship has alleged that 35th PAC made
statements about him which were false and misleading (Complaint, ¶¶ 77, 100, 101, 104, 105,

15

107).  Mr. Blankenship has further alleged that the statements tended to reflect shame, contumely, and disgrace upon Mr. Blankenship (Complaint, ¶¶ 77, 102), which they plainly do, and indeed, they were defamatory per se (¶ 103).  Mr. Blankenship has also alleged facts which demonstrate that that the statements were published with actual knowledge of their falsity or reckless disregard to their truth or falsity, in that 35th PAC supported Mr. Blankenship's opponent (¶ 36), never retracted its statement despite being explicitly told it was false (¶ 77), and that the true facts were freely and publicly available to 35th PAC and the other defendants at all relevant times (¶ 107).  These facts, if established, would also demonstrate that 35th PAC intended to injure Mr. Blankenship through the publication of the defamatory statements.

In addition, Mr. Blankenship has stated a claim against 35th PAC for civil conspiracy, pleading facts that, if established, would support that 35th PAC took part in "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *See Dunn, supra,* 225 W. Va. at p. 43 ¶ 8.  Namely, Mr. Blankenship has alleged that 35th PAC (supporting Patrick Morrisey, another candidate for the Republican nomination), together with co-defendants the National Republican Senatorial Committee ("NRSC," an organization which works to elect members of the Republican party to the United States Senate), Kevin McLaughlin (a former and current director of the NRSC), and others not yet known to Mr. Blankenship (the "Conspiracy Does"), plotted to bring down Mr. Blankenship's  candidacy through the unlawful means of publishing these defamatory statements.  (Complaint, ¶¶ 110, 111.)  This is more than sufficient to state a claim for civil conspiracy with regard to defamation.  *See Dunn, supra,* 225 W. Va. at p. 43 ¶ 8.

Given that Mr. Blankenship has alleged abundant facts under which 35th PAC may be liable to him under West Virginia law, it simply cannot be said that 35th PAC was fraudulently joined to this action.

/ / /

/ / /

/ / /

VII.   **CONCLUSION**

The Court should remand this case to the Circuit Court of Mingo County, West Virginia because defendant 35th PAC is a citizen of West Virginia, and 28 U.S.C. § 1441 does not permit removal before service if any defendant is a citizen of the state where the suit is brought. Fox News's proffered authority to the contrary is not in keeping with the Fourth Circuit's precedent with respect to the exceptions to the Plain Language Rule and is unavailing. The case should therefore be remanded.

Respectfully submitted,

DON BLANKENSHIP
By Counsel


/s/ Jeffrey S. Simpkins
Jeffrey S. Simpkins, Esq.
WVSB #9806
*SIMPKINS LAW*
102 E. 2nd Ave.
Williamson, WV 25661
304.235.2735
simpkinslawoffice@gmail.com

Eric P. Early, Esq.
(CA State Bar No. 166275, *pro hac vice* pending)
Jeremy Gray, Esq.
(CA State Bar No. 150075, *pro hac vice* pending)
Kevin S. Sinclair, Esq.
(CA State Bar No. 254069, *pro hac vice* pending)
*EARLY SULLIVAN WRIGHT GIZER & McRAE LLP*
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048
323.301.4660
eearly@earlysullivan.com
jgray@earlysullivan.com
ksinclair@earlysullivan.com