Jeffrey S. Simpkins, WV State Bar
Number 9806
   *simpkinslawoffice@gmail.com*
SIMPKINS LAW
102 E. 2nd Ave.
Williamson, West Virginia 25661
Telephone:      (304) 235-2735

Eric P. Early, CA State Bar Number
166275,
*(pro hac vice pending)*
   *eearly@earlysullivan.com*
Jeremy Gray, CA State Bar Number
150075,
*(pro hac vice pending)*
   *jgray@earlysullivan.com*
Kevin S. Sinclair, CA State Bar Number
254069,
*(pro hac vice pending)*
   *ksinclair@earlysullivan.com*
EARLY SULLIVAN WRIGHT
   GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:   (323) 301-4660
Facsimile:    (323) 301-4676

Attorneys for
PLAINTIFF DON BLANKENSHIP

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | |
|---|---|
| DON BLANKENSHIP, | Case No.: 2:19-cv-00236 |
| Plaintiffs, | [Honorable John T. Copenhaver, Jr.] |
| vs. | State Civil Action No. 19-C-26 |
| HONORABLE ANDREW NAPOLITANO (RET.); FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; NBCUNIVERSAL, LLC; MSNBC CABLE, LLC; CNBC, LLC. NATIONAL REPUBLICAN SENATORIAL COMMITTEE; 35TH INC; ASSOCIATED PRESS; | [Honorable Miki J. Thompson] |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

BREITBART NEWS NETWORK,
LLC;
CLARITY MEDIA GROUP, INC;
WASHINGTON TIMES, LLC;
TRIBUNE PUBLISHING
COMPANY, LLC;
LOS ANGELES TIMES
COMMUNICATIONS, LLC;
WP COMPANY LLC
d/b/a THE WASHINGTON POST;
DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE;
THE NATIONAL JOURNAL
GROUP, LLC;
WATAUGA WATCH; DOWN WITH
TYRANNY
MEDIAITE, LLC; NATIONAL
PUBLIC RADIO, INC;
FISCALNOTE, INC d/b/a ROLL
CALL
THE GUARDIAN NEWS AND
MEDIA, LLC;
NEWS AND GUTS, LLC;
DOW JONES & COMPANY, INC
d/b/a MARKET WATCH;
UNIVISION COMMUNICATIONS,
INC
d/b/a SPLINTER NEWS
INTERNATIONAL MEDIA
INVESTMENTS FZ, LLC
d/b/a THE NATIONAL;
THE DAILY BEAST COMPANY,
LLC;
HEARST MAGAZINE MEDIA, INC
d/b/a ESQUIRE;
HAYRIDE MEDIA, LLC; NOWTHIS
MEDIA, INC;
THE UNION LEADER
CORPORATION;
CAPITOL HILL PUBLISHING INC
d/b/a THE HILL;
COMMIE GIRL INDUSTRIES, INC
d/b/a WONKETTE;
DAILY MAIL AND GENERAL
TRUST PLC;
VICE MEDIA LLC; THE 74 MEDIA,
INC
d/b/a THE 74 MILLION;
BREAKFAST MEDIA, LLC;
THE MCCLATCHY COMPANY
d/b/a THE SACRAMENTO BEE;
OBSERVER MEDIA GROUP, LLC

d/b/a THE OBSERVER; GARNETT
CO, INC
d/b/a/ YORK DAILY RECORD;
THE CHARLESTON GAZETTE-
MAIL;
SALEM MEDIA GROUP, INC
d/b/a TOWNHALL;
VERIZON MEDIA, LLC
d/b/a THE HUFFINGTON POST;
AMERICAN BROADCASTING
COMPANIES, INC;
NEIL CAVUTO; CHRIS HAYES;
JOY ANN LOMENA-REID; SARAH
ELIZABETH CUPP;
BRADLEY BLAKEMAN; JOHN
LAYFIELD;
STEPHANIE HAMILL; KEVIN
MCLAUGHLIN;
LEIGH ANN CALDWELL;
MICHAEL PATRICK LEAHY; JOSH
DAWSEY;
JENNA JOHNSON; BEN
WOLFGANG;
MICHAEL WARREN; CATHLEEN
DECKER;
ZACK COLMAN;  LAUREN
PASSALACQUA;
BEN RAY; DAVID BERGSTEIN;
COURTNEY RICE; JUSTIN
LAVOIE;
JOHN KRAUSHAAR; HOWIE
KLEIN;
TAMAR AUBER; SUSAN DAVIS;
GRIFFIN CONNOLLY; BEN
JACOBS;
DAN RATHER;
HOLLY FIGUEROA O'REILLY;
JOE LOCKHART; J.W.
WILLIAMSON;
RACHEL KONING BEALS; CHRIS
JONES;
JIM HEATH; NICOLE HENSLEY;
PAUL BLEST; RASHMEE ROSHAN
LALL;
GIDEON RESNICK; DANA
MILBANK;
CHARLES PIERCE; MATT
HOWERTON;
ELIZABETH MACDONALD; ROB
PERSEY;
JEN KERNS; DAVID MARTOSKO;

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

MARTIN PENGELLY; MATT
TAYLOR;
KEVIN MAHNKEN; ANDREW
FEINBERG;
JOHN RABY; BEN BOYCHUK;
AMBER PHILLIPS; BRIAN
SCHWARTZ;
MICHAELANGELO SIGNORILE;
BRUCE BIALOSKY; ELI LEHRER;
MIKE ARGENTO; DAVIS
RICHARDSON;
and DOES 1-50 inclusive,

                    Defendants.

---

## FIRST AMENDED COMPLAINT

---

## INTRODUCTION[1]

## A Case of "Weaponized Defamation"

1.      The mainstream media and much of the political establishment today

routinely, and with actual malice, sets out to destroy public figures with outright

lies.  The competition for viewers is intense and nothing brings in eyeballs like

scandal and degradation.  So too is the establishment media's bloodthirsty desire to

destroy those with whom they disagree politically. We live in an age of weaponized

defamation where lies can be repeated in more ways at more times in more places

with more speed than anyone could possibly have imagined even five years ago,

---

[1]      Plaintiff files concurrently herewith a Motion for Remand of this action back to the Circuit
Court of Mingo County, West Virginia pursuant to 28 U.S.C. § 1447, where the original Complaint
was filed.  Plaintiff submits this First Amended Complaint without prejudice to and without
waiving any right to file his Motion for Remand and to have this cased remanded back to the Circuit
Court of Mingo County, West Virginia.

much less in 1964 when the seminal case in the area of defamation of public figures was decided.  This lawsuit will help determine whether the media and the political establishment, in this increasingly malevolent and digitized environment, can continue to tell outright lies about what they consider public figures running for office, as part of their effort to sway elections and tarnish non-establishment candidates, while intentionally putting blinders on, and completely hoodwinking, the American public in the process.

2.      In the 2018 election cycle, plaintiff Don Blankenship (sometimes referred to herein as "Plaintiff") was one of several Republican candidates vying to be the next United States Senator from West Virginia.  Mr. Blankenship personified and epitomized what it is to be a non-establishment candidate for office.  As such, the DC establishment "swamp" and the establishment media united against Mr. Blankenship.  The entire establishment media spectrum – from conservative to liberal, from fringe social media to mainstream media – commenced a search and destroy mission to take out Mr. Blankenship.

3.      Prominent mainstream beltway "swamp" Republicans, led by Senate Majority Leader Mitch McConnell, told all who would listen that Mr. Blankenship had to be stopped at all costs.

4.      McConnell set in motion the wheels of a clandestine campaign – including a "menu of items" -- to destroy Mr. Blankenship and blatantly interfere in a federal election, using among other things, the National Republican Senatorial Committee ("NRSC"), and his contacts in the establishment media, including Fox News in particular, to do McConnell's (and in turn, the NRSC's) bidding.

5.      Not to be outdone, the establishment left-wing media, including its leading mouthpieces CNN, MSNBC and The Washington Post, joined in the defamation chorus. They too set out to destroy Mr. Blankenship, and to subvert an

election, but for their own particular reasons -- doing so would protect their incumbent Senator of choice, Democrat Joe Manchin (who had been beaten in the past in both legal and political battles with Mr. Blankenship) -- and also fit perfectly within the leftwing media's tried and true agenda of using certain prominent conservatives as poster boys to paint a false picture of purported conservative evil and depravity across the board.

6.      This toxic environment provided the venue in which multiple news persons disregarded their obligation to report the truth and lied about Mr. Blankenship, reporting *ad nauseum* in the days leading up to the May 8, 2018 West Virginia Primary, that he was a "convicted felon" or had been "imprisoned for manslaughter." Mr. Blankenship is well-acquainted with the rough and tumble of politics. This is not that. Mr. Blankenship ***is not and never was a felon*** and has never been convicted of a felony, neither manslaughter nor any other. These false claims were not simple insults, but rather were part of a concerted plot by the establishment media and the political establishment to destroy Mr. Blankenship personally and interfere in a federal election.

### Brief Background Leading to the Weaponized Defamation of Don Blankenship

7.      Mr. Blankenship was raised in the small West Virginia town of Delorme. He began in the mines, working his way through school as a coal miner. Following graduation, he rose in the coal business from an accounting job to becoming CEO of Massey Energy in 1992. He worked in the business for thirty-eight years. Under his leadership, Massey Energy grew from a small outfit into the largest coal producer in Central Appalachia, which employed thousands of miners, and provided energy to millions of consumers. Mr. Blankenship's leadership helped destroy the coal miner's union, which resulted in the creation of thousands of new

jobs and earned Mr. Blankenship the permanent enmity of union boss and Obama minion Richard Trumka.

8.     On April 5, 2010, a tragic explosion at Massey's Upper Big Branch Mine took the lives of twenty-nine miners.  The explosion occurred ***just a few hours after*** ventilation changes required by the Obama Administration were completed, which cut the mine's airflow in half.  President Obama immediately sought to divert blame from his Administration's culpability, and to continue to curry favor with union boss Trumka (who had visited Obama in the White House more than any other person). Obama purported to show sympathy for the miners' families by holding a press conference only ten days after the explosion -- long before anyone even was able to enter the mine to investigate -- in which the President told the world the explosion was the fault of Massey's management – *i.e.* Don Blankenship.  In fact, a scientific analysis of the explosion itself has ultimately shown that the detonation was caused by ill-advised and ill-conceived ventilation regulations imposed by the Obama Administration's Mine Safety and Health Administration (MSHA) which were completed just hours before the tragedy.

9.     The Obama Justice Department ("DOJ") followed with a politically supercharged and motivated indictment against Mr. Blankenship accusing him of three separate felonies and a misdemeanor.  The Obama Administration detested Don Blankenship.  Mr. Blankenship had long been well-known as the most prolific provider and defender of coal miners' jobs in West Virginia.  He had also almost singlehandedly revived the conservative brand and the Republican party in West Virginia and had long been a vocal critic of Obama.  He was therefore an easy mark for the coal-hating Obama Administration and a target of its unrelenting war on coal.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

10.     The aggressive federal prosecution went to trial in October 2015, and Mr. Blankenship *was found innocent by a West Virginia jury on all felony counts*.  He was convicted, however, only *of a misdemeanor*.  *Notably, at that time, many of the Defendants in this lawsuit accurately reported that Mr. Blankenship was convicted only of a misdemeanor and not for any of the felony counts he was facing.*

11.     A first-time misdemeanant is never (or virtually never) sent to prison, but thanks to the overarching and outrageous pressures brought to bear against him by the government, Mr. Blankenship was sent to prison by the Obama DOJ for one year (the maximum for which any misdemeanant can be sentenced) and served time in prison.  Mr. Blankenship may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor.

