**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

DON BLANKENSHIP,

       *Plaintiff*,

v.                                     Case No. 2:19-cv-00236

ANDREW NAPOLITANO, *et al.*,

       *Defendants*.

**<u>OPPOSITION OF FOX NEWS NETWORK, LLC TO
PLAINTIFF'S MOTION TO REMAND</u>**

## INTRODUCTION

Don Blankenship named 28 defendants from all over the country in a $12 billion complaint for defamation and filed it in the Circuit Court for Mingo County, West Virginia. On the face of the complaint, there is complete diversity between Blankenship and all the defendants. After research confirmed that Blankenship is a citizen of Nevada, and that none of the named defendants is, Fox News Network, LLC ("Fox News") removed the case to this Court.

Now Blankenship asks for remand back to Mingo County. He tellingly does not contest the existence of complete diversity. Instead, he contends only that the forum defendant rule barred removal because he named 35th, Inc. (the "35th PAC"), a West Virginia political action committee, as a defendant. But he concedes that rule applies only when "any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought," 28 U.S.C. § 1441(b)(2) (emphasis added), and the 35th PAC met neither of those requirements at the time of removal. This Court should deny remand because it has jurisdiction and the forum defendant rule did not bar removal.

*First*, the Court has jurisdiction. The Court's own records prove that Blankenship's domicile was Nevada at least through May 2018, making him a citizen of Nevada unless proven otherwise by clear and convincing evidence. Blankenship has not even alleged any change to his domicile, much less brought forth any affirmative proof to that effect. And because no defendant is a citizen of Nevada and the complaint alleges more than $75,000 in damages, the Court has jurisdiction under 28 U.S.C. § 1332(a).

Even if Blankenship were somehow deemed a domiciliary of West Virginia, the Court should disregard the citizenship of the 35th PAC under the doctrine of procedural misjoinder. Blankenship's various claims of defamation—written or spoken by different people, at different times, in different places, through different means—do not arise from the same transaction or

1

occurrence.  If Blankenship were a citizen of West Virginia, which he is not, the procedurally misjoined claims against the 35th PAC should be severed and remanded to the State court, leaving the claims against the out-of-state defendants properly before this Court.

*Second*, under the plain and unambiguous text of § 1441(b)(2), the forum defendant rule did not bar removal because the 35th PAC—the only forum defendant—had not been "properly joined or served."  Blankenship concedes that the rule does not apply when a forum defendant was improperly joined, as the 35th PAC was.  Moreover, the 35th PAC had not been served at the time of removal.  As the Second and Third Circuits and many district courts have held, the forum defendant rule plainly does not bar removal where a forum defendant has not yet been served.

*Finally*, Blankenship's amended complaint does not change the analysis.  To begin with, it is irrelevant; courts assess removal based on the removed complaint.  What is more, the amended complaint underscores the propriety of removal, as it reaffirms the existence of complete diversity and the inapplicability of the forum defendant rule.

## BACKGROUND

On March 14, 2019, Blankenship, a former candidate for the Republican nomination for United States Senate, filed this defamation lawsuit in Mingo County, West Virginia.  *See* Notice of Removal ¶ 1.  He claimed that more than two dozen defendants—including Fox News, CNN, MSNBC, *The Washington Post*, other organizations, and many individuals associated with them—defamed him by mischaracterizing his criminal history during the 2018 Republican primary.  Among the many defendants, only one is based in West Virginia:  the 35th PAC.  Compl. ¶ 36; Notice of Removal ¶ 4(f).  Blankenship did not claim to be a citizen of any State.  Instead, he stated only that he "has resided in West Virginia."  Compl. ¶ 30.

After more than two weeks, Blankenship had not served anyone, though he had heavily publicized the complaint.  The day he filed his complaint, Blankenship immediately publicized the lawsuit on his Facebook page.[1]  The next morning, he posted a link to the file-stamped complaint on Twitter.[2]  His lawyers issued a press release announcing the lawsuit with a link to the complaint.[3]  Within 24 hours, local and national media picked up the story.[4]

Based on public information that Blankenship is a domiciliary of Nevada, Fox News removed the matter to this Court on March 29, 2019, alleging diversity jurisdiction under § 1332(a).  *See* Notice of Removal ¶ 6.  In the notice, Fox News alleged the existence of complete diversity on the face of the complaint, but also alleged that the 35th PAC "was joined solely for the purpose of defeating diversity jurisdiction."  *Id.* ¶ 5.  Blankenship responded with this motion to remand, which challenges the procedural propriety of pre-service removal, but not his Nevada domicile.  *See* ECF No. 5.  That same day, Blankenship filed an amended complaint, expanding his lawsuit to more than 100 defendants.  *See* ECF No. 8.  The amended complaint added four new West Virginia-based defendants, but still included no allegation of Blankenship's domicile or citizenship.  *Id.* ¶ 30.

