## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

DON BLANKENSHIP,

        *Plaintiff*,

    v.

HONORABLE ANDREW NAPOLITANO (RET.);
FOX NEWS NETWORK, LLC; CABLE NEWS
NETWORK, INC.; NBCUNIVERSAL, LLC; MSNBC
CABLE LLC; CNBC, LLC; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; 35TH INC.; ASSOCIATED
PRESS; BREITBART NEWS NETWORK, LLC;
CLARITY MEDIA GROUP, INC.; WASHINGTON
TIMES, LLC; TRIBUNE PUBLISHING COMPANY, LLC;
LOS ANGELES TIMES COMMUNICATIONS LLC; WP
COMPANY LLC d/b/a THE WASHINGTON POST;
DEMOCRATIC SENATORIAL CAMPAIGN
COMMITTEE; THE NATIONAL JOURNAL GROUP,
LLC; WATAUGA WATCH; DOWN WITH TYRANNY
MEDIATE, LLC; NATIONAL PUBLIC RADIO, INC;
FISCALNOTE, INC d/b/a ROLL CALL; THE GUARDIAN
NEWS AND MEDIA, LLC; NEWS AND GUTS LLC;
DOW JONES & COMPANY, INC d/b/a MARKET
WATCH; UNIVISION COMMUNICATIONS, INC d/b/a
SPLINTER NEWS INTERNATIONAL MEDIA;
INVESTMENTS FZ, LLC d/b/a THE NATIONAL; THE
DAILY BEAST COMPANY, LLC; HEARST MAGAZINE
MEDIA, INC d/b/a ESQUIRE; HAYRIDE MEDIA, LLC;
NOWTHIS MEDIA, INC; THE UNION LEADER
CORPORATION; CAPITOL HILL PUBLISHING INC
d/b/a THE HILL; COMMIE GIRL INDUSTRIES, INC
d/b/a WONKETTE; DAILY MAIL AND GENERAL
TRUST PLC; VICE MEDIA LLC; THE 74 MEDIA, INC
d/b/a THE 74 MILLION; BREAKFAST MEDIA, LLC;
THE MCCLATCHY COMPANY d/b/a THE
SACRAMENTO BEE; OBSERVER MEDIA GROUP, LLC
d/b/a THE OBSERVER; GARNETT CO, INC d/b/a YORK
DAILY RECORD; THE CHARLESTON GAZETTE-
MAIL; SALEM MEDIA GROUP, INC d/b/a TOWNHALL;
VERIZON MEDIA, LLC d/b/a THE HUFFINGTON POST;
AMERICAN BROADCASTING COMPANIES, INC;

Civil Action No.
2:19-cv-00236

NEIL CAVUTO; CHRIS HAYES; JOY ANN LOMENA-
REID; SARAH ELIZABETH CUPP; BRADLEY
BLAKEMAN; JOHN LAYFIELD; STEPHANIE HAMILL;
KEVIN MCLAUGHLIN; LEIGH ANN CALDWELL;
MICHAEL PATRICK LEAHY; JOSH DAWSEY; JENNA
JOHNSON; BEN WOLFGANG; MICHAEL WARREN;
CATHLEEN DECKER; ZACK COLMAN; LAUREN
PASSALACQUA; BEN RAY; DAVID BERGSTEIN;
COURTNEY RICE; JUSTIN LAVOIE; JOHN
KRAUSHAAR; HOWIE KLEIN; TAMAR AUBER;
SUSAN DAVIS; GRIFFIN CONNOLLY; BEN JACOBS;
DAN RATHER; HOLLY FIGUEROA O'REILLY; JOE
LOCKHART; J.W. WILLIAMSON; RACHEL KONING
BEALS; CHRIS JONES; JIM HEATH; NICOLE
HENSLEY; PAUL BLEST; RASHMEE ROSHAN LALL;
GIDEON RESNICK; DANA MILBANK; CHARLES
PIERCE; MATT HOWERTON; ELIZABETH
MACDONALD; ROB PERSEY; JEN KERNS; DAVID
MARTOSKO; MARTIN PENGELLY; MATT TAYLOR;
KEVIN MAHNKEN; ANDREW FEINBERG; JOHN
RABY; BEN BOYCHUK; AMBER PHILLIPS; BRIAN
SCHWARTZ; MICHAELANGELO SIGNORILE; BRUCE
BIALOSKY; ELI LEHRER; MIKE ARGENTO; DAVIS
RICHARDSON and DOES 1–50 inclusive,

*Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>CNN DEFENDANTS' MOTION TO DISMISS</u>

BAILEY GLASSER LLP

Brian A. Glasser
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com

WILLIAMS & CONNOLLY LLP

Kevin T. Baine
Stephen J. Fuzesi
Sarah Golabek-Goldman
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbaine@wc.com
sfuzesi@wc.com
sgolabek-goldman@wc.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................3

    A.    Blankenship's Conviction ......................................................................3

    B.    Blankenship's Candidacy for United States Senate ..............................5

    C.    The CNN Coverage at Issue ..................................................................5

        1.    CNN Newsroom ..........................................................................5

        2.    CNN Tonight ...............................................................................6

        3.    S.E. Cupp Unfiltered ..................................................................7

    D.    This Lawsuit ............................................................................................8

LEGAL STANDARDS ......................................................................................................8

ARGUMENT .....................................................................................................................9

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION .....................9

    A.    The Statements Were Substantially True ...............................................9

    B.    The Complaint Fails To Plausibly Allege Actual Malice. ....................12

        1.    The Actual Malice Standard Applies .......................................13

        2.    The Allegations of Actual Malice Do Not State a Claim. .........14

II.     THE COMPLAINT FAILS TO STATE A FALSE LIGHT CLAIM ..............................17

III.    THE COURT LACKS PERSONAL JURISDICTION OVER THE
INDIVIDUALS ...........................................................................................................18

CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Adams v. Frontier Broad. Co.*, 555 P.2d 556 (Wyo. 1976) ........................................................16

*Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237 (2014) ...........................................................12

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ...........................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................8, 14

*Barnett v. Denver Publ'g Co.*, 36 P.3d 145 (Colo. App. 2001) ...................................................10

*Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183 (E.D. Va. Apr. 25, 2012) ........................................................................................................................13

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) ....................................................................16

*Blankenship v. Manchin*, 410 F. Supp. 2d 483 (S.D.W. Va.), *aff'd*, 471 F.3d 523 (4th Cir. 2006) ........................................................................................................3, 14

*Brecht v. Fisher Commc'ns, Inc.*, 2011 WL 1120506 (Wash. Ct. App. 2011) ............................16

*Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764 (N.D. Tex. 2007) ...........................................20

*Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ....................19

*Carr v. Forbes, Inc.*, 259 F.3d 273 (4th Cir. 2001) ..................................................................13

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) ....................................................9

*Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989) ...................................................3

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989) ........................................................................8

*Crump v. Beckley Newspapers, Inc.*, 320 S.E. 2d 70 (W. Va. 1983) ........................................9, 17

*D.A.R.E. Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) ..........................................................................16

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .........................................................................18

*Edwards v. Schwartz*, 378 F. Supp. 3d 468 (W.D. Va. 2019) .....................................................2

*Falwell v. Cohn*, 2003 WL 751130 (W.D. Va. Mar. 4, 2003) ....................................................20

*Hahn v. City of Kenner*, 984 F. Supp. 436 (E.D. La. 1997) ......................................................11

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) ..............................................12, 15

*Hupp v. Sasser*, 490 S.E. 2d 880 (W. Va. 1997) (per curiam)........................................................9

*Hustler Magazine Inc. v. Falwell*, 485 U.S. 46 (1988)..................................................................17

*In re Celotex Corp.*, 124 F.3d at 627–28 ......................................................................................18

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)......................................................................18

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)................................................................18

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994)..............................................20

*Martin-Trigona v. Chi. Tribune*, 1991 WL 125954 (N.D. Ill. June 28, 1991) .............................15

*Masson v. New Yorker Magazine Inc.*, 501 U.S. 496 (1991)..................................................2, 9, 11

*Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012)................................................................13, 14

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ......................................................16

*Mirafuentes v. Estevez*, 2015 WL 8177935 (E.D. Va. Nov. 30, 2015)..........................................10

*Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971)..........................................................................13

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)..........................................................12, 13, 15, 17

*Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425 (D. Md. 2005) ......................................9, 12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009)......................8

*Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619 (4th Cir. 1997) ...............................................................................................................................................8

*Pacella v. Milford Radio Corp.*, 462 N.E.2d 355 (Mass. App. Ct. 1984) ....................................16

*Pearlman v. NYP Holdings, Inc.*, 2015 WL 2232335 (N.Y. Sup. Ct. May 11, 2015)..................11

*Perry v. Isle of Wight Cty.*, 2016 WL 1601195 (E.D. Va. Apr. 20, 2016).....................................10

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013) ...........................................15

*Read v. Phx. Newspapers, Inc.*, 819 P.2d 939 (Ariz. 1991)...........................................................11

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)...............................................................................20

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ........................................................................................13

*Simonson v. United Press Int'l, Inc.*, 654 F.2d 478 (7th Cir. 1981) ..............................................12

iii

*Snyder v. Phelps*, 580 F.3d 206 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011) ...............................17

*St. Amant v. Thompson*, 390 U.S. 727 (1968)...................................................................12, 15, 17

*State ex rel. Ford Motor Co. v. McGraw*, 788 S.E. 2d 319 (W. Va. 2016) ...................................18

*Taylor v. W. Va. Dep't of Health & Human Res.*, 788 S.E.2d 295 (W. Va. 2016).......................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..................................................3

*Time, Inc. v. Pape*, 401 U.S. 279 (1971)........................................................................................17

*Tiwari v. NBC Universal, Inc.*, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) ............................11

*United States v. Blankenship*, 846 F.3d 663 (4th Cir.), *cert. denied*, 138 S. Ct. 315 (2017)........................................................................................................................3, 4, 10

*United States v. McDonald*, 617 F. App'x 255 (4th Cir. 2015) (per curiam) .................................3

*Walden v. Fiore*, 571 U.S. 277 (2014)..........................................................................................19

*Watkins v. CNN*, 2018 WL 1970747 (D. Md. Apr. 25, 2018) .......................................................10

*Watkins v. Washington Post*, 2018 WL 805394 (D. Md. Feb. 9, 2018) ........................................14

*Weber v. Woods*, 334 N.E.2d 857 (Ill. App. Ct. 1975) ..................................................................16

*Whitaker v. Wells Fargo Advisors, LLC*, 2011 WL 4565430 (E.D. Va. Sept. 29, 2011) ..............10

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) ......................................8, 18, 19, 20

*Zappin v. Gray Television Grp*, 2016 WL 1637211 (S.D.W. Va. Mar. 30, 2016) ........................10

## STATUTES, REGULATIONS, AND RULES

18 U.S.C. § 3559(a) ........................................................................................................................12

30 U.S.C. § 820.................................................................................................................................12

W. Va. Code § 56-3-33 ....................................................................................................................18

Fed. R. Civ. P. 12 ..........................................................................................................................3, 8

## OTHER AUTHORITIES

David A. Elder, *Defamation: A Lawyer's Guide* § 5:3 (West 2018)..............................................14

Restatement (Second) of Torts § 652E (1977) ........................................................................17, 18

1 *Sack on Defamation* § 5:5.1 (5th ed. 2017) ...............................................................................13

## INTRODUCTION

Don Blankenship has made no secret of his disdain for the "mainstream media" and the "political establishment."  But however fervent his views may be, they do not amount to a legal cause of action.  The sprawling libel lawsuit he has filed—against 102 media organizations, political groups, and individuals, including Defendants Cable News Network, Inc., Sarah Elizabeth Cupp, and Joe Lockhart ("CNN Defendants")—is fundamentally flawed as a matter of law. The Complaint should be dismissed with prejudice.

