**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

DON BLANKENSHIP,

      *Plaintiff*,

v.                                Case No. 2:19-cv-00236

ANDREW NAPOLITANO, *et al.*,

      *Defendants*.

**MEMORANDUM OF LAW IN SUPPORT OF
INDIVIDUAL FOX NEWS DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2) AND
<u>FOR INSUFFICIENT SERVICE OF PROCESS UNDER RULE 12(B)(5)</u>**

In his complaint against more than 100 defendants, failed U.S. Senate candidate Don Blankenship names six individuals who allegedly defamed him on programs broadcast by Fox News Network, LLC:  Judge Andrew Napolitano; Neil Cavuto; Bradley Blakeman; John Layfield; Stephanie Hamill; and Elizabeth MacDonald (collectively, the "Individual Fox News Defendants").  Each allegedly defamatory statement related to Blankenship's criminal history and occurred during Fox News's coverage of the 2018 U.S. congressional elections.

The Court should dismiss the Individual Fox News Defendants for lack of personal jurisdiction.  *First*, Due Process does not permit jurisdiction over these out-of-state individuals because they lack actual contacts with West Virginia and did not intentionally "aim" their statements at a West Virginia audience.  *Young v. New Haven Advocate*, 315 F.3d 256, 258–59 (4th Cir. 2002).  All of the identified statements were directed to a *national* audience—they occurred on national television during discussions of national issues.  And as courts have long recognized, there is no nationwide jurisdiction over defamation claims.  *Second*, Blankenship

1

fails to allege *any* facts that would satisfy West Virginia's long-arm statute.  His bald assertion that each of the 100-plus defendants engaged in qualifying conduct is patently insufficient.

Separately, the Court should dismiss four of these defendants under Rule 12(b)(5) for lack of proper service.  As for Napolitano, Blakeman, and Hamill, Blankenship missed Rule 4's 90-day service deadline after waiting more than 60 days even to seek the necessary summonses. As for MacDonald, Blankenship left a summons with someone at her apartment building, a method not permitted under federal, West Virginia, or New York service rules.  For these four defendants, Rule 12(b)(5) provides an independent ground for dismissal.

## BACKGROUND

I.    **The Individual Fox News Defendants reference Blankenship's criminal history while discussing national issues on national television.**

In October 2015, Blankenship was convicted of a misdemeanor for conspiring to violate mine safety laws.  After a mine explosion killed 29 of his employees in 2010, Blankenship was indicted in this Court on three felonies and a misdemeanor.  *See* Am. Compl. (ECF 14) ¶¶ 136, 141.  Following a trial, a jury found him guilty of the misdemeanor and acquitted of the felonies. *Id.* ¶ 143.  Judge Berger sentenced him to serve a year in prison, which Blankenship admits "never (or virtually never)" happens to misdemeanants.  *Id.* ¶ 11.  *See also id.* ("Mr. Blankenship may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor.").

Blankenship alleges that each of the 100-plus defendants defamed him by misrepresenting his criminal history in statements made during the 2018 West Virginia Senate Republican primary (the "West Virginia Primary").  According to Blankenship, these acts were part of a "clandestine campaign" "set in motion" by Senate Majority Leader Mitch McConnell. *See, e.g.,* Am. Compl. (ECF 14) ¶ 2–5.  This campaign allegedly united "the DC establishment

'swamp'" and "[t]he entire establishment media spectrum" in a "search and destroy mission" that involved each of the 100-plus defendants misstating Blankenship's criminal history on television, newspapers, and the Internet.  *See id.* ¶¶ 2, 4, 162–221.

The Individual Fox News Defendants allegedly defamed him in the following ways:

**Andrew Napolitano.**  On April 25, 2018, Judge Napolitano appeared as part of a panel on *Outnumbered*, a one-hour Fox News Channel program that regularly airs nationwide.  *See* Am. Compl. (ECF 14) ¶ 157; Exh. 6 ¶ 8.  During a segment on the upcoming federal midterm elections, Exh. 12 at 36:02–04,[1] Judge Napolitano mentioned that Blankenship went to jail for "manslaughter," Am. Compl. (ECF 14) ¶ 156.  Judge Napolitano opined that the National Republican Committee might prefer Senator Joe Manchin, the incumbent Democrat, over Blankenship.  Exh. 12 at 35:12–17.  The panel also discussed Senator Susan Collins, a Republican from Maine, and whether legislators generally take direction more from party leaders or their constituents.  *Id.* at 36:20–38:14.  At the end of the segment, a panelist reminded viewers that Fox News was "America's [election] headquarters."  *Id.* at 39:08–09.

