UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**DON BLANKENSHIP,**
    **Plaintiff,**

                                     Civil Action No.: 2:19-cv-00236
                                     Judge John T. Copenhaver, Jr.

v.

**HONORABLE ANDREW NAPOLITANO (RET.),**
**et al.,**
    **Defendants.**

## DEFENDANTS' FEINBERG AND BREAKFAST MEDIA'S MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF UNDER THE D.C. ANTI-SLAPP ACT

In support of their special Motion for Relief Under the District of Columbia Anti-SLAPP Act of 2010, D.C. Code § 16-5502(a), Defendants Andrew Feinberg and Breakfast Media respectfully submit this Memorandum.

### PRELIMINARY STATEMENT

The D.C. Anti-SLAPP Act was enacted to deter "Strategic Lawsuits Against Public Participation" ("SLAPPs") – frivolous actions "filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226 (D.C. 2016) (citation omitted). Courts have recognized that "in the First Amendment area… if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) quoting *Washington Post v. Keogh*, 365 F.2d 965, 998 (D.C. Cir. 1966); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[f]orcing publishers to defend inappropriate suits [and bear the] costs and efforts required to defend

a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether."). The Act, like similar statutes passed by the legislatures of twenty-eight other states and Guam, is designed to "protect the targets of suits intended as a weapon to chill or silence speech." *Doe v. Burke*, 133 A.3d 569, 571 (D.C. 2016) (citation and quotation marks omitted). Therefore, Defendants believe it serves a necessary public imperative for this Court to grant this Motion.

This is a textbook SLAPP lawsuit. Plaintiff concedes he is a public figure. Amended Compl. ¶1. He admits the statements at issue were in the context of a heated U.S. Senate race (he was a candidate) and were allegedly put forward by political adversaries. *Id.* at ¶¶1-6. Without pleading facts specific to nearly any of the multitude of statements and defendants in this case, Plaintiff has targeted journalists, newspapers and media outlets creating a situation that the U.S. Supreme Court warned about in 1974: "a rule of strict liability that compels a publisher or broadcaster to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). The Amended Complaint itself makes the argument as to why the error on the part of many of the named defendants was a reasonable one: "**Mr. Blankenship may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor.**" Amended Compl. ¶11 (bolded for emphasis). But the case against Mr. Feinberg and his employer (Breakfast Media) is the most baseless of all because the young journalist did not call Mr. Blankenship a felon – he quoted Plaintiff's denial verbatim and simply asked a follow-up question months after a multitude of news outlets had misreported this detail.[1] As a small publisher, Defendant Feinberg owed no duty to fact-check these national outlets, but he went above and beyond providing Mr. Blankenship a platform to correct the record.

---

[1] https://twitter.com/AndrewFeinberg/status/998562208652111874

As set forth in Memorandum of Law in Support of Defendants Feinberg and Breakfast Media's Motion to Dismiss (hereinafter, "Memo of Law in Support of Motion to Dismiss"), Plaintiff's claims fail as a matter of law for a host of reasons including but not limited to: (a) Plaintiff failed to plead actual malice beyond mere conclusory assertions; (b) the alleged statement was a question and is therefore *ipso facto* non-actionable; (c) Plaintiff failed to plausibly plead the requisite emotional injury for a false-light claim; and (d) Plaintiff failed to plausibly plead the requisite elements of conspiracy and appeared to limit the averment of conspiracy to certain identified "Conspiracy Defendants" and "Conspiracy Does," neither of which include Feinberg and Breakfast Media. Defendants must endure "costly and time-consuming defamation litigation" simply because they undertook their civic duty to exercise their rights to report on matters of public concern. *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017). The D.C. Anti-SLAPP Act was intended to protect free expression and, as such, must be applied in this case. *Mann*, 150 A.3d at 1237-38.

This Court should dismiss the Amended Complaint and provide Defendants Feinberg and Breakfast Media with the opportunity to seek reimbursement of their attorney's fees and costs for defending against this meritless litigation.

