**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

DON BLANKENSHIP,

      *Plaintiff*,

v.                                   Case No. 2:19-cv-00236

ANDREW NAPOLITANO, *et al.*,

      *Defendants*.

**MEMORANDUM OF LAW IN SUPPORT OF
FOX NEWS DEFENDANTS' MOTION TO DISMISS
<u>FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)</u>**

      Don Blankenship served a year in prison for a misdemeanor, but when he later ran for the U.S. Senate, the media and others widely labeled his conviction a felony.  According to Blankenship, this was not simply a mistake, or even negligence; it was a conspiracy to "destroy" him that united the "DC establishment 'swamp,'" the "entire establishment media spectrum," and Senate Majority Leader Mitch McConnell.  In pursuit of that theory, he has sued over 100 media-related defendants for defamation and false light invasion of privacy.

      As to defendants Fox News Network, LLC, Bradley Blakeman, Neil Cavuto, Stephanie Hamill, John Layfield, Elizabeth MacDonald, and Judge Andrew Napolitano (collectively, the "Fox News Defendants"), Blankenship fails to allege facts sufficient to state either claim.  Accordingly, this Court should dismiss Blankenship's claims against the Fox News Defendants under Rule 12(b)(6).[1]

---

    [1]  In a separate motion, filed simultaneously with this one, the Individual Fox News Defendants—Blakeman, Cavuto, Hamill, Layfield, MacDonald, and Napolitano—seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction.  Also in that motion, four of these

Blankenship's defamation claim fails for two reasons. *First*, as a public figure, Blankenship must plead that the Fox News Defendants acted with "actual malice." Those allegations must be "plausible," and Blankenship's are not. His outlandish conspiracy theory falls far short, as do his other mostly conclusory assertions that Fox News, CNN, NBC, and dozens of others all lied deliberately on the air, in newspapers, and on the Internet. *Second*, the statements at issue were "substantially true." The "gist" or "sting" of these statements was that Blankenship went to prison for a serious crime "aris[ing] from a tragic accident . . . which caused the death of 29 miners." *U.S. v. Blankenship*, 846 F.3d 663, 666 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 315 (2017). The label assigned to that crime would not matter to the listener.

Like his defamation claim, Blankenship's false light invasion of privacy claim fails for both of these reasons. It also fails for a third and separate reason: he did not allege misrepresentation of any *private* fact, a necessary element of this claim. The Fox News Defendants did not invade Blankenship's privacy by reporting on the very *public* fact of his criminal conviction.

## BACKGROUND

### I.    The Fox News Defendants comment on Blankenship's criminal history.

In November 2014, federal prosecutors charged Blankenship with multiple crimes after a 2010 explosion at his mine killed 29 workers. Am. Compl. (ECF 14) ¶¶ 136, 141. Blankenship was charged with three felonies, including conspiracy to defraud federal mine regulators, and one misdemeanor—conspiracy to violate mine safety laws. *Id.* ¶ 141. During trial in late 2015,

---

individuals—Blakeman, Hamill, MacDonald, and Napolitano—seek dismissal under Rule 12(b)(5) for lack of proper service. This other motion provides independent grounds for dismissal for these individuals.

*id.* ¶ 142, the jury heard that Blankenship's mine had been cited for hundreds of safety

violations, *Blankenship*, 846 F.3d at 666.  They heard that in the 15 months preceding the

explosion, Blankenship's mine "received the third-most serious safety citations of any mine in

the United States."  *Id.*  They also heard that "[m]any of the violations [were] related to improper

ventilation and accumulation of combustible materials—problems that were key contributing

factors to the accident."  *Id.* at 666–67.  And lastly, they heard that Blankenship advised a

manager that "it was cheaper to break the safety laws and pay the fines than to spend what would

be necessary to follow the safety laws."  *Id.* at 666.

On December 3, 2015, the jury acquitted Blankenship of the felony charges and

convicted him of the misdemeanor.  Am. Compl. (ECF 14) ¶¶ 142–43.  That day, Fox News

accurately reported the verdict.  *Id.* ¶ 157.

