**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**DON BLANKENSHIP**

    **Plaintiff,**

             **Civil Action No.: 2:19-CV-00236**

**v.**

**HONORABLE ANDREW NAPOLITANO (RET.);
et al.**

    **Defendants.**

**MEMORANDUM IN SUPPORT OF NBC DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM,
FOR INSUFFICIENT PROCESS AND SERVICE OF PROCESS ON CERTAIN NBC
DEFENDANTS, AND FOR LACK OF PERSONAL JURISDICTION OVER
INDIVIDUAL NBC DEFENDANTS**

**I.  INTRODUCTION**

  Bitter at losing the 2018 primary election for U.S. Senate, Plaintiff Don Blankenship blames more than 100 defendants, including the NBC Defendants.[1]  He contends that references to him as a "convicted felon" and "felonious" by the NBC Defendants (and multitudinous other defendants) cost him the election and harmed his reputation.  Blankenship alleges that those words were false and defamatory and placed him in a false light.  Yet he admits that he was convicted of criminal conspiracy to violate mine safety laws connected to the Upper Big Branch mine explosion that killed 29 miners, for which he served a one-year sentence in federal prison.

  Blankenship's First Amended Complaint ("FAC") should be dismissed with prejudice for multiple independent reasons.  First, Blankenship quibbles that his conviction was a misdemeanor. But the gist or sting of the challenged statements is that Blankenship was convicted of a crime and

---

[1] The NBC Defendants are the entities MSNBC Cable, LLC; NBCUniversal, LLC; and CNBC, LLC; and the individuals Chris Hayes, Joy-Ann Lomena-Reid, Leigh Ann Caldwell and Brian Schwartz (the latter, collectively, the "Individual NBC Defendants").

was sentenced to prison, all of which the FAC admits is true. Therefore, the well-established doctrine of substantial truth protects the NBC Defendants from Blankenship's claims and astronomical demand for damages.

Second, the FAC does not plead facts establishing a plausible claim that the NBC Defendants acted with actual malice, which Blankenship properly concedes is an essential element of his claims. Blankenship alleges that, two years before publication of the challenged statements, an NBC reporter who is not a defendant in this case reported that Blankenship was convicted of a misdemeanor. Blankenship asserts that this two-year-old news article written by a non-defendant demonstrates actual malice on the part of the NBC Defendants. Blankenship ignores U.S. Supreme Court precedent that the presence of a news story in a news organization's files is not proof of actual malice. His claims fail as a result.

In addition, the FAC should be dismissed as to Reid, Schwartz, CNBC and NBCUniversal for insufficient process and insufficient service of process. Service on Schwartz was defective. Reid was served too late. Blankenship has not served CNBC or NBCUniversal.

Finally, this Court does not have personal jurisdiction over the Individual NBC Defendants. They are not domiciled in West Virginia; therefore, the Court does not have general jurisdiction over them. Further, they are not subject to specific jurisdiction because West Virginia's long-arm statute does not reach their conduct, and even if it did, they lack the constitutionally required minimum contacts with West Virginia. Thus, the FAC should be dismissed as to them.

## II.   STATEMENT OF FACTS

Blankenship is a nationally known public figure. He was CEO of Massey Energy in 2010 when an explosion at the company's Upper Big Branch Mine in West Virginia killed 29 miners. *See* FAC at ¶¶ 7-11, 134-36. Blankenship admits that "MSHA [the U.S. Mine Safety and Health

Administration] placed the blame for the explosion on Massey and Mr. Blankenship." Id. at ¶ 139. He was convicted in federal court in 2015 of conspiracy to violate mine safety laws and was sentenced to one year in prison, which he served. Id. at ¶¶ 11, 141-45. In 2018, he was a candidate in the Republican primary to represent West Virginia in the U.S. Senate. Id. at ¶ 146. The West Virginia race was of national interest because it was one of a few races that would determine whether Republicans or Democrats would control the U.S. Senate. Blankenship added to the nationwide interest in his candidacy when he repeatedly attacked Republican Senate Majority Leader Mitch McConnell during his campaign. *See, infra*, Section II.2-II.4; Exhibits 2, 3, and 4 (copies of challenged MSNBC broadcasts including excerpts of Blankenship campaign ads).

In focusing on primary races of interest to their nationwide audience, the NBC Defendants included references to Blankenship, who takes issue with the phrase "convicted felon" and "felonious" in the following reports.

### 1.   Hayes' tweets on April 16, 2018

On April 16, 2018, Hayes posted a series of five tweets from his Twitter account, @chrislhayes, commenting on national GOP leadership and the party's candidates for office, including Roy Moore in Alabama, Greg Gianforte in Montana, and Blankenship. The first four tweets made no mention of Blankenship or West Virginia. The first two tweets commented that "[t]he highest levels of GOP leadership" had supported Moore's campaign and added "we still haven't hit rock bottom." The third and fourth tweets concerned Gianforte, including his membership in "the GOP caucus," and his spokesman's role "in GOP politics." Only the fifth tweet referred to West Virginia and Blankenship. It read:

> "The GOP may very well nominate a felonious coal baron found responsible for dozens of miners' deaths to as their senate nominee in WV. And on and on. Something deeply, deeply, broken at play here."