12.      The Department of Justice Office of Professional Responsibility has since investigated the conduct of the United States Attorneys who prosecuted Mr. Blankenship -- Booth Goodwin and Steve Ruby.  The OPR found that massive prosecutorial misconduct had occurred in the prosecution of Mr. Blankenship, stating among other things that, "because Ruby and Goodwin recklessly violated the Department's discovery policies regarding the disclosure of discoverable statements, they committed professional misconduct."

## The West Virginia Republican Primary

13.     In 2017, Mr. Blankenship announced his plans to run for the West Virginia Senate seat held by Democrat Joe Manchin. The May 8, 2018 Republican Primary pitted Mr. Blankenship against West Virginia Congressman Evan Jenkins and Attorney General Patrick Morrisey.  Thanks to Mr. Blankenship's longstanding prominence in West Virginia, the significant financial resources he brought to bear,

his effective ads and success in debates, by early May 2018, his opponents' internal polls showed Mr. Blankenship had moved into contention.

14.     The potential election of Mr. Blankenship was an anathema to Mitch McConnell and the GOP Establishment.  As Mr. Blankenship rose in the polls, Leader McConnell and his colleagues determined that they would do whatever they could, including lying and smearing to stop Mr. Blankenship from winning the primary.  At or about this time, it was widely reported that McConnell convened clandestine meetings of the NRSC to formulate a plan, including a "menu" of options, to stop Mr. Blankenship from winning the Primary.  Some of these meetings took place in McConnell's office in the Capitol.  One attendee, Senator John Thune, the third-ranking member of the Senate leadership, was quoted as "hop[ing] and pray[ing]" that Blankenship would not win the nomination.

<u>**The Defamatory Attacks**</u>

15.     What followed next was Mr. Blankenship's conviction by the media not once, but dozens of times, of being a felon.

16.     The desire to stop Mr. Blankenship began to be given voice on April 25, 2018, when Judge Andrew Napolitano appeared on the Fox News Channel program "Outnumbered" and falsely claimed that Mr. Blankenship "went to jail for manslaughter, after being indicted."

17.     Judge Napolitano has been an attorney since 1975 and was a judge of the Superior Court of New Jersey for eight years. Fox News holds Judge Napolitano out as their "Senior Judicial Analyst."  No one with these credentials can claim not to know what manslaughter is.  Judge Napolitano and Fox News (which had previously reported the Blankenship misdemeanor conviction) knew this "manslaughter" claim was false.  This was hardly the only instance of Judge

Napolitano's disregard for the truth; in 2017, Fox News suspended him for some nine days for certain wholly inaccurate statements he had made at the time.

18.     Just days later, on April 29, 2018, Kevin McLaughlin – now the NRSC's Executive Director and at that time an ally of Leader McConnell – appeared on CNN and falsely said about Mr. Blankenship: "Well, I mean, pick your poison with this guy, right? He doesn't live in West Virginia, he's a ***convicted felon***."[2]  CNN had previously reported accurately Mr. Blankenship's felony acquittals and both CNN and Mr. McLaughlin knew this slur was false.

19.     McConnell (among others), by and through his surrogates in and out of the media, sought to interfere in a Federal election by silencing Mr. Blankenship, prevent him from winning a seat in the United States Senate and using Mr. Blankenship's public figure status to chill his free speech.

20.     The defamatory attacks on Mr. Blankenship escalated after he walloped his opponents in a nationally televised May 1, 2018 Fox News Debate, which took place just a week before the Primary.  Polling by Mr. Blankenship's opponents estimated his performance gained him an eight-point lead in the race.

21.     Over the ensuing week, multiple news personalities, lubricated by their disdain for Mr. Blankenship, and some at the direction of McConnell and other GOP leaders, repeatedly and falsely called Mr. Blankenship a "felon" and "convicted felon".  These defamatory statements were made on Fox News and in other venues by conservative commentators.

22.     In addition, Mr. Blankenship was repeatedly defamed by the left-leaning mainstream media, including Defendants CNN and MSNBC.  Examples

---

[2]      In this Complaint, the word "***felon***" and other defamatory utterances have been highlighted in ***bold italics***.  This emphasis has been added and was not in the original text unless specifically stated.

include MSNBC's Chris Hayes calling Mr. Blankenship a "felon" on MSNBC at least twice and Joy Reid calling him a "convicted felon" on May 5, 2018. Others did the same.

23.     Moreover, many of the defamatory statements were made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, *innuendo* and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him responsibility for murder.

24.     The evidence in this case will prove the Defendants acted with actual malice and reckless disregard for the truth. As a result, Mr. Blankenship has suffered enormous damages. Mr. Blankenship possesses a proven record of adding billions of dollars in value to an enterprise. As Massey's CEO, Mr. Blankenship grew the company from a valuation of $150 million to $7.8 billion (while most others in the marketplace were failing). The defamation of Mr. Blankenship as a "felon" and a person sent to prison "for manslaughter" has so smeared his reputation that he has been prevented from pursuing other businesses and opportunities and generating similar returns of billions of dollars. Because of this harm and a variety other injuries Mr. Blankenship has suffered, he seeks damages in an amount not less than $2 billion dollars.

25.     In addition, Mr. Blankenship seeks substantial punitive damages in the amount of $10 billion dollars. The purpose of punitive damages is to punish a defendant for outrageous conduct and/or to reform or deter the defendant and others from engaging in conduct similar to that which formed the basis of the lawsuit. Some of the defendants in this case are massive media companies (for example, CNN, owned by Warner Media, a division of AT&T, MSNBC, owned by NBCUniversal, a subsidiary of Comcast) and a large punitive damage award is necessary to adequately punish and/or deter these Defendants from repeating this

conduct.  Additionally the damage that has been done to the public confidence in the federal election process is incalculable if this conduct continues.[3]

## JURISDICTION AND VENUE

26.    Mingo County Circuit Court has original and general jurisdiction pursuant to West Virginia Code § 51-2-2(b).

27.    Mingo County Circuit Court has personal jurisdiction over each Defendant pursuant to West Virginia Code § 56-3-33 for reasons including, but not limited to: that the Defendants, and each of them, transacted business in this state; that they  contracted to supply services or things in this state; that they caused tortious injury to Plaintiff by an act or omission in this state; and that they caused tortious injury in this state by an act or omission outside this state while regularly doing and/or soliciting business in this state and/or engaging in a

---

[3]    While the evidence will support the requested relief under the prevailing standard of *New York Times v. Sullivan* (and its progeny), scrutiny of that actual malice standard is significantly increasing.  *See for example*, the very recent Opinion of Justice Clarence Thomas (dated February 19, 2019), in which he concurred with the denial of *certiorari* in the case, *McKee v. Cosby, Jr.,* 2019 WL 659764.  Justice Thomas describes at length, how the controlling law (which originated with *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 Sc.D. 710, 11 L.Ed.2d 686 (1984)), applies an actual malice standard to public figures ***that was nowhere found in the Constitution or in common law.*** *Id.* at *1.  "The common law of libel at the time the First and Fourteenth Amendments were ratified did not require public figures to satisfy any kind of heightened liability standard as a condition of recovering damages.  Typically, a defamed individual needed only to prove 'a false written publication that subjected him to hatred, contempt, or ridicule.'" *Id.* at *3 *citing among others, Dun & Bradstreet,* 105 S. Ct. 2939 (1985).  Justice Thomas continued, "Far from increasing a public figure's burden in a defamation action, the common law deemed libels against public figures to be, if anything, more serious and injurious than ordinary libels." *Id.* at *4 *citing* 3 Blackstone *124 ("Words also tending to scandalize a magistrate, or person in a public trust, are reputed more highly injurious than when spoken of a private man") (Other citations omitted).  Justice Thomas continued, "There are sound reasons to question whether either the First or Fourteenth Amendment, as originally understood, encompasses an actual-malice standard for public figures or otherwise displaces vast swaths of state defamation law."  He concluded, "We should reconsider our jurisprudence in this area.  *Id.* at *5, *6.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

persistent course of conduct and/or deriving substantial revenue from goods used or consumed or services rendered in this state.

28.     In addition, Mingo County Circuit Court has personal jurisdiction over all of the Defendants because of the West Virginia effects of their conduct. Indeed, West Virginia was the focal point of their comments and stories, both with respect to the underlying story itself (i.e. Mr. Blankenship's criminal proceedings in West Virginia) and with respect to a significant portion of the harm Mr. Blankenship suffered (i.e. the effect on the West Virginia election).  Accordingly, all of the Defendants purposely directed their actions toward West Virginia and should reasonably have anticipated being haled into court in West Virginia.

29.     Venue is proper in Mingo County Circuit Court pursuant to West Virginia Code § 56-1-1(a)(1).

## PARTIES

30.     Plaintiff Don Blankenship is an individual residing in West Virginia and was in 2018 a candidate for the United States Senate from West Virginia.

31.     As to Defendant Andrew Napolitano, Plaintiff is informed and believes, and based thereon alleges, that Andrew Napolitano is an individual domiciled in the State of New Jersey.  Mr. Napolitano is an attorney, former litigator, and judge of the Superior Court of New Jersey, and a current commentator for the Fox News Channel, providing legal analysis and commentary on programs such as *The Fox Report with Shepard Smith, Fox & Friends, Special Report with Bret Baier*, and *Outnumbered*.  Napolitano was suspended by Fox News in 2017 after making baseless claims that British intelligence spied on President Trump.

32.     As to Defendant Fox News Network LLC ("Fox News LLC"), Plaintiff is informed and believes, and based thereon alleges, that Fox News LLC is a

PLAINTIFF'S FIRST AMENDED COMPLAINT

Delaware limited liability company.  Fox News LLC is the operator of the Fox News Channel, a national 24-hour news network which is the most viewed cable network in the United States, as well as the Fox Business Network, also a national 24-hour news network.  Fox News LLC is part of the family of national and international media companies owned by Rupert Murdoch, which includes numerous Fox-branded networks (including Fox News Channel, Fox Business Network, and local Fox Television stations throughout the country), News Corp. (owner of Dow Jones and the Wall Street Journal, among others), and Sky News.

33.    As to Defendant Cable News Network, Inc. ("CNN"), Plaintiff is informed and believes, and based thereon alleges, that CNN is a Delaware corporation.  CNN is the owner and operator of the eponymous CNN cable network, a national 24-hour news network. CNN also owns HLN, also known as Headline News, another 24-hour cable news network.  CNN is owned by Warner Media, which is itself a division of AT&T, Inc., the multinational communications and media conglomerate.

34.    As to Defendant NBCUniversal, LLC ("NBCUniversal"), Plaintiff is informed and believes, and based thereon alleges, that NBCUniversal is a Delaware limited liability company whose principal place of business is in New York, New York.  NBCUniversal is an international media conglomerate with numerous holdings in the news field, including NBC News, CNBC, and MSNBC. NBCUniversal is also the owner of the websites that publish articles under those names.

35.    As to Defendant MSNBC Cable LLC ("MSNBC"), Plaintiff is informed and believes, and based thereon alleges, that MSNBC is a Delaware limited liability company.  MSNBC is the owner and operator of the eponymous MSNBC cable network, a national 24-hour news network.  MSNBC is owned by

NBCUniversal Media, which is a subsidiary of Comcast Corporation, a national telecommunications and mass-media conglomerate.

36.     As to Defendant National Republican Senatorial Committee ("NRSC"), Plaintiff is informed and believes, and based thereon alleges, that the NRSC is an entity of unknown form headquartered in Washington, DC.  NRSC's goal is to "strengthen…the Republican Senate Majority and elect…Republicans to the United States Senate."

37.     As to Defendant 35th Inc. ("35th PAC"), Plaintiff is informed and believes, and based thereon alleges, that 35th PAC is a West Virginia non-profit corporation.  35th PAC is an independent expenditure-only committee which received substantial contributions from persons and entities aligned with the Republican national establishment, including two mega-donors.  35th PAC describes itself as "supporting West Virginia Attorney General Patrick Morrisey's 2018 campaign for U.S. Senate."