---

[1] Don Blankenship, Facebook (Mar. 14, 2019, 4:14 PM), https://bit.ly/2vjTlGQ.

[2] Don Blankenship (@DonBlankenship), Twitter (Mar. 15, 2019, 10:24 AM), https://bit.ly/2Vgwwmh.

[3] PR Newswire, *Attorney Eric Early:  Don Blankenship Hammers Establishment Media and DC Elites in Sweeping $12 Billion Legal Action* (Mar. 15, 2019, 7:36 PM), https://prn.to/2XE7fQz.

[4] *See, e.g.*, Ken Ward, Jr., *Blankenship suit claims national media defamed former Massey CEO*, Charleston Gazette-Mail (Mar. 15, 2019), https://bit.ly/2UQXn96; Caleb Ecarma, *NEW: Failed GOP Candidate Don Blankenship Files $12 Billion Defamation Lawsuit Against Major Media Outlets*, Mediate (Mar. 15, 2019, 11:12 AM), https://bit.ly/2L4JAaC.

<u>**ARGUMENT**</u>

**I.     The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a).**

For jurisdictional purposes, removal was proper.  A federal court may retain jurisdiction over a case that began in State court if federal jurisdiction existed at the time of removal.  *See Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 159 (4th Cir. 2010).  As alleged in the Notice of Removal, there was (and still is) diversity jurisdiction under 28 U.S.C. § 1332(a).  The controversy arises between citizens of different States, and the alleged damages exceed $75,000.

Though parties cannot stipulate to jurisdiction, it is telling that Blankenship does not contest this Court's jurisdiction.  Confronted with his failure to allege his State of citizenship in the complaint and with evidence that he is in fact a domiciliary of Nevada, Blankenship responds evasively and conspicuously does not seek remand on any jurisdictional ground.  He asserts that "whether he is a citizen of West Virginia, Nevada, or some other state" is irrelevant.  Pl.'s Br. 2.

Jurisdiction is proper under § 1332(a) for two reasons.  *First*, because Blankenship has not shown a change in domicile from Nevada, that State remains his place of citizenship for diversity purposes.  With no defendant alleged to be a citizen of Nevada, complete diversity exists.  *Second*, even if Blankenship were now a domiciliary of West Virginia, the Court should sever and remand his claims against the lone West Virginia defendant in the complaint, because those claims have been procedurally misjoined.

**A.     There is complete diversity because Blankenship is a domiciliary of Nevada.**

For diversity jurisdiction, citizenship depends on a person's domicile—the one location where the individual is physically present "with an intent to make the State a home."  *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008); *see also Swift & Co. v. Licklider*, 7 F.2d 19, 20 (4th Cir. 1925) ("Every man must have a domicile somewhere, and he can have but one.") (internal quotation marks omitted).  That domicile presumptively continues until the person

resides in a new place and shows an intent to remain there. *Swift*, 7 F.2d at 20; s*ee also Jardine v. Intehar*, 213 F. Supp. 598, 600 (S.D. W. Va. 1963) ("[D]omicile, having been acquired, continues until and unless it is superseded by a new domicile."). A change in domicile, whether asserted by the domiciliary or his opponent, must be proven by clear and convincing evidence. *See Ronald Lane, Inc. v. Antero Res. Appalachian Corp.*, Case No. 1:10-cv-137, 2011 WL 3102116, at *4 (N.D. W. Va. July 25, 2011); *Ferrara v. Ibach*, 285 F. Supp. 1017, 1019 (D.S.C. 1968).

In his complaint, Blankenship does not allege his current *domicile*. He asserts ambiguously that he "is an individual who has resided in West Virginia." Compl. ¶ 30.[5] Whatever this wording was meant to convey about Blankenship's residence, mere residency is insufficient to prove domicile. *See Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017). "A resident intends to live in the place for the time being," but "a citizen [*i.e.*, domiciliary] has an intention to remain in the state indefinitely." *Id.* Tacitly acknowledging this distinction, Blankenship is careful to allege the domicile or citizenship of nearly every defendant, even though he does not allege his own. *See* Compl. ¶¶ 31–58.