As is well known, Blankenship was the CEO of Massey Energy when an explosion at the company's Upper Big Branch Mine took the lives of 29 miners in 2010.  In the aftermath of that tragedy, Blankenship was prosecuted and found guilty of conspiring to violate federal mine safety laws and regulations.  While the offense was classified as a misdemeanor, the District Court made clear during sentencing that Blankenship's "dangerous" crime was "very serious."  The Court sentenced Blankenship to the maximum permitted by law: one-year imprisonment.

After serving his sentence, Blankenship turned to politics and ran for U.S. Senator from West Virginia in the 2018 Republican primary.  His candidacy received significant attention from journalists and political figures alike.  This lawsuit alone brings claims against more than 100 defendants.  Only four statements relate to CNN.

On April 29, 2018, *CNN Newsroom* covered the race in a live segment spanning approximately five minutes.  Dana Bash, CNN host and chief political correspondent, introduced the topic, noting that Blankenship "served a year in prison" after the mine explosion and pointing out that Blankenship "reminds us it was just a misdemeanor."  Two guests, including GOP political strategist, Kevin McLaughlin, appeared to discuss the primary and Blankenship's chances.  In the course of that live discussion, McLaughlin referred once to Blankenship as a "convicted felon."  Similarly, in another live segment, this time on *CNN Tonight* on the eve of the West Virginia

primary, CNN contributor Joe Lockhart commented on a tweet by President Trump discouraging West Virginians from voting for Blankenship. Lockhart referred in passing to Blankenship as a "convicted felon." Finally, on the May 2 and May 8 episodes of *Unfiltered*, then telecast on CNN's network HLN, host Sarah Elizabeth Cupp discussed Blankenship's candidacy with her guests, including his recent criminal conviction and prison sentence. In each episode, Cupp also once referred in passing to Blankenship as a "felon."

For these four fleeting references, Blankenship seeks *$12 billion* in damages. It is an astonishing claim that flies in the face of well-settled First Amendment law. Indeed, "because the defense of baseless defamation claims imposes an additional cost, in the form of potentially deterred speech, federal courts have historically given close scrutiny to pleadings in libel actions." *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 500 (W.D. Va. 2019) (noting that "courts in Virginia and the Fourth Circuit routinely dismiss at the outset defamation claims that are based on constitutionally protected speech" (quotation marks omitted)).

Blankenship's claims against CNN—which are based entirely on the four stray references to "felon"—should be dismissed with prejudice for multiple reasons:

*First*, the statements at issue were substantially true. It is undisputed that Blankenship was convicted of conspiring to violate federal mine safety rules and sentenced to a year imprisonment. The passing references to "felon" did not render the telecasts false. "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified." *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 516–17 (1991) (quotation marks omitted).

*Second*, as a public figure, Blankenship's claims are subject to the demanding actual malice standard. To survive a motion to dismiss, Blankenship must plead facts plausibly showing that CNN acted with actual malice. But he wholly fails to do so.

*Third*, in addition to these constitutional deficiencies, Blankenship's claim for false light invasion of privacy fails for the additional, independent reason that the statements did not place Blankenship in a "highly offensive" false light.

*Fourth*, Blankenship cannot maintain that the courts of West Virginia have personal jurisdiction over Cupp or Lockhart. Blankenship admits that neither are residents of the state, and does not allege any activity by them that would establish personal jurisdiction.

## **BACKGROUND**

**A.      Blankenship's Conviction**

As CEO of Massey Energy, Don Blankenship was "arguably . . . the state's highest-profile coal executive." *Blankenship v. Manchin*, 410 F. Supp. 2d 483, 487 (S.D.W. Va.), *aff'd*, 471 F.3d 523 (4th Cir. 2006). On April 5, 2010, an explosion occurred at Massey's Upper Big Branch Mine in Raleigh County. Compl. ¶ 8. Twenty-nine miners died. *Id.*

In the wake of that tragedy, a federal grand jury indicted Blankenship on felony and misdemeanor charges. Compl. ¶ 141; *United States v. Blankenship*, 846 F.3d 663, 667 (4th Cir.), *cert. denied*, 138 S. Ct. 315 (2017).[1] Following a six-week trial, a jury convicted Blankenship of conspiring to willfully violate federal mine safety laws and regulations—a misdemeanor—and acquitted him of the remaining indicted offenses. *Blankenship*, 846 F.3d at 667.

---

[1] On a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Court records are a common judicially-noticed record. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing Fed. R. Evid. 201); *United States v. McDonald*, 617 F. App'x 255, 258 (4th Cir. 2015) (per curiam). Exhibits 6–9 are DVDs of the CNN telecasts at issue, which are specifically referenced in the Complaint. Exhibits 2–5 are transcripts of the segments of those telecasts containing the references to "felon" at issue in this case.

On April 6, 2016, the United States District Court for the Southern District of West Virginia sentenced Blankenship to one-year imprisonment and assessed a $250,000 fine, both of which were the maximum permitted by law. *Id.* The Court emphasized during sentencing that Blankenship's "dangerous" crime was "very serious." Ex. 1 at 68:23, 71:15. In conspiring with others at Massey to willfully violate mine safety and health laws, the Court found that Blankenship "abused the trust of the Massey Energy shareholders, [his] fellow officers and directors and, most importantly, the trust of the employees who looked to [him] for leadership and for a safe workplace." *Id.* at 66:1923. The Court found that Blankenship put "profitability of the company ahead of the safety of [his] employees" and, in doing so, "created a culture of noncompliance at Upper Big Branch where [his] subordinates accepted and, in fact, encouraged unsafe working conditions in order to reach profitability and production targets." *Id.* at 67:11–16. In fact, miners had to "hide their efforts at safety" from Blankenship. *Id.* at 67:23.