**Neil Cavuto.**  On May 7, 2018, Cavuto appeared on *Cavuto: Coast to Coast*, a two-hour Fox Business Network program that regularly airs nationwide.  Am. Compl. (ECF 14) ¶ 166; Exh. 2 ¶ 8.  Cavuto's panel mentioned the West Virginia Primary during two segments spanning

---

[1] Blankenship's complaint provides only truncated quotations from the allegedly defamatory broadcasts, and this Court is entitled to consider the surrounding statements for context.  *See Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006) (explaining that the court was entitled to consider, "even at the Rule 12(b)(6) stage," an article that was "clearly integral to, and . . . relied upon in," the complaint, since authenticity was not challenged).  Accordingly, the Individual Fox News Defendants have provided, as Exhibits 8–12 certified transcripts of the entire segment containing each allegedly defamatory statement, along with an additional segment before and after.  The Individual Fox News Defendants have also provided a USB flash drive containing full-length videos of the broadcasts that contain each statement.  Exh. 13.  *See also* Exh. 7 (declaration vouching for authenticity of exhibits).

approximately eight total minutes.  Exh. 13; Exh. 8 at 14:13–22:09.  In the first, Cavuto asked

whether this primary, which included a "convicted felon," could contribute to a "blue wave"

encompassing other states like Alabama and Pennsylvania.  *Id*. at 14:16, 17:01.  The panel

discussed the impact of a "blue wave" on the U.S. Senate, U.S. House of Representatives,

national politics, and the national economy. *Id*. at 15:01–16:22.  In the second segment, Cavuto

again referred to Blankenship as a "convicted felon" when discussing President Trump's fear

that Blankenship would lose that fall in the midterm general election.  *Id*. at 17:15.  The panel

then discussed the impact of the West Virginia Primary on the Republicans' "slim . . . majority"

in the U.S. Senate, at one point showing a graphic identifying U.S. congressional primary races

in four states.  *Id*. at 19:18; Exh. 13.

**John Layfield and Bradley Blakeman.**  On May 7, 2018, Layfield and Blakeman

appeared on *The Evening Edit*, a one-hour Fox Business Network program that regularly airs

nationwide.  Am. Compl. (ECF 14) ¶ 168; Exh. 1 ¶ 8; Exh. 4 ¶ 8.  During a two-minute segment

on the West Virginia Primary, both Layfield and Blakeman referred to Blankenship as a felon.

Am. Compl. (ECF 14) ¶ 168; Exh. 9 at 51:22, 52:21.  They addressed President Trump's

comparison of Blankenship to Roy Moore, a failed United States Senate candidate in Alabama in

a 2017 special election, and discussed whether American voters were increasingly willing to vote

for controversial candidates.  *Id*. at 51:19–53:06.

**Stephanie Hamill.**  On May 8, 2018, Hamill appeared on *Making Money*, a one-hour Fox

Business Network program that regularly airs nationwide.  Am. Compl. (ECF 14) ¶ 167; Exh.

13; Exh. 3 ¶ 8.[2]  In a five-minute segment, panelists discussed U.S. congressional primaries in

_____

[2] Blankenship's complaint incorrectly alleges that this statement occurred on May 7,
2018.  *Compare* Am. Compl. (ECF 14) ¶ 167 *with* Exh. 3 ¶ 8 *and* Exh. 11 at 88:19–22.

four states, including West Virginia (which had "garnered the most national attention"), and their "impact on the balance of the United States Senate." Exh. 11 at 86:03–87:14. When asked whether a Blankenship victory in the West Virginia Primary would "have negative implications beyond West Virginia," Hamill mentioned that he was a "convicted felon" as part of her response. *Id*. at 88:22. The panel then discussed campaign strategies of Republican candidates broadly for the midterm general election, including in Indiana and Ohio. *Id*. at 89:09–90:20.

**Elizabeth MacDonald.** On May 9, 2018 (the day after the West Virginia Primary), MacDonald also appeared on *The Evening Edit*. Am. Compl. (ECF 14) ¶ 196. She mentioned Blankenship in a five-minute "News Alert," which began by identifying four states that had recently held Republican congressional primaries. Exh. 10 at 64:01–05; Exh. 13. One panelist opined that the West Virginia Primary demonstrated an "anti-establishment undercurrent . . . going on around the country" and that the national Republican Party was having to play "whack-a-mole" with controversial candidates like Blankenship. Exh. 10 at 65:06–14. In discussing whether controversial figures can fairly represent entire political parties, MacDonald referred to Blankenship as a felon. Am. Compl. (ECF 14) ¶ 196; Exh. 10 at 65:18–66:02. The panel then discussed the reliability of public polling in the context of the West Virginia Primary and the 2016 presidential election. *Id*. at 66:11–68:12.