## FACTUAL BACKGROUND

The relevant factual background to this case is set forth in detail in Defendants' "Memo of Law in Support of Motion to Dismiss," which is fully incorporated herein by reference. As set forth therein, West Virginia follows the *lex loci delicti* conflict of law doctrine pursuant to which D.C. law applies to Mr. Feinberg's tweet (allegedly imputed to his employer Defendant Breakfast Media) as well as the alleged statements made in the Amended Complaint. Motion to Dismiss Memo at 5-6.

**ARGUMENT**

The D.C. Anti-SLAPP Act accomplishes its "purpose to deter meritless claims filed to harass defendant[s] for exercising First Amendment rights" in two ways relevant to this litigation. *Mann*, 150 A.3d at 1239. First, the Act "**extend[s] substantive rights to defendants in a SLAPP**, providing them with the ability to file a special motion to dismiss that must be heard expeditiously by the court." *Id.* at 1235 (emphasis added). Once Defendants meet the *prima facie* burden of establishing that the claim arises from "advocacy on issues of public interest," D.C. Code § 16-5502(a), a court then reviews whether a "claim is likely to succeed on the merits." *Id.* § 16-5502(b). Second, the Act allows Defendants who prevail, in whole or in part, on such a motion to recover costs and attorneys' fees. *Id.* § 16-5504; *see Mann*, 150 A.3d at 1238 (explaining the "financial levies to deter a SLAPP plaintiff.").

The Court should apply the Act's provisions to this case, which meets the definition of claims arising from "act[s] in furtherance of the right of advocacy on issues of public interest" and because, for the reasons set forth in Defendants "Memo of Law in Support of Motion to Dismiss," Plaintiff's claims fail as a matter of law such that he cannot possibly show that he is "likely to succeed on the merits."

### I. THE D.C. ANTI-SLAPP STATUTE APPLIES IN FEDERAL COURT.

Courts sitting in diversity routinely applied the D.C. Anti-SLAPP Act from 2011 until 2015 based on the conclusion that the law's provisions were substantive and, therefore, fully applicable in federal court under the basic principles of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).[2]

---

[2] *See, e.g., Forras v. Rauf*, 39 F. Supp. 3d 45, 51-52 (D.D.C. 2014) (applying statute), *aff'd on other grounds*, 812 F. 3d 1102 (D.C. Cir. 2016); *Abbas v. Foreign Policy Grp.*, LLC, 975 F. Supp. 2d 1, 9-11 (D.D.C. 2013) (same), *aff'd in part on other grounds*, 783 F.3d 1328 (D.C. Cir. 2015); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 254 (D.D.C. 2013) (same).

However, in *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015), the D.C. Circuit split from the consensus of other Circuit Courts of Appeal that have confronted the issue of whether similar Anti-SLAPP statutes should apply in federal courts sitting in diversity.[3] The *Abbas* Court's interpretation of federal procedural law is unmistakably cogent, but the decision was predicated upon an inaccurate assumption about how the D.C. Court of Appeals, the final and highest authority on D.C. substantive law, would interpret the D.C. Anti-SLAPP Act's "likely to succeed on the merits" standard. *Id.* at 1335. Then-Circuit Judge Kavanaugh raised concern that this standard would place a "more difficult" burden on a plaintiff than Fed. R. Civ. P. 12(b)(6) and 56, and if this were so then it would undeniably be preempted by the Federal Rules of Civil Procedure pursuant to the *Erie* doctrine. *Id.* at 1335. The Court in *Abbas* made clear that its decision to not apply the D.C. Anti-SLAPP Act to federal courts sitting in diversity was predicated on this specific inaccurate assumption. *Id.* at 1335, n.3. ("we need not address that hypothetical here because, as we have explained, **the D.C. Anti-SLAPP Act's dismissal standard does not exactly mirror Federal Rules 12 and 56.**") (emphasis added).