In the spring of 2016, Judge Berger sentenced Blankenship to the statutory maximum of

one year in prison, which Blankenship served in full.  *Id.* ¶¶ 11, 144–45.  During the sentencing

hearing, Judge Berger explained that Blankenship's crime was "very serious," regardless of

whether it was labeled a felony or misdemeanor:

> The crime is serious.  There's been discussion here about the acquittal of felony
> offenses and your conviction of a misdemeanor.  Those of us in the legal
> community put tags on offenses.  Congress puts tags on offenses.
>
> But when we seek to sentence someone, we sentence based on the conduct, which
> I find to be very serious not only in its commission but in its potential impact in
> terms of risk in this particular case.

Hr'g Tr. at 71:10–17, *United States v. Blankenship*, No. 5:14-cr-00244 (S.D. W.Va. Apr. 6,

2016) (ECF 634).  Blankenship himself acknowledges that his punishment was especially severe

for a misdemeanor conviction.  Am. Compl. (ECF 14) ¶ 11 (alleging that first-time

misdemeanants are "never (or virtually never) sent to prison" and he "may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor").

After leaving prison in 2017, Blankenship announced he would run for the United States Senate. *Id.* ¶ 13. In the months surrounding the May 2018 Republican Primary, his criminal history drew considerable attention from the media, where dozens of outlets and individuals described Blankenship as a felon. *Id.* ¶ 149, 152–221. Some of these statements occurred on Fox News programs.

The following statements involving the Fox News Defendants—all of which occurred in or around early May 2018, several years after Blankenship's conviction—are the subject of Blankenship's claims:

**Bradley Blakeman and John Layfield.** On the May 7, 2018 broadcast of *The Evening Edit*, both Blakeman and Layfield each referred once to Blankenship as a felon. *Id.* ¶ 168 (Blakeman: "we can't have the standard bearer of our party running for statewide office, and the guy is a felon"; Layfield: "we got a felon who's got a probation officer, who could end up in Congress"). Layfield also explained that "Don Blankenship, for those viewers that aren't aware, spent a year in prison because of a mine accident where he was accused and convicted of safety violations [in] which 29 people were killed." Exh. 3 (52:8).[2]

_____

[2] Blankenship's complaint provides only truncated quotations from the allegedly defamatory broadcasts, and this Court is entitled to consider the surrounding statements for context. *See Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006) (explaining that the court was entitled to consider, "even at the Rule 12(b)(6) stage," an article that was "clearly integral to, and . . . relied upon in," the complaint, since authenticity was not challenged). Accordingly, the Individual Fox News Defendants have provided, as Exhibits 2–6, certified transcripts of the entire segment containing each allegedly defamatory statement, along with an additional segment before and after. The Individual Fox News Defendants have also provided a USB flash drive containing full-length videos of the broadcasts that contain each statement, Exh. 7, as well as a declaration vouching for the authenticity of these exhibits, Exh. 1.

**Neil Cavuto.**  On the May 7, 2018 broadcast of *Cavuto: Coast to Coast*, Cavuto referred once to Blankenship as "the outside candidate, the one that's a convicted felon."  *Id.* ¶ 166.

**Stephanie Hamill.**  Around that same time, Hamill stated on a broadcast of *Making Money* that "it might be difficult for [Blankenship] to actually win a general election because of his issue being a convicted felon."  *Id.* ¶ 167.

**Elizabeth MacDonald.**  On May 9, 2018 (the day after the West Virginia Primary), MacDonald also appeared on *The Evening Edit* and referred once to Blankenship as a "felon." Am. Compl. (ECF 14) ¶ 196.

**Andrew Napolitano.**  On the April 25, 2018 broadcast of *Outnumbered*, one of the panelists stated that "Don Blankenship has long been a polarizing figure in West Virginia, he went to jail, actually, after a really tragic coal-mining incident," at which point Judge Napolitano interjected that he "went to jail for manslaughter, after people died in that mining accident." Exh. 6 (35:24–35:1–4).[3]  Shortly thereafter, Blankenship informed Napolitano "through personal connections" that he had only been convicted of a misdemeanor.  *Id.* ¶ 157.  As Blankenship acknowledges, Napolitano responded the very next day by email that his misstatement had been inadvertent, that he "feel[s] very badly" and is "fond of [Blankenship]," that "wish[ed] [Blankenship] well in [the] Senate race," and that he would correct the misstatement on the air. *Id.*  On the May 22, 2018 broadcast of *Your World with Neil Cavuto*, Napolitano stated:

> Let me say first that Don Blankenship is correct.  I once inadvertently said on the air that he was a convicted felon.  He was not.  He was acquitted of the charges, the felony charges against him.  The only thing he was convicted of was a misdemeanor.