Attached **Exhibit 1;** *see* FAC ¶ 169.[2]

### 2. Hayes' April 23, 2018 *All In With Chris Hayes* broadcast

This eight-minute MSNBC broadcast segment begins with an excerpt of a Blankenship

campaign ad attacking Hillary Clinton, after which Hayes briefly mentions Blankenship:

> *That was a campaign ad in the year of our Lord 2018 for convicted felon Don Blankenship who spent a year in jail for his role in a mine disaster that killed 29 people, calling for Hillary Clinton to be locked up. In a campaign ad in 2018. The AP reports that Republicans are making Clinton the star of their mid-term election strategy despite the fact she currently holds no position of power, isn't running for, well, anything. But, their tax cut message falling flat, Republicans are betting big the ghost of Clinton will serve them well in 2018.*

The brief reference to Blankenship introduced a long discussion about the Republican Party

making Clinton a focus of their national midterm election strategy.[3]

### 3. Reid's May 4, 2018 *All In With Chris Hayes* broadcast

This MSNBC broadcast segment focused on Blankenship's attacks on McConnell:

> *Coal baron and convicted felon Don Blankenship who spent a year in federal prison for his role in a 2010 mine explosion that killed 29 people and who's still on probation has been trying to get Republican votes in the West Virginia Senate primary by going after his own party's Senate Leader Mitch McConnell, nicknaming him "Cocaine Mitch" and referring to McConnell's father-in-law as a quote China person.*[4]

### 4. Hayes' May 9, 2018 *All In With Chris Hayes* Broadcast

This MSNBC broadcast segment reported Blankenship's loss in the primary election, and

began by stating the plain fact that Blankenship was "*the former coal company executive who was*

---

[2] The court may consider the tweets, broadcasts and news articles attached as Exhibits 1-6, without converting the motion to dismiss into one for summary judgment, because "they are integral to the complaint and authentic". *Hundley v. Air Evac EMS, Inc.*, No. 2:16-cv-12428, 2019 WL 1428691, at *2 (S.D.W. Va. Mar. 29, 2019 ) (citations and quotations omitted). The FAC bases its claims against the NBC Defendants upon the content of these documents. FAC ¶¶ 169-70, 172, 191, 206, 219.

[3] A copy of the April 23, 2018 broadcast is attached as **Ex. 2;** *see* FAC ¶ 170.

[4] A copy of the May 4, 2018 broadcast is attached as **Ex. 3** (includes 60-second commercial break from 1:30 to 2:30); *see also* FAC ¶ 172 (inaccurately stating that this broadcast was made on May 5, 2018).

*released from prison last year after serving a year for mine safety violations connected to an explosion that killed 29 people*." The segment summarized Blankenship's attacks on McConnell:

> *[Blankenship] then ran for U.S. Senate and talked about China people. . . . He also began referring to Majority Leader of the Senate as Cocaine Mitch, making a bizarre connection to a report that a shipping vessel owned by Mitch McConnell's father-in-law was discovered to have drugs on board in 2014. . . .*

The broadcast included McConnell's reaction to Blankenship's loss, and Blankenship's continued allegations about McConnell's family and cocaine. In response to those allegations, the broadcast continued: "*Really not sure if that part is true, but thus endeth the brief and unsuccessful Senate bid of convicted felon Don Blankenship. . . .*"[5]

### 5. Caldwell's May 17, 2018 article at NBCNews.com

This online news article, published nine days after the primary election, focused on President Trump meeting with Senate Republicans in Washington, D.C. to discuss the GOP's strategy to win midterm general elections in West Virginia and other states. It discussed how Trump's involvement in the West Virginia primary "*may have helped the GOP field a good Senate candidate*." The 17-paragraph article reported in the fourteenth paragraph: "*The president urged West Virginia voters to support either Morrissey or another establishment candidate over ex-coal baron and convicted felon Dan Blankenship, who was running a Trump-like campaign. Blankenship himself said Trump's actions may have contributed to his loss.*"[6]

### 6. Schwartz's June 25, 2018 article at CNBC.com

This online news article, published seven weeks after the primary election, focused on Donald Trump Jr. raising money for Republican Senate candidates for seats where incumbent

---

[5] A copy of the May 9, 2018 broadcast is attached as **Ex. 4** (includes 60-second commercial break from 1:32 to 2:34). *See also* FAC ¶ 191.
[6] A copy of the May 17, 2018 news article is attached as **Ex. 5**; *see also* www.nbcnews.com/politics/congress/trump-has-his-sights-set-west-virginia-fall-n874806; FAC ¶ 206.