38.     As to Defendant Breitbart News Network, LLC ("Breitbart"), Plaintiff is informed and believes, and based thereon alleges, that Breitbart is a Delaware limited liability company whose principal place of business is in Santa Monica, California.  Breitbart is the owner of the eponymous national news website.  The controlling shareholders in Breitbart all donated the maximum allowable by law to Mr. Blankenship's opponent.

39.     As to Defendant Associated Press ("AP"), Plaintiff is informed and believes, and based thereon alleges, that AP is a New York non-profit corporation whose principal place of business is in New York, New York.  AP is a national print and online news consortium which provides news stories to numerous print outlets, such as the Boston Globe (among many others), as well as on its own national news website.

40.     As to Defendant Clarity Media Group, Inc. ("Clarity Media Group"), Plaintiff is informed and believes, and based thereon alleges, that Clarity Media Group is a Delaware corporation.  Clarity Media Group was the publisher of the national magazine The Weekly Standard, until it ceased publication in December 2018.  Clarity Media Group is a subsidiary of the Anschutz Corporation, a privately-held holding company located in Denver, Colorado.

41.     As to Defendant The Washington Times, LLC ("Washington Times"), Plaintiff is informed and believes, and based thereon alleges, that Washington Times is the publisher of the eponymous nationally-distributed newspaper, The Washington Times.  Washington Times is a subsidiary of Operations Holdings, Inc., a holding company based in New York.

42.     As to Defendant Tribune Publishing Company, LLC ("Tribune"), Plaintiff is informed and believes, and based thereon alleges, that Tribune is a Delaware limited liability company whose principal place of business is in Chicago, Illinois.  Tribune (formerly known as Tronc) is a national print and online media company, and is the publisher of numerous national newspapers, including the Chicago Tribune, the New York Daily News (the "Daily News"), and, until June 2018, the Los Angeles Times newspaper.

43.     As to Defendant Los Angeles Times Communications, LLC ("LA Times"), Plaintiff is informed and believes, and based thereon alleges, that LA Times is a Delaware limited liability company whose principal place of business is located in Los Angeles, California.  LA Times is the current publisher of the eponymous daily newspaper whose circulation Plaintiff is informed and believes is the fourth largest in the country.  Since June of 2018, LA Times has been owned by Nant Capital, part of the NantWorks biotechnology conglomerate based in Culver City, California.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

44.     As to Defendant WP Company LLC, d/b/a The Washington Post ("Washington Post"), Plaintiff is informed and believes, and based thereon alleges, that Washington Post is a Delaware limited liability company whose principal place of business is in Washington, DC.  Washington Post is the owner and publisher of The Washington Post newspaper, one of the most popular and prestigious print newspapers in the country.  Washington Post is ultimately owned by Jeff Bezos, the founder of Amazon, through his company Nash Holdings, LLC.

45.     As to Defendant Democratic Senatorial Campaign Committee ("DSCC").  Plaintiff is informed and believes, and based thereon alleges, that the DSCC is an entity of unknown form headquartered in Washington, DC.  DSCC is the Democratic Hill committee for the United States Senate. It is the only organization solely dedicated to electing Democrats to the United States Senate.

46.     As to Defendant The National Journal Group, LLC ("National Journal") Plaintiff is informed and believes, and based thereon alleges, that National Journal is the publisher of the website, TheNationalJournal.com. National Journal is a Delaware limited liability company whose principal place of business is in Washington, DC.

47.     As to Defendant Watauga Watch ("Watauga"), Plaintiff is informed and believes, and based thereon alleges, that Watauga Watch is an entity of unknown form based in North Carolina.  Watauga Watch is a political blog owned and operated by J.W. Williamson

48.     As to Defendant Down With Tyranny, Plaintiff is informed and believes, and based thereon alleges, that Down With Tyranny is an entity of unknown form based in California.  Down With Tyranny is a progressive political blog owned and operated by Howie Klein.

49.     As to Defendant Mediaite, LLC ("Mediaite"), Plaintiff is informed and believes, and based thereon alleges, that Mediaite is a Delaware limited liability company whose principal place of business is in New York.  Mediaite is a news and opinion site covering politics and entertainment in the media industry. It is the flagship site of its owner Abrams Media.

50.     As to Defendant National Public Radio, Inc ("NPR"), Plaintiff is informed and believes, and based thereon alleges, that NPR is an American privately and publicly funded non-profit membership media organization based in Washington, D.C.

51.     As to Defendant FiscalNote, Inc. ("FiscalNote"), d/b/a Roll Call ("Roll Call"), Plaintiff is informed and believes, and based thereon alleges, that FiscalNote is incorporated in Delaware whose principal place of business is in Washington, DC.  FiscalNote is the owner of Roll Call. Roll Call is a newspaper and website published and based in Washington, D.C.

52.     As to Defendant Guardian News & Media, LLC ("Guardian"), Plaintiff is informed and believes, and based thereon alleges, that Guardian is a Delaware limited liability company whose principal place of business is in New York. Guardian is a privately held news and media company that owns and operates The Guardian US, an online news presence in the U.S .

53.     As to Defendant News and Guts, LLC ("News and Guts"), Plaintiff is informed and believes, and based thereon alleges, that News and Guts is a Delaware limited liability company whose principal place of business is in New York.  News and Guts is a news, media, and production company created by journalism icon Dan Rather in New York.

54.     As to Defendant Dow Jones & Company, Inc, ("Dow Jones") d/b/a Market Watch ("Market Watch"), Plaintiff is informed and believes, and based

thereon alleges, that Dow Jones is a Delaware corporation whose principal place of business is in New York.  Dow Jones is the owner and publisher of MarketWatch.com, one of the most popular financial information news websites.

55.     As to Defendant Univision Communications Inc ("Univision") d/b/a Splinter News ("Splinter"), Plaintiff is informed and believes, and based thereon alleges, that Univision is a Delaware corporation.  Univision is the owner of Splinternews.com, a news and opinion website.

56.     As to Defendant International Media Investments FZ, LLC, ("International") d/b/a The National ("National"), Plaintiff is informed and believes, and based thereon alleges, that International is a Delaware limited liability company whose principal place of business is in Abu Dhabi.  International is the owner of National, a private English-language daily newspaper published in Abu Dhabi.

57.     As to The Daily Beast Company, LLC ("Daily Beast"), Plaintiff is informed and believes, and based thereon alleges, that Daily Beast is a Delaware limited liability company whose principal place of business is in New York.  Daily Beast is a left-leaning American news and opinion website focused on politics.

58.     As to Defendant Hearst Magazine Media, Inc, ("Hearst") d/b/a Esquire ("Esquire"), Plaintiff is informed and believes, and based thereon alleges, that Hearst is a Delaware corporation whose principal place of business is in New York. Hearst is the owner of Esquire, an American men's magazine published in New York.

59.     As to Hayride Media, LLC ("Hayride"), Plaintiff is informed and believes, and based thereon alleges, that Hayride is a limited liability company based and has its principal place of business in Louisiana.  Hayride owns and

operates TheHayride.com, Louisiana's premier conservative political commentary site, located in Baton Rouge, Louisiana.

60.    As to Defendant Nowthis Media, Inc, ("Nowthis"), Plaintiff is informed and believes, and based thereon alleges, that Nowthis is a Delaware corporation whose principal place of business is in New York.  Nowthis is the owner of Now This Politics, a political social media news outlet in New York.

61.    As to Defendant The Union Leader Corporation, ("Union"), Plaintiff is informed and believes, and based thereon alleges, that Union is a New Hampshire corporation whose principal place of business is in New Hampshire.  Union is the owner of The New Hampshire Union Leader, the daily newspaper of Manchester, New Hampshire.

62.    As to Defendant Capitol Hill Publishing, Inc, ("Capitol") d/b/a The Hill ("Hill"), Plaintiff is informed and believes, and based thereon alleges, that Capitol is a Delaware limited liability company whose principal place of business is in Washington, D.C.  Capitol is the owner of The Hill, a political news company based in Washington D.C.

63.    As to Defendant Commie Girl Industries, Inc., ("Commie") d/b/a The Wonkette ("Wonkette"), Plaintiff is informed and believes, and based thereon alleges, that Commie is a Montana corporation whose principal place of business is in Montana.  Wonkette is an American online political magazine; and is currently owned and operated by Commie Girl Industries, Inc., based in Montana.

64.    As to Defendant Daily Mail and General Trust PLC ("Daily Mail"), Plaintiff is informed and believes, and based thereon alleges, that Daily Mail is a Public limited liability company whose principal place of business is in London, England.  Daily Mail is a British daily middle-market newspaper published in London.

65.     As to Defendant Vice Media, LLC ("Vice"), Plaintiff is informed and believes, and based thereon alleges, that Vice is a Delaware limited liability company whose principal place of business is in New York.  Vice is a digital media and broadcasting company headquartered in New York.

66.     As to Defendant The 74 Media, Inc. ("74") d/b/a The 74 Million, Plaintiff is informed and believes, and based thereon alleges, that 74 is a Delaware corporation.  Univision is the owner of 74million.org, a nonprofit news website headquartered in New York focusing on education issues in the United States.

67.     As to Defendant Breakfast Media, LLC ("Breakfast Media"), Plaintiff is informed and believes, and based thereon alleges, that Breakfast is a news organization based in Washington, DC.

68.     As to Defendant The McClatchy Company ("McClatchy") d/b/a The Sacramento Bee, Plaintiff is informed and believes, and based thereon alleges, that McClatchy is a Delaware corporation.  McClatchy is the owner of The Sacramento Bee, a daily newspaper published in Sacramento, California.

69.     As to Defendant Observer Media Group, LLC ("Observer") d/b/a The Observer, Plaintiff is informed and believes, and based thereon alleges, that Observer is the owner of Observer.com, a political news website headquartered in New York.

70.     As to Defendant Gannett Co. Inc. ("Gannett") d/b/a York Daily Record, Plaintiff is informed and believes, and based thereon alleges, that Gannett is a Delaware corporation.  Gannett is the owner of York Daily Record, a news organization that produces multi-platform news products operating in York, Pennsylvania.

71.     As to Defendant The Charleston Gazette-Mail ("Charleston Gazette"), Plaintiff is informed and believes, The Charleston Gazette-Mail is an unknown

entity and the owner of The Charleston Gazette, the only daily morning newspaper in Charleston, West Virginia.

72.     As to Defendant Salem Media Group, Inc. ("Salem") d/b/a Townhall, Plaintiff is informed and believes, and based thereon alleges, that Salem is a Delaware corporation.  Salem owns and operates Townhall.com, an American politically conservative website, print magazine and radio news service.

73.     As to Defendant Verizon Media, LLC ("Verizon") d/b/a The Huffington Post, Plaintiff is informed and believes, and based thereon alleges, that Verizon is a Delaware limited liability company.  Verizon is the owner of The Huffington Post, an American news and opinion website and blog.

74.     As to Defendant American Broadcasting Companies, Inc. ("ABC") dba ABC World News Tonight, Plaintiff is informed and believes, and based thereon alleges, that ABC is a Delaware corporation.  ABC World News Tonight is the flagship daily evening television news program of ABC.

75.     As to Defendant Neil Cavuto, Plaintiff is informed and believes, and based thereon alleges, that Neil Cavuto is an individual domiciled in the State of New Jersey.  Mr. Cavuto is a career newscaster and a Senior Vice President and Managing Editor of Business News for the Fox News Channel and Fox Business Network and affiliated outlets.  Mr. Cavuto is also the host of the programs *Your World with Neil Cavuto* on the Fox News Channel and *Cavuto Coast to Coast* on the Fox Business Network.

76.     As to Defendant Chris Hayes, Plaintiff is informed and believes, and based thereon alleges, that Chris Hayes is an individual domiciled in the State of New York.  Mr. Hayes is the host of the television program *All In With Chris Hayes* on MSNBC, as well as an editor at large at the nationally-distributed magazine,

The Nation.  Mr. Hayes is also an active personality on Twitter with over 1.8 million followers.