This Court's own records, however, are sufficient to discern that Nevada is presumptively Blankenship's current domicile. During the proceedings related to Blankenship's criminal prosecution in this Court, *see United States v. Blankenship*, Case No. 5:14-cr-00244 (S.D. W. Va.), Blankenship claimed Nevada as his permanent and indefinite home at least four times, and federal courts repeatedly relied on those claims.

---

[5] The present-perfect tense—"has resided"—can convey either an action completed at an indefinite time in the past (Blankenship used to reside in West Virginia) or a past action continuing into the present (Blankenship did and continues to reside in West Virginia). *See* Bryan A. Garner, *Garner's Modern English Usage* 896–97 (4th ed. 2016).

*First*, during preliminary bond hearings in November 2014, Blankenship sought permission to travel to Las Vegas for the holiday season.  *United States v. Blankenship*, Case No. 5:14-cr-00244 (S.D. W. Va. Nov. 14, 2014), ECF No. 23.  In support of that request, he told the Court he had "primarily lived with his fiancé[e] in the same home in Nevada for over two years," that Nevada was his "primary legal residence," that he carried a Nevada driver's license, that he "votes and pays taxes in that state," and that his fiancée had "lived in Nevada for more than 15 years."  *Id.* at 3.  The Court granted that request.

*Second*, shortly after the verdict in late 2015, Blankenship again asked permission "to travel home" to Nevada for the holidays.  *United States v. Blankenship*, Case No. 5:14-cr-00244 (S.D. W. Va. Dec. 8, 2015), ECF No. 542 at 1.  That request noted it had "been more than a year since Mr. Blankenship had been granted permission to travel to the home he shares with his fiancée."  *Id*.  The magistrate judge granted the request.

*Third*, at the same time he made his 2015 holiday travel request, Blankenship sought modification of his conditions of release so that he could "reside at his home in Nevada pending sentencing."  *United States v. Blankenship*, Case No. 5:14-cr-00244 (S.D. W. Va. Dec. 8, 2015), ECF No. 541 at 5.  In that filing, he represented that he had "voluntarily traveled from his home in Nevada" at the start of the case.  *Id.* at 4.  Blankenship also described the hardship of being confined under restrictive conditions of release:  he was "unable to reside with his fiancée at their home in Nevada" and had "not been permitted to travel to their home for over a year."  *Id.* at 4 n.4.  The Court granted Blankenship's request.

*Fourth*, in October 2017, this Court transferred jurisdiction of Blankenship's supervised release to the District of Nevada.  The correspondence between the two courts contained a letter from the Nevada Probation Officer, which noted "Blankenship plans to make the District of

Nevada his primary domicile and has purchased a home in Las Vegas, Nevada." *United States v. Blankenship*, Case No. 5:14-cr-00244 (S.D. W. Va. Oct. 26, 2017), ECF No. 659 at 2. The Nevada federal court accepted jurisdiction, and Blankenship reported to a probation officer in that district until the supervision ended in early May 2018.

These records establish that Nevada was Blankenship's domicile until at least early May 2018, and Blankenship has offered nothing that would prove a change. If Blankenship now claims West Virginia as his domicile, he bears the burden of proving the change by clear and convincing evidence. *See Ronald Lane*, 2011 WL 3102116, at *4. But he has not even alleged that his domicile has changed, offering in his complaint only an ambiguous representation about where he resides. His last known domicile thus remains his current domicile, making him a citizen of Nevada for purposes of diversity jurisdiction. *Jardine*, 213 F. Supp. at 600.

That is enough to show diversity jurisdiction. There is complete diversity among the parties because no defendant is a citizen of Nevada. And the complaint satisfies the amount-in-controversy requirement because it alleges, however implausibly, $12 billion in damages. *See Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981) ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith.").

**B.    Even if Blankenship were considered a domiciliary of West Virginia, he has procedurally misjoined his claims against the 35th PAC.**

Assuming Blankenship had attempted and met his burden to show a change in domicile back to West Virginia since May 2018, there is still complete diversity because the 35th PAC "was joined solely for the purpose of defeating diversity jurisdiction." Notice of Removal ¶ 5. This Court has recognized several ways in which a court may "disregard the citizenship of improperly joined parties." *County Comm'n of McDowell Cty. v. McKesson Corp.*, 263

F. Supp. 3d 639, 643 (S.D. W. Va. 2017) (Faber, J.).  In his motion, Blankenship addresses fraudulent joinder, Pl.'s Br. 12–16, but the relevant issue is that he procedurally misjoined his claims against the 35th PAC, the sole West Virginia defendant in the complaint.  *See Ashworth v. Alberts Med., Inc.*, 395 F. Supp. 2d 395, 409–13 (S.D. W. Va. 2005) (Copenhaver, J.).  Those claims should be severed and remanded, and this Court should retain jurisdiction over the claims against the remaining completely diverse defendants.