The Court further expressly addressed the nomenclature of "felony" versus "misdemeanor," finding that the "tag" put on the offense did not affect the nature of the conduct:

> The crime is serious. There's been discussion here about the acquittal of felony offenses and your conviction of a misdemeanor. Those of us in the legal community put tags on offenses. Congress puts tags on offenses.
>
> But when we seek to sentence someone, we sentence based on the conduct, which I find to be very serious not only in its commission but in its potential impact in terms of risk in this particular case. And, again, I find it to be appropriate given [the] 3553(a) factors.

*Id.* at 71:10–18.

Blankenship served his year of federal imprisonment at the Taft Correctional Institution in California. Compl. ¶ 144. The Fourth Circuit affirmed his conviction. *Blankenship*, 846 F.3d 663.

### B.      Blankenship's Candidacy for United States Senate

After emerging from prison, Blankenship announced plans to run in the Republican primary for the West Virginia Senate seat held by Democrat Joe Manchin.   Compl. ¶ 13. Blankenship admits that, "[i]n light of the then-recent events," his candidacy "was viewed as a long-shot." *Id.* ¶ 146.

The primary, which pitted Blankenship against Congressman Evan Jenkins and Attorney General Patrick Morrisey, garnered significant attention—not only from the media, but also from other politicians, including President Trump, who told Republican voters in West Virginia on the eve of the primary that Blankenship "can't win the General Election in your State…No way!"[2] Blankenship went on to lose the May 8 primary, placing third with less than 20% of the vote.[3]

### C.      The CNN Coverage at Issue

#### 1.      *CNN Newsroom*

On April 29, 2018, *CNN Newsroom* covered a variety of news events, including a migrant caravan in Mexico, the border-wall debate, and the status of the Mueller investigation.   Forty minutes into the program, host and chief political correspondent Dana Bash introduced a segment about the Republican primary in West Virginia and, in particular, debate over whether Blankenship should be the nominee.   At the outset of the segment, Bash made clear that Blankenship "reminds us" that his conviction "was just a misdemeanor."   Ex. 2 at 2:9 (emphasis added).   Then, after playing a clip of an interview of Blankenship in which he opined that Republican leaders did not

---

[2] Donald J. Trump (@realDonaldTrump), Twitter (May 7, 2018, 3:53 AM), https://twitter.com/realdonaldtrump/status/993443781281271808.

[3] N.Y. Times, *Election Results: Morrisey Defeats Blankenship in West Virginia Senate Primary*, N.Y. Times (May 9, 2018, 5:35 PM), https://www.nytimes.com/interactive/2018/05/08/us/elections/results-west-virginia-senate-primary-elections.html.

want him to win because he is an "extreme Trump supporter," Bash opened up a live discussion with CNN reporter Alex Isenstadt and guest Kevin McLaughlin, a GOP political strategist.  *Id.* at 3:4–12.  In the course of the discussion McLaughlin commented, "Well, I mean, pick your poison with this guy, right?  He doesn't live in West Virginia, he's a convicted felon . . . but I think the biggest concern, where I would have the biggest concern if I was sitting at the NRSC or involved in elections right now, is the fact that he's the number one choice of Democrats."  *Id.* at 5:13–6:1.  The fleeting reference to "felon" in the midst of this guest's commentary is the only statement at issue from this program.  *See* Compl. ¶ 160.

### 2.    *CNN Tonight*

On May 7, 2018, *CNN Tonight* covered numerous topics, including the Mueller investigation, the resignation of New York's Attorney General, and the Iran nuclear deal.  About 40 minutes into the program, anchor Don Lemon introduced a segment about the West Virginia Republican primary, noting the White House opposes Blankenship's candidacy.  Ex. 3 at 2:1–4, 2:18–21.  Lemon then introduced three commentators, including Joe Lockhart, a former White House Press Secretary and CNN political contributor, to share their opinions in a live discussion. *Id.* at 2:22–23.  In the midst of that discussion, Lockhart commented on President Trump's tweet urging Republicans to vote against Blankenship:

> Let me go with an even bolder idea.  Blankenship wins and Mitch McConnell says, it's better for the country for Joe Manchin to be in, whoever he caucuses with.  What's striking here is in Trump's tweet this morning, he didn't say anything about Roy Moore and his personal problems.  He didn't say don't vote for Blankenship because he went to jail.  He's a convicted felon, he's racist and he's crazy.  He said, vote for the other guys because we don't want to lose the seat.  You know, I get that from political players and consultants who are in the race.  But from the President of the United States, do we have any—any mystery to why things are so screwed up?

*Id.* at 6:11–7:1.  Again, the single reference to "felon" in the middle of this live commentary by a CNN contributor is the only statement at issue from this program.  *See* Compl. ¶ 179.

### 3.    *S.E. Cupp Unfiltered*

On May 2, 2018, political commentator S.E. Cupp hosted a round-table discussion as part of *S.E. Cupp Unfiltered* ("*Unfiltered*") on HLN.  Compl. ¶¶ 78, 171.  This episode covered a wide range of political topics.  During the program, Cupp and her panelists discussed primaries in multiple states and candidates' allegiances to President Trump.  In discussing the West Virginia primary, she mentioned that Blankenship "served a year in prison" and played a clip of Blankenship speaking at a May 1, 2018, Republican debate where Blankenship alleged corruption at the Justice Department in connection with his conviction. Ex. 4 at 11:22–12:12.  Providing her opinion, Cupp then paraphrased Blankenship's remarks—"You want to talk about the Justice Department, I know something about the Justice Department"—and responded, "that's because you're a convict, you're a felon.  Oh my God." *Id.* at 12:21–24.