## II.     Blankenship attempts service on Napolitano, Blakeman, Hamill, and MacDonald.

Blankenship filed this defamation action in Mingo County Circuit Court in March 14, 2019. *See* Notice of Removal (ECF 1) ¶ 1. In the original complaint, he named more than two dozen defendants, including Fox News and five of the six Individual Fox News Defendants (Napolitano, Cavuto, Layfield, Blakeman, and Hamill). Compl. (ECF 1-1). Within 24 hours, Blankenship publicized the lawsuit on multiple social-media platforms, and his attorneys issued a press release. *See* Def.'s Opp. to Mot. to Remand (ECF 15) at 3. Two weeks later, on March

29, Fox News timely removed the matter to this Court based on complete diversity.  Notice of

Removal (ECF 1).  Blankenship did not attempt service on any defendant while the case was in

state court.

Eleven days after removal, Blankenship filed his First Amended Complaint.  This

complaint names more than 100 media-related defendants, including the previous Fox News

defendants and adding Fox News contributor Elizabeth MacDonald.  Am. Compl. (ECF 14)

¶ 196.

The Amended Complaint devotes just two paragraphs to personal jurisdiction.  *Id.* ¶¶ 27–

28.  The first recites the seven bases for jurisdiction under West Virginia's long-arm statute, and

asserts that "the Defendants, and each of them," satisfies each basis.  *Id.* ¶ 27.  The second

alleges that West Virginia courts have jurisdiction because the allegedly defamatory statements

focused on West Virginia and produced effects there.  *Id.* ¶ 28.

More than halfway through the 90-day period to serve original-complaint defendants,

Blankenship began intermittently requesting summonses for small groups of defendants.  The

first tranche included Fox News, whose summons he received May 20.  *See* Submitted Summons

(ECF 17); Issued Summons (ECF 18).  Two weeks later, Blankenship requested summonses for

Napolitano, Cavuto, Layfield, and Blakeman.  *See* Submitted Summonses (ECF 32–35).

Roughly another week later, he requested summonses for Elizabeth MacDonald and Stephanie

Hamill.  *See* Submitted Summonses (ECF 39–40).

By the 90-day deadline to serve any defendant named in the original complaint (June 27),

Blankenship still had not served Napolitano, Blakeman, Hamill, or MacDonald.[3]  At 5:21 p.m.

---

[3] Fox News, Cavuto, and Layfield do not contest the sufficiency or timeliness of service
of the amended complaint.

that day, he asked the Clerk of Court to serve Napolitano, Blakeman, and Hamill by certified mail. *See* Letter from Jeremy Gray to Clerk of Court (ECF 90). The Clerk sent them by certified mail the next day, *see* Certified Mail Receipts (ECF 96), and Blakeman and Napolitano received their summonses the next week on July 4 and 8, respectively, *see* Exh. 1 ¶ 12 (Blakeman)[4]; Returned Certified Mail Receipt (ECF Nos. 122) (Napolitano).

As to Hamill, Blankenship provided the Clerk of Court with the wrong address, and she did not receive the summons until on or around July 8. Rather than sending the summons to Hamill's home in Washington, D.C., Blankenship had asked the Clerk to mail it to Hamill's parents' home in Arizona. *Compare* Am. Compl. (ECF 14) ¶ 81 (identifying Hamill's domicile as Washington, D.C.), *with* Submitted Summons (ECF 93) (submitting a summons for Hamill to be sent by certified mail to a Tucson, Arizona address). Hamill's mother Mina received and signed the certified delivery in Arizona on July 2. *See* Returned Certified Mail Receipt (ECF 118). Blankenship realized his error that same day and submitted a third summons for Hamill, this time to be sent by certified mail to Washington, D.C. *See* Submitted Summons (ECF 111). Hamill received the summons a few days later. *See* Exh. 3 ¶ 12.[5]

In the meantime, Blankenship left MacDonald's summons with an employee of her apartment building in New York on June 28. *See* Exh. 5 ¶ 12.[6] Blankenship did not ask the

---

[4] Blankenship has not yet filed proof of service for Blakeman as required by Rule 4(l).

[5] Blankenship has not yet filed proof of service for Hamill as required by Rule 4(l).

[6] Blankenship has not yet filed proof of service for MacDonald as required by Rule 4(l).

Clerk to send a certified mailing of the summons to MacDonald and has not otherwise tried to serve MacDonald.[7]

## ARGUMENT

## I.     The Court lacks personal jurisdiction over the Individual Fox News Defendants.

In West Virginia, courts "must use a two-step approach" to ensure that personal jurisdiction satisfies both constitutional Due Process and West Virginia's long-arm statute.  Syl. pt. 3, *State ex rel. Ford Motor Co. v. McGraw*, 788 S.E.2d 319, 322 (W. Va. 2016) (internal quotation marks and citation omitted).  A plaintiff must prove jurisdiction over each defendant by a preponderance of the evidence.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  With respect to the Individual Fox News Defendants, Blankenship has failed to clear either hurdle.