Less than two years later, the D.C. Court of Appeals for the first time interpreted the phrase "likely to succeed on the merits" in *Competitive Enterprise Inst. v. Mann*, 150 A.3d 1213 (D.C. 2016). The *Mann* Court not only found that now-Justice Kavanaugh's assumption about how the D.C. Court of Appeals would read the Anti-SLAPP Act was inaccurate, but went so far as to say that to read the law as not simply mirroring Fed. R. Civ. P. 56 would raise constitutional Due Process concerns. *Id.* at 1236 (applying the canon of constitutional avoidance 'to interpret the phrase "likely to succeed on the merits," undefined in the D.C. Anti-SLAPP statute, in a manner that does not

---

[3] *See, e.g., Liberty Synergistics Inc v. Microflo Ltd.*, 718 F.3d 138, 148 (2d Cir. 2013*); Godin v. Schencks*, 629 F.3d 79, 89 n.16 (1st Cir. 2010); *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 170 (5th Cir. 2009).

5

supplant the role of the fact-finder, lest the statute be rendered unconstitutional.'). The Court further found that, as a matter of "first impression" the Act's "likely to succeed" standard is "substantively the same" and does "**simply mirror**" the standards imposed by Fed. R. Civ. P. 56. *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1220, 1238 n.32 (D.C. 2016) (noting the statement in *Abbas* that the D.C. Court of Appeals had never so held, and declaring **"[w]e do so now"**) (emphasis added). Further, of similar importance to an *Erie* analysis, the *Mann* Court also determined that the Act "was designed to protect targets of [] meritless lawsuits by creating '**substantive** rights with regard to a defendant's ability to fend off' a SLAPP. *Id.* at 1226 (emphasis added).

One year later, Chief Judge Howell of the U.S. District Court for the District of Columbia took note of the decision in *Mann* and explicitly warned that, "applying an outdated and incorrect interpretation of D.C. law by the D.C. Circuit would 'subvert the dual aims of *Erie*; discouraging forum shopping and promoting uniformity within any given jurisdiction on matters of local substantive law." *See Easaw v. Newport*, No. 17-cv-00028, 2017 WL 2062851, at *9 (D.C. May 12, 2017). Thus, "when a decision by the D.C. [Court of Appeals] clearly and unmistakably renders inaccurate a prior decision by the D.C. Circuit interpreting D.C. law, this Court should apply the D.C. [Court of Appeals'] more recent expression of the law." *Id.* at *10.

This is a correct position – while on the D.C. Circuit, now-Justice Kavanaugh's province was the interpretation of federal procedural law on which he did not err in his reading of the *Erie* doctrine, but his decision was predicated upon an outdated reading of D.C. substantive law on which the D.C. Court of Appeals, as the District of Columbia's highest judicial body, is the final authority. The D.C. Court of Appeals has read the statute as "simply mirror[ing]" Fed. R. Civ. P. 56 such that no conflict could possibly exist consistent with (not at odds with) now-Justice Kavanaugh's analysis of the *Erie* doctrine in *Abbas*. *Mann*, 150 A.3d at, 1238 n.32. This Court need not hold contrary to the *Abbas*

6

Court's analysis of the *Erie* doctrine and federal procedural law, but only apply the current D.C. Court of Appeals interpretation of D.C. law to now-Justice Kavanaugh's analysis of *Erie*.

In effect, the D.C. Court of Appeals interpreted the D.C. Anti-SLAPP Act in precisely the way that the defendants in *Abbas* understood the law and which does not create an *Erie* conflict:

> As they see it, the D.C. Anti-SLAPP Act therefore does not conflict with the Federal Rules' comprehensive scheme for testing the sufficiency of a complaint. And they further say that the state rules that answer the same question *in the same way* as the Federal Rules are not preempted under *Shady Grove*. Therefore, in their view, the D.C. Anti-SLAPP Act, taken as a whole, does not alter the standard for pre-trial dismissal or summary judgment but simply layers a right to attorney's fees in this category of cases on top of the existing federal procedural scheme. *See* D.C. Code § 16-5504 (D.C. Anti-SLAPP Act attorney's fees provision). *Abbas*, 783 F.3d at 1334.