---

[3] Blankenship's amended complaint misquotes Napolitano as saying Blankenship "went to jail for manslaughter after being indicted."  Am. Compl. (ECF 14) ¶ 156.

*Id.* ¶ 158.

## II.   Blankenship sues more than 100 defendants for defamation and invasion of privacy.

On March 14, 2019, Don Blankenship filed this action in Mingo County Circuit Court, naming more than two dozen defendants.  *See* Notice of Removal (ECF 1) ¶ 1.  Two weeks later, Fox News timely removed the matter to this Court based on complete diversity.  *See id.*

Blankenship then filed his First Amended Complaint, massively expanding the number of defendants.  In this complaint, he names more than 100 media companies and individuals, including the Fox News Defendants.  *See* Am. Compl. (ECF 14) ¶ 196.  He repeatedly asserts that "[d]efendants, and each of them, made their respective defamatory statements with actual malice."  *Id.* ¶¶ 229, 243.  *See also id.* ¶ 24 ("The evidence in this case will prove the Defendants acted with actual malice . . . .").  His attempts to support these assertions fall into three categories.

*First*, Blankenship alleges that Fox News and Hamill were part of a "clandestine campaign" orchestrated by Senate Majority Leader Mitch McConnell.  *See, e.g.,* Am. Compl. (ECF No. 14) ¶ 2–5; 150; 167.  This massive conspiracy purportedly united "the DC establishment 'swamp'" and "[t]he entire establishment media spectrum" in a "search and destroy mission to take out Mr. Blankenship."  *Id.* ¶ 2.  Blankenship "is informed and believes" that shortly before the Republican Primary, "several meetings occurred, attended by Leader McConnell, members of the NRSC, and others, in which a 'menu' describing possible ways to defeat Mr. Blankenship was discussed."  *Id.* ¶ 150.  The attendees allegedly "agreed that Mr. Blankenship's candidacy must be stopped at all costs, including by smearing Mr. Blankenship in the media with false stories."  *Id.*  According to Blankenship, McConnell also used his "contacts in the establishment media, including Fox News in particular" to "do [his] bidding."  *Id.* ¶ 4.

Blankenship "is informed and believes" that Hamill made her statement as part of this "concerted effort." *Id.* ¶ 167.

*Second*, Blankenship alleges that most of the remaining Fox News Defendants "knew" their statements were false because Fox News had accurately reported his misdemeanor conviction back in December 2015—more than two years before the allegedly false statements were made. *Id.* ¶¶ 157 (Napolitano); 166 (Cavuto); 168 (Layfield and Blakeman). With respect to Cavuto, Blankenship caveats his statements further, alleging that Cavuto "either knew, *or plainly should have known*," that his statement was false for this reason. *Id.* ¶ 166 (emphasis added).

*Third*, regarding MacDonald, the final Fox News Defendant, Blankenship does not ever specifically allege that she acted with actual malice. *See id.* ¶ 196. At best, she is encompassed within Blankenship's broader and conclusory assertions that all 100-plus defendants acted with actual malice. *Id.* ¶¶ 24, 229, 243.

## ARGUMENT

### I.    Blankenship fails to state a defamation claim against the Fox News Defendants.

Blankenship fails to state a defamation claim against the Fox News Defendants for two reasons. *First*, his allegations that the Fox News Defendants acted with "actual malice" do not meet the plausibility standard required by the Supreme Court in *Twombly* and *Iqbal*. Threadbare legal conclusions and bald assertions of an implausible conspiracy do not suffice. Nor is it enough to allege that some defendants "knew" their statements were false because of Fox News's prior reporting. That approach to "actual malice" is squarely foreclosed by *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964).

*Second*, the allegedly defamatory statements were substantially true. The "gist" or "sting" of these statements was that Blankenship spent a year in prison for a serious crime, all of

which is true.  Viewers would not have responded differently to a slightly more accurate report that this crime was only a misdemeanor.  Even Judge Berger, who sentenced Blankenship, stressed that the formal legal "tag[]" should not obscure the "very serious" nature of his underlying criminal conduct.  ECF 634 at 70, *Blankenship*, No. 5:14-cv-00244 (S.D. W.Va.).