Democrats were vulnerable, including West Virginia. The article focused on the GOP's hopes of increasing its Senate majority. In the context of that national focus, the 15-paragraph article referred fleetingly to Blankenship in the tenth paragraph: "*[Donald Trump Jr.] also campaigned with [Republican Senate candidate Patrick] Morrisey in early June when he was competing in a crowded primary that included coal baron and convicted felon Don Blankenship who is now running as a third party candidate.*"[7]

## III.   ARGUMENT

### A.   Plaintiff's Claims Should Be Dismissed Under FRCP 12(b)(6) Because (1) The Challenged Statements Are Substantially True, And (2) Blankenship Fails To Allege Plausibly That The NBC Defendants Acted With Actual Malice.

Blankenship's claims against all of the NBC Defendants should be dismissed with prejudice under FRCP 12(b)(6). The FAC itself demonstrates that the challenged statements referring to Blankenship as "felonious" and "convicted felon" are substantially true. As a result, they cannot form the basis for an actionable claim of defamation or false light. The FAC also fails to plead sufficient facts establishing a plausible claim that the NBC Defendants acted with the constitutionally required actual malice. [8]

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*

---

[7] A copy of the June 25, 2018 news article is attached as **Ex. 6**; *see also* https://www.cnbc.com/2018/06/25/don-jr-and-trump-allies-to-host-new-york-fundraiser-for-morrisey.html; *see also* FAC ¶ 219.

[8] As noted in the accompanying Motion to Dismiss, NBC Universal, CNBC, Schwartz and Reid are also moving to dismiss for insufficient process and service of process. Further, the Individual NBC Defendants are moving to dismiss for lack of personal jurisdiction. No Defendant waives any argument under Rule 12 by joining in the Rule 12(b)(6) motion. FRCP 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections . . . in a motion.").

*v. Iqbal,* 556 U.S. 662, 678 (2009). Rather, a complaint must assert facts sufficient to "raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 545, and must assert "more than labels and conclusions." *Id.* at 555. The Court must accept as true all facts asserted in the complaint, but need not "accept [as true] the legal conclusions drawn from the facts" or the "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted); *see also Iqbal,* 556 U.S. at 678.

Under West Virginia law, a public figure seeking to recover for defamation must plead and prove by clear and convincing evidence: (1) publication of a defamatory statement of fact; (2) falsity; (3) reference to the plaintiff; (4) the defendant made the challenged statement with actual malice, that is, the defendant knew that it was false or acted with reckless disregard of whether it was false; and (4) resulting injury. *Hinerman v. Daily Gazette Co.,* 188 W. Va. 157, 168-69, 423 S.E.2d 560, 571-72 (1992).

Similarly, to prevail on his false light claim, Blankenship must plead and prove: (1) widespread publicity that unreasonably places him in a false light before the public; (2) falsity; (3) the communication is highly offensive to a reasonable person; and (4) the defendant acted with actual malice. *Crump v. Beckley Newspapers, Inc.* 173 W.Va. 699, 706, 320 S.E.2d 70, 86-88, 90; *see also Ballengee v. CBS Broad., Inc.,* 331 F. Supp.3d 533, 553-54 (S.D.W. Va. 2018).

As set forth below, none of the challenged statements is actionable under either theory.

## 1. The Challenged Statements Are Substantially True.

The truth of allegedly defamatory words must be evaluated within the context in which they were published. *Hupp v. Sasser,* 200 W. Va. 791, 798, 490 S.E.2d 880, 887 (1997); *Crump,* 320 S.E.2d at 87 (challenged statements in false light claim must be viewed in context of entire article). If a challenged statement is not false, then a claim for defamation or false light must be

dismissed. *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 352-53 (1996) (defamation); *Ballengee*, 331 F. Supp.3d at 546, 554 (defamation and false light). The plaintiff has the burden to prove falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986). A defendant's statements need not be accurate in every detail: "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (citation omitted). A statement is not considered false "unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517. Therefore, <u>substantially true</u> statements are not actionable. *Suriano*, 480 S.E.2d at 561-62; *Ballengee*, 331 F. Supp.3d at 546.

The only allegedly false statements that Blankenship attributes to the NBC Defendants are "convicted felon" and "felonious." FAC ¶¶22, 169-70, 172-73, 191, 206, 219. Blankenship tries to argue that the NBC Defendant's statements are false because he was convicted of a misdemeanor. But it is undisputed that Blankenship was convicted of conspiracy to violate mine safety laws and was sentenced to and served a year in prison. Id. at ¶¶11, 141-45.