77.    As to Defendant Joy Ann Lomena-Reid ("Joy Reid"), Plaintiff is informed and believes, and based thereon alleges, that Joy Reid is an individual domiciled in the State of New York.  Ms. Reid is a journalist and correspondent for MSNBC, and often guest-hosts for other MSNBC personalities on their programs, including Rachel Maddow and Defendant Chris Hayes.

78.    As to Defendant Sarah Elizabeth "S.E." Cupp ("S.E. Cupp"), Plaintiff is informed and believes, and based thereon alleges, that S.E. Cupp is an individual domiciled in the State of Connecticut.  Ms. Cupp is a political commentator and the host of the television program *S.E. Cupp Unfiltered,* which was initially broadcast on CNN's subsidiary HLN (Headline News) and is now broadcast on CNN's main channel.

79.    As to Defendant Bradley Blakeman, Plaintiff is informed and believes, and based thereon alleges, that Bradley Blakeman is an individual domiciled in the State of Virginia.  Mr. Blakeman is a political consultant and was a senior staffer to President George W. Bush during his first administration.  Mr. Blakeman is also an attorney, having been a member of the State Bar of New York for over thirty years, and obviously knows the vast difference between a misdemeanor and a felony.  Mr. Blakeman is active on Twitter and regularly appears on cable news, including on Fox News and FBN programs.

80.    As to Defendant John Layfield, Plaintiff is informed and believes, and based thereon alleges, that John Layfield is an individual domiciled in the State of Texas.  Mr. Layfield is a former professional wrestler and current businessman and commentator on the Fox News Channel and Fox Business Network.

81.     As to Defendant Stephanie Hamill, Plaintiff is informed and believes, and based thereon alleges, that Stephanie Hamill is an individual domiciled in the District of Columbia.  Ms. Hamill is a political commentator and video columnist.

82.     As to Defendant Kevin McLaughlin, Plaintiff is informed and believes, and based thereon alleges, that Defendant Kevin McLaughlin is an individual domiciled in the State of Virginia.  Mr. McLaughlin is a longtime Republican Party operative and, since December 2018, is the current Executive Director of the Republican National Senate Committee.

83.     As to Defendant Leigh Ann Caldwell, Plaintiff is informed and believes, and based thereon alleges, that Leigh Ann Caldwell is an individual domiciled in the District of Columbia.  Ms. Caldwell is a journalist and the Washington DC correspondent for NBC News.

84.     As to Defendant Michael Patrick Leahy, Plaintiff is informed and believes, and based thereon alleges, that Mr. Leahy is an individual domiciled in the State of Tennessee.  Mr. Leahy is an author and journalist and has been a contributor to Breitbart's news website since 2010.

85.     As to Defendant Josh Dawsey, Plaintiff is informed and believes, and based thereon alleges, that Mr. Dawsey is an individual domiciled in the District of Columbia.  Mr. Dawsey is a journalist, formerly a reporter for Politico, and currently a reporter for The Washington Post newspaper.

86.     As to Defendant Jenna Johnson, Plaintiff is informed and believes, and based thereon alleges, that Ms. Johnson is an individual domiciled in the District of Columbia.  Ms. Johnson is a journalist and reporter for The Washington Post newspaper.

87.     As to Defendant Ben Wolfgang, Plaintiff is informed and believes, and based thereon alleges, that Ben Wolfgang is an individual domiciled in the State of

Maryland.  Mr. Wolfgang is a reporter, journalist, and podcast host who contributes to The Washington Times, among other outlets.

88.     As to Defendant Michael Warren, Plaintiff is informed and believes, and based thereon alleges, that Michael Warren is an individual domiciled in the State of Virginia.  Mr. Warren is a journalist and was a reporter for the Weekly Standard until it ceased publication in December 2018.  Mr. Warren is currently a reporter for CNN.

89.     As to Defendant Cathleen Decker, Plaintiff is informed and believes, and based thereon alleges, that Cathleen Decker is an individual domiciled in the District of Columbia.  Until May of 2018, Ms. Decker was a reporter for the LA Times newspaper and is now a correspondent for the Washington Post.

90.     As to Defendant Zack Colman, Plaintiff is informed and believes, and based thereon alleges, that Zack Colman is an individual domiciled in the State of Michigan.  Zack Colman is a political reporter for Politico, an American political journalism company based in Arlington County, Virginia.

91.     As to Defendant Lauren Passalacqua, Plaintiff is informed and believes, and based thereon alleges, that Lauren Passalacqua is an individual domiciled in the District of Columbia.  Lauren Passalacqua is the Communications Director for the DSCC.

92.     As to Defendant Ben Ray, Plaintiff is informed and believes, and based thereon alleges, that Ben Ray is an individual domiciled in the District of Columbia.  Ben Ray is the Democratic Communicator for the DSCC.

93.     As to Defendant David Bergstein, Plaintiff is informed and believes, and based thereon alleges, that David Bergstein is an individual domiciled in the District of Columbia.  David Bergstein is the National Press Secretary for the DSCC.

94.     As to Defendant Courtney Rice, Plaintiff is informed and believes, and based thereon alleges, that Courtney Rice is an individual domiciled in the District of Columbia.  Courtney Rice is the former Deputy Press Secretary for the DSCC. Currently she is the Press Secretary for The North Dakota Democratic-NPL.

95.     As to Defendant Justin Lavoie, Plaintiff is informed and believes, and based thereon alleges, that Justin Lavoie is an individual domiciled in the District of Columbia.  Justin Lavoie is a former employee of the DSCC.

96.     As to Defendant John Kraushaar, Plaintiff is informed and believes, and based thereon alleges, that John Kraushaar is an individual domiciled in the District of Columbia.  John Kraushaar is a political editor for National Journal.

97.     As to Defendant J.W. Williamson, Plaintiff is informed and believes, and based thereon alleges, that J.W. Williamson is an individual domiciled in the District of Columbia.  J.W. Williamson is the owner, and operator of Watauga Watch.

98.     As to Defendant Howie Klein, Plaintiff is informed and believes, and based thereon alleges, that Howie Klein is an individual domiciled in the State of California.   Howie Klein is both the owner and operator of Down With Tyranny.

99.     As to Defendant Tamar Auber, Plaintiff is informed and believes, and based thereon alleges, that Tamar Auber is an individual domiciled in the State of West Virginia.  Tamar Auber is an editor for Mediaite.

100.    As to Defendant Susan Davis, Plaintiff is informed and believes, and based thereon alleges, that Susan Davis is an individual domiciled in the District of Columbia.  Susan Davis is a congressional correspondent for NPR.

101.    As to Defendant Griffin Connolly, Plaintiff is informed and believes, and based thereon alleges, that Griffin Connolly is an individual domiciled in the District of Columbia.  Griffin Connolly is a staff writer for Roll Call.

102.   As to Defendant Ben Jacobs, Plaintiff is informed and believes, and based thereon alleges, that Ben Jacobs is an individual domiciled in the District of Columbia.  Ben Jacobs is a political reporter for the Guardian.

103.   As to Defendant Dan Rather, Plaintiff is informed and believes, and based thereon alleges, that Dan Rather is an individual domiciled in the State of New York.  Dan Rather is a journalism icon that currently owns News and Guts

104.   As to Holly Figueroa O Reilly, Plaintiff is informed and believes, and based thereon alleges, that Holly Figueroa O Reilly is an individual domiciled in the District of Columbia.  Holly Figueroa O Reilly is the founder of Blue Wave Crowdsource, an organization that supports Democratic candidates by turning online activism into boots on the ground campaign support.

105.   As to Defendant Joe Lockhart, Plaintiff is informed and believes, and based thereon alleges, that Joe Lockhart is an individual domiciled in the State of New York.  Joe Lockhart is a former white house press secretary and now a CNN Political Contributor.

106.   As to Defendant Rachel Koning Beals, Plaintiff is informed and believes, and based thereon alleges, that Rachel Koning Beals is an individual domiciled in the State of Illinois.  Rachel Koning Beals is a news editor for Market Watch.

107.   As to Defendant Chris Jones, Plaintiff is informed and believes, and based thereon alleges, that Chris Jones is an individual domiciled in the State of Utah.  Chris Jones is a news anchor in Salt Lake City, Utah with CBS affiliate KUTV.

108.   As to Defendant Paul Blest, Plaintiff is informed and believes, and based thereon alleges, that Paul Blest is an individual domiciled in the State of North Carolina.  Paul Blest is a news editor for Splinter.

109.   As to Defendant Jim Heath, Plaintiff is informed and believes, and based thereon alleges, that Jim Heath is an individual domiciled in the District of Columbia.  Jim Heath is an award-winning television news anchor, correspondent, and political analyst.

110.   As to Defendant Nicole Hensley, Plaintiff is informed and believes, and based thereon alleges, that Nicole Hensley is an individual domiciled in the State of Texas.  Nicole Hensley is a former writer for the Daily News and current writer for the Houston Chronicle.

111.   As to Defendant Rashmee Roshan Lall, Plaintiff is informed and believes, and based thereon alleges, that Rashmee Roshan Lall is an individual domiciled in London, England.  Rashmee Roshan Lall is a political journalist for the National.

112.    As to Defendant Gideon Resnick, Plaintiff is informed and believes, and based thereon alleges, that Gideon Resnick is an individual domiciled in the State of New York.  Gideon Resnick is a reporter for the Daily Beast.

113.   As to Defendant Dana Milbank, Plaintiff is informed and believes, and based thereon alleges, that Dana Milbank is an individual domiciled in the District of Columbia.  Dana Milbank is a writer for the Washington Post.

114.   As to Defendant Charles Pierce, Plaintiff is informed and believes, and based thereon alleges, that Charles Pierce is an individual domiciled in the State of Massachusetts.  Charles Pierce is a writer and lead political blogger for Esquire.

115.   As to Defendant Matt Howerton, Plaintiff is informed and believes, and based thereon alleges, that Matt Howerton is an individual domiciled in the State of Louisiana.  Matt Howerton is a writer for Hayride.

116.    As to Defendant Elizabeth Macdonald, Plaintiff is informed and believes, and based thereon alleges, that Elizabeth Macdonald is an individual domiciled in the State of New York.  Elizabeth Macdonald is a business journalist and appears on the Fox Business Network.

117.    As to Defendant Rob Persey, Plaintiff is informed and believes, and based thereon alleges, that Rob Persey is an individual domiciled in the State of New Hampshire.  Rob Persey is a writer for the New Hampshire Union Leader.

118.    As to Defendant Jen Kerns, Plaintiff is informed and believes, and based thereon alleges, that Jen Kerns is an individual domiciled in the State of New York  Jen Kerns is an opinion contributor for the Hill.

119.    As to Defendant David Martosko, Plaintiff is informed and believes, and based thereon alleges, that David Martosko is an individual domiciled in the District of Columbia.  David Martosko is a political editor for the Daily Mail.

120.    As to Defendant Martin Pengelly, Plaintiff is informed and believes, and based thereon alleges, that Martin Pengelly is an individual domiciled in the State of New York.  Martin Pengelly is a writer for the Guardian.

121.    As to Defendant Matt Taylor, Plaintiff is informed and believes, and based thereon alleges, that Matt Taylor is an individual domiciled in the State of New York.  Matt Taylor is a senior editor at Vice.

122.    As to Defendant Kevin Mahnken, Plaintiff is informed and believes, and based thereon alleges, that Kevin Mahnken is an individual domiciled in the State of New York.  Kevin Mahnken is an educational journalist for 74.

123.    As to Defendant Andrew Feinberg, Plaintiff is informed and believes, and based thereon alleges, that Andrew Feinberg is an individual domiciled in the District of Columbia.  Andrew Feinberg is currently the White House Correspondent and Managing Editor for Breakfast Media.