This Court has applied the doctrine of procedural misjoinder—sometimes called fraudulent misjoinder—to sever disparate claims from removed actions and preserve diversity jurisdiction.  *See, e.g.*, *id.* at 411.  The two-pronged analysis tracks that for permissive joinder under Rule 20(a).  *See id.*  *First*, the plaintiff's claims against multiple defendants must "arise[] out of the same transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).  *Second*, the plaintiff's claims must share a "question of law or fact common to all defendants."  Fed. R. Civ. P. 20(a)(2)(B).

Blankenship falters at the first prong, because his claims against the various defendants do not arise from the "same transactions or occurrences."  His patchwork complaint lists allegedly defamatory statements made by different people, in different articulations, from different places, at different times, and on different platforms.  For example, he claims the 35th PAC defamed him on Twitter on April 10, 2018, by calling him a "convicted felon."  Compl. ¶ 77.  By contrast, Blankenship argues Fox News defamed him by broadcasting different statements made by five people on four Fox News programs between April 25 and May 7, 2018.  *See* Compl. ¶¶ 78–79, 86–88.  Aside from some of those statements using the word "felon," they have no factual connection to the 35th PAC tweet.

It is not enough that these scattered claims all sound in defamation.  That may respond to the second prong of Rule 20(a), but it is irrelevant to the first.  Even claims "arising under the same area of law" lack a common transaction or occurrence if "the facts that form the bases for the claims are unique to each [defendant]."  *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004) (Haden, J.) (internal quotation marks omitted).  Thus, an injured motorist might properly join in one lawsuit the manufacturer of her car, the driver of the car that hit her, and even the restaurant that overserved the other driver before he got in his car.  *Cf. Wyatt v. Charleston Area Med. Ctr.*, 651 F. Supp. 2d 492, 498 (S.D. W. Va. 2009) (Goodwin, J.) (allowing joinder of medical device manufacturer, hospital, doctors, and physician practice in lawsuit alleging injuries arising from botched implantation of a medical device).  But the driver could not sue in a single lawsuit every person she claims caused some kind of damage to her car, in varying ways, in separate incidents, in multiple locations, over the course of a month.

The relevant inquiry under the first prong of Rule 20(a) is whether the transaction or occurrence giving rise to each *claim*—here, each allegedly defamatory statement—is "the same." Fed. R. Civ. P. 20(a)(2)(A).  Other than, perhaps, a small group of defendants who Blankenship alleges conspired to defame him (including the 35th PAC but not including Fox News), there is no contention that any of the alleged statements are "the same."[6]  The most that can be said is that the multitude of alleged statements concern a particular subject matter (his criminal history) or occurred over a general period (during his Senate campaign).  But those connections are "tenuous at best." *Ashworth*, 395 F. Supp. 2d at 412.  The claims against the 35th PAC and the

---

[6] Blankenship asserts the conspiracy claim against the 35th PAC, the National Republican Senatorial Committee, Kevin McLaughlin, and two dozen unnamed individuals (the "Conspiracy Defendants").  Compl. ¶ 110.  He does not allege any connection between the supposed conspiracy and any other defendant.

conspiracy defendants are not "logically related" to any claims against the remaining diverse defendants. *See id.*

In fact, the defamation overlay for each claim reinforces the impropriety of joinder under Rule 20(a). Defamation requires consideration of "the alleged defamatory words in the context in which they were made." *Hupp v. Sasser*, 200 W. Va. 791, 798, 490 S.E.2d 880, 887 (1997). And the constitutional actual-malice standard that applies to a public figure like Blankenship requires a subjective analysis of *each* defendant's knowledge of the falsity of the statement. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Thus, every alleged defamatory statement raised by Blankenship requires context- and defendant-specific proof.

Including so many unrelated claims against so many defendants only "serves to unfairly defeat the diverse defendants' right to have the action against them heard in this Court." *Id.* If Blankenship is a West Virginia domiciliary, this Court should sever his claims against the 35th PAC, remand them to the Circuit Court for Mingo County, and exercise diversity jurisdiction over the claims against the remaining defendants. *See id.* at 412–13.

## II. The forum defendant rule did not bar removal.

Blankenship's only argument for remand is 28 U.S.C. § 1441(b)(2), also known as the forum defendant rule. That provision bars removal of a "civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a)" when "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Because the 35th PAC is a citizen of West Virginia, Blankenship argues, removal from the West Virginia court was improper.