The May 8, 2018 episode of *Unfiltered*[4] similarly covered political news around the country.  During the show, Cupp and political analyst David Drucker discussed primaries in four states: Indiana, North Carolina, Ohio and West Virginia.  Drucker noted that Blankenship was "found guilty of conspiracy to avoid mine safety standards . . . in federal court" after a coal mining accident in which 29 miners were killed.  Ex. 5 at 4:3–9.  Following the Drucker segment and a commercial break, the show included an approximately six-minute segment on Blankenship's candidacy.  As part of the discussion, Cupp commented, "[i]n case you missed it, a former coal

---

[4] The Amended Complaint states that S.E. Cupp referred to Blankenship as a convicted felon in a May 7, 2018 episode of *Unfiltered*.  Compl. ¶ 174.  However, the quote that the Amended Complaint refers to is from a May 8, 2018, episode of *Unfiltered.*

baron and convicted felon is running for senate in West Virginia." *Id.* at 8:21–23. The single word "felon" in the midst of the two telecasts is the only statement at issue. *See* Compl. ¶¶ 171, 174.

**D.     This Lawsuit**

In his Amended Complaint (Dkt. #14), Blankenship asserts against the CNN Defendants claims of defamation (Count 1) and false light invasion of privacy (Count 2)—all arising out of the fleeting references to "felon."

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotation marks omitted). Rather, there must be "well-pleaded factual allegations." *Id.* at 679. And "the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quotation marks omitted).

Further, "[t]he plaintiff, of course, has the burden to establish that personal jurisdiction exists." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). When a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction "relies on the complaint and affidavits alone," the plaintiff bears the burden "'to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

**ARGUMENT**

**I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.**

In West Virginia, the "essential elements" of defamation are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) fault; and (6) resulting injury.  *Crump v. Beckley Newspapers, Inc.*, 320 S.E. 2d 70, 77 (W. Va. 1983).  "Defamation law requires that you consider the alleged defamatory words in the context in which they were made."  *Hupp v. Sasser*, 490 S.E. 2d 880, 887 (W. Va. 1997) (per curiam); *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993) ("we would err if we did not consider the article as a whole").  Moreover, "the First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern.  Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee."  *Chapin*, 993 F.2d at 1091–92 (citation and footnote omitted).

Blankenship's Complaint fails to state a claim for two independent reasons.  First, Blankenship's Complaint fails to plausibly allege falsity because the stray references to "felon" in the midst of CNN's coverage did not render it materially false.  Second, the Complaint fails to plausibly allege that CNN published the statement at issue with the requisite fault required under the First Amendment:  actual malice.

**A.    The Statements Were Substantially True.**

Blankenship complains of the four stray references to "felon."  But it is well established that "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified."  *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 517 (1991) (quotation marks omitted).  So long as the "sting" or the "gist" is substantially true, no cause of action arises.  *See, e.g.*, *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432–33 (D. Md.

2005) (granting motion to dismiss, noting that "this Court is careful to ensure that not every error or inaccuracy is actionable under the First Amendment"); *Mirafuentes v. Estevez*, 2015 WL 8177935, at *5 (E.D. Va. Nov. 30, 2015) (granting motion to dismiss where lone reported false fact "was a minor inaccuracy" and thus "not actionable").[5]

Here it is indisputable that Blankenship was convicted of a federal crime—found guilty, beyond a reasonable doubt, of conspiring to willfully violate federal mine safety laws.  He was sentenced to the "maximum permitted by law," *Blankenship*, 846 F.3d at 667, including one-year imprisonment.  The sentencing judge specifically found that his crime was not only "very serious," but even "dangerous"—and expressly noted that the "tag" of "misdemeanor" was not relevant to the gravity of his conduct.  *Supra* p. 4.

Courts across the country have held that similar errors do not give rise to material falsity that could support a defamation claim.  In *Brewer v. Dungan*, for example, the court held that a newspaper's "mistaken characterization of the classification of the crime which plaintiff committed" as a "felony assault," instead of a misdemeanor, was "substantially true," because it was "undisputed and appears from the face of plaintiff's complaint that she was convicted . . . of a misdemeanor aggravated assault . . . and sentenced to 181 days in jail."  1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993); *see also, e.g.*, *Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 148 (Colo. App. 2001) (affirming trial court's dismissal of candidate's defamation claim where plaintiff had been convicted of "harassment, not stalking," because "the use of the term 'stalking'

_____

[5] Courts in the Fourth Circuit have routinely granted motions to dismiss on the basis of substantial truth.  *See also, e.g.*, *Perry v. Isle of Wight Cty.*, 2016 WL 1601195, at *3 (E.D. Va. Apr. 20, 2016); *Watkins v. CNN*, 2018 WL 1970747, at *2 (D. Md. Apr. 25, 2018); *Whitaker v. Wells Fargo Advisors, LLC*, 2011 WL 4565430, at *4 (E.D. Va. Sept. 29, 2011); *Zappin v. Gray Television Grp*, 2016 WL 1637211, at *7 (S.D.W. Va. Mar. 30, 2016), *report and recommendation adopted*, 2016 WL 1629365 (S.D.W. Va. Apr. 22, 2016).

to describe his conviction was substantially true"); *Tiwari v. NBC Universal, Inc.*, 2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011) (reporting that the plaintiff had been convicted of a felony was "substantially true" where the plaintiff had been "convicted of only a misdemeanor"); *Hahn v. City of Kenner*, 984 F. Supp. 436, 441 (E.D. La. 1997) ("Hahn's arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true."); *Read v. Phx. Newspapers, Inc.*, 819 P.2d 939, 940–42 (Ariz. 1991) (report that candidate had been sentenced to jail "for firing a gun after a motorist accidentally leaned on a car horn" was substantially true despite the fact that the candidate had only been convicted of "displaying a weapon," because the sting was that "he served time in jail for irresponsibly using a loaded weapon.").[6]

So too here.  Referring to Blankenship as a "felon" once in passing, in the midst of live political commentary, would have no different effect on the mind of a viewer than what is indisputably true, *see Masson*, 501 U.S. at 517—that, following the tragic disaster that killed 29 people, Blankenship was convicted of conspiring to willfully violate federal laws and sentenced to the maximum possible sentence of one year in prison.  Indeed, the *CNN Newsroom* program even specifically noted that the conviction was a "misdemeanor," Ex. 2 at 2:9, and the *Unfiltered* program on May 8 pointed out that he was "found guilty of conspiracy to avoid mine safety standards in federal court."  Ex. 5 at 4:6–9.