### A.     Exercising jurisdiction would violate Due Process.

Blankenship's allegations do not pass constitutional muster.  Due Process permits "specific" personal jurisdiction only over defendants with "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).[8]  "[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the

---

[7] The deadline for serving MacDonald has also passed.  She was first named on April 19, 2019, in the Amended Complaint, so her service deadline was July 18, 2019 (90 days later).

[8] Due process also permits "general" personal jurisdiction over defendants domiciled or served in the forum state.  *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014); *Burnham v. Superior Court of California*, 495 U.S. 604, 627–28 (1990).  That does not apply here— Blankenship does not allege that any Individual Fox News Defendant was domiciled or served in West Virginia.

forum State.'"  *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781

(2017).  Here, Blankenship does not specifically allege any such *actual* contacts between the

Individual Fox News Defendants and West Virginia, because none exist, *see infra* Section I.B.

Rather, he relies mainly on the "West Virginia effects" of the allegedly defamatory comments.

Am. Compl. (ECF 14) ¶ 28.  But that basis for specific jurisdiction—deriving from *Calder v.*

*Jones*, 465 U.S. 783 (1984)—requires proof that defendants intentionally "direct[ed]" or "aimed"

their content at "a [forum-state] audience." *Young v. New Haven Advocate*, 315 F.3d 256, 263

(4th Cir. 2002).  The Individual Fox News Defendants did not direct their comments to West

Virginians.

In *Young*, the Fourth Circuit found specific jurisdiction lacking over defendants that "did

not manifest an intent to aim their websites or the posted articles at a Virginia audience." *See id.*,

315 F.3d at 290.  Interpreting *Calder*, the Fourth Circuit rejected the argument that Due Process

was satisfied merely because the alleged harm was felt in the forum state.  *Id.* at 262.  Instead, it

emphasized "how important it is in light of *Calder* to look at whether the defendant has expressly

*aimed* or *directed* its conduct toward the forum state." *Id* (emphasis added).  That meant the

critical inquiry was "whether the newspapers manifested an intent to direct their . . . articles . . .

to a Virginia audience."  *Id.* at 263.  It was not enough that these articles "could be accessed

anywhere, including Virginia," because that would make the defendants "'subject to personal

jurisdiction in every State.'"  *Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293

F.3d 707, 712 (4th Cir. 2002)).  Rather, the defendants had to "manifest an intent to target and

focus on Virginia readers," and they had not.  *Id.*

Merely discussing a forum state does not establish an intent to target readers or viewers

there.  Although the articles at issue in *Young* touched on the conditions at a Virginia prison to

which Connecticut prisoners were transferred, the "focus of the articles" was on "the Connecticut transfer policy and its impact on the transferred prisoners and their families back home in Connecticut." *Id.* That made the articles "aimed at a Connecticut audience." *Id.* at 263–64. The discussion of Virginia did not, by itself, "manifest an intent to target and focus on Virginia readers." *Id*. at 262. *See also Williams v. Adver. Sex LLC,* No. 1:05CV51, 2009 WL 723168, at *9 (N.D.W. Va. Mar. 17, 2009), *rev'd on other grounds*, 410 Fed. Appx. 578 (4th Cir. 2011) ("[T]he use of Williams's name and the name of West Virginia, and even her title as a former Miss West Virginia, are insufficient to endow the websites with the requisite local West Virginia character such that it can be said the Default Defendants targeted an audience in this state."). So, too, here. It is not enough that the Individual Fox News Defendants discussed West Virginia.

The question is whether the Individual Fox News Defendants "directed" or "aimed" their statements at West Virginia viewers, and they did not. *See Young*, 315 F.3d at 263. They directed their statements at a *national* audience. Each of the programs on which the statements occurred was one to two hours long and covered a wide-range of topics of national interest, among which was just a few minutes discussing the West Virginia Primary and its import to larger, national issues. These were not broadcasts of the local news—these programs are broadcast nationwide for national audiences on topics of national interest. *See* Background, Section I, *infra*. As stated in Napolitano's segment, Fox News is "*America's* [election] headquarters." Exh. 12 at 39:09 (emphasis added); Exh. 13.