Courts consistently hold that such fee-shifting provisions are substantive, and do not conflict with the Federal Rules. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed"); *United States v. One Parcel of Property Located at 414 Kings Highway*, 1999 WL 301704, at *4 (D.D.C. May 11, 1999) (citing *Alyeska* and noting that, "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law"); *Godin*, 629 F.3d at 86 n.10 & 89 n.15 (noting that the fee-shifting provision for a successful anti-SLAPP motion, like other "nominally procedural state rule[s] authorizing an award of attorney's fees as a sanction for obstinate litigation," is "substantive for purposes of *Erie* analysis").

Now-Justice Kavanaugh was correct that if the D.C. Anti-SLAPP Act required a civil plaintiff to meet a higher standard than that articulated in either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56 then this Court would be required to toss it aside – federal courts apply federal procedure. By contrast, where, as here, a state-level statute has been declared by that jurisdiction's highest state-level court as being wholly consistent with Fed. R. Civ. P. 56, and where a complaint is dismissed for failure to state a claim, the fee provision of that law (the D.C. Anti-SLAPP Act) clearly should apply. To rule otherwise would be to subvert the will of the D.C. legislature, as interpreted by the District of Columbia's highest court (Court of Appeals), which intended to confer a substantive benefit upon publishers in its jurisdiction and to deter frivolous lawsuits designed to silence free speech. At this point, to rule otherwise would, in fact, require overruling the United States Supreme Court decision in *Alyeska* that these types of fee-shifting statutes are to be applied by courts sitting in diversity as state substantive law. If the benefits are dependent on whether one is standing in a federal court or a state court, not only will this encourage forum shopping, but it would unintentionally confer an equal and opposite benefit – a safe harbor of sorts for opponents of free speech – who would receive an unmistakable message that they could simply evade the consequence for bringing a lawsuit designed to infringe on the rights of others. A two-tier system of justice and accountability, a lack of uniformity between the state and federal courts, cannot be allowed to persist.

## II. THIS CASE SHOULD BE DISMISSED UNDER THE ANTI-SLAPP ACT

The instant case satisfies the *prima facie* requirement in that it plainly (a) arises from advocacy on issues of public interest (reporting on a public figure coal baron turned political candidate, West Virginia's U.S. Senate race and the Upper Big Branch mine disaster) and, for reasons set forth in the "Memo of Law in Support of Motion to Dismiss," (b) Plaintiff is not "likely

to succeed" on the merits because the Amended Complaint fails to state a claim upon which relief can be granted.

### A. This Litigation Arises From Advocacy on Issues of Public Interest

The Act defines claims "in furtherance of the right of advocacy on issues of public interest" in two ways applicable here: (1) "[a]ny written or oral statement" made "[i]n a place open to the public or a public forum in connection with an issue of public interest," D.C. Code § 16-5501(1)(A)(ii), or (2) "[a]ny other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest." *Id.* § 16-5501(1)(B). An "issue of public interest" is defined as any "issue related to health or safety; environmental, economic, or community well-being; the District government; **a public figure**; or a good, product, or service in the market place." *Id.* § 16-5501(3). (emphasis added).

As a preliminary matter, the challenged statements which include Mr. Feinberg's tweet that quoted Mr. Blankenship verbatim and posed a follow-up question, meet the definition of written statements made "[i]n a place open to the public or a public forum." *Abbas v. Foreign Policy Grp., LLC*, 975 F. Supp. 2d 1, 11 (D.D.C. 2013), *aff'd in part on other grounds*, 783 F.3d 1328 (D.C. Cir. 2015) (citing *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 255 (D.D.C. 2013) and *Farah v. Esquire Magazine*, 863 F. Supp. 2d 29, 38 (D.D.C. 2012); *Mann*, 150 A.3d at 1227 (The Act applies "because the lawsuit is based on articles that appeared on websites.").