> **A.**      **Blankenship fails to plausibly allege actual malice.**

Under the First Amendment, public figures must plead and prove that allegedly defamatory statements were made with "actual malice."  *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551 (4th Cir. 1994) (citing *Sullivan*, 376 U.S. at 279–80).  This constitutional "shield" is critical to free speech—without it, the press "would decline to speak out without resorting to the sort of cumbersome due diligence common in security offerings."  *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001).  Accordingly, "the First Amendment does not require perfection from the news media," just that they not act with actual malice.  *Id.*

Here, Blankenship concedes that the *Sullivan* standard applies to him as a public figure.  *See* Am. Compl. (ECF 14) ¶ 25 n.3.  And for good reason—the West Virginia Supreme Court of Appeals has long recognized that candidates for public office qualify as public figures for the tort of defamation.  *Matter of Callaghan*, 796 S.E.2d 604, 619 (W. Va. 2017) ("It is well-established that 'speech about public issues and the qualifications of candidates for elected office commands the highest level of First Amendment protection.'") (quoting *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1665 (2015)).  Were he not already a public figure for things he'd already done, Blankenship's decision to run for the U.S. Senate triggered the "twin rationales" underlying the public-figure doctrine.  *State ex rel. Suriano v. Gaughan*, 480 S.E.2d 548, 557 (W. Va. 1996).

Blankenship "knowingly exposed [himself] to a predictable risk of being burned," but also acquired "ready outlets to respond to attacks," of which he took full advantage. *Id.*[4]

Accordingly, Blankenship must plead and prove "actual malice"—that the Fox News Defendants acted "with knowledge that [their speech] was false or with reckless disregard of whether it was false or not." *Id.* The standard is "a subjective one," requiring Blankenship to prove that these defendants "actually had a high degree of awareness of probable falsity." *Harte-Hanks*, 491 U.S. at 688. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Critically, "it is not enough to show that defendant should have known better . . . ." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016). *See also Sullivan*, 376 U.S. at 287–88 (finding that evidence supported "at most a finding of negligence" but not actual malice).

At the pleading stage, allegations of actual malice "must be 'plausible.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). That means plaintiffs must plead "factual allegations" that "raise a right to relief above the speculative level." *Id.* (citing *Twombly*, 550 U.S. at 555). "Conclusory allegation[s]" that statements "were known by [defendants] to be false at the time they were made" are "entirely insufficient." *Id.* at 378. Rule 9(b), which states

---

[4] For example Blankenship's attorneys issued a press release when he filed this lawsuit. PR Newswire, *Attorney Eric Early: Don Blankenship Hammers Establishment Media and DC Elites in Sweeping $12 Billion Legal Action* (Mar. 15, 2019, 7:36 PM), https://prn.to/2XE7fQz. Within 24 hours, local and national media picked up the story. *See, e.g.*, Ken Ward, Jr., *Blankenship suit claims national media defamed former Massey CEO*, Charleston Gazette-Mail (Mar. 15, 2019), https://bit.ly/2UQXn96; Caleb Ecarma, *NEW: Failed GOP Candidate Don Blankenship Files $12 Billion Defamation Lawsuit Against Major Media Outlets*, Mediate (Mar. 15, 2019, 11:12 AM), https://bit.ly/2L4JAaC.

that malice "may be alleged generally," does not alter this analysis.  Fed. R. Civ. P. 9(b).  "Rule 9(b) ensures that there is no *heightened* pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated."  *Mayfield*, 673 F.3d at 377 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)).

Blankenship's allegations of actual malice are not plausible.  As a preliminary matter, this court should reject out of hand his conclusory allegations that all 100-plus defendants acted with actual malice.  Am. Compl. (ECF 14) ¶¶ 24, 229, 243.  Setting those aside, what is left are allegations that the Fox News Defendants knew their statements were false because: (1) they carried out a massive conspiracy orchestrated by Senator McConnell (the "Conspiracy Allegations"); and (2) Fox News had reported Blankenship's convictions accurately in 2015 (the "Prior Report Allegations").  The sum total of these remaining allegations are:

- Fox News**:**  ¶¶ 4, 21 (conspiracy); ¶¶ 17, 157, 166, 168 (prior report)
- Blakeman**:**  ¶ 168 (prior report)
- Cavuto**:**  ¶ 166 (prior report)
- Hamill**:**  ¶ 167 (conspiracy)
- Layfield**:**  ¶ 168 (prior report)
- Napolitano**:**  ¶¶ 16–17, 156–58 (prior report)

And with respect to MacDonald, there are no remaining allegations of actual malice once Blankenship's conclusory, blanket allegation is properly set aside.  *See id.* ¶ 196.  These scant assertions fall far short of what is required.