Courts have held that similar inaccuracies as to the level of a crime cannot support a defamation or false light claim. For example, in *Tiwari v. NBC Universal, Inc.*, the court held that a broadcast was substantially true where the plaintiff had been "convicted of only a misdemeanor," rather than a felony, because the broadcast had presented the underlying conduct in such a way that "the natural and probable effect on the viewer of the broadcast would be no different if the epilogue had reported [the plaintiff's] correct conviction correctly." No. C–08–3988 EMC, 2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011). Similarly, in *Brewer v. Dungan*, the court held that a newspaper's "mistaken characterization of the classification of the crime which plaintiff committed" could not give rise to libel, because reporting that he had been convicted of a felony

was "substantially true," even where the crime "was, technically, a misdemeanor." No. 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993); *see also Hahn v. City of Kenner*, 984 F. Supp. 436, 441 (E.D. La. 1997) ("Hahn's arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true."); *Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 148 (Colo. Ct. App. 2001) ("[A]lthough Barnett was convicted of harassment, not stalking, we conclude that the Rocky Mountain News' use of the term 'stalking' to describe his conviction was substantially true, and his defamation claim was properly dismissed."); *Zappin v. Gray Television Grp., Inc.*, No. 3:15-CV-13706, 2016 WL 1637211, at *7 (S.D.W. Va. Mar. 30, 2016), *report and recommendation adopted*, 2016 WL 1629365 (S.D.W. Va. Apr. 22, 2016) (finding the statement that plaintiff "may be charged in the incident" was substantially true, where a report was filed with the sheriff's office and plaintiff's actions "may reasonably have been viewed as potentially warranting a criminal charge.").

Here, the gist or sting of the reference to "convicted felon" in the broadcasts on April 23, 2018, May 4, 2018 and May 9, 2018 was that Blankenship was convicted of criminal conspiracy to violate mine safety laws and served a prison sentence, which is true. *See* FAC ¶¶ 7-11, 170, 172, 191; *see* Exs. 2-4. Indeed, the challenged May 9, 2018 broadcast began with the plain statement that *"[Blankenship] is, of course, the former coal company executive who was released from prison last year after serving a year for mine safety violations connected to an explosion that killed 29 people . . ."* with "convicted felon" stated only at the end of the three-minute broadcast. *See* Ex. 4. Similarly, the gist or sting of the reference to "felonious" in the April 16, 2018 tweet and "convicted felon" in the May 17, 2018 and June 25, 2018 online articles was that Blankenship had been convicted of a crime, which is true. *See* Exs. 1, 5-6; FAC ¶¶7-11, 141-45, 169, 206, 219. Whether the NBC Defendants reported that Blankenship was a "convicted felon" or that he was

*convicted of conspiracy to violate mine safety laws, a misdemeanor, and sentenced to a year in*

*prison,* no different effect would have been produced in the mind of the ordinary viewer or reader.

*See Masson,* 501 U.S. at 517; *Ballengee,* 331 F. Supp.3d at 547-48.[9]

The passing reference to "felonious" and "convicted felon" did not render the subject

broadcasts, tweet and online news articles false.  Therefore, because falsity is an essential element

of Blankenship's claims, the FAC fails to state a claim as a matter of law and should be dismissed.

## 2.  The FAC Fails To Plausibly Allege Actual Malice.

The FAC concedes, as it must, that actual malice is an essential element of Blankenship's

defamation and false light claims.  FAC ¶¶ 24, 229, 243.  Courts routinely dismiss defamation and

false light claims under Rule 12(b)(6) for failing to plead sufficient facts supporting the element

of actual malice. *See, e.g., Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 674 F.3d 369,

378 (4th Circ. 2012) (holding that allegation that statements "'were known by [them] to be false

at the time they were made, were malicious or were made with reckless disregard as to their

veracity' is entirely insufficient" to plausibly assert actual malice) (alteration in original); *Michel*

---

[9] In sentencing Blankenship, U.S. District Judge Berger of the Southern District of West Virginia noted
the seriousness of the crime, whether labeled a misdemeanor or felony:

> The crime is serious. There's been discussion here about the acquittal of felony
> offenses and your conviction of a misdemeanor. Those of us in the legal community put
> tags on offenses. Congress puts tags on offenses.
> **But when we seek to sentence someone, we sentence based on the conduct, which
> I find to be very serious not only in its commission but in its potential impact in
> terms of risk in this particular case.**

Transcript of Proceedings, Sentencing Hearing, *United States v. Blankenship,* No. 5:14-CR-00244 (S.D. W.
Va. Apr. 6, 2016) at 71:10-17 (emphasis added) (certified copy attached as **Ex. 7**).  The Court may take
judicial notice of the publicly available transcript because it is generally known within the Court's territorial
jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably
be questioned. Fed. R. Evid. 201; *see e.g., Fletcher v. Menard Corr. Ctr.,* 623 F.3d 1171, 1173 (7th Cir.
2010) (court may take judicial notice of other proceedings involving the same litigant); *U.S. v. Mattox,* 402
F. App'x 507, 509 n.5 (11th Cir. 2010) (court may take judicial notice of its own records); *Gasner v.
Dinwiddie,* 162 F.R.D. 280, 282 (E.D.Va.1995) (court may take judicial notice of public documents such
as court records).