124.    As to Defendant John Raby, Plaintiff is informed and believes, and based thereon alleges, that John Raby is an individual domiciled in the State of West Virginia.  John Raby is a reporter for AP.

125.    As to Defendant Ben Boychuk, Plaintiff is informed and believes, and based thereon alleges, that Ben Boychuk is an individual domiciled in the State of California.  Ben Boychuk is a regular columnist for The Sacramento Bee.

126.    As to Defendant Davis Richardson, Plaintiff is informed and believes, and based thereon alleges, that Davis Richardson, is an individual domiciled in the State of New York.  Davis Richardson is a policy reporter for the Observer.

127.    As to Defendant Mike Argento, Plaintiff is informed and believes, and based thereon alleges, that Mike Argento, is an individual domiciled in the State of Pennsylvania.  Mike Argento is a reporter for the York Daily Record.

128.    As to Defendant Eli Leher, Plaintiff is informed and believes, and based thereon alleges, that Eli Leher, is an individual domiciled in the State of West Virginia.  Eli Leher is a writer for The Charleston Gazette, in West Virginia.

129.    As to Defendant Bruce Bialosky, Plaintiff is informed and believes, and based thereon alleges, that Bruce Bialosky, is an individual domiciled in the State of California.  Bruce Bialosky is a political columnist for Townhall.

130.    As to Defendant Michelangelo Signorile, Plaintiff is informed and believes, and based thereon alleges, that Michelangelo Signorile, is an individual domiciled in the State of New York.  Michelangelo Signorile is a reporter for The Huffington Post.

131.    As to Defendant Brian Schwartz, Plaintiff is informed and believes, and based thereon alleges, that Brian Schwartz, is an individual domiciled in the State of New York.  Brian Schwartz is a political finance reporter for CNBC.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

132.    As to Defendant Amber Phillips, Plaintiff is informed and believes, and based thereon alleges, that Amber Phillips, is an individual domiciled in the District of Columbia.  Amber Phillips is a reporter for the Washington Post.

133.    Plaintiff does not know the true names and capacities of the Defendants sued in this Complaint as Does 1 through 50, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of those Doe Defendants when the same are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, as further set forth herein, and that Plaintiff's damages, as alleged in this Complaint, were proximately caused by these Defendants' conduct.

## GENERAL ALLEGATIONS

### Background

134.    Plaintiff Don Blankenship was born into a poor family in Appalachia, one of four children in a single-parent home.  Mr. Blankenship's first job was as a worker at his mother's small gasoline filling station, which also served as the family's home.  Mr. Blankenship graduated from high school in 1968 and earned a degree in accounting from Marshall University in Huntington, West Virginia in 1972, spending his summers working in the West Virginia coal mines.

135.    Mr. Blankenship worked for ten years in the food business, until he was offered an accounting job with Massey Energy Company in 1982, then a mining concern partly owned by Royal Dutch Shell.  Mr. Blankenship climbed the ranks, and in 1992, became president and CEO of Massey Energy, its first chief executive outside the Massey family.  With Mr. Blankenship at the helm, Massey

Energy grew from a family-run outfit into the largest coal producer in West Virginia with billions of dollars in annual revenue.

## The Upper Big Branch Explosion

136.    On April 5, 2010, tragedy struck Raleigh County at the Upper Big Branch Mine.  Flammable gas deep in the mine ignited, causing an explosion which took the lives of twenty-nine miners.

137.    President Obama and others in his administration immediately claimed that the managers of the Upper Big Branch Mine – *i.e.* Mr. Blankenship – were responsible for the explosion.  Just ten days after the accident, President Obama attributed the accident to "a failure first and foremost of management." However, owing to large concentrations of toxic gas, no one accessed the mine to determine the explosion's cause until ***long after*** the President had pointed the finger of blame.

138.    The Federal Government's investigation into the explosion was conducted by the Mining Safety and Health Administration (MSHA).  However, any conclusions reached by MSHA were inherently suspect because it was necessarily investigating itself.  In the months leading up to the accident, MSHA had required Massey to implement a new ventilation system at the Upper Branch Mine. Airflow into a mine is measured in "cubic feet per minute" (CFM).  At about the time of the accident, the law required that airflow be measured in the mine at 30,000 CFM.  Prior to MSHA requiring ventilation changes, the Upper Branch Mine was measured at four times the legal requirement: 120,000 CFM.  After the MSHA ventilation changes were implemented, the CFM dropped to 50,000 CFM.  Thus, the changes required by MSHA cut the mine's airflow by sixty-percent.

139.    Eight months after the disaster, on December 6, 2010, MSHA concluded that a coal bed methane build-up ignited and created an explosion.

PLAINTIFF'S FIRST AMENDED COMPLAINT

According to MSHA, the ventilation deficiencies in the mine – ***which it had caused*** – were a critical factor in causing the explosion.  Nonetheless, MSHA placed the blame on Massey and Mr. Blankenship.

140.    In April 2014, Mr. Blankenship released a documentary which refuted the MSHA's findings and challenged the inherent conflict of having a regulatory agency investigate an explosion where it was likely at fault.  Among other things, the documentary identified powerful scientific evidence, which refuted MSHA's conclusion that the explosion was caused by an influx of methane.  An analysis of the air vented from the mine at the time of the explosion revealed that the explosion almost certainly resulted from a very rare inundation of natural gas through a crack in the mine's floor, which gas would have been swept out of the mine by a stronger airflow, but for MSHA's required pre-explosion ventilation changes.

141.    The Obama Administration was irate over the documentary and almost immediately began a renewed investigation of Mr. Blankenship, following Senator Manchin's demand that Mr. Blankenship be indicted.  Seven months after the documentary was released, on or about November 13, 2014, federal prosecutors from the Obama Administration charged Mr. Blankenship with three felonies, including conspiracy to defraud the Federal mine regulators. He was also charged with a misdemeanor, conspiring to violate mine safety laws.

142.    The Federal Government brought the full weight of its infinite resources to bear on Mr. Blankenship.  The matter went to trial in October 2015 and lasted about two months.

143.    Following lengthy deliberations, the West Virginia jury found Mr. Blankenship innocent on ***all*** felony charges on December 3, 2015.  The jury convicted him of the misdemeanor offense.

144.   On April 6, 2016, the Judge sentenced Mr. Blankenship to one year in prison.  The Judge refused to stay Mr. Blankenship's sentence pending his appeal, and he served one year at Taft Prison in Kern County, California.

145.   Mr. Blankenship was released from custody in the Spring of 2017.

### Mr. Blankenship Runs For Senate

146.   In January 2018, Mr. Blankenship formally announced his plans to run as a Republican for the U.S. Senate seat held by Senator Joe Manchin, a Democrat.  The Republican primary was scheduled for May 8, 2018.  In light of the then-recent events, Mr. Blankenship's candidacy was viewed as a long-shot.

147.   The fight for the Republican nomination was joined in earnest in January 2018.  The race ultimately pitted Mr. Blankenship against West Virginia Congressman Evan Jenkins and Attorney General Patrick Morrisey.

148.   Mr. Blankenship outperformed expectations in the primary campaign. He campaigned well, expended significant resources in support of his campaign, and produced effective campaign ads.

149.   On January 26, 2018, Political Commentator, Zack Colman tweeted: "Read @joshkurtznews dispatch from convicted felon/coal mining exec/GOP senate candidate Don Blankenship's rally in WV".

150.   About a month before the May 8, 2018 primary, based on internal polling, it became clear to Senate Majority Leader McConnell, the NRSC, and others in the GOP Establishment, as well as many in the mainstream media, that Mr. Blankenship had drawn even in the race with the other two contenders. Plaintiff is informed and believes that in the weeks before the May 8th Primary, several meetings occurred, attended by Leader McConnell, members of the NRSC, and others, in which a "menu" describing possible ways to defeat Mr. Blankenship was discussed. Some of these meetings may have occurred in Federal Government

offices in violation of Federal Campaign finance laws.  At these meetings, the attendees determined and agreed that Mr. Blankenship's candidacy must be stopped at all costs, including by smearing Mr. Blankenship in the media with false stories.  At the end of April 2018, Leader McConnell expressed his disdain for Mr. Blankenship this way: "I hope we actually nominate someone who can actually win the election."

### A Scheme Is Implemented to Defeat Mr. Blankenship

151.    On or about March 25, 2018, persons unknown (sued here under the fictitious names of Does 1-25) created and carried out a "push poll" wherein phone operators would call potential voters in West Virginia purporting to conduct political polling and asking the voters questions predicated on the idea that Mr. Blankenship was a "felon."  Rather than simply to collect information to assist with the defamation campaign against Mr. Blankenship, the "push poll" also was intended to defame Mr. Blankenship and derail his campaign by planting the false idea in the mind of the voters "polled" that Mr. Blankenship was a felon and/or had been convicted of a felony.  Plaintiff intends to amend this Complaint once the identities of the persons or entities responsible for this defamatory "push polling" is ascertained.

152.    On March 30, 2018, the DSCC published an article by writers Lauren Passalacqua, Ben Ray, David Bergstein, Courtney Rice, and Justin Lavoie, which stated: "Republicans are increasingly worried that former coal CEO and ex-felon Don Blankenship could come out on top in the primary, easing Senator Manchin's path to reelection in the fall".

153.    On April 10, 2018, the political action committee ostensibly supporting Mr. Morrisey's campaign –Defendant 35th PAC – responded to a tweet by Mr. Blankenship, with the following defamatory tweet: "You are also a convicted

*felon* hurting West Virginia families."  Mr. Blankenship communicated directly with the major funders of this PAC and advised that this tweet was false.  No correction was ever issued.  At the time this tweet was issued, the authors (and likely the PAC's top donors as well) knew that it was false, but nonetheless proceeded to publish because of their malice toward Mr. Blankenship.

154.    On April 10, 2018, The National Journal  published an article by John Kraushaar that stated: "Republicans have been concerned that they could blow a winnable race against Sen. Joe Manchin of West Virginia if a convicted felon (Don Blankenship) ends up as their nominee".

155.    On April 15, 2018, the political blog Watauga Watch stated: "with the scary upstart being a recent felon who presided over a coal company that lied about the deaths of 29 coal miners, one Don Blankenship, who's notorious in West Virginia without necessarily being electable".

156.    On April 25, 2018, Defendant Judge Andrew Napolitano intensified the attacks on Mr. Blankenship and his candidacy by deploying falsehoods on Fox News, an extremely influential source of information for West Virginia voters. Judge Napolitano appeared on Fox News' daytime program *Outnumbered*, alongside host Marie Hart, among others.  During a segment concerning the West Virginia Primary, Defendant Napolitano took part in the following exchange:

> **Harf**: "Don Blankenship has long been a very polarizing figure in West Virginia.  He went to jail, actually, after a really tragic coal-mining incident—"
>
> **Napolitano**: "***He went to jail for manslaughter***, after being indicted."
>
> **Harf:** "Yes, exactly."

157.    Fox News knew this was false.  In fact, Fox News had reported, on December 3, 2015, that Mr. Blankenship had been acquitted of the felonies,

convicted of a misdemeanor, and certainly never charged with "manslaughter."[4]

Judge Napolitano – a former Judge – also knew that this was false.  Mr.

Napolitano nonetheless uttered this false and defamatory statement, in part, in

furtherance of the coordinated effort to defeat Mr. Blankenship's candidacy by any

means.  Mr. Blankenship used personal connections close to Napolitano to inform

him that the "manslaughter" claim was utterly false and requested an apology and

correction.  On April 26, 2018, Defendant Napolitano responded by e-mail as

follows:

> "I understand now that yesterday I mistakenly misstated the
> nature of Mr. Blankenship's lamentable conviction and failed
> to mention his acquittals. I will be happy to address this
> thoroughly and accurately in air on Monday. I feel very badly
> about this; especially since I am fond of him and wish him well
> in his Senate race.
>
> Kind regards.
>
> apn."