Blankenship's argument founders on the provision's plain text, which makes clear that it bars removal only when such a defendant is "properly joined and served."  The 35th PAC was neither properly joined nor served.

### A.  The forum defendant rule bars removal only when the forum defendant is "properly joined."

The forum defendant rule did not bar removal because, as discussed above, the 35th PAC is not properly joined.  The plain text of the rule limits its application to circumstances where forum defendants are "properly joined."  28 U.S.C. § 1441(b)(2).  As Blankenship himself admits, the forum defendant rule does not apply when a forum defendant has been "fraudulently joined" or is a "sham" defendant.  Pl.'s Br. 5, 10–11.  Blankenship misjoined his claims against the 35th PAC, *see supra* Section I.B, so the rule does not apply here.

### B.  The forum defendant rule bars removal only when the forum defendant has been served.

Independently, Fox News had a right to remove because the 35th PAC had not been served at the time of removal.  By its plain text, § 1441(b)(2) bars removal only when a forum defendant has been served.

The Supreme Court has emphasized "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  "When the words of the statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete."  *Id.* (internal quotation marks omitted); *see also United States v. Seragini*, 826 F.3d 146, 150–51 (4th Cir. 2016).  Adhering to plain meaning is particularly important in matters of procedure and jurisdiction, where "simplicity is a virtue" and rules should be clear.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

The statutory bar on removal of diversity actions applies only "if any of the parties in interest properly joined *and served* as defendants is a citizen of the state in which the action is brought."  28 U.S.C. § 1441(b)(2) (emphasis added).  That language "is in no way ambiguous." *Bloom v. Library Corp.*, 112 F. Supp. 3d 498, 504 (N.D. W. Va. 2015) (recognizing the "properly joined and served" trigger for forum defendant rule).  As even Blankenship concedes, the text "appears" on its face to allow removal "prior to service on the forum defendant."  Pl.'s Br. 6.

This plain-text application of § 1441(b)(2) is not novel.  The only two federal appeals courts to have decided this question have concluded the statute means what it says.  *See Gibbons v. Bristol-Myers Squibb Co.*, --- F.3d ----, 2019 WL 1339013, at *5 (2d Cir. Mar. 26, 2019) (finding "no reason to depart from the statute's express language"); *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147, 154 (3d Cir. 2018) ("There are simply no grounds upon which we could substitute [plaintiff's] interpretation for the literal interpretation.").  And many more district courts have adopted the same reasoning.  *See, e.g.*, *Bloom*, 112 F. Supp. 3d at 506 (finding "§ 1441(b)(2) requires, by its plain and unambiguous language, that a forum defendant must be 'properly joined and served' in order to preclude removal"); *Valido-Shade v. Wyeth, LLC*, 875 F. Supp. 2d 474, 478 (E.D. Pa. 2012) (recognizing "strict construction does not override the unambiguous and plain language of § 1441(b)"); *Wensil v. E.I. DuPont De Nemours & Co.*, 792 F. Supp. 447, 449 (D.S.C. 1992) (Shedd, J.) ("The statute is clear.  The presence of unserved resident defendants does not defeat removal where complete diversity exists.").[7]

---

[7] *See also, e.g.*, *Annese v. Diversey, Inc.*, 2017 WL 2378808, at *2 (W.D.N.C. June 1, 2017); *Goodwin v. Reynolds*, 2012 WL 4732215, at *5 (N.D. Ala. Sept. 28, 2012); *Munchel v. Wyeth LLC*, 2012 WL 4050072, at *3 (D. Del. Sept. 11, 2012); *Carrs v. AVCO Corp.*, 2012 WL 1945629, at *3 (N.D. Tex. May 30, 2012); *Robertson v. Iuliano*, 2011 WL 453618, at *4 (D. Md. Feb. 4, 2011); *Watanabe v. Lanlford*, 684 F. Supp. 2d 1210, 1219 (D. Haw. 2010); *Taylor v. Cottrell, Inc.*, 2009 WL 1657427, at *2 (E.D. Mo. June 10, 2009); *Hutchins v. Bayer Corp.*, 2009 WL 192468, at *8 (D. Del. Jan. 23, 2009);

Recognizing the clarity of the text, Blankenship insists removal was improper under § 1441(b)(2) because following the text "leads to a result Congress plainly did not intend." Pl.'s Br. 6. But courts have "no roving license, even in ordinary cases of statutory interpretation, to disregard clear language simply on the view that … Congress 'must have intended' something broader." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014); *see also New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 544 (2019) (recognizing that failing to follow text "in the name of more expeditiously advancing a policy goal" would "thwart rather than honor the effectuation of congressional intent") (internal quotations omitted); *Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress'[s] intent."). Moreover, following the plain text actually furthers Congress's purpose. Blankenship's attempt to distinguish both *Gibbons* and *Encompass* on these grounds, Pl.'s Br. 8–10, is thus unavailing.