Underscoring the technicality of the distinction between felony and misdemeanor in this case is Blankenship's sentence—which was just <u>one day short of a felony</u>.  The statute under which

---

[6] *See also Pearlman v. NYP Holdings, Inc.*, 2015 WL 2232335, at *3 (N.Y. Sup. Ct. May 11, 2015) ("[T]he statement that plaintiff engaged in criminal behavior by laundering money and was currently residing in a federal prison was substantially true because she did plead guilty to a crime related to the laundering of money.  The inaccurate assertion that she was imprisoned, as opposed to being on probation for her criminality, could not have had a different or worse effect on the mind of a reasonable reader than the truth.").

Blankenship was convicted, 30 U.S.C. § 820, does not state whether it is a misdemeanor or felony, so this offense is classified based on the "maximum term of imprisonment authorized."  18 U.S.C. § 3559(a).  The dividing line under § 3559(a) between misdemeanors and felonies is one year imprisonment—Blankenship's precise sentence.  Moreover, the common usage of "felony" includes crimes for which the punishment is imprisonment for a year or more.[7]  There is no reason to believe that a layman would split hairs by a day.  As "a long line of cases holds . . . technical errors in legal nomenclature in reports o[n] matters involving violation of the law" cannot give rise to material falsity.  *Nanji*, 403 F. Supp. 2d at 432 (quotation marks omitted) (collecting cases); *see also Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 255 (2014) ("[I]t is irrelevant whether trained lawyers or judges might with the luxury of time have chosen more precise words.").

In short, the passing references to "felon" did not render CNN's reports materially false.  On this basis, the Complaint fails to state a claim as a matter of law.

**B.    The Complaint Fails To Plausibly Allege Actual Malice.**

It has long been settled that a public official or figure must plead and prove that alleged defamation was published "with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).  "The standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of probable falsity.'"  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989) (alterations omitted); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  This is a deliberately demanding standard, as

---

[7] *See, e.g.*, Meriam-Webster  Dictionary, https://www.merriam-webster.com/dictionary/felony; Law.com, https://dictionary.law.com/Default.aspx?selected=740; *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 481 (7th Cir. 1981) (citing Webster's Dictionary's definition of "rape" to conclude that description of an offense as "rape" was substantially true by reference to that term's common usage, despite the fact that conviction was technically for second-degree sexual assault.).

"the basic question for determination by the court is:  Did the defendant lie?"   1 *Sack on Defamation* § 5:5.1, at 5–79 (5th ed. 2017).

Accordingly, courts in this Circuit and around the country routinely dismiss cases for failure to plead facts sufficiently alleging actual malice.  *See, e.g.*, *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012) (affirming grant of judgment on the pleadings); *Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *6 (E.D. Va. Apr. 25, 2012) (granting motion to dismiss because "[s]etting aside Plaintiff's legal conclusions, this Court cannot reasonably infer from the scant facts alleged that [the defendant] was aware of the probable falsity of [his] statements about [plaintiff]." (second alteration in original) (quotation marks omitted)).

As Blankenship has effectively conceded, *see* Compl. n.3, he is a public figure to whom the actual malice standard applies.  Yet it is clear that he has failed to plead facts establishing that the CNN Defendants acted with actual malice.

### 1.     *The Actual Malice Standard Applies*

Determining a plaintiff's public figure status is a question of law.  *See Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001); *see also Rosenblatt v. Baer*, 383 U.S. 75, 88 (1966).

As a candidate for United States Senate suing over campaign coverage, Blankenship is a textbook public figure.  The Supreme Court has instructed that "it is abundantly clear that . . . publications concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office," and has specifically held that the actual malice standard applied to a candidate for U.S. Senate.  *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971).  After all, the actual malice standard was created in recognition of the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."  *Sullivan*, 376 U.S. at 270.  That is why "[t]he cases are unanimous in extending [*Sullivan*] to all candidates for elective state or federal office at all levels."

David A. Elder, *Defamation: A Lawyer's Guide* § 5:3 (West 2018). Indeed, Blankenship does not appear to dispute his status as a public figure or the applicable legal standard. *See, e.g.*, Compl. n.3 (noting "the prevailing standard of *New York Times v. Sullivan*").[8]

### 2. The Allegations of Actual Malice Do Not State a Claim.

Despite recognizing the applicability of the actual malice standard, Blankenship's Complaint does little more than simply assert that the CNN Defendants—along with the myriad other defendants—acted with "actual malice." The pleading is plainly insufficient to state a claim.

Blankenship's Complaint asserts that all defendants "made their respective defamatory statements with actual malice." Compl. ¶ 229. But such "[t]hreadbare recitals of the elements of a cause of action" clearly do not meet the pleading requirements. *Iqbal*, 556 U.S. at 678. There must be "well-pleaded factual allegations," not a "formulaic recitation of the elements." *Id.* at 679–678 (quotation marks omitted); *see also Mayfield*, 674 F.3d at 378 (complaint failed to state a claim despite "assertion that Appellees' statements 'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity,'" because "[t]his kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected" (first alterations in original)); *Watkins v. Washington Post*, 2018 WL 805394, at *6 (D. Md. Feb. 9, 2018) (dismissing defamation claims for "fail[ure] to allege legal fault" where "[m]any of Ms. Watkins's allegations are mere recitations of the legal standard she is required to plead" and remaining allegations were also insufficient.).