Several of the broadcasts discussed the impact of the West Virginia Primary on the overall composition of Congress. Cavuto discussed Blankenship in the context of a "blue wave" that encompassed other states, which could impact the national economy and both houses of Congress. *E.g.*, Exh. 8 at 14:18–22:09. Cavuto, Hamill, and MacDonald discussed the West

10

Virginia Primary in the context of congressional primaries in three other states. *E.g.*, *id.*; Exh. 10 at 64:01–65:14. For example, Hamill was specifically asked about the negative implications of this primary "beyond West Virginia," and her panel also discussed Republican primaries in Indiana and Ohio. Exh. 11 at 88:09–10.

The other broadcasts discussed whether controversial candidates like Blankenship were good for the Republican Party as a whole. Napolitano, Layfield, and Blakeman compared Blankenship to Roy Moore, and questioned whether Blankenship's criminal history could turn off voters in the general election. *E.g.*, Exh. 9 at 52:12–16; Exh. 12 at 36:20–37:21; Exh. 13. On MacDonald's broadcast, the National Republican Committee was described as having to play "whack-a-mole" with controversial candidates around the country. Exh. 10 at 65:06–14.

These kinds of statements targeting a national audience are not "aimed" at a forum state, and are thus insufficient to establish specific jurisdiction under *Young* and *Calder*. District courts in this Circuit have consistently dismissed defamation cases under *Young* when the relevant statements target a national audience. *KMLLC Media, LLC v. Telemetry, Inc.*, No. 1:15-cv-432, 2015 WL 6506308, at *10 (E.D. Va. Oct. 27, 2015) (report "targeted the entire online advertising industry," which "spans the Internet, not just Northern Virginia (or wherever Plaintiff was domiciled)"); *Fertel v. Davidson*, No. CCB-13-2922, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013) (statements were not "meant for a Maryland audience, as opposed to a national or even a global audience"); *Burleson v. Toback*, 391 F. Supp. 2d 401, 415 (M.D.N.C. 2005) (statements "target and focus on individuals interested in miniature horses all over the world, no matter what their geographic location"); *Falwell v. Cohn*, No. 6:02-cv-00040, 2003 WL 751130, at *3 (W.D. Va. Mar. 4, 2003) (website "addresses a national audience" without "a manifest intent to expressly target a Virginia audience"); *cf. ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625

11

(4th Cir. 1997) (affirming dismissal for lack of personal jurisdiction when defendant "focused its [sales] activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina") (citing *Calder*, 465 U.S. at 789).  This Court should do the same, consistent with the long-recognized principle that "[t]here is no nationwide jurisdiction for defamation actions."  *Mallinckrodt Med., Inc. v. Sonus Pharm., Inc.*, 989 F. Supp. 265, 273 (D.D.C. 1998) (citing *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996)).

Moreover, unlike in *Calder*, the Individual Fox News Defendants did not rely on any forum-state sources.  In *Calder*, the Supreme Court relied in part on the fact that "[t]he article was drawn from California sources."  465 U.S. at 788.  Here, none of the Individual Fox News Defendants relied on any sources in West Virginia, and Blankenship does not claim otherwise. *See* Exh. 6 ¶ 10; Exh. 2 ¶ 10; Exh. 1 ¶ 10; Exh. 4 ¶ 11; Exh. 3 ¶ 10; Exh. 5 ¶ 10.

In sum, each Individual Fox News Defendant should be dismissed under Rule 12(b)(2). They discussed or mentioned Blankenship for a few minutes during nationally televised programs covering issues of national importance based on sources outside of West Virginia. None of these out-of-state communications showed "the manifest intent of targeting" a West Virginia audience. *Young*, 315 F.3d at 264.  To conclude otherwise would expose hosts, commentators, and journalists on nationally televised broadcasts discussing matters of national interest to the possibility of being dragooned into the courts of any state in the country for merely covering or mentioning issues arising out of a particular state.

### B.   Jurisdiction is not authorized by West Virginia's long-arm statute.

Due Process aside, Blankenship does not even try to satisfy West Virginia's long-arm statute, W. Va. Code Ann. § 56-3-33.  He asserts *en masse* that all of the 100-plus defendants satisfy each statutory basis.  *See* Am. Compl. (ECF 14) ¶ 27 (alleging "personal jurisdiction over

each defendant" by listing the requirements of § 56-3-33).  This boilerplate recitation epitomizes the kind of threadbare allegation that fails to support personal jurisdiction.  *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (affirming 12(b)(2) dismissal and the refusal to allow jurisdictional discovery when the plaintiff "offers only speculation or conclusory assertions about contacts with a forum state"); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 674 F.3d 369, 377 (4th Cir. 2012) ("A 'formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Nor could Blankenship satisfy the statute if he tried.  The only factor that could conceivably apply here is (a)(4):

> Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

W. Va. Code Ann. § 56-3-33(a)(4).[9]  This factor contains "two basic requirements":

---

[9] The other factors under W. Va. Code Ann. § 56-3-33.are:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
. . .
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: *Provided*, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

13

(1) a tortious injury in West Virginia that is caused by an out of state act or omission, and
(2) a relationship between the defendant and West Virginia exists in any of the three manners specified in subsection (4).