Second, as discussed in detail in the "Memo of Law in Support of Motion to Dismiss" and identified in the Amended Complaint, the challenged statements address important issues of significant public interest, which have been the subject of extensive reporting and commentary, including the debate over proper journalistic practices ("fake news"), the U.S. Senate race in West Virginia, and the Upper Big Branch mining catastrophe. Amended Compl. ¶¶1-14. These issues

implicate community well-being, the government and the proper functioning of public discourse itself. D.C. Code § 16-5501(3). Additionally, as set forth in the "Memo of Law in Support of Motion to Dismiss," the challenged statements expressed views about the conduct of a public figure (Plaintiff), *Id.*

This litigation is Plaintiff's attempt to crackdown on media criticism and repeal the "actual malice" standard set forth in the seminal case of *New York Times v. Sullivan*, 376 U.S. 254 (1964). Amended Compl. ¶¶1, 25, n.3. It is incumbent upon this Court to repel this assault on free speech and "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.*

### B. Plaintiff Cannot Show That His Claim is Likely to Succeed on the Merits

For the reasons articulated in Defendants' "Memo of Law in Support of Motion to Dismiss", the claims fail as a matter of law under Rule 12(b)(6) . Therefore, by definition, Plaintiff cannot show that he is "likely to succeed on the merits" in this case. *See, e.g., Farah*, 863 F. Supp. 2d at 39-40 (dismissing under D.C.'s Anti-SLAPP Act where plaintiff's complaint failed to state a claim upon which relief could be granted).

Recently, the District of Columbia Court of Appeals explained that the burden that Plaintiff must meet in response to a special motion "simply mirror[s]" the Summary Judgment standard of Fed. R. Civ. P. 56 – **the evidence must be legally sufficient to permit a jury properly instructed on the applicable constitutional standards to find in plaintiff's favor.'** *Mann*, 150 A.3d at 1236, 1262 (bolded for emphasis) .

Here, the Plaintiff's case fails as a matter of law even when the factual allegations are taken as true such that it cannot be "likely to succeed," and the Amended Complaint should therefore be dismissed with prejudice. D.C. Code § 16-5502(b).

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice under the D.C. Anti-SLAPP Act, and that they should be awarded fees and costs expended in this lawsuit.

Dated: August 16, 2019

                                                                                  Respectfully Submitted,

/s/ Adriana Marshall
Adriana Marshall, Esq.
W. Va. State Bar I.D. #10710
MARSHALL LAW PLLC
1114 Kanawha Blvd E
Charleston, WV 25301-2403
Phone: (304) 692-9887
Fax: (304) 345-3355
E-Mail: adrianamarshall@marshalllawpllc.com

William Moran II, Esq.
*(Pro Hac Vice Pending)*
Maryland Attorney #: 1706200121
HAWGOOD MORAN LAW
10015 Old Columbia Rd. Ste. B215
Columbia, MD 21046
Phone: (301) 439-0394
Fax: (410) 290-5285
E-Mail: moranmedialaw@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**DON BLANKENSHIP,**
   **Plaintiff,**

                **Civil Action No.: 2:19-cv-00236**
                **Judge John T. Copenhaver, Jr.**

v.

**HONORABLE ANDREW NAPOLITANO (RET.),**
**et al.,**
   **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendants Breakfast Media, LLC and Andrew Feinberg, hereby certifies that the foregoing "Defendants' Feinberg and Breakfast Media's Memorandum in Support of Motion for Relief Under the D.C. Anti-Slapp Act" was served on all counsel of record through the CM/ECF system.

                /s/ Adriana Marshall
                W. Va. State Bar I.D. #10710