*First*, Blankenship's Conspiracy Allegations against Fox News and Hamill are woefully insufficient.  Am. Compl. (ECF 14) ¶¶ 4, 21, 150, 167.  These allegations are mostly bare assertions.  *Id.* ¶¶ 4 ("McConnell set in motion the wheels of a clandestine campaign . . . using . . . his contacts in the establishment media, including Fox News in particular, to do McConnell's . . . bidding."); 167 ("Plaintiff is informed and believes that Ms. Hamill made this statement, in part, as part of a concerted effort to defeat Mr. Blankenship by falsely smearing him.").  The

Supreme Court itself has held that "a naked assertion of conspiracy"—"without some further factual enhancement"—is not enough.  *Twombly*, 550 U.S. at 557 (internal quotation marks and citation omitted).

Blankenship's attempt at factual enhancement does not help.  For example, Blankenship alleges he is "informed and believes" that "Leader McConnell, members of the NRSC, and others" met and conspired to "smear[] Mr. Blankenship in the media with false stories." Am. Compl. (ECF 14) ¶ 150.  But that allegation does not involve any of the Fox News Defendants. Further, Blankenship's claim that these meetings demonstrate actual malice—some sort of conspiratorial knowledge of falsity or reckless disregard to the truth with respect to Blankenship's criminal history—is based entirely on Senator McConnell's benign statement that "I hope we actually nominate someone who can actually win the election." *Id.*  There is nothing in that statement that goes beyond a speculative and "naked assertion of conspiracy" of the type rejected in *Twombly*.

As in *Twombly*, there is an "obvious alternative explanation" to Blankenship's conspiracy theory.  550 U.S. at 567.  Because Blankenship served a year in prison—which "never (or virtually never)" happens to first-time misdemeanants, Am. Compl (ECF 14) ¶ 11—a misunderstanding developed and echoed throughout the media.  The sheer number of defendants in his lawsuit confirms this—it is simply not plausible that more than 100 media defendants of all political stripes all decided to deliberately misreport Blankenship's conviction.

*Second*, it does not matter that Fox News accurately reported Blankenship's misdemeanor conviction back in 2015.  These Prior Report Allegations do not, without more, make it plausible that Fox News, Blakeman, Cavuto, Layfield, and Napolitano knew that their later statements were inaccurate.  Indeed, the Supreme Court rejected this argument in *Sullivan*.  There, the

11

plaintiff argued that the New York Times knew an advertisement was false because it contradicted prior "news stories in the Times' own files." *Sullivan*, 376 U.S. at 287. The Court rejected this imputed-knowledge argument:

> The mere presence of the stories in the files does not, of course, establish that the Times 'knew' the advertisement was false, since *the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication*.

*Id.* (emphasis added). Here, Blankenship does not allege that persons making the statements—Blakeman, Cavuto, Layfield, or Napolitano—themselves knew about Fox News's prior report when they made their allegedly defamatory statements. *See* Am. Compl. (ECF 14) ¶¶ 157, 166, 188.

As in *Sullivan*, the fact that *others* at Fox News reported previously on Blankenship's misdemeanor connection says nothing about whether *these defendants* made their statements with actual malice. The prior report occurred in 2015, *id.* ¶ 157, *over two years* before the Fox News Defendants spoke, *id.* ¶¶ 157, 166, 188. At best, the prior report could establish negligence—that these defendants *should have known* that Blankenship was convicted of a misdemeanor and not a felony. Indeed, Blankenship explicitly alleges negligence against Cavuto. *Id.* ¶ 166 ("Mr. Cavuto either knew, *or plainly should have known*, that this vile statement was false.") (emphasis added). But "actual malice" requires more than negligence. *Sullivan*, 376 U.S. at 287–88.

Blankenship singles out Napolitano for his background as a lawyer and a judge, arguing that he cannot claim ignorance as to the proper legal definition of manslaughter. *Id.* ¶ 14. But this does not support a plausible allegation of "actual malice." Napolitano's mistake was not confusing the *legal* definition of manslaughter, it was misstating a *fact*—specifically, the charge on which Blankenship was convicted. And that mistake was understandable, given that

Blankenship's sentence was unusually harsh, *id.* ¶ 11, and his conviction "ar[ose] from a tragic accident … which caused the death of 29 miners," *Blankenship*, 846 F.3d at 666.  What Blankenship really means is that Napolitano's *legal* background should have caused him to take greater care in reporting *the facts* of Blankenship's criminal conviction.  That argument sounds in negligence, not actual malice.