*v. NYP Holdings, Inc.*, 816 F3d. 686, 704 (11th Cir. 2016) ("The complaint here does not present factual allegations sufficient to give rise" "to a reasonable inference that the defendants acted to intentionally avoid learning the truth"); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (affirming dismissal of defamation and false light claims because "none of [the plaintiff's] allegations – singly or together – plausibly suggest that, given the articles' reporting the [defendant] either knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway") (alterations added).

Like the plaintiffs in those cases, Blankenship fails to plead facts to plausibly establish actual malice. Blankenship alleges that two years before the NBC Defendants published the challenged statements, an NBC reporter who is not a defendant in this case reported that Blankenship was convicted of a misdemeanor. FAC ¶¶169, 173, 191, 206, fn. 8&9. He asserts that this 2016 news article written by a non-defendant demonstrates that some of the NBC Defendants acted with actual malice in 2018. *Id.*[10] United States Supreme Court precedent renders such facts insufficient as a matter of law to plausibly allege actual malice.

Actual malice is a subjective test of the speaker's state of mind at the time of publishing the alleged statement. *New York Times Co. v. Sullivan*, 376 U.S. 254, 286-87 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). In *Sullivan*, plaintiffs asserted that The New York Times acted with actual malice because it failed to check the accuracy of an allegedly defamatory advertisement against news stories in the Times' files. The Court held:

---

[10] The FAC does not allege that Schwartz or CNBC knew when they published the June 25, 2018 online news article that a non-defendant NBC reporter had reported two years earlier that Blankenship was convicted of a misdemeanor. *See* FAC ¶ 219.

> The mere presence of the stories in the files does not, of course, establish that the Times 'knew' the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement.

376 U.S. at 287.

Such is true here. *Sullivan* and its progeny make clear that institutional knowledge does not demonstrate actual malice. For any of the NBC Defendants to be liable, Blankenship must show that the individual who uttered or wrote an allegedly defamatory statement – Hayes, Reid, Caldwell or Schwartz – did so with actual malice. *Sullivan*, 376 U.S. at 287; *see, e.g., Holbrook v. Harman Automotive, Inc.*, 58 F.3d 222, 225 (6th Cir. 1995) ("[W]here, as here, the defendant is an institution rather than an individual, the question is whether the individual responsible for the statement's publication acted with the requisite culpable state of mind."). The FAC fails to allege any facts establishing that the Individual NBC Defendants knew that Blankenship was convicted of a misdemeanor rather than a felony at the time they made the challenged statements, or entertained serious doubts about the accuracy of the words "felonious" or "convicted felon."

Blankenship implies that the NBC Defendants should have consulted "freely-available public records of Mr. Blankenship's trial and conviction." FAC ¶¶ 230, 244. But failure to investigate does not establish actual malice. *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *St. Amant*, 390 U.S. at 731 ("[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing."); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (affirming dismissal of defamation and false light claims; defendants' failure to search PACER system to see if plaintiff had filed for bankruptcy was not

12

proof of actual malice because "failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth").

Moreover, "actual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false," because actual malice is determined at the time of publication. *Pippen*, 734 F.3d at 614 (citing *Sullivan*, 376 U.S. at 286); *see also St. Amant*, 390 U.S. at 731. Therefore, Blankenship's allegation that the NBC Defendants did not publish a retraction does not plausibly allege actual malice. FAC ¶¶ 173, 191, 206. The FAC should be dismissed.

### B. The FAC Should Be Dismissed Against Reid, Schwartz, CNBC and NBC Universal under FRCP 12(b)(4) and 12(b)(5).

FRCP 12(b)(4) allows dismissal of a complaint for insufficient process, while FRCP 12(b)(5) allows dismissal for insufficient service of process. The FAC should be dismissed against four of the NBC Defendants on these grounds.

#### 1. Brian Schwartz

Pursuant to FRCP 4(e)(1), W. Va. Civ. R. 4(d)(1)(D), and N.J. Ct. R. 4:4-3, Plaintiff tried to serve Schwartz via certified mail at CNBC's office in New Jersey. (ECF No. 120.) When certified mail is used for service, W. Va. Civ. R. 4(d)(1)(D) and N.J. Ct. R. 4:4-3 require delivery to be restricted to the addressee. Courts mandate strict compliance with this rule. *See, e.g., State ex rel. Farber v. Mazzone*, 213 W. Va. 661, 666, 584 S.E.2d 517, 522 (2003); *White v. Wells Fargo Bank*, No. 1:13-CV-24248, 2014 WL 3882181, at *9 (S.D.W. Va. Aug. 7, 2014), *aff'd* (Feb. 25, 2015); *Berger v. Paterson Veterans Taxi Serv.*, 244 N.J. Super. 200, 204 (App. Div. 1990).

Plaintiff did not comply. The return receipt shows that "Restricted Delivery" was not selected, and it was signed by "John Tanella." (ECF No. 120.) Schwartz did not sign for the certified mail or appoint another to accept service. (Schwartz Dec. ¶ 20.) He does not recognize

the name of the person who signed. (*Id.*) As such, service on Schwartz was insufficient, and the FAC against him should be dismissed.