158.   This "promise" was not honored until well after the May 8, 2018

primary and –*lamentably* – after the damage to Mr. Blankenship was fully

realized.  The Judge waited until May 22, 2018, two weeks after the Primary when

he appeared on the Fox News program *Your World with Neil Cavuto* and made the

following statement:

> **Napolitano**: "Let me say first that Don Blankenship is correct.
> I once inadvertently said on air that he was a convicted felon.
> He was not. He was acquitted of the charges, the felony
> charges against him.  The only thing he was convicted of was a
> misdemeanor."

---

[4]      "*Mine Explosion Trial: Ex-Coal CEO Blankenship Convicted On 1 Count,
Acquitted On 2*", https://www.foxnews.com/us/mine-explosion-trial-ex-coal-ceo-
blankenship-convicted-on-1-count-acquitted-on-2

Plaintiff is informed and believes that Defendant Napolitano never publicly retracted or corrected his statement that Mr. Blankenship "went to jail for manslaughter."

159.    On April 26, 2018, Down With Tyranny posted an article written by Howie Klein that stated: "New polling for West Virginia's Republican primary-- which in May 8th-- is making felon and far right crackpot Don Blankenship desperate".

160.    On April 29, 2018, Defendant Kevin McLaughlin, now the Executive Director of the NRSC, appeared on the program *CNN Newsroom* on Defendant CNN's network, alongside host Dana Bash and guest Alex Isenstadt, as part of a segment about Mr. Blankenship's candidacy.  Mr. McLaughlin was introduced as "working with the National Republican Party in West Virginia, the last time Republicans tried to beat [current West Virginia Senator] Joe Manchin" and was titled as a "GOP Political Strategist."  Several clips of Mr. Blankenship were aired during the segment.  During the segment, Defendant McLaughlin stated the following, referring to Mr. Blankenship:

> **McLaughlin**: "Well, I mean, pick your poison with this guy, right? He doesn't live in West Virginia, he's a ***convicted felon***, you know, he says -"
>
> **Bash**: "He's got a house in Nevada."
>
> **McLaughlin**: "Exactly."

161.    CNN knew this statement was false and defamatory because, among other reasons and without limitation, on December 3, 2015 CNN reported that Mr. Blankenship had been acquitted of all felonies and only convicted of a

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

misdemeanor.[5]  Mr. McLaughlin also knew that Mr. Blankenship was not a convicted felon.  Mr. McLaughlin nonetheless uttered this false and defamatory statement, in part, in furtherance of the coordinated effort to defeat Mr. Blankenship's candidacy by any means.   Defendant CNN has never made any attempt to retract or correct the statement that Mr. Blankenship is "a convicted felon" nor has Mr. McLaughlin.

### Mr. Blankenship Crushes His Opponents In The May 1st Nationally-Televised Fox Debate Causing The Smears To Escalate

162.    On May 1, 2018, one week before the primary election, Mr. Blankenship participated in a debate with the other two Primary candidates which was televised nationally on the Fox News Channel.  The national broadcast, hosted by Fox News stars Bret Baier and Martha MacCallum, resulted from the intense national interest in the West Virginia primary in political circles, because of concerns about Mr. Blankenship, and a by-then-widespread belief that the Republican primary winner could defeat Democrat Joe Manchin in the general election because of the state's massive support for President Trump in 2016.  Mr. Blankenship addressed his conviction and imprisonment right out of the gate, stating in no uncertain terms: "I faced thirty years in prison for a fake charge, and I beat all three of the felonies. … It's incredible, they sent me to prison for a misdemeanor.  I was the only prisoner there that was a misdemeanant."  Most objective observers concluded that he won the debate handily and, by some estimates, gained eight points against his opponents.  Plaintiff is informed and believes that this prompted the Defendants to double-down on the smear

---

[5]    *"Former Massey Energy CEO Don Blankenship Found Guilty Of Conspiracy",* https://www.cnn.com/2015/12/03/us/west-virginia-don-blankenship-verdict-massey-energy/index.html

campaign.  In the week leading up to the May 8th Primary, there were multiple instances of defamation. For example, on May 3, 2018, Defendant Washington Times – a conservative outlet -- published an article by Defendant Ben Wolfgang on the West Virginia Republican primary campaigns titled "WV's Morrisey sends Jenkins cease-and-desist letter over 'fake campaign ads'."  The article stated that the West Virginia Republican primary "also includes former Massey Energy CEO and **convicted felon** Don Blankenship[.]"

163.    Both Washington Times and Mr. Wolfgang knew that this claim about Mr. Blankenship was false because, among other reasons and without limitation, The Washington Times had reported **mere weeks before** that Mr. Blankenship had served a year in prison for a misdemeanor conviction.[6]  Nonetheless, the Washington Times and Mr. Wolfgang published the statement with malicious intent and as part of a coordinated effort to defeat Mr. Blankenship's candidacy. Neither the Washington Times nor Mr. Wolfgang have ever retracted or corrected the statement that Mr. Blankenship was a "convicted felon."

164.    On May 3, 2018, Mediaite published an article written by Tamar Auber who stated: "The convicted felon turned Senate hopeful then tried to defend the whole thing by claiming he was an 'Americanperson' during the Fox News debate on Tuesday, adding there are also  'Koreanpersons' and 'Africanpersons'".

165.    On May 4, 2018, NPR published an article written by Susan Davis that stated: "In West Virginia's three-way Republican Senate primary, also taking place Tuesday, Rep. Evan Jenkins is hoping the fact that he was the first to endorse Trump back in the 2016 campaign will help him edge out rivals, state

---

[6]     *"Motion Seeks to Erase Ex-Massey CEO Blankenship's Conviction"*, https://www.washingtontimes.com/news/2018/apr/18/motion-seeks-to-erase-ex-massey-ceo-blankenships-c/

Attorney General Patrick Morrisey and former coal executive and convicted felon Don Blankenship. It's a line of attack he used a Fox News debate this week."

166.    On May 7, 2018, Defendant Neil Cavuto and the Fox News defamed Mr. Blankenship on the Fox Business Network program *Coast to Coast with Neil Cavuto*.  Mr. Cavuto falsely and maliciously described Mr. Blankenship as "the outside candidate, the one that's a ***convicted felon*…."  As described above, Fox News knew this to be false because, among other reasons and without limitation, it had previously reported the opposite, i.e., that Mr. Blankenship had been acquitted of all felonies.  Mr. Cavuto either knew, or plainly should have known, that this vile statement was false.  Plaintiff is informed and believes that neither Defendant Cavuto nor Defendant Fox News has ever retracted or corrected the statement that Mr. Blankenship is a "convicted felon."

167.    Also on May 7, 2018, Defendant Stephanie Hamill appeared on Fox News's Fox Business Network.  During her appearance, Ms. Hamill observed of Mr. Blankenship, that "it might be difficult for him to actually win a general election because of his issue being a ***convicted felon*…."  As noted, Fox Business knew this was false.  Plaintiff is informed and believes that Ms. Hamill made this statement, in part, as part of a concerted effort to defeat Mr. Blankenship by falsely smearing him.  Plaintiff is informed and believes that neither Defendant Hamill nor Defendant Fox News has ever retracted or corrected the statement that Mr. Blankenship is a "convicted felon."

168.    Also, on May 7, 2018, during the Fox Business program *Evening Edit*, Defendant John Layfield stated "we got a ***felon*** who's got a probation officer, who could end up in Congress[,]" referring to Mr. Blankenship.  During the same program, Defendant Bradley Blakeman, a former George W. Bush advisor and Fox News political analyst, stated that "[w]e can't have the standard bearer of our

party running for statewide office, and the guy is a *felon*." Fox News and Messrs. Layfield and Blakeman knew that these statements were false because, as noted above, Fox News had reported on Mr. Blankenship's misdemeanor conviction, but Plaintiff is informed and believes that neither Layfield nor Blakeman nor Fox News has ever retracted or corrected these statements that Mr. Blankenship is a "felon."[7]

## The Other Media Piles On

169.     On April 16, 2018, Defendant Chris Hayes host of *All In With Chris Hayes* broadcast daily on MSNBC posted the following to his Twitter feed: "The GOP may very well nominate a *felonious* coal baron found responsible for dozens of miners' deaths to as their senate nominee in WV." A reasonable person would know from the reference to "coal baron" and "senate nominee in WV" that this post referred to Mr. Blankenship. Moreover, Hayes knew this statement was false because, among other reasons and without limitation, MSNBC reported on April 6, 2016, that Mr. Blankenship had been only convicted of a misdemeanor.[8]

---

[7]     On the eve of the Primary, the GOP establishment gave further voice to the desire to stop Mr. Blankenship from becoming their nominee. A BuzzFeed article on May 7, 2019 includes the following: "Republicans fear Blankenship would jeopardize their ability to compete for a seat that should be one of their best Senate pickup opportunities this year. Internal polling from one of the campaigns opposing him, confirmed to BuzzFeed News, has Blankenship narrowly edging his competitors in the final weekend." And "If Blankenship does pull off a win on Tuesday, Republicans said, it would have broader implications outside of West Virginia." And "It would be a "blow for the party," said former Rep. Tom Davis, who chaired the House Republican campaign arm, taking a great pickup opportunity and making it "a much longer shot." *See "Republicans Are Worried A Race-Baiting Coal Baron Is About To Win A Senate Primary"*, https://www.buzzfeednews.com/article/alexislevinson/don-blankenship-west-virginia-trump-senate-worry

[8]     *"Former Coal Mine Executive Sentenced to Prison"*, https://www.msnbc.com/msnbc/former-coal-mine-executive-sentenced-prison/

170.   On April 23, 2018, on his show *All In With Chris Hayes* on MSNBC's network, Mr. Hayes doubled down on his statement about Mr. Blankenship.  After showing a clip from one of Mr. Blankenship's campaign ads, Mr. Hayes stated:

> **Hayes**: That was a campaign ad in the Year of our Lord 2018 for a ***convicted felon*** Don Blankenship who spent a year in jail for his role in a mine disaster that killed 29 people…."

171.   On May 2, 2018, Defendant S.E. Cupp hosted a round-table discussion on *Unfiltered,* then broadcast on Defendant CNN's subsidiary network HLN.  On the program, Ms. Cupp played a clip of Mr. Blankenship speaking at the May 1, 2018 debate wherein Mr. Blankenship discussed his conviction and corruption at the Justice Department.  Ms. Cupp then responded to Mr. Blankenship's remarks, stating, "'You wanna talk about the Justice Department, I know something about the Justice Department.'  That's because you're a convict! You're a ***felon***! Oh my god!"  Ms. Cupp and CNN knew this statement was false because, among other reasons and without limitation, CNN reported on April 6, 2016 that Mr. Blankenship had been convicted only of a misdemeanor.  Plaintiff is informed and believes that neither Ms. Cupp nor CNN has ever corrected or retracted the statement that Mr. Blankenship is a "felon."

172.   On May 5, 2018, Defendant Joy Reid guest-hosted the MSNBC program *All In With Chris Hayes*.  She too identified Plaintiff as "coal baron and ***convicted felon*** Don Blankenship."

173.   Mr. Hayes, Ms. Reid, and MSNBC knew this statement was false and defamatory because, among other reasons and without limitation, on April 6, 2016, MSNBC reported that Mr. Blankenship had been convicted of a misdemeanor charge.[9]  Plaintiff is informed and believes that neither Reid nor Hayes nor

---

[9]      *Ibid.*

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

MSNBC has ever retracted or corrected the statement that Mr. Blankenship is a "convicted felon."