### 1. Following the plain text of the service requirement reinforces the purpose of the forum defendant bar with a bright-line rule.

As Blankenship correctly explains, Congress included the "properly joined and served" requirement to keep plaintiffs from thwarting removal by joining a forum defendant "against whom the plaintiff does not intend to proceed, and whom the plaintiff does not even serve." Pl.'s Br. 7; *see also Encompass Ins.*, 902 F.3d at 153 (identifying this as the purpose behind the "properly joined and served" requirement); *Phillips Constr. LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 553 (S.D. W. Va. 2015) (Johnston, J.) (same). Before 1948, the Supreme Court recognized a limited, judge-made exception to the forum defendant rule, under which removal

---

*Waldon v. Novartis Pharm. Corp.*, 2007 WL 1747128, at *3 (N.D. Cal. June 18, 2007); *Frick v. Novartis Pharm. Corp.*, 2006 WL 454360, at *3 (D.N.J. Feb. 23, 2006); *Massey v. Cassens & Sons, Inc.*, 2006 WL 381943, *2 (S.D. Ill. Feb. 16, 2006); *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 180 (S.D.N.Y. 2003); *Ott v. Consol. Freightways Corp.*, 213 F. Supp. 2d 662, 665 (S.D. Miss. 2002); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002); *Maple Leaf Bakery v. Raychem Corp.*, 1999 WL 1101326, at *1 (N.D. Ill. Nov. 29, 1999); *Republic W. Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991).

was barred unless a party could show "that the resident defendant [was] not … joined in good faith." *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939).  Congress replaced that standard with § 1441—including the same "properly joined and served" language that remains in the statute today, which ensures a plaintiff cannot strategically block removal of an otherwise diverse action.  *See* Pub. L. 80-773, 62 Stat. 869, 938 (1948).

Following the plain text furthers this goal by giving both plaintiffs and defendants a rule that applies the same criteria in every jurisdiction with easy-to-predict results.  The statute "provide[s] a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant."  *Gibbons*, 2019 WL 1339013 at *4 (quoting *Encompass Ins.*, 902 F.3d at 153).  Applying that rule "'does not contravene' Congress's intent to combat fraudulent joinder."  *Id.*

Making service the triggering event for the forum defendant rule, as the plain text does, also tracks other aspects of the removal statute, which impose no burdens on a defendant until *after* service.  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  Before service, the State court usually lacks jurisdiction over the defendant.  *See id.*  Service of process is thus the "official trigger" for imposing burdens on or relating to removal, including the 30-day deadline to seek removal and the 21-day window for responding to a complaint after removal.  *Id.* at 353; *see* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 81(c).  To depart from the plain text, and trigger the forum defendant rule *before* service, would make that rule "the sole instance in which one's procedural rights slip away before service of a summons, *i.e.*, before one is subject to a court's authority."  *Murphy Bros.*, 526 U.S. at 356.

Finally, it is Blankenship's preferred application of the rule that would thwart congressional intent.  He would allow removal only when the plaintiff names a "sham" forum defendant.  Pl.'s Br. 11–12.  But that effectively reverts the rule to its pre-1948 form, when courts had to determine whether the forum defendant was "joined in good faith."  *Pullman*, 305 U.S. at 541.  And to the extent that Blankenship would allow removal only in cases "where the forum defendant has … been fraudulently joined," Pl.'s Br. 6, his rule would do nothing to prevent a plaintiff from defeating removal by properly joining a defendant whom the plaintiff never intends to serve.  But that is, as Blankenship himself describes it, the very purpose of the "properly joined and served" language in § 1441(b)(2).  *See* Pl.'s Br. 7.

### 2.   Following the plain text of the service requirement does not lead to absurd results.

Blankenship retreats next to the "extremely narrow" absurdity exception, *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001), which is "rarely invoke[d] … to override unambiguous legislation," *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 459 (2002).  It is applied so rarely, in fact, that not even the Fourth Circuit decisions cited by Blankenship to describe the exception deployed it.  *See Hillman*, 263 F.3d at 343; *Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000), *aff'd*, *Barnhart*, 534 U.S. at 462.  And for good reason.  Courts do not find absurdity simply because "the result would be unreasonable, or even quite unreasonable."  *In re Sunterra Corp.*, 361 F.3d 257, 268 (4th Cir. 2004) (internal quotation marks omitted).  Instead, the result "must be so gross as to shock the general moral or common sense."  *Md. State Dep't of Educ. v. U.S. Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996) (internal quotation marks omitted); *see Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 203 (1819) (Marshall, C.J.) (describing absurdity as a result "so monstrous, that all mankind would, without hesitation, unite in rejecting the application").