Blankenship pleads <u>no</u> additional specific facts as to the *CNN Tonight* segment in which Lockhart appeared. As to the other CNN reports at issue, Blankenship merely pleads that <u>other</u>

---

[8] Here Blankenship would further be a public figure in light of his prominence as CEO of Massey Energy. *Blankenship*, 410 F. Supp. 2d at 488 (noting that Blankenship is "arguably . . . the state's highest-profile coal executive.").

journalists at CNN reported elsewhere back in 2015 and 2016 that Blankenship's conviction was for a misdemeanor.  Compl. ¶ 161 & n.5, ¶ 171.  But in *New York Times Co. v. Sullivan*, the Supreme Court specifically rejected the idea that "the mere presence" of "news stories in the Times' own files" could establish actual malice.  376 U.S. at 287.  This is because "the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication" at issue in the case.  *Id.*  Here, Blankenship has alleged no connection between those with responsibility for the *CNN Newsroom* and *Unfiltered* episodes at issue (including Cupp) and the prior coverage.

At most, the allegation is that they potentially <u>could</u> have learned that Blankenship's conviction was for a misdemeanor had they reviewed—and then remembered—CNN's coverage. This is a far cry from actual malice, which is a <u>subjective</u> standard involving a speaker's actual state of mind at the time of publication and specifically is "<u>not</u> measured by whether a reasonably prudent man would have published, or would have investigated before publishing."  *St. Amant*, 390 U.S. at 731 (emphasis added); *Harte-Hanks Commc'ns*, 491 U.S. at 666 ("public figure libel cases are controlled by the *New York Times* standard and not by the professional standards rule").[9]

The only other allegation that Blankenship pleads as to CNN is that it did not issue corrections for the fleeting misstatements on live television.  But, again, it is well-established that "actual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false," because the plaintiff must "establish actual malice at the time of publication."  *Pippen*

_____

[9] *See also Martin-Trigona v. Chi. Tribune*, 1991 WL 125954, at \*3 (N.D. Ill. June 28, 1991) ("[t]he Supreme Court has expressly held that such failure-to-search-files evidence is not sufficient to establish actual malice or reckless disregard for the truth.").  The same principle applies with respect to Blankenship's blanket allegation that <u>all</u> of the defendants could have "consulted the freely-available public records" of his conviction and his unsupported assertion (on information and belief) that <u>all</u> of the media defendants "failed to follow or comply with their own policies and procedures regarding the reporting of criminal convictions."  Compl. ¶¶ 230–31.

*v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (affirming dismissal where "[t]he fact that [plaintiff] alerted the defendants by email *after* publication . . . does not help him establish actual malice at the time of publication."); *see also Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming dismissal of allegations relating "only to events that occurred after publication of the Article and therefore cannot be relevant to the publisher's state of mind [regarding] his alleged malice at the time of publication") (quotation marks omitted).  Here Blankenship has not alleged—nor can he—that he even notified CNN of the misstatements prior to filing his lawsuit.

Indeed, as to the *CNN Newsroom* telecast, Blankenship ignores that the only statement by any CNN employee <u>correctly stated</u> that he had been convicted of a "misdemeanor."  Ex. 2 at 2:9. This alone undermines Blankenship's claim.  *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–05 (11th Cir. 2016) (affirming dismissal of complaint, where "[f]ar from intentionally avoiding the truth, the defendants included information contrary to [the alleged defamatory statements] in the text of the article itself.").  As the Complaint acknowledges, *see* Compl. ¶ 160, it was a <u>guest</u> on the live program who made a fleeting reference to "felon."  His state of mind cannot be attributed to CNN.[10]  And, of course, CNN could not have formed knowledge of the falsity of the guest's statement prior to publication, given that it was a live program.[11]

---

[10] *See D.A.R.E. Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1280 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) (publisher not vicariously liable for independent contractor's actions; plaintiff must prove that the publisher itself acted with actual malice); *Weber v. Woods*, 334 N.E.2d 857, 863 (Ill. App. Ct. 1975) (ABC not liable for statements by codefendant who "was merely a participant in a television talk show and was in no sense an agent or employee of ABC").

[11] *See Brecht v. Fisher Commc'ns, Inc.*, 2011 WL 1120506, at *4–7 (Wash. Ct. App. 2011) (plaintiff precluded "from making the factual showing necessary to demonstrate actual malice" where radio station had not evaluated statements made by two callers to a morning talk show prior to publication); *see also Adams v. Frontier Broad. Co.*, 555 P.2d 556, 564–65 (Wyo. 1976); *Pacella v. Milford Radio Corp.*, 462 N.E.2d 355, 360 (Mass. App. Ct. 1984).

In the end, this case implicates precisely the kind of passing mistakes that the actual malice standard is supposed to inoculate.  The mistake, in fact, was an understandable one—given that Blankenship "<u>may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor,</u>" Compl. ¶ 11 (emphasis added)—which is presumably why it was made by so many reporters.  For more than fifty years, the Supreme Court has instructed that errors are "inevitable" in the course of debate in a free society and "must be protected if the freedoms of expression are to have the breathing space that they need to survive."  *Sullivan*, 376 U.S. at 271–72 (alteration and quotation marks omitted); *see also, e.g.*, *St. Amant*, 390 U.S. at 732; *Time, Inc. v. Pape*, 401 U.S. 279, 292 (1971).  If these fleeting errors could give rise to actual malice and expose journalists and commentators to suit in the course of discussing our nation's political candidates, there would be no real "breathing space" for a free press at all.

## II.     THE COMPLAINT FAILS TO STATE A FALSE LIGHT CLAIM.

The failure to plausibly allege either material falsity or actual malice is dispositive not only of Blankenship's defamation claim, but also of his claim for false light invasion of privacy.  It is subject to the same First Amendment defenses.  "[R]egardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech," *Snyder v. Phelps*, 580 F.3d 206, 217–18 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011), and "courts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation," *Crump*, 320 S.E.2d 70 at 87; *see also Hustler Magazine Inc. v. Falwell*, 485 U.S. 46, 56 (1988).