*Hill by Hill v. Showa Denko, K.K.*, 425 S.E.2d 609, 615 (W. Va. 1992).  Even assuming that Blankenship could satisfy the first requirement, he could not satisfy the second.  None of the Individual Fox News Defendants has engaged in any regular business activity or "persistent course of conduct" in West Virginia.  Exh. 6 ¶¶ 2–6; Exh. 2 ¶¶ 2–6; Exh. 1 ¶¶ 2–6; Exh. 4 ¶¶ 2–6; Exh. 3 ¶¶ 2–6; Exh. 5 ¶¶ 2–6.  Aside from the rare vacation or quick trip many years ago, none of them has set foot in West Virginia.  *See id.*  Blankenship does not claim otherwise.

Blankenship may argue that he need not separately satisfy West Virginia's long-arm statute because it reaches everywhere Due Process allows.  But the West Virginia Supreme Court has repeatedly held that courts "*must use a two-step approach when analyzing whether personal jurisdiction exists.*"  Syl. pt. 3, *Ford Motor Co.*, 788 S.E.2d at 322 (emphasis added); Syl. pt. 1, *Nezan v. Aries Techs., Inc.*, 704 S.E.2d 631, 633 (W. Va. 2010) (same).  The long-arm statue "details seven circumstances" necessary to provide jurisdiction in West Virginia.  *Nezan*, 704 S.E.2d at 639.  *See also State ex rel. W. Va. Nat'l Auto Ins. Co., Inc. v. Bedell*, 672 S.E.2d 358, 363 (W. Va. 2008) (statute provides "certain enumerated acts" that confer jurisdiction).  Those provisions "would be superfluous if the Legislature intended that any activity that is constitutional also satisfy [the statute]."  *Green v. Wilson*, 565 N.W.2d 813, 817 (Mich. 1997).

The Fourth Circuit does not and cannot require otherwise.  It has twice said that "the West Virginia long-arm statute is coextensive with the full reach of due process."  *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987).  But the statement in *Celotex* was dicta, since the court found

that Due Process was not satisfied.  124 F.3d at 629.[10]  And in *Pittsburgh Terminal*, the

defendants did not dispute that the long-arm was coextensive with Due Process, 831 F.2d at 525,

and the court went on to conclude that both Due Process *and* the long-arm statute were satisfied,

*id.* at 528–30.  In any event, both statements have been superseded by *Ford Motor* and *Nezan*,

where the West Virginia Supreme Court clearly held that a statutory analysis is separately

required.  *See Derflinger v. Ford Motor Co.*, 866 F.2d 107, 110 (4th Cir. 1989) (stating that

federal precedent is not binding when "a subsequent state court decision or statutory amendment

which makes this Court's prior decision clearly wrong") (internal quotation marks and citation

omitted).

Accordingly, even if exercising jurisdiction over the Individual Fox News Defendants

could satisfy Due Process, it could not satisfy West Virginia's long-arm statute.

## II.     Service was improper as to Napolitano, Blakeman, Hamill, and MacDonald.

Independently, four of the Individual Fox News Defendants should be dismissed for

improper service.  Blankenship "bears the burden of establishing that the service of process has

been performed in accordance with the requirements of Federal Rule of Civil Procedure 4."

*Ballard v. PNC Fin. Servs. Grp., Inc.*, 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009) (Johnston,

J.) (internal quotation marks omitted).  Failure in that regard "deprives the court of personal

jurisdiction over the defendant."  *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998).  Here,

---

[10] *See also Petroleum Helicopters, Inc. v. Avco Corp.,* 513 So. 2d 1188, 1191 (La. 1987)
(rejecting as dicta prior statements that long-arm statute was "coextensive" with due process
because the court had never considered "a case which squarely fell between the statutory reach
of the literal provisions of the long-arm statute and the constitutional reach of due process");
*Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616–17 (5th Cir. 1989) (rejecting similar
statements as dicta); *Howell v. Komori Am. Corp.,* 816 F. Supp. 1547, 1550 (N.D. Ga. 1993)
(rejecting similar statements as dicta because "in all of these cases the [relevant conduct] met one
of the statutory requirements").

Blankenship's service on Napolitano, Blakeman, and Hamill was untimely under Rule 4(m), and his service on McDonald was insufficient under Rule 4(e).  As to these four defendants, Rule 12(b)(5) provides a separate and additional ground for dismissal.