Lastly, Napolitano's prompt apology to Blankenship—which Blankenship himself reproduces in the complaint—makes the already thin allegations of actual malice even less plausible.  Am. Compl. (ECF 14) ¶¶ 157–58.  Napolitano immediately admitted that his comment was inaccurate, that he "feel[s] very badly" and is "fond of [Blankenship]," and that he "wish[ed] [Blankenship] well in [the] Senate race."  *Id.* ¶ 157.  He then later clarified on the air that Blankenship was only convicted of a misdemeanor.  *Id.* ¶ 158.  Those are not the actions of a man acting with "actual malice."  And Blankenship does not question the veracity of those statements or offer any reason to believe that Napolitano's statements were insincere.

As for MacDonald, Blankenship nowhere specifically alleges that she acted with actual malice.  *See* Am. Compl. (ECF 14) ¶ 196.  He only asserts a conclusion that all 100-plus defendants (including MacDonald) acted with actual malice.  *Id*. (ECF 14) ¶¶ 24, 229, 243.  That is "entirely insufficient."  *Mayfield*, 674 F.3d at 378.

 Blankenship's allegations are a far cry from those accepted by other courts.  In *Palin v. New York Times Co.*, for example, the Second Circuit recently held that the plaintiff had plausibly alleged actual malice by: (a) identifying other articles that contradicted the defendant's false statement which the defendant had either personally "reviewed, edited[,] and approved," or hyperlinked in the allegedly defamatory publication itself; and (b) identifying concrete reasons that the author had to be "personally hostile" to the plaintiff.  __ F.3d. __, No. 17-3801-CV, 2019

WL 3558545, at *6 (2d Cir. Aug. 6, 2019).  Blankenship's allegations come nowhere close to this level of plausibility.

Because Blankenship fails to plausibly allege actual malice against any of the Fox News Defendants, this Court should dismiss his defamation claim under Rule 12(b)(6) for this reason alone.

### B.      The allegedly defamatory statements were substantially true.

Even if Blankenship had plausibly alleged actual malice, he still fails to state a claim against the Fox News Defendants because their statements were substantially true.  In effect, Blankenship faults these defendants for applying the wrong label to his criminal conviction.  But that legal label does not matter to viewers.  The "gist" or "sting" of the comments was that Blankenship served a year in prison for a serious crime.  The substantial truth of the allegedly defamatory statements provides an independent basis for dismissing Blankenship's defamation claim against all the Fox News Defendants.

### a.      The "felon" statements were substantially true.

Blankenship alleges that Fox News, Blakeman, Cavuto, Layfield, Hamill, and MacDonald defamed him by calling him a "felon" instead of a misdemeanant who spent a year in prison.  Am. Compl. (ECF 14) ¶¶ 166–68, 196.  Those statements were substantially true.

West Virginia law "overlooks minor inaccuracies and concentrates upon substantial truth."  Syl. pt. 4, *Gaughan*, 480 S.E.2d at 551.[5]  "Minor inaccuracies do not amount to falsity so

---

[5] Assuming the truth of Blankenship's allegations for purposes of this motion, West Virginia law applies.  In West Virginia, the law governing a tort action is that "of the place of injury."  *State ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 780 (W. Va. 2004) (internal quotation marks and citations omitted).  Blankenship alleges that the injury occurred in West Virginia.  *See* Am. Compl. (ECF 14) ¶ 28 (alleging that a "significant portion of the harm" occurred in West Virginia).

long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* A statement is substantially true if it would not have a "different effect on the mind of the reader from that which the pleaded truth would have produced." *Id. See also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (same).