## 2. Joy Reid

Blankenship did not properly serve Reid because he failed to comply with the 90-day service deadline under FRCP 4(m). Because Reid was a defendant in the original Complaint, Plaintiff had 90 days from the date of removal, March 29, 2019, to effect service. *See* 28 U.S.C. § 1448. Thus, Plaintiff had until June 27, 2019 to serve Reid. Reid was served on June 30, 2019, three days late. (Reid Dec. ¶ 22.) The FAC against Reid should be dismissed.

## 3. NBCUniversal and CNBC

On April 9, 2019, the FAC was filed naming NBCUniversal and CNBC as defendants. The docket shows that plaintiff has not tried to serve them. Blankenship did not ask the clerk for a summons, and none has been issued. The 90-day service deadline expired on July 8, 2019. FRCP 4(m). Thus, the FAC should be dismissed against NBCUniversal and CNBC.

## C. The FAC Against The Individual NBC Defendants Should Be Dismissed For Lack Of Personal Jurisdiction.

When a defendant moves under Rule 12(b)(2) to dismiss a complaint for lack of personal jurisdiction, it is the plaintiff's burden "to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Felman Prod. Inc. v. Bannai*, 517 F. Supp.2d 824, 828 (S.D.W. Va. 2007) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). Blankenship cannot meet his burden with regard to the Individual NBC Defendants.

## 1. The Individual NBC Defendants are not subject to general jurisdiction.

The Court has general jurisdiction over an individual who is domiciled in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). An individual may have only one domicile, which is established through a physical presence in the forum with the

14

intention to remain. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Bowles v. Lowe's Home Centers, LLC*, No. 2:14-CV-30524, 2015 WL 13049455, at *3-4 (S.D.W. Va. Apr. 17, 2015). Courts look to several factors to determine an individual's domicile, including "current residence, voter registration, location of personal and real property and bank accounts, memberships, place of employment, driver's license, and payment of taxes." *Bowles*, 2015 WL 13049455, at *4.

The FAC does not and cannot allege that the Individual NBC Defendants are domiciled in West Virginia. Hayes and Schwartz are domiciled in New York, Caldwell is domiciled in Washington, D.C., and Reid is domiciled in Maryland. (Hayes Dec. ¶ 4, attached as **Ex. 8**; Schwartz Dec. ¶ 4, attached as **Ex. 9**; Caldwell Dec. ¶ 4, attached as **Ex. 10**; Reid Dec. ¶ 4, attached as **Ex. 11**.) None of the four satisfies any of the factors that could establish West Virginia as his or her domicile; they have no such connections to West Virginia whatsoever. (Hayes Dec. ¶¶ 4-7; Schwartz Dec. ¶¶ 4-8; Caldwell Dec. ¶¶ 4-8; Reid Dec. ¶¶ 4-8.) Thus, none of the Individual NBC Defendants are subject to general jurisdiction in West Virginia.

### 2. The Individual NBC Defendants are not subject to specific jurisdiction.

Specific jurisdiction is present when a non-domiciliary has sufficient contacts with the forum that give rise to the suit and justify the exercise of jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The West Virginia Supreme Court of Appeals has held:

> A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes . . . . The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

Syl. Pt. 5, *Abbott v. Owens-Corning Fiberglas Corp.*, 191 W. Va. 198, 200, 444 S.E.2d 285 (1994) *superseded by statute on other grounds State ex rel. Ford Motor Co. v. Nibert*, 235 W.Va. 235,

773 S.E.2d 1 (2015); *see also* Syl. Pt. 1, *Nezan v. Aries Techs.*, 226 W. Va. 631, 633, 704 S.E.2d 631 (2010).[11]

   a. *The West Virginia Long-Arm Statute does not confer jurisdiction over the Individual NBC Defendants.*

The long-arm statute permits jurisdiction over nonresidents who engage in certain listed acts "for a cause of action arising from or growing out of such act or acts." W. Va. Code § 56-3-33. Plaintiff asserts that jurisdiction is proper because "the Defendants . . . transacted business in this state; that they contracted to supply services or things in this state; that they caused tortious injury to Plaintiff by an act or omission in this state; and that they caused tortious injury in this state by an act or omission outside this state while regularly doing and/or soliciting business in this state and/or engaging in a persistent course of conduct and/or deriving substantial revenue from goods used or consumed or services rendered in this state." FAC ¶ 27. Plaintiff is wrong.