174.    On May 7, 2018, Defendant S.E. Cupp again defamed Mr. Blankenship on *Unfiltered*, broadcast on Defendant CNN's network HLN, opening a segment on Mr. Blankenship's candidacy by stating "[i]n case you missed it, a former coal baron and ***convicted felon*** is running for senate in West Virginia." Ms. Cupp delivered this statement while a graphic of Mr. Blankenship appeared next to her with the words "Trumpier than Trump?"  As set forth above, Ms. Cupp and CNN knew this statement that Mr. Blankenship was a "convicted felon" was false, but Plaintiff is informed and believed that they never retracted or corrected the statement.

175.    On May 7, 2018, Roll Call published an article written by Griffin Connolly that stated, "the convicted felon and businessman wrote Monday morning on Facebook".

176.    On May 7, 2018, The Guardian published an article written by Ben Jacobs that stated " "But in an increasingly bitter fight between Jenkins and Morrisey, the convicted felon may yet have a chance."[10]

177.    On May 7, 2018, News and Guts published an article titled: "Don Blankenship: A Felon, A Racist And A Possible GOP Senate Nominee".

178.    On May 7, 2018, Holly Figueroa O Reilly made two tweets referencing Don Blankenship, where she stated: "Convicted felon and viable GOP candidate for Senate, Don Blankenship…" and that "Don Blankenship who is: a felon,

---

[10] *"From Prison to GOP Senate Pick? Ex-coal Boss Don Blankenship in Close Race"*, https://www.theguardian.com/us-news/2018/may/07/don-blankenship-senate-west-virginia-republican

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

responsible for 29 coal miner's deaths in one of the worst coal mining disaster in modern history".

179.   On May 7, 2018, CNN broadcasted a segment with Joe Lockhart where he stated: "What's striking here is in Trump's tweet this morning, he didn't say anything about Roy Moore and his personal problems. He didn't say don't vote for Blankenship because he went to jail. He's a convicted felon. He's a racist. And he's crazy".

180.   On May 7, 2018, Watauga Watch posted an article by J.W. Williamson stating: "Holy crap! Democratic incumbent Joe Manchin has been considered the most endangered Democrat in the US Senate, but the Republican voters in their primary tomorrow may grant him a reprieve ... if they choose felon coal baron Don Blankenship to run against him.".

181.   On May 8, 2018, Defendant LA Times published an article authored by Defendant Cathleen Decker titled "West Virginia voters side with a safer Republican candidate in hotly contested U.S. Senate race," which referenced "Don Blankenship, a wealthy *felon*[.]"  Ms. Decker and the Los Angeles Times knew this was false because the newspaper had previously reported his conviction of only a misdemeanor.[11]  Plaintiff is informed and believes that neither the LA Times nor Ms. Decker has ever retracted or corrected the statements that Mr. Blankenship is a "felon."

---

[11]      *"Sentencing set April 6 for former Massey Energy CEO",* https://www.latimes.com/sdut-sentencing-set-april-6-for-former-massey-energy-2015dec10-story.html

182.    On May 8, 2018, Market Watch published an article by Rachel Koning Beals that stated: "The three-person Republican race remained too close to call at this hour but ex-coal mining executive, and ex-felon, Don Blankenship was trailing in third place."

183.    On May 8, 2018, Chris Jones tweeted: "Don Blankenship, convicted felon who ran weird racist ads has lost in Republican Senate primary in West Virginia."

184.    On May 8, 2018, Splinter published an article by Paul Blest that stated: "former coal baron and convicted felon Don Blankenship finished a distant third in the Republican primary."

185.    On May 8, 2018, Jim Heath tweeted: "Someone tell Don Blankenship that West Virginia voters are not stupid & knew perfectly well he was convicted felon responsible for the death of 29 people."

186.    On May 8, 2018, The New York Daily News published an article by Nicole Hensley stating: "Blankenship, a convicted felon, conceded the Republican primary to State Attorney General Patrick Morrisey."

187.    On May 8, 2018, The National published an article by Rashmee Roshan Lall stating: "He has described himself as a "political prisoner", persecuted by former US president Barack Obama and Hillary Clinton. Republican leaders have expressed bemusement at the dexterity with which he has turned a felony into an electoral asset."

188.    On May 8, 2018, The Daily Beast published an article by Gideon Resnick stating: "West Virginia Republicans could choose a felon who was responsible for the death of 29 miners to be their candidate for the U.S. Senate."

189.    On May 8, 2018, The Washington Post published an article by Dana Milbank stating: "Now we have Blankenship, Roy Moore, Joe Arpaio and a

PLAINTIFF'S FIRST AMENDED COMPLAINT

proliferation of name-calling misfits and even felons on Republican ballots. They are monsters created by the GOP, or rather the power vacuum the GOP has become."

190.    Mr. Blankenship lost his bid to be the GOP nominee on May 8, 2018. In addition to the injuries to Mr. Blankenship's reputation and other harm visited upon him by the defamatory statements alleged above, these unlawful statements were also a material cause of his loss in the Primary.

## The Smears Continue Even After The Election

191.    On May 9, 2018, Defendant Hayes, again speaking of Mr. Blankenship's campaign on MSNBC's network, referred to Plaintiff as "convicted felon Don Blankenship."  As noted above, Mr. Hayes and MSNBC knew this statement was false as MSNBC had previously reported that Mr. Blankenship was convicted only of a misdemeanor.  Plaintiff is informed and believes that neither Mr. Hayes nor MSNBC ever corrected or retracted this statement.

192.    Also, on May 9, 2018, Defendant Michael Warren, writing for Defendant Clarity Media Group's magazine The Weekly Standard, described Mr. Blankenship as a "coal baron (and *felon*)" while noting internal polling had showed him progressively gaining.  Plaintiff is informed and believes that neither Mr. Warren nor Clarity Media Group ever corrected or retracted this statement.

193.    On May 9, 2018, Esquire published an article by Charles P. Pierce stating: "the elite political media pleasured itself with the possibility that coal felon Don Blankenship would win the Republican primary."

194.    On May 9, 2018, the Hayride published an article by Matt Howerton stating: "First and foremost was the fact that Blankenship is a convicted felon who

was found guilty of violating federal mining safety standards that led to the death of 29 coal miners."[12]

195.    On May 9, 2018, NowThis Politics broadcasted a video with a description stating: "BREAKING: Convicted felon Don Blankenship has lost his bid to become West Virginia's Republican senate candidate."

196.    On May 9, 2018, Fox Business broadcasted a segment of its show Evening Edit where Elizabeth Macdonald stated: "The implication here, Katie, is that a racist felon represents the Republican Party?"

197.    On May 9, 2018, The New Hampshire Union Leader published an article by Rob Persey stating: "Don Blankenship, a wealthy felon who ran racially charged ads aimed at Senate Republican leader Mitch McConnell and his family, is competing against U.S. Rep. Evan Jenkins and state Attorney General Patrick Morrisey to face Sen. Joe Manchin III, the threatened Democratic incumbent."

198.    On May 10, 2018, Defendant Michael Patrick Leahy, writing for Defendant Breitbart's website, authored an article in which he thrice described Mr. Blankenship as a "convicted felon," while again recognizing that in the final week of the campaign, Mr. Blankenship had been poised to seize the nomination. Plaintiff is informed and believes that neither Mr. Leahy nor Breitbart ever corrected or retracted its claim that Mr. Blankenship was a "convicted felon."

199.    On May 10, 2018, the Hill published an article by Jen Kerns stating: "The fact that Trump personally engaged in the West Virginia primary when it appeared that convicted felon Don Blankenship was gaining in the polls, speaks volumes about the White House's understanding of what is at stake in 2018.

---

[12] *"Trump Intervenes: AG Morrisey Wins West Virginia US Senate Primary"*, https://www.theguardian.com/us-news/2018/may/07/don-blankenship-senate-west-virginia-republican

Blankenship, who served a year in prison and faced a $250,000 fine for his unapologetic role in one of the state's worst mining explosions that killed 29 people, was an unacceptable choice according to the White House and concerned Republican leaders."

200.   On May 10, 2018, Wonkette published an article stating: "Yes, Democrats would have been delighted to run against Don Blankenship. Congratulations West Virginia GOP on not voting for a racist felon."

201.   On May 11, 2018, Daily Mail published an article by David Martosko stating: "Morrisey prevailed in a nasty Republican primary this week that included convicted felon Don Blankenship, whose comments about 'Chinapeople' drove voters to abandon him."

202.   On May 12, 2018, the Guardian published an article by Martin Pengelly stating: "The other Democrat to support Haspel is Joe Manchin of West Virginia, another senator up for re-election in a red state. His opponent will be the state attorney general, Patrick Morrisey, who this week came through a Republican primary featuring the ex-coal boss and convicted felon Don Blankenship, whom Trump rejected as unelectable."

203.   On May 14, 2018, Vice published an article by Matt Taylor stating: "The convicted felon lost (after Trump told people to vote against him), but if so much of the country expects so little from the political system and its elites."

204.   On May 16, 2018, the 74 published an article by Kevin Mahnken stating: "Little's win continues a Republican stretch of nominating establishment-friendly figures to seek higher office (the party tagged longtime office holder Mike DeWine to seek the governorship in Ohio and easily shook off the candidacy of felon Don Blankenship in favor of Attorney General Patrick Morrisey in West Virginia)."

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

205.   The Washington Times in an article on May 16, 2018 stated: "The state's Republican primary pitted the state attorney general, a congressman, and a convicted felon against each other. The felon, Don Blankenship, did prison time for his role in a coal-mining disaster that killed 29 persons, and he would likely have been a disastrous nominee."

206.   On May 17, 2018, Defendant Leigh Ann Caldwell, writing for Defendant NBCUniversal's NBCNews.com website, described Mr. Blankenship as an "ex-coal baron and ***convicted felon***."  Ms. Caldwell and NBCUniversal knew this claim was false because, among other reasons and without limitation, NBC News reported on April 6, 2016 that Mr. Blankenship had only been convicted of a misdemeanor.  Plaintiff is informed and believes that neither Ms. Caldwell nor NBCUniversal ever corrected or retracted the claim that Mr. Blankenship was a "convicted felon."

207.   On May 21, 2018, Breakfast Media published a tweet by Andrew Feinberg stating: "Hi @Don Blankenship Aren't you a convicted felon?"

208.   On May 22, 2018, Defendant Associated Press published an article authored by Defend[13]ant John Raby of Defendant AP which referred to Mr. Blankenship as a "***convicted felon*** and former coal baron" in reporting on his intent to campaign as a third-party candidate.  Plaintiff is informed and believes that AP never corrected or retracted their claim that Mr. Blankenship was a "convicted felon."

---

[13] *"Former W.Va. coal executive to pursue Senate seat despite GOP primary loss"*, https://www.bostonglobe.com/news/nation/2018/05/21/former-coal-executive-pursue-senate-seat-despite-gop-primary-loss/R4AelAgQJKAza5lbYg1y4J/story.html

209.    On May 24, 2018, The Sacramento Bee published an article by Ben Boychuk stating: "Or consider the recent GOP primary in West Virginia. Trump didn't endorse anyone in the Senate race there. Instead, he urged Republicans not to vote for former coal mine owner and convicted felon Don Blankenship".

210.    On May 24, 2018, the Defendant Observer published an article Defendant Davis Richardson stating: "After coal baron and convicted felon Don Blankenship saw his senate candidacy squashed in West Virginia's primaries earlier this month, Senate Majority Leader Mitch McConnell (R-Ky.) tweeted an homage to Netflix's Narcos."

211.    On May 24, 2018, York Daily Record published an article by Mike Argento stating: "A couple of things: "Bare-chestedness"? That's a new one, up there with failed West Virginia Republican senatorial candidate and convicted felon Don Blankenship calling Chinese people "China persons."

212.    On May 25, 2018, The Charleston Gazette published an article by Eli Lehrer stating: "Former coal executive, convicted felon and self-described "Trumpier-than-Trump West Virginia candidate Don Blankenship wants to remain in his U.S. Senate race after losing the Republican primary."