Blankenship comes nowhere near that standard.  He identifies three alleged "absurdities" that result from applying § 1441(b)(2) as written.  None is an unreasonable outcome, much less a shocking or monstrous consequence of following the statute's plain language.

*First*, he complains that Fox News's removal deprived him of "the absolute right to amend his pleading" before serving the defendants.  Pl.'s Br. 11.  This argument fails because it is simply not true.  Even after removal to federal court, Blankenship retained the right to amend his complaint before service, *see* Fed. R. Civ. P. 15(a), which he has done, *see* Am. Compl., ECF No. 8 (filed Apr. 9, 2019).

*Second*, Blankenship argues that allowing removal before service on the forum defendant shortens the window a plaintiff has to serve the complaint under the rules of his chosen State-court forum.  Pl.'s Br. 11.  But that kind of modest procedural consequence hardly constitutes an absurdity.  At most, it is a reasonable trade-off for the certainty of a bright-line rule that applies predictably across jurisdictions.  *See Gibbons*, 2019 WL 1339013 at *4 (explaining the virtue of "a bright-line rule keyed on service" compared to "a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant"); *cf. Delong v. Dep't of Health & Human Servs.*, 264 F.3d 1334, 1343 (Fed. Cir. 2001) (recognizing "bright line rules" are "both over-inclusive and under-inclusive").

*Third*, Blankenship contends it is absurd that the consequences of the forum defendant rule might be different in different States, depending on the particulars of a State's laws on service.  *See* Pl.'s Br. 11.  He points out that some States have rules that delay service after filing, so a plaintiff is more likely than in other States to be subject to pre-service removal despite his or her best efforts to avoid it.  *See id.*  Again, what Blankenship describes may be undesirable to

some, but it does not rise to the level of a result "so monstrous, that all mankind would, without hesitation, unite in rejecting the application." *Sturges*, 17 U.S. (4 Wheat.) at 203.

In support of this last argument, Blankenship points to *Shamrock Oil & Gas Corp. v. Sheets*, in which the Supreme Court stated that the removal statute was intended to be "uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied." 313 U.S. 100, 104 (1941). But *Shamrock Oil* undermines, rather than supports, Blankenship's argument. The Supreme Court's point was that the removal statute should *not* be interpreted to account for variations in local laws and how those local laws might alter the effect of the removal statute from State to State—the opposite of what Blankenship urges. As the Court further explained, the removal statute "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts." *Id.* Thus, the Court refused to consider the "state statutes or decisions" when interpreting "the meaning of the removal statute." *Id*.

The removal statute was intended to be "uniform *in its application*," not uniform *in its consequence*. *Id.* (emphasis added). In other words, the removal statute should apply a bright-line rule, just as the plain text of the service requirement sets forth. Differences in local laws may lead to disparate effects, as Blankenship complains, but that is the natural consequence of a statute that "is nationwide in its operation." *Id.* If a State wants to adjust the effects of the forum defendant rule on its courts, it has a stable and predictable backdrop against which to revise its laws.[8]

---

[8] A State could effectively prevent pre-service removal by requiring service simultaneous with filing, allowing electronic service, or considering a case docketed only after service has been effectuated.

        **3.**    **No "exceptional circumstances" warrant departing from the service requirement in the plain text.**

In *Phillips Construction*, a member of this Court rejected pre-service removal of a lawsuit filed in Kanawha County by a Kentucky plaintiff against two West Virginia defendants. *See* 93 F. Supp. 3d at 546. Although he was "persuaded by those opinions that find the plain meaning of Section 1441(b)(2) permits pre-service removal by a resident [forum] defendant," Judge Johnston rejected the "literal application" in the "exceptional circumstances" in that case, which "involv[ed] only resident [forum] defendants." *Id.* at 553. He expressed concern that the rule might "provide an incentive for defendants to employ gamesmanship, themselves, by racing to remove the newly filed actions." *Id.* at 554. And where those defendants are forum defendants, they can "closely monitor court dockets" and "wrestle control of the forum of litigation away from plaintiffs that hold no risk of local bias." *Id.* at 554, 555. Judge Johnston expressly left open "whether the forum-defendant rule bars pre-service removal when the case involves both resident and non-resident defendants," as in this case. *Id.* at 556 & n.3.