Moreover, even setting aside these clear constitutional bars, this tort is insufficiently plead for an additional, independent reason.  An essential element is that the plaintiff be placed in a false light "'highly offensive to a reasonable person.'"  *Taylor v. W. Va. Dep't of Health & Human Res.*, 788 S.E.2d 295, 315–16 (W. Va. 2016) (quoting Restatement (Second) of Torts § 652E (1977)).

Here, the light in which Blankenship was placed cannot be considered "highly offensive." There was no "major misrepresentation" of Blankenship's character or history. Restatement (Second) of Torts § 652E, cmt. c. Blankenship undeniably was convicted of what the federal court considered to be a "dangerous" and "very serious" crime, and spent a year in prison as a result.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUALS.

Finally, separate and apart from all of the other reasons to dismiss this Complaint, there is also no basis for the Court to assert personal jurisdiction over Cupp and Lockhart.

A federal court's exercise of personal jurisdiction is limited by applicable state law. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). The Complaint plainly fails to establish jurisdiction under any prong of the West Virginia long-arm statute. W. Va. Code § 56-3-33; *State ex rel. Ford Motor Co. v. McGraw*, 788 S.E. 2d 319, 327 (W. Va. 2016). Even if the statute is viewed as "coextensive with the full reach of due process," *In re Celotex Corp.*, 124 F.3d at 627–28, personal jurisdiction is clearly lacking here. Due Process requires a defendant to have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted). "Each defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).[12]

Personal jurisdiction may be either general or specific. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). For general jurisdiction, the "paradigm forum" for natural persons is the individual's domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation marks omitted). But here Blankenship does not allege—nor could he—that

---

[12] Hence, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton*, 465 U.S. at 781 n.13.

Lockhart or Cupp are domiciled in West Virginia.  Rather, they live in New York and Connecticut.  *See* Am. Compl. ¶¶ 78, 105; Ex. 11 at ¶ 3(Lockhart Aff.); Ex. 10 at ¶ 3 (Cupp Aff.).

That leaves only specific jurisdiction, which requires "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).  The question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.* at 290 (emphasis added).  Courts in the Fourth Circuit consider: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quotation marks omitted).

None of those factors weighs in favor of personal jurisdiction here.  To begin with, neither Cupp nor Lockhart conducted any relevant "activities in the state" at all.  *Id.*  The episode of *CNN Tonight* that Lockhart appeared on was entirely produced and recorded in New York, as were the episodes of *Unfiltered* in which Cupp appeared.  *See* Ex. 11 at ¶ 13; Ex. 10 at ¶ 13.

Likewise, neither Lockhart nor Cupp "expressly aimed or directed [his or her] conduct toward the forum state."  *Young*, 315 F.3d at 262.  Despite briefly discussing Blankenship and the West Virginia primary, they did so in the context of shows addressing numerous issues in national politics, directed at a national audience.  *See* Ex. 7; Ex. 8; Ex. 9.  The comments by Lockhart, a former White House Press Secretary, focused on President Trump's tweets regarding Blankenship's campaign, and Lockhart went on to provide further political commentary relating to President Trump unrelated to Blankenship.  Ex. 8.  Cupp similarly discussed Blankenship's campaign in the context of national Republican politics and President Trump, and his campaign

19

was one of many national topics addressed by Cupp during the two *Unfiltered* episodes.  Ex. 7; Ex. 9.  Their "general thrust and content" was not focused on West Virginia, and they were not published "with the manifest intent of targeting" a West Virginia audience.  *Young*, 315 F.3d at 264; *see also, e.g.*, *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 943–44 (4th Cir. 1994) ("jurisdiction must rest on a person's activity deliberately directed toward the forum state").

Ultimately, it would simply not be reasonable to hale Cupp and Lockhart into West Virginia court on the basis of one-word stray references to "felon" in the midst of their national political commentary addressed to a national audience.  If that were enough to subject an individual to personal jurisdiction, then there would effectively be no limits on where TV journalists and other commentators could be subject to suit.

Indeed, courts reviewing publications like these have repeatedly refrained from exercising personal jurisdiction over a non-resident defendant if the publication did not target a forum state audience.  *See Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 772 (N.D. Tex. 2007) (no personal jurisdiction over Jon Stewart in defamation case, as "[t]he piece was not directed at viewers of *The Daily Show* in Texas, but was broadcast nationwide" and there was no evidence that Texas was the focal point); *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) ("the post to the bulletin board here was presumably directed at the entire world . . . certainly it was not directed specifically at Texas"); *Falwell v. Cohn*, 2003 WL 751130, at *3 (W.D. Va. Mar. 4, 2003) ("the contents of [the] web site do not demonstrate a manifest intent to expressly target a Virginia audience" because the "web site is not aimed at a Virginia audience.  Instead, it addresses a national audience").

In short, Blankenship has not met his burden of establishing personal jurisdiction.

## **CONCLUSION**

For the foregoing reasons, the claims in the Complaint should be dismissed with prejudice with respect to each of the CNN Defendants.

20

Dated:  August 16, 2019

Respectfully submitted,

By: /s/ Brian A. Glasser

BAILEY GLASSER LLP

Brian A. Glasser WV # 6597
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com

WILLIAMS & CONNOLLY LLP

Kevin T. Baine DC # 238600
Stephen J. Fuzesi DC # 496723
Sarah Golabek-Goldman DC # 1047833
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbaine@wc.com
sfuzesi@wc.com
sgolabek-goldman@wc.com

*Attorneys for CNN Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2019, I electronically filed the foregoing Memorandum of Law in Support of CNN Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, and that I have mailed the document by United States Postal Service to the non-CM/ECF participants identified in the Notice of Electronic Filing that will be generated upon the filing of this document.

Dated:  August 16, 2019                                    By: /s/ Sarah Golabek-Goldman
                                                                       *Attorney for CNN Defendants*