### A. Blankenship failed to timely serve Napolitano, Blakeman, and Hamill.

There is no question that Blankenship's service on Napolitano, Blakeman, and Hamill was untimely.  Rule 4(m) dictates a 90-day deadline for service.  In removed cases, that deadline "'starts to run upon removal to the federal district court.'"  *Workman v. Bissessar*, 275 F. Supp. 3d 263, 269 (D.D.C. 2017) (quoting 4B Wright, Miller & Steinman, Fed. Prac. & Proc. § 1137, p. 238 (2015)); *see, e.g.*, *Randolph v. Hendry*, 50 F. Supp. 2d 572, 579 (S.D. W. Va. 1999) (Goodwin, J.) (applying previous 120-day deadline under federal rules).  Fox News removed the case on March 29, 2019, making Blankenship's service deadline June 27, 2019.  He did not serve Napolitano, Blakeman, or Hamill until July 4 or later.

The only question is how this court should respond.  There are two options: forgive the offense by extending the time for service, or dismiss the complaint without prejudice.  Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days . . . the court … must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Here, dismissal is the appropriate response, as there are no grounds for extending the time for service.

"[W]hen the plaintiff can show good cause for his failure to serve," an extension of time for service is required.  *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 306 (4th Cir. 2016) (per curiam) (citing Fed. R. Civ. P. 4(m) and *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995)). The good-cause standard requires weighing six factors:

> whether: 1) the delay in service was outside the plaintiff's control, 2) the defendant was evasive, 3) the plaintiff acted diligently or made reasonable efforts, 4) the plaintiff is pro se or in forma

16

> pauperis, 5) the defendant will be prejudiced, or 6) the plaintiff
> asked for an extension of time under Rule 6(b)(1)(A).

*Id.*; *see, e.g.*, *Greenbrier Hotel Corp. v. ACE Am. Ins. Co.*, No. 2:19-cv-00118, 2019 WL

2353372, at *2–5 (S.D. W. Va. June 3, 2019) (Goodwin, J.) (applying these factors to dismiss

action without prejudice for failure to timely serve the complaint).

     These factors weigh uniformly against Blankenship.  Though Blankenship had a large

number of defendants to serve, he chose to wait nearly 50 days before requesting the first

summons, even though he immediately went about publicizing the lawsuit.  *See* Def.'s Opp. to

Mot. to Remand (ECF 15) at 3 (listing social media posts and media releases from Blankenship

and his media team about this litigation in March 2019).  With respect to the four Individual Fox

News Defendants in question, he waited more than 60 days before requesting the relevant

summonses.  *See* ECF 32, 34, 35 (submitting summonses for Napolitano, Blakeman, and Hamill

some 68, 69, and 76 days after removal, respectively).  Moreover, none of the defendants evaded

service, and Blankenship is represented by national and local counsel.  And though more than a

month has passed since he missed the service deadlines, Blankenship still has not asked the

Court to extend time or excuse the delay under Rule 6(b)(1).  *Cf. Greenbrier Hotel*, 2019 WL

2353372, at *3 ("The plaintiffs also have not even made an assertion that good cause exists.

How can I then find good cause for their failure to timely serve the defendants?").  For all these

reasons, this Court is not required to grant an extension of time for service.

     Some district courts in this Circuit have concluded that even where good cause is lacking,

they have the discretion to grant an extension.  *See id.* (collecting cases).  This is incorrect.

Fourth Circuit precedent—*Mendez*, 45 F.3d at 78—prohibits courts from granting an extension

absent a finding of good cause, as many courts have recognized.  *See, e.g., Martin v. S.C. Dept.

of Corrs.*, No. 0:19-59-MGL-PJG, 2019 WL 2124957, at *3 (D.S.C. Apr. 23, 2019), *report and*

*recommendation adopted*, No. 0:19-CV-059-MGL, 2019 WL 2122729 (D.S.C. May 14, 2019) (collecting cases).

Regardless, even if this court had discretion to grant an extension without good cause, it should not do so here.  Courts exercising discretion in such situations look to both the standard of "excusable neglect" and the Advisory Committee Notes to Rule 4(m).  *See Greenbrier Hotel*, 2019 WL 2353372, at *4.  Neither source justifies an extension here.

*First*, Blankenship does not satisfy the standard for excusable neglect.  That standard "is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996) (internal quotation marks omitted).  And it has no role when the party seeking an exception to the rule "fail[ed] to act with diligence." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 413 (4th Cir. 2010).  Here, as just explained, Blankenship failed to act with diligence.