Decisions around the country have held that statements calling a misdemeanor conviction a felony are substantially true. *Tiwari v. NBC Universal, Inc.*, C-08-3988 EMC, 2011 WL 5079505, at *14–15 (N.D. Cal. Oct. 25, 2011), *order clarified*, C-08-3988 EMC, 2011 WL 5903859 (N.D. Cal. Nov. 23, 2011) (defendant said plaintiff was convicted of "attempted lewd and lascivious acts with a child" (a felony) instead of the misdemeanor of attempting to lure a child from her home); *Barnett v. Denver Publ'g Co., Inc.*, 36 P.3d 145, 147 (Colo. App. 2001) (defendant suggested plaintiff convicted of "stalking" (a felony) instead of misdemeanor harassment); *Brewer v. Dungan*, 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. June 30, 1993) (defendant said plaintiff was convicted of "felony assault" instead of misdemeanor aggravated assault); *Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 489 (Cal. App. 4th Dist. 1985) (defendant said plaintiff was convicted of "tax fraud" (a felony) instead of willfully failing to file tax returns (a misdemeanor)). *See also Hahn v. City of Kenner,* 984 F. Supp. 436, 439, 441 (E.D. La. 1997) ("[the plaintiff's] arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true" if the defendant had not also misrepresented other facts). This is consistent with "a long line of cases hold[ing] that technical errors in legal nomenclature in reports of matters involving violation of the law are of no legal consequence." *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983) (collecting cases).

Here, statements that Blankenship was a "felon" or "convicted felon" were substantially true. The "gist" or "sting" of these comments was that Blankenship was convicted, and spent a

year in prison, for a serious crime.  Blankenship admits that all of this is true.  Am. Compl. (ECF 14) ¶ 9–11.  Blankenship does not explain how the fact that he spent a year in prison for a misdemeanor, as opposed to a felony, would have a "different effect on the mind of the [viewer]."  Syl. pt. 4, *Gaughan*, 480 S.E.2d at 551.  This is precisely the type of "minor inaccurac[y]" that is not actionable as a defamation claim.  *Id.*

Mislabeling is particularly immaterial here because Blankenship's misdemeanor was especially serious, as reflected by his sentence.  In *Jennings*, the court held that it was not defamatory to report as felony tax fraud what was actually a misdemeanor conviction for failing to file tax returns.  210 Cal. Rptr. at 489.  "In view of the sentence imposed"—a one-year suspended sentence—"[t]he gist or sting" of the statements was simply that the defendant had pleaded no contest "to several serious tax crimes."  *Id.*  So, too, here.  In Blankenship's criminal case, Judge Berger imposed the maximum sentence because she found his crime "very serious," stressing that the formal legal "tag[]" on his conviction should not obscure the nature of his underlying conduct for which he had been convicted.  ECF 634 at 70, *Blankenship*, No. 5:14-cv-00244 (S.D. W.Va.).  As Blankenship himself says, first-time misdemeanants "never (or virtually never)" receive the statutory maximum of a year in jail.  Am. Compl. (ECF 14) ¶ 11.  *See id.* ("Mr. Blankenship may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor.").  In effect, he admits that this was the *most* serious misdemeanor of which he is aware, making the formal label on his conviction especially irrelevant.

Because the statements that Blankenship was a "felon" were substantially true, Blankenship fails to state a claim against Fox News, Blakeman, Cavuto, Layfield, Hamill, and MacDonald.

b.    The "manslaughter" statement was substantially true.

Unlike the other Fox News Defendants, Napolitano did not refer to Blankenship as a "felon"—he stated that Blankenship "went to jail for manslaughter after people died in [a] mining accident."  Am. Compl. (ECF 14) ¶¶ 16, 156; Exh. 6 (35:24–35:1–4).   Napolitano's statement misidentified Blankenship's crime.  But like the other statements, Napolitano's statement is also substantially true.  Thus, even if Blankenship had adequately alleged that Napolitano acted with "actual malice," this statement does not support a claim for defamation against Napolitano (or Fox News, for broadcasting it).

Napolitano's statement would have had the same effect on viewers had he correctly said that Blankenship was convicted of conspiring to violate mine safety laws.  Courts have held that statements were substantially true even when they misidentified the criminal offense.  *Tiwari*, 2011 WL 5079505, at *14–15 ("attempted lewd and lascivious acts" instead of attempting to lure a child from home); *Barnett*, 36 P.3d at 147 ("stalking" instead of harassment); *Jennings*, 210 Cal. Rptr. at 489 ("tax fraud" instead of willfully failing to file tax returns).  As with the "felon" statements, the "gist" or "sting" of Napolitano's statement was that Blankenship served a year in prison for a serious crime.