The Individual NBC Defendants have not transacted any business in West Virginia relating to Plaintiff's causes of action. (Hayes Dec. ¶ 20; Schwartz Dec. ¶ 14; Caldwell Dec. ¶ 14; Reid Dec. ¶ 17). Plaintiff's general assertion that all Defendants have transacted business in West Virginia is not sufficient to prove jurisdiction. *See Eddy v. Ingenesis, Inc.*, No. 13-0888, 2014 WL 1672939, at *3 (W. Va. Apr. 25, 2014) (holding that nonresident corporation without contracts or work in West Virginia was not subject to jurisdiction despite plaintiff's assertion that defendant transacted business in the state). Likewise, no Individual NBC Defendant contracted to supply

---

[11] The Fourth Circuit has suggested in dicta that the West Virginia statutory and federal due process inquiries merge. *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir.1997). We submit that the inquiries should remain distinct as held by West Virginia's high court. *See Erie R. Co. v. Tompkins.* 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). In any event, the Individual NBC Defendants are not subject to personal jurisdiction in West Virginia under either the statutory or due process inquiry.

services or things in West Virginia. (Hayes Dec. ¶ 21; Schwartz Dec. ¶ 15; Caldwell Dec. ¶ 15; Reid Dec. ¶ 18).

Further, no Individual NBC Defendant caused tortious injury to Plaintiff by an act or omission in West Virginia. Indeed, none of the Individual NBC Defendants visited West Virginia for any purpose related to the challenged content, nor caused anyone else to do so. (Hayes Dec. ¶¶ 16-17, 19; Schwartz Dec. ¶¶ 8, 12; Caldwell Dec. ¶¶ 8, 12; Reid Dec. ¶¶ 8, 16, 20.)

Finally, no Individual NBC Defendant regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in West Virginia. (Hayes Dec. ¶ 21-22; Schwartz Dec. ¶ 15-16; Caldwell Dec. ¶ 15-16; Reid Dec. ¶ 18-19.) Without such actions, an alleged act or omission done outside of West Virginia – including the creation and publication of the content that Blankenship alleges to be false and defamatory – cannot sustain personal jurisdiction under the long-arm statute. *See* W. Va. Code § 56-3-33. The long-arm statute does not permit the exercise of personal jurisdiction over the Individual NBC Defendants, and therefore the FAC against them should be dismissed.

b.  *The Individual NBC Defendants do not have sufficient minimum contacts with West Virginia to permit the exercise of personal jurisdiction under due process.*

Even if any of the Individual NBC Defendants were subject to the long-arm statute, federal due process requirements would bar the exercise of jurisdiction over them.

The due process inquiry asks whether each Individual NBC Defendant has sufficient minimum contacts with West Virginia such that requiring him or her to defend this case here would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The necessary contacts are those in which the defendant "purposely avails itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), so that they should "reasonably anticipate being haled into court there."

17

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The litigation must arise

out of or relate to those contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

Blankenship may contend that the Individual NBC Defendants are subject to specific

jurisdiction under the "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984), but *Calder* does not

reach that far. The "effects" test examines whether:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of
> the harm in the forum, such that the forum can be said to be the focal point of the
> harm; and (3) the defendant expressly aimed his tortious conduct at the forum,
> such that the forum can be said to be the focal point of the tortious activity.

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 n.7 (4th Cir.2003)

(discussing *Calder*).

In *Calder*, the Court held that a California court could exert jurisdiction over a National

Enquirer reporter and editor in Florida who wrote and edited an allegedly libelous article about the

plaintiff because the article relied on California sources and plaintiff suffered the "brunt of the

harm" in California, where she lived. The Court held that "California is the focal point both of the

story and of the harm suffered" and that the defendants' acts were "expressly aimed" at California

in part because the Enquirer's largest circulation was in California. *Calder*, 465 U.S. at 788-89.

*Calder* does not mean that all allegedly defamatory news articles, especially those posted

on the Internet or broadcast nationally, create jurisdiction where a plaintiff resides. "Something

more than posting and accessibility is needed" to show that a defendant purposely directed activity

into the forum state. *Young v. New Haven Advocate,* 315 F.3d 256, 263 (4th Cir. 2002). The

defendant must "manifest an intent to target and focus on" an audience in the forum. *Id.*

In *Young*, two Connecticut newspapers published online news articles that reported on

harsh conditions at a Virginia prison that housed inmates from Connecticut. *Id.* at 258-59. The

warden sued in Virginia, alleging that he was defamed and the effects were felt in Virginia. *Id.* at

259.   The Fourth Circuit held that the newspapers were not subject to jurisdiction in Virginia because their websites were not aimed at Virginia readers, the focus of the articles was Connecticut's policy of transferring prisoners to Virginia, and the reporters researched and wrote their articles in Connecticut without traveling to Virginia. *Id.* at 263-64.

As in *Young*, the facts here do not establish jurisdiction. First, Blankenship is not domiciled in the forum state, so the brunt of the harm cannot be said to fall in West Virginia.[12]   Second, none of the subject broadcasts or publications urged any action or inaction on the part of any West Virginia voters. (Hayes Dec. ¶ 15; Schwartz Dec. ¶ 18; Caldwell Dec. ¶ 18; Reid Dec. ¶ 15.) Indeed, three of the complained-of statements were made **after** the May 8, 2018 primary election in West Virginia and could not have influenced the primary or targeted West Virginia voters as Blankenship alleges. (Hayes Dec. ¶ 15.b; Schwartz Dec. ¶ 17; Caldwell Dec. ¶ 17.)