213.    On June 3, 2018, Townhall published an article by Bruce Bialosky stating: "The column was largely about the hapless campaign of Don Blankenship in West Virginia.  Remember Blankenship was the former felon that we were being told up until the day of the election was surging and would possibly win the Republican nomination for the U.S. Senate seat."

214.    On June 4, 2018, The Huffington Post published an article by Michelangelo Signorile stating: "The pragmatic Trump also came out against convicted felon and anti-GOP establishment coal baron Don Blankenship in his bid

for the GOP nomination for Senate in West Virginia last month, tweeting that Blankenship "can't win" and invoking the Moore debacle."

215.   On July 24, 2018, ABC News World Tonight tweeted: "Don Blankenship, the former coal baron and convicted felon . . ."

216.   On July 24, 2018, Watauga Watch published an article stating: "Blankenship, a felon coal mine operator who came in third (last) on May 8th in the Republican primary for US Senate, makes it a habit to stick his thumb in the establishment's eye."

217.   On July 24, 2018, the Frontrunner published an article quoting an ABC News Article stating: "In an online article, ABC News reported that ex-Massey Energy CEO Don Blankenship, a "convicted felon who finished third in the" GOP Senate "primary in May, is wading back into the" contest, "this time attempting to file paperwork to run as a member of the Constitution Party."

218.   On July 25, 2018, as Mr. Blankenship was preparing to continue his race for senate on the Constitution Party ticket, Defendants Jenna Johnson and Josh Dawsey, reporting in The Washington Post, described Mr. Blankenship as a "former coal mine owner and *felon*."  Plaintiff is informed and believes that neither Ms. Johnson, nor Mr. Dawsey, nor The Washington Post ever corrected or retracted this statement.

219.   On June 25, 2018, CNBC published an article by Brian Schwartz stating: "He also campaigned with Morrisey in early June when he was competing in a crowded primary that included coal baron and convicted felon Don Blankenship who is now running as a third party candidate."

220.   On July 27, 2018, the Washington Post published an article by Jenna Johnson stating: " A day before West Virginia's Senate primary, Trump urged

Republicans to vote for either Rep. Evan Jenkins or Attorney General Patrick Morrisey but not Don Blankenship, a former coal mine owner and felon."

221.    On August 9, 2018, the Washington Post published an article by Amber Phillips stating: "Three convicted felons have run or are running for office this year. Two have lost — in New York, former congressman Michael Grimm vying for his old seat, and in West Virginia, former coal baron Don Blankenship. Former Arizona sheriff Joe Arpaio is still in the running for Senate in Arizona, and he has been embraced by the White House. Trump even pardoned him."

## COUNT I

## DEFAMATION/CONSPIRACY TO DEFAME – ALL DEFENDANTS

222.    Plaintiff reincorporates and re-alleges paragraphs 1 through 221 above as though set forth fully herein.

223.    Defendants, and each of them, made statements of fact as set forth above, which were materially false, namely that Mr. Blankenship was a felon, and/or that Mr. Blankenship had been convicted of a felony, and/or that Mr. Blankenship went to jail for manslaughter.  To the extent any of Defendants' above-described statements were statements of opinion (and they were not), each such purported opinion implied the existence of undisclosed defamatory facts as the basis for the opinion, in that such opinions would appear to a reasonable person to be based on the untrue and defamatory facts that Mr. Blankenship was a felon and/or had been convicted of a felony and/or went to jail for manslaughter.

224.    Defendants, and each of them, caused to be published the above-described defamatory statements about Mr. Blankenship.

225.    Defendants' statements were defamatory in that they reflected shame, contumely, and disgrace upon Mr. Blankenship by stating that he was a felon and/or had been convicted of a felony and/or had gone to jail for manslaughter.

226.    Defendants' statements were defamatory *per se* in that they were and are incapable of an innocent meaning and charged Mr. Blankenship with the commission of crimes of which he was acquitted, and were imputations as affecting his business, trade, profession, and/or office.

227.    Defendants' statements with respect to the Mr. Blankenship were materially and entirely false in that Mr. Blankenship is not a felon and has never been convicted of a felony, neither manslaughter nor any other felony, and in fact was acquitted of all felony charges with which he had ever been charged.

228.    Moreover, many of the defamatory statements were made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, *innuendo*, and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him, responsibility for murder.

229.    Defendants, and each of them, made their respective defamatory statements with actual malice, that is, actual knowledge of the falsity of their statements or, at a minimum, with reckless and willful disregard of the truth or falsity of the statements.  Among other reasons and without limitation, Defendants' wrongful conduct was motivated by the matters discussed herein above.

230.    Anyone who consulted the freely-available public records of Mr. Blankenship's trial and conviction (including previous accurate reports of Mr. Blankenship's acquittals by the Defendant media organizations themselves), would know that Mr. Blankenship was acquitted of all felony charges, that Mr. Blankenship was convicted only of a misdemeanor, and that Mr. Blankenship has never been convicted of a felony, whether for manslaughter or any other reason.

231.    In addition, Mr. Blankenship is further informed and believes, and based thereon alleges, that the media organization Defendants, and each of them,

failed to follow or comply with their own policies and procedures regarding the reporting of criminal convictions.

232.   Defendants, and each of them, intended to cause injury to Mr. Blankenship by publishing their false defamatory statements.

233.   Plaintiff is further informed and believes, and based thereon alleges, that Defendants NRSC, 35th PAC, and Kevin McLaughlin, along with DOES 26-50 (the "Conspiracy Does," and together with NRSC, 35th PAC, and McLaughlin, the "Conspiracy Defendants"), and each of them, shared in a common plan for the commission of the tort of defamation.

234.   In particular, the Conspiracy Defendants shared the common plan of ensuring that Plaintiff did not win the West Virginia Primary Election.  To that end, the Conspiracy Defendants agreed that McLaughlin and the Conspiracy Does would themselves disseminate, and cause and/or encourage others to disseminate the false claim that Plaintiff was a "felon" or "convicted felon."  The Conspiracy Defendants, and each of them, knew that this claim was untrue, as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

235.   McLaughlin committed overt acts in furtherance of the conspiracy as discussed above in paragraphs 18, 82, 160, and 161, by appearing on CNN as a "GOP Political Strategist" and stating that Plaintiff was a "convicted felon."

236.   The Conspiracy Does, and each of them, also committed overt acts in furtherance of the conspiracy by publishing false and defamatory claims about Mr. Blankenship.  Plaintiff will amend this Complaint to allege further facts concerning the Conspiracy Does' overt acts when the same are ascertained.

237.   Mr. Blankenship was damaged by Defendants' defamatory statements in an amount to be proven at trial, but which exceeds the jurisdictional minimum of this Court.

## COUNT II

## FALSE LIGHT INVASION OF PRIVACY/CONSPIRACY – ALL DEFENDANTS

238.    Plaintiff reincorporates and re-alleges paragraphs 1 through 237 above as though set forth fully herein.

239.    Defendants, and each of them, published matter which placed Mr. Blankenship in a false light before the public, as set forth above, namely that Mr. Blankenship was a felon, and/or that Mr. Blankenship had been convicted of a felony, and/or that Mr. Blankenship had been imprisoned for manslaughter.

240.    Defendants' publications, and the message conveyed thereby to the public that Mr. Blankenship was a felon, and/or that Mr. Blankenship had been convicted of a felony, and/or that Mr. Blankenship had been convicted of manslaughter, were untrue and of a nature highly offensive to a reasonable person.

241.    Defendants' publications, and each of them, were widely disseminated throughout West Virginia and in many cases, throughout the country.

242.    Moreover, many of the publications were made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, *innuendo* and/or insinuation, of further placing Mr. Blankenship in a false light before the public by falsely attributing to him responsibility for murder.

243.    Defendants, and each of them, made their respective publications with actual malice, that is, actual knowledge of the falsity of the publications, or at a minimum, with reckless and willful disregard of the truth or falsity of the publications.  Among other reasons and without limitation, Defendants' wrongful conduct was motivated by the matters discussed herein above.

244.    Anyone who consulted the freely-available public records of Mr. Blankenship's trial and conviction (including previous accurate reports of Mr. Blankenship's acquittals by the Defendant media organizations themselves), would know that Mr. Blankenship was acquitted of all felony charges, that Mr. Blankenship was convicted only of a misdemeanor, and that Mr. Blankenship has never been convicted of a felony, whether for manslaughter or any other reason.

245.    In addition, Mr. Blankenship is further informed and believes, and based thereon alleges, that the media organization Defendants, and each of them, failed to follow or comply with their own policies and procedures regarding the reporting of criminal convictions.

246.    Plaintiff is further informed and believes, and based thereon alleges, that the Conspiracy Defendants, and each of them, shared in a common plan for the commission of the tort of false light invasion of privacy.

247.    In particular, the Conspiracy Defendants shared the common plan of ensuring that Plaintiff did not win the West Virginia Primary Election.  To that end, the Conspiracy Defendants agreed that McLaughlin and the Conspiracy Does would themselves disseminate and cause and/or encourage others to disseminate the false claim that Plaintiff was a "felon" or "convicted felon."  The Conspiracy Defendants, and each of them, knew that this claim was untrue, as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

248.    McLaughlin committed overt acts in furtherance of the conspiracy as discussed above in paragraphs 18, 82, 160, and 161, by appearing on CNN as a "GOP Political Strategist" and stating that Plaintiff was a "convicted felon."

249.    The Conspiracy Does, and each of them, also committed overt acts in furtherance of the conspiracy by publishing false and misleading claims about Mr. Blankenship which placed him in a false light before the public.  Plaintiff will

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

amend this Complaint to allege further facts concerning the Conspiracy Does' overt acts when the same are ascertained.

250.   Mr. Blankenship was damaged by Defendants' statements placing him in a false light before the public in an amount to be proven at trial, but which exceeds the jurisdictional minimum of this Court.

## DEMAND

Plaintiff demands judgment against all Defendants in excess of the jurisdictional limit of Mingo County Circuit Court for the following damages and other relief:

### AS TO COUNT ONE

1.     Judgment for general damages for defamation;

2.     Judgment for special damages for defamation;

3.     A permanent injunction against Defendants, and each of them, prohibiting republication of the defamatory statements and requiring the removal of the defamatory statements from public access;

### AS TO COUNT TWO

4.     Judgment for general damages for false light invasion of privacy;

5.     Judgment for special damages for false light invasion of privacy;

6.     A permanent injunction against Defendants, and each of them, prohibiting republication of the statements placing Plaintiff in a false light before the public and requiring the removal of those statements from public access;

### AS TO ALL COUNTS

7.     Judgment for punitive damages; Judgment for emotional distress damages;

8.     Statutory judgment interest pursuant to West Virginia Code § 56-6-31; and

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

9.      Such further relief as the Court may deem just and proper.


**\*PLAINTIFF DEMANDS A JURY TRIAL**



                                                      DON BLANKENSHIP
                                                              By Counsel


 */s/ Jeffrey S. Simpkins*
**Jeffrey S. Simpkins, Esq.**
**WVSB #9806**
*SIMPKINS LAW*
**102 E. 2nd Ave.**
**Williamson, WV 25661**
**304.235.2735**
simpkinslawoffice@gmail.com

**Eric P. Early, Esq.**
**(CA State Bar No. 166275, *pro hac vice* pending)**
**Jeremy Gray, Esq.**
**(CA State Bar No. 150075, *pro hac vice* pending)**
**Kevin S. Sinclair, Esq.**
**(CA State Bar No. 254069, NV State Bar No. 12277, *pro hac vice* pending)**
*EARLY SULLIVAN WRIGHT*
*GIZER & McRAE LLP*
**6420 Wilshire Blvd., 17th Floor**
**Los Angeles, CA 90048**
**323.301.4660**
eearly@earlysullivan.com
jgray@earlysullivan.com
ksinclair@earlysullivan.com