The gamesmanship concerns raised in *Phillips Construction* are missing here. There was no race to the courthouse to remove the case. Blankenship filed this lawsuit and then set about publicizing it on social media and drumming up press coverage. Removal came more than two weeks later—more than enough time for Blankenship to have served at least the lone forum defendant. *See id.* at 555 ("In some states, such as West Virginia, there are minimal procedural or institutional barriers for plaintiffs to quickly serve defendants after filing a complaint."). If anything, there is gamesmanship the other way around. Blankenship coyly alleges where he "has resided" and names only one West Virginia defendant among more than two dozen.

The lack-of-local-bias rationale discussed in *Phillips Construction* also is less significant here. Derived from the premise that diversity jurisdiction protects an out-of-state defendant from

prejudice in the plaintiff's home courts, the rationale posits that a forum defendant faces "no" bias in its home forum. *See id.* at 554. Whatever its merit, that rationale has far less force here. Unlike *Phillips Construction*, all but one of the dozens of defendants named in the complaint are out-of-state defendants. And given the disconnect between the allegations against the various defendants, none of the out-of-state defendants is likely to receive the benefit of whatever "home court" advantage the 35th PAC might enjoy.

To the extent exceptional circumstances can ever justify departing from unambiguous statutory text, nothing close to those circumstances exists here. This Court can and should apply the plain text of the service requirement to these facts and deny Blankenship's motion.

## III. Blankenship's amended complaint does not require remand.

Though Blankenship filed an amended complaint on the same day as the motion to remand, he does not rely on it in his motion, nor is it relevant as a matter of law. Removal jurisdiction turns on the operative pleading removed from State court. *McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, n.1 (S.D. W. Va. 2012) (Copenhaver, J.); *see also Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (Haden, J.) ("[J]urisdiction is determined at the time of removal."). That is a particularly important boundary when the remand calculus involves arguments about proper joinder, as here. *See Dotson v. Elite Oil Field Servs., Inc.*, 91 F. Supp. 3d 865, 870 (N.D. W. Va. 2015) (explaining that a district court "cannot consider post-removal filings to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court" (internal quotation marks omitted)).

What is more, Blankenship's amended complaint underscores the propriety of removal. As to jurisdiction, Blankenship offers nothing to rebut the allegations and evidence of his Nevada domicile. He still makes no allegation about his citizenship or domicile, proffering only that he is "residing in West Virginia," Am. Compl. ¶ 30, even though he alleges the domicile of

all 58 individual defendants, *id.* ¶¶ 75–132.  And none of the now-102 defendants is alleged to be a citizen of Nevada.

Nor would it matter if Blankenship had established West Virginia citizenship, as the vast sweep of his amended complaint simply reinforces his procedural misjoinder of many unrelated claims.  *See supra* Section I.B.  The amended complaint adds four new West Virginia citizens, *see* Am. Compl. ¶¶ 71, 99, 124, 128, but Blankenship's claims against those defendants hardly relate to each other, much less arise from the same transaction or occurrence as any of the claims against the out-of-state defendants.  *See Ashworth*, 395 F. Supp. 2d at 411.  As with the claim leveled against the 35th PAC in the original complaint, "the facts that form the bases for the [new] claims are unique to each [defendant]."  *Burns*, 298 F. Supp. 2d at 403.[9]

Finally, the amended complaint does not implicate the forum defendant rule.  The rule bars *the act of removal* based on the circumstances *at the time of removal*.  28 U.S.C. § 1441(b)(2) (stating when an otherwise removable action "may not be removed").  A plaintiff cannot revive that bar by adding or serving forum defendants after removal has occurred.  *See Spencer v. U.S. Dist. Court for the N. Dist. of Cal.*, 393 F.3d 867, 871 (9th Cir. 2004) (holding that post-removal addition of a forum defendant did not require remand, because the forum defendant rule "is only applicable at the time a notice of removal is filed").  In any event, the new West Virginia defendants are not properly joined, as noted above, and Blankenship still has not served any defendant, forum or not, named in the original or amended complaint.

## CONCLUSION

For all these reasons, Blankenship's motion to remand should be denied.

---

[9] Blankenship again alleges a conspiracy among the same small group of "Conspiracy Defendants," but that claim has no connection to the defamation claims against the remaining defendants, including Fox News.  *See* Am. Compl. ¶¶ 233–36.

Respectfully submitted,

**FOX NEWS NETWORK, LLC,**

By Counsel:

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
Kevin S. Elliker (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
kelliker@HuntonAK.com