*Second*, the Advisory Committee notes do not help Blankenship.  According to the Committee, a district court might extend a missed service deadline "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."  Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments.  As noted above, none of the defendants evaded service.  And although the one-year limitations period has now run on the Individual Fox News Defendants, that fact alone should not be enough to save Blankenship from a predicament of his own unique creation. *See Defreitas v. Montgomery Cty.*, No. PWG-12-2893, 2014 WL 31885, at *4 (D. Md. Jan. 3, 2014) (rejecting the running of the limitations period as a "reasoned basis" for excusing untimely service). *He* chose to name 100-plus defendants that have virtually nothing to do with each other in a single complaint, and *he* chose to squander more than half of his 90-day period to complete

service before requesting his first summons.  "If there are no consequences for failure to meet the service deadline," then the very policy underlying the deadline "will be undermined."  *T & S Rentals v. United States*, 164 F.R.D. 422, 426 (N.D. W. Va. Jan. 19, 1996) (rejecting the running of limitations period as an excuse for extending service deadline).

### B.    Blankenship failed to properly serve MacDonald under Rule 4(e).

Blankenship was late serving Napolitano, Blakeman, and Hamill, but he has yet to properly serve MacDonald at all.  Rule 4(e)(2) lists three methods for serving an individual: personal delivery of the summons; service "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or service on a registered agent. Fed. R. Civ. P. 4(e)(2)(A)–(C).  Alternatively, service can be made under the rules of "the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In total, Blankenship had three available sets of rules for service:  the federal methods listed in Rule 4(e)(2); West Virginia's service rules; and the rules of the state where he attempted service on a defendant.  His attempt failed to satisfy any of the three.

*First,* Blankenship did not comply with the federal rules.  Rule 4(e)(2)(B) requires service at an individual's dwelling to be "with someone of suitable age and discretion *who resides there*." Fed. R. Civ. P. 4(e)(2)(B) (emphasis added). Blankenship's process server handed MacDonald's summons to a porter who works (but does not reside) in MacDonald's apartment building.  Exh. 5 ¶ 12.  Nor did MacDonald authorize any employee of her building to accept service on her behalf or otherwise act as her agent for accepting service of process.  *Id.*

*Second*, Blankenship failed to satisfy West Virginia's rules.  West Virginia's place-of-abode rule goes a step further than its federal analog by requiring delivery "to a member of the individual's family who is above sixteen years and by advising such person of the purport of the

19

summons and complaint."  W. Va. R. Civ. P. 4(d)(1)(B).  Service on an employee of an apartment building fails that standard.

*Third*, Blankenship did not meet New York's rules.  Although New York allows service by delivery to a non-resident person of "suitable age and discretion" at (but not necessarily living in) a defendant's "dwelling place or usual place of abode," the rule requires *more* before service is considered effective.  *See* N.Y. C.P.L.R. § 308(2).  Within twenty days of such a delivery, the defendant must mail the summons to the defendant at "her last known residence" or "actual place of business" and then file proof of service with the clerk of court.  *Id.*  Service is deemed complete ten days *after* that filing of proof.  *See id.*  Blankenship did not mail the summons to MacDonald, much less make any filing to that effect, and therefore did not comply with New York's service rules.  *See, e.g.*, *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 717 (S.D.N.Y. 1993) (finding delivery at residence ineffective when plaintiff failed to follow the mailing requirements of N.Y. C.P.L.R. § 308(2)).

Because Blankenship has yet to properly serve MacDonald, this Court should dismiss her from the action under Rule 12(b)(5).  There is no basis for an extension of time for service.  As explained, Blankenship has already missed the service deadline for multiple defendants because of his own lack of diligence.  His failures must carry consequences if the service rules are to have any meaning.

## CONCLUSION

For all these reasons, the Court should dismiss the amended complaint for lack of personal jurisdiction over Andrew Napolitano, Neil Cavuto, Bradley Blakeman, John Layfield, Stephanie Hamill, and Elizabeth MacDonald.  In the alternative, the Court should dismiss the amended complaint as to Andrew Napolitano, Bradley Blakeman, and Stephanie Hamill for untimely service of process and as to Elizabeth MacDonald for insufficient service of process.

Respectfully submitted,

**BRADLEY BLAKEMAN,**
**NEIL CAVUTO,**
**STEPHANIE HAMILL,**
**JOHN LAYFIELD,**
**ELIZABETH MACDONALD, and**
**JUDGE ANDREW NAPOLITANO,**

By Counsel:

/s/ J. Zak Ritchie_____
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of August 2019, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing to all CM/ECF participants and to other parties by U.S. Mail as follows:

Jim Heath
224 McCullough Blvd. N
Lake Havasu City, AZ 86403

J.W. Williamson
375 Old Highway 421 South
Boone, NC 28607

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)