As the Fourth Circuit explained in affirming his conviction, Blankenship's criminal case is fairly described as "aris[ing] from a tragic accident . . . which caused the death of 29 miners." *Blankenship*, 846 F.3d at 666.  According to the Fourth Circuit, "[m]any" of the mine safety violations Blankenship received "related to … problems that were key contributing factors to the accident."  *Id.* at 666–67.  Blankenship himself acknowledges the connection between the deadly explosion and his criminal conviction.  *See* Am. Compl. (ECF 14) ¶¶ 136–145 (discussing the mine explosion alongside his conviction).  Indeed, Blankenship argued in his criminal case that "the trial will be seen as the equivalent of a murder or manslaughter trial."  Mem. in Supp. of

17

Mot. to Transfer at 3–4, *United States v. Blankenship*, No. 5:14-cr-00244 (S.D. W.Va. Feb. 20, 2015) (ECF 122).  Just as the Fourth Circuit did in its published opinion, viewers were going to connect Blankenship to these deaths regardless of whether they heard from Napolitano that Blankenship's conviction was for "manslaughter" or "conspiring to violate mine safety laws."

## II. Blankenship fails to state an invasion of privacy claim against the Fox News Defendants.

Blankenship also fails to state a claim for false light invasion of privacy against the Fox Defendants.

*First*, Blankenship's state-law privacy claim suffers the same fatal flaws as his defamation claim.  As the West Virginia Supreme Court of Appeals has explained, "courts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation."  *Crump v. Beckley Newspapers*, Inc., 320 S.E.2d 70, 87 (W. Va. 1983).  Were the law otherwise, public-figure plaintiffs could simply plead their way around the First Amendment's requirement of actual malice.  Accordingly, as with defamation, false light invasion of privacy requires Blankenship to plausibly allege actual malice and substantial falsity.  *See id.* at 87 (requiring plaintiff to prove the statement is "untrue" viewed "in the context of the whole" statement); *id.* at 90 ("[W]hen public officials, public figures, or legitimate matters of public interest are involved, plaintiffs may recover only upon proof of knowledge of falsity or reckless disregard for the truth.").  As explained above, Blankenship fails to meet either requirement for any of the statements.  *See* Section I, *supra*.

*Second*, Blankenship's privacy claim also fails because his criminal conviction is not a "private fact."  In West Virginia, a plaintiff alleging false light must show "(1) the false (2) publication (3) *of private facts* (4) portraying the plaintiff in a false light (5) which would be highly offensive to a reasonable person."  *Curran v. Amazon.com, Inc.*, No. 2:07-cv-0354, 2008

18

WL 472433, at *8 (S.D. W. Va. Feb. 19, 2008) (Copenhaver, J.) (emphasis added).  Here, the

"private fact" Blankenship identifies is his criminal conviction.  Am. Compl. (ECF 14) ¶ 239.

That conviction is public.  *See, e.g.*, *Taylor v. W. Va. Dep't of Health & Human Res.*, 788 S.E.2d

295, 316 (W. Va. 2016) (recognizing that disclosure of facts "already a matter of public record"

does not constitute an invasion of privacy); *Campbell v. Lyon*, 26 F. App'x 183, 190 (4th Cir.

2001) (recognizing that the disclosure of public criminal records do not give rise to an invasion

of privacy tort).  Accordingly, his privacy claim independently fails for this reason.

## <u>CONCLUSION</u>

For all these reasons, the Court should dismiss the amended complaint for failure to state

a claim against Fox News.  And the Court should similarly dismiss the amended complaint

against Bradley Blakeman, Neil Cavuto, Stephanie Hamill, John Layfield, Elizabeth MacDonald,

and Andrew Napolitano, if it has not already dismissed these individual defendants for lack of

personal jurisdiction or insufficient service, as urged in the individual defendants' separately

filed motion under Rules 12(b)(2) and (5).

Respectfully submitted,

**FOX NEWS NETWORK, LLC,**
**BRADLEY BLAKEMAN,**
**NEIL CAVUTO,**
**STEPHANIE HAMILL,**
**JOHN LAYFIELD,**
**ELIZABETH MACDONALD, and**
**JUDGE ANDREW NAPOLITANO,**

By Counsel:

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of August 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants and to other parties by U.S. Mail as follows:

Jim Heath
224 McCullough Blvd. N
Lake Havasu City, AZ 86403

J.W. Williamson
375 Old Highway 421 South
Boone, NC 28607

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)

21