Third, like the defendants in *Young*, the Individual NBC Defendants did not travel to, assign anyone to travel to, or interview sources in, West Virginia to report the challenged content; nor did they create the content in West Virginia.[13]   (Hayes Dec. ¶¶ 16-21; Schwartz Dec. ¶¶ 12-15; Caldwell Dec. ¶¶ 13-15; Reid Dec. ¶¶ 16-18.)   While Caldwell interviewed Senator Joe Manchin for the May 17, 2018 article, the interview occurred in Washington, D.C. (Caldwell Dec. ¶¶ 12-13.)

Fourth, like the articles in *Young*, the broadcasts, tweets and articles here focused on issues and events beyond West Virginia, including the GOP's national strategy to flip Senate seats, the GOP's tactic of attacking Hillary Clinton, Blankenship's attacks on McConnell, and President

---

[12] As the Court noted in its July 17, 2019 Memorandum Opinion and Order, Plaintiff "does not contest Fox News' representation that he is a Nevada domiciliary." (ECF No. 133 at 2 n.2).

[13] *See also Hatfill v. New York Times Co.*, No. 04-CV-807, 2004 WL 3023003, at *13 (E.D. Va. Nov. 24, 2004), *rev'd and remanded on other grounds*, 416 F.3d 320 (4th Cir. 2005) (dismissing from suit the author of challenged news coverage who did not travel to, report in, or have other contacts with forum state).

Trump's involvement in trying to maintain Republican control of the Senate. (*See* Exs. 1-6.) The broadcasts and publications were aimed at a national audience. (Hayes Dec. ¶¶ 8-12; Schwartz Dec. ¶¶ 9, 19; Caldwell Dec. ¶¶ 9, 19; Reid Dec. ¶¶ 10-15.) They focused on national politics in general and Washington, D.C., in particular, not West Virginia. Thus, as in *Young* and not *Calder*, the Individual NBC Defendants did not manifest an intent to target forum state viewers and readers. *See ESAB Grp., v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (denying jurisdiction when defendant's sales efforts focused "more generally on customers located throughout the United States and Canada without focusing on and targeting" forum state).

In sum, the Court has neither general nor specific jurisdiction over the Individual NBC Defendants, and should dismiss the FAC as to them.

## IV.    CONCLUSION

The FAC should be dismissed with prejudice against all NBC Defendants for failure to state a claim; against Schwartz, Reid, NBC Universal and CNBC for insufficient process and service of process; and against the Individual NBC Defendants for lack of personal jurisdiction.

Respectfully submitted,

/s/ Monica L. Dias
Monica L. Dias (OH #0073617)
(*pro hac vice*)
FROST BROWN TODD LLC
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
(513) 651-6783 (phone)
(513) 651-6981 (fax)
mdias@fbtlaw.com

/s/ Jared M. Tully
Jared M. Tully (WV Bar No. 9444)
Elise N. McQuain (WV Bar No. 12253)
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
304-345-0111 (phone)
304-345-0115 (fax)
jtully@fbtlaw.com
emcquain@fbtlaw.com

*Attorneys for MSNBC Cable, LLC, NBCUniversal, LLC, CNBC, LLC, Chris Hayes, Joy Ann Lomena-Reid, Leigh Ann Caldwell, and Brian Schwartz*

0141761.0718633   4815-5800-8993v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**DON BLANKENSHIP**

    **Plaintiff,**

                                                      **Civil Action No.: 2:19-CV-00236**

**v.**

**HONORABLE ANDREW NAPOLITANO (RET.);**
**et al.**

        **Defendants.**

## CERTIFICATE OF SERVICE

I, Jared M. Tully, do hereby certify that I have electronically filed the foregoing *Memorandum in Support of NBC Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, for Insufficient Process and Service of Process on Certain NBC Defendants, and for Lack of Personal Jurisdiction over Individual NBC Defendants*, this 16th day of August, 2019, using the CM/ECF system, and that I have provided courtesy copies of Exhibits 2, 3 and 4 of the Memorandum to counsel for Plaintiff and to the court via DVD. Copies will be provided upon request to any defendant who wishes to have a copy of the DVD. Copies of the Motion to Dismiss and supporting Memorandum have been mailed to the following non-ECF counsel who may also request a copy of Exhibits 2, 3 and 4.

Jim Heath                                    J.W. Williamson
224 McCullough Blvd. N                        375 Old Highway 421 South
Lake Havasu City, AZ 86403                    Boone, NC 28607


                                              */s/ Jared M. Tully*
                                              Jared M. Tully (WV Bar No. 9444)

0141761.0718633  4851-3846-1856v1