**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| |
|---|
| DON BLANKENSHIP, |
| |
|              Plaintiff, |
| v. |
| |
| HONORABLE ANDREW NAPOLITANO, et al., |
|              Defendants. |

Case No.: 2:19-cv-00236

**DEFENDANTS FISCALNOTE AND GRIFFIN CONNOLLY'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ..................................................................................................1

ARGUMENT ..........................................................................................................................3

I.    PLAINTIFF MUST PROVIDE SUFFICIENT FACTUAL ALLEGATIONS TO
      SET FORTH A PLAUSIBLE CLAIM ........................................................................3

II.   GRIFFIN CONNOLLY SHOULD BE DISMISSED BECAUSE HE DID NOT
      MAKE THE ALLEGED STATEMENT .......................................................................4

III.  PLAINTIFF HAS NOT ADEQUATELY PLED DEFAMATION AGAINST
      THE FISCALNOTE DEFENDANTS ..........................................................................4

      A.    Plaintiff Fails to Adequately Plead Actual Malice ................................................5

      B.    Plaintiff Does Not Allege Any Facts that Would Demonstrate the
            FiscalNote Defendants Intended Harm to Plaintiff by Using One Wrong
            Word ................................................................................................................7

      C.    Plaintiff's Defamation Claim Must Fail For Failure to Allege Facts
            Sufficient to Establish a Plausible Causation Claim..............................................8

IV.   PLAINTIFF HAS NOT ADEQUATELY PLED FALSE LIGHT AGAINST THE
      FISCALNOTE DEFENDANTS ..................................................................................9

      A.    Plaintiff's False Light Claim Should Also be Dismissed for Failure to
            Adequately Plead Widespread Publicity................................................................9

      B.    The False Light Claim Should be Dismissed for Failure to Allege Any
            Damage to Plaintiff's "Inner Person" ................................................................11

CONCLUSION......................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.*,
    367 F.3d 212 (4th Cir. 2004) ....................................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................1, 3, 6

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
    Civ. A. No. 3:12CV204–HEH, 2012 WL 1440183 (E.D. Va. Apr. 25, 2012) .........6

*CACI Premier Tech. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) ................................................................................5, 6

*Crump v. Beckley Newspapers, Inc.*,
    173 W. Va. 699, 320 S.E.2d 70 (1983)..........................................................5, 9, 11

*Dickens v. Werner Enter., Inc.*,
    Civ. A. No. 1:12CV76, 2012 WL 4813545 (S.D. Va. Oct. 10, 2012)..................2, 6

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) .................................................................................3

*Giles v. Kanawha Cty. Bd. of Educ.*,
    No. 17-0139, 2018 WL 300605 (W. Va. Jan. 5, 2018).......................................6, 10

*Hanks v. Wavy Broadcasting, LLC*,
    Civ. A. No. 2:11cv439, 2012 WL 405065 (E.D. Va. Feb. 8, 2012) ........................7

*Long v. Egnor*,
    176 W. Va. 628, 346 S.E.2d 778 (1986)..................................................................6

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ...................................................................................6

*Miller v. City Hosp. Inc.*,
    475 S.E.2d 495 (W. Va. 1996).................................................................................5

*Sprouse v. Clay Commc'n, Inc.*,
    158 W. Va. 427, 211 S.E.2d 674 (1975)..................................................................5

*State ex rel. Suriano v. Gaughan*
    198 W. Va. 339, 480 S.E.2d 548 (1996)...........................................................5, 7, 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 3, 6

## PRELIMINARY STATEMENT

With its decisions in *Iqbal* and *Twombly*, the United States Supreme Court established the modern pleading standard.  Throughout the years that have followed, litigants have disputed and will continue to dispute the sufficiency of complaint allegations under that standard.  But in certain instances, the insufficiency of a complaint is beyond reasonable dispute under any application of the pleading standard.  This is one such case.  Blankenship's complaint contains *one* factual allegation about Defendants FiscalNote, Inc. and Griffin Connolly (collectively, the "FiscalNote Defendants"), regarding *one sentence* with *one mistaken word* uttered in *one* Roll Call article— from which, he concludes, somehow that it caused him to lose a Senate bid.  That is the sum total of Blankenship's allegations against the FiscalNote Defendants.   As such, Blankenship's complaint fails to state any actionable claims against the FiscalNote Defendants.  And that is before the scores of other, far more material factors that could have caused Blankenship's election defeat, are even considered.  Blankenship's complaint comes nowhere near passing muster and, pursuant to Federal Rule of Civil Procedure 12(b)(6), should be dismissed.

## FACTUAL BACKGROUND

The colorful persona that is Don Blankenship, as well as his criminal history, his failed political career, and his allegations here are by now well established, both through his First Amended Complaint and through the myriad other motions to dismiss.  In the interests of brevity, the FiscalNote Defendants will not repeat those facts and allegations here, but will instead focus on those facts that are unique to the FiscalNote Defendants.

FiscalNote, Inc. is a company that specializes in information management and offers a variety of products and services.  Among other offerings, it owns two publications, Congressional Quarterly and Roll Call, which provide reporting principally to Congressional staffers.  Defendant Griffin Connolly is a staff writer for Roll Call.  First Am. Compl. ("FAC") ¶ 101.  On May 7,

2018, the day before the Republican primary for the West Virginia Senate seat for which Plaintiff was campaigning, Roll Call published an article titled "Blankenship Blames Establishment For 'Misinforming' Trump" ("Roll Call Article"), attached as Ex. 1. Plaintiff alleges that Mr. Connolly authored the article. FAC ¶ 175. However, as is apparent from the face of the article, Mr. Connolly **was not the author**—it was Eric Garcia, who is not a defendant here. Ex. 1, Roll Call Article.[1]

Mr. Garcia's article discussed Plaintiff's response to President Trump's efforts to secure Plaintiff's campaign defeat and a variety of derogatory and racist comments Plaintiff had made. *See generally id.* Buried in a sentence discussing Trump's opposition, the article mistakenly referred to Plaintiff as a felon. It stated: "West Virginia GOP Senate candidate Don Blankenship suggested that establishment Republicans are 'misinforming' President Donald Trump and telling him to oppose his campaign "because they do not want me to be in the U.S. Senate and promote the president's agenda," the convicted felon and businessman wrote Monday morning on Facebook." *Id.* Although confusing its classification, Mr. Garcia otherwise correctly identified the crime for which Plaintiff was convicted at the end of his article: "Blankenship was convicted of conspiracy to violate federal mine safety laws after 29 miners were killed in the 2010 Upper Big Branch Mine disaster." *Id.* As the Amended Complaint—and the sheer number of defendants therein—makes clear, confusion regarding the nature of Plaintiff's conviction was commonplace. Indeed, the Amended Complaint alone identifies nearly 20 other references in the media to Plaintiff

---

[1]     The Court may take judicial notice of the Roll Call article, which is quoted in and "integral to the complaint," with respect to the allegations against the FiscalNote Defendants. *See Dickens v. Werner Enter., Inc.*, Civ. A. No. 1:12CV76, 2012 WL 4813545, at *5 (S.D. Va. Oct. 10, 2012) (quoting *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (2009)); *see also Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.,* 367 F.3d 212, 235 (4th Cir. 2004).

as a felon *before* Mr. Garcia's Roll Call article was published, 18 other statements on the same day

as the Roll Call Article, and over 30 references thereafter.

## ARGUMENT

## I.   PLAINTIFF MUST PROVIDE SUFFICIENT FACTUAL ALLEGATIONS TO SET FORTH A PLAUSIBLE CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that *is plausible on its face*." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quotation marks omitted) (emphasis added). "A pleading that offers labels and

conclusions *or a formulaic recitation of the elements of a cause of action will not do*," nor will

"naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted)

(emphasis added); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Rule 12(b)(6)

closes "the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*,

556 U.S. at 678-79. Rather, there must be "well-pleaded factual allegations." *Id.* at 679. Plaintiff

must offer "some 'factual enhancement' within the complaint to cross 'the line between possibility

and plausibility of entitlement to relief.'" *Giacomelli*, 588 F.3d at 193 (quoting *Twombly*, 550

U.S. at 557).

The present case is precisely the type of claim that the pleading standard is intended to

forestall. In a complaint with 250 paragraphs, spanning 59 pages, the sum total of the allegations

against the FiscalNote Defendants is exactly one sentence: "On May 7, 2018, Roll Call published

an article written by Griffin Connolly that stated, 'the convicted felon and businessman wrote

Monday morning on Facebook'." FAC ¶ 175. Rooted in that one sentence—based on one word

mistakenly included in one article—Plaintiff now seeks compensatory damages "in an amount not

less than $2 billion dollars," and $10 billion in punitive damages. FAC ¶¶ 24-25. To permit such

a claim to go forward would be squarely at odds with the well-established pleading standard.

3

## II.     GRIFFIN CONNOLLY SHOULD BE DISMISSED BECAUSE HE DID NOT MAKE THE ALLEGED STATEMENT

As a threshold matter, individual defendant Griffin Connolly should be dismissed for a simple reason: he did not make the challenged statement.  Eric Garcia—who is not a defendant—authored the Roll Call Article, not Mr. Connolly.  Plaintiff appears to have confused a recognition of Mr. Connolly for his contributions at the end of the article as being the byline.  The face of the Roll Call Article is clear Mr. Garcia is the author.  Therefore, there are no well-pleaded allegations against Mr. Connolly.

## III.    PLAINTIFF HAS NOT ADEQUATELY PLED DEFAMATION AGAINST THE FISCALNOTE DEFENDANTS

Additionally, Plaintiff's defamation claim should be dismissed as to both FiscalNote Defendants.  Plaintiff's single allegation against these Defendants cannot sustain a defamation claim.  As an initial matter, the FiscalNote Defendants join in the argument presented in the Fox News Defendants'[2] motion to dismiss that Plaintiff's claim must fail because referring to Plaintiff as having committed a felony, rather than a misdemeanor, is substantially true.  This is especially true where, as here, the Roll Call Article correctly describes the crime for which Plaintiff was convicted—conspiracy to violate mine safety laws.

Among other elements, Plaintiff also must demonstrate that the FiscalNote Defendants uttered the one wrong word (i) with actual malice, that is, with knowledge that the statement was false or with "reckless and willful disregard" to the truth; (ii) intending to injure the plaintiff with the publication; and (iii) and it resulted in injury.  *See Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427, 427, 211 S.E.2d 674, 679 (1975); *Miller v. City Hosp. Inc.*, 475 S.E.2d 495, 497 (W. Va.

---

[2]     The Fox News Defendants are Fox News Network, LLC, Bradley Blakeman, Neil Cavuto, Stephanie Hamill, John Layfield, Elizabeth MacDonald, and Judge Andrew Napolitano.  Their motion to dismiss was filed concurrently with the present motion.

1996) (citing *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983)).  Plaintiff has failed with respect to all three elements.

### A.    Plaintiff Fails to Adequately Plead Actual Malice

At most, Plaintiff, has alleged that FiscalNote, through Mr. Garcia (who is not a defendant) mistakenly believed that Plaintiff had been convicted of a felony, rather than a misdemeanor—the same mistake made by scores of other journalists.  Plaintiff's only allegation of actual malice with respect to the FiscalNote Defendants is his catch-all statement equally applicable to all 102 Defendants: "Defendants, and each of them, made their respective defamatory statements with actual malice, that is, actual knowledge of the falsity of their statements or, at a minimum, with reckless and willful disregard of the truth or falsity of the statements."  FAC ¶ 229.  This falls far short of the demanding actual malice standard.

The actual malice standard is a challenging one to satisfy.  Plaintiff must ultimately prove actual malice with "clear and convincing evidence."  *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (citation omitted); *accord State ex rel. Suriano v. Gaughan* 198 W. Va. 339, 354, 480 S.E.2d 548, 563 (1996).  And for good reason.  The requirement to plead, and subsequently prove, actual malice serves as a critical protection to fundamental First Amendment rights.  As the Fourth Circuit has held, "[t]he actual malice standard . . . is rooted in the First Amendment's 'vital guarantee of free and uninhibited discussion of public issues.'" *CACI Premier Tech., Inc. v. Rhodes,* 536 F.3d at 293 (citation omitted).  It "ensures that defamation cases involving issues of public concern are considered 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-

open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government[,] public officials,' and public figures." *Id.*[3]

Here, Plaintiff's catch-all, generic actual malice allegation is precisely the type of conclusory, "formulaic recitation of the elements" that is prohibited by the pleading requirements. *See Iqbal*, 556 U.S. at 678.  Indeed, in *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc*., 674 F.3d 369 (4th Cir. 2012), the Fourth Circuit, when presented with an almost identical allegation, affirmed the lower court's decision to grant a motion to dismiss for failure to adequately plead actual malice.  There, the plaintiff alleged only that defendants' "statements 'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity.'"  *Mayfield,* 674 F.3d 378.  The court held that such a "conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."  *Id.*  Other courts within the Fourth Circuit have reached the same conclusion.  *See, e.g.*, *Dickens v. Werner Enter., Inc*., 2012 WL 4813545, *5 (granting motion to dismiss where complaint only recited actual malice standard as an allegation, and noting that "[a] claim of actual malice must be supported by some factual allegations, or the reviewing *court is not entitled to assume the truth of that claim*" (emphasis added)); *Besen v. Parents & Friends of Ex-Gays, Inc*., Civ. A. No. 3:12CV204–HEH, 2012 WL 1440183, at *6 (E.D. Va. Apr. 25, 2012) (granting motion to dismiss because "in cases where a defamation claim requires a showing of actual malice, . . . conclusory allegations regarding the [defendants'] intent ... are insufficient to

---

[3]     Indeed, for this reason, West Virginia trial courts, under the West Virginia corollary to Rule 12(b)(6), "apply a stricter standard in appraising defamation actions filed by public officials or public figures under a motion to dismiss . . . . Unless the complaint demonstrates on its face sufficient facts to support the elements of a defamation action, the complaint should be dismissed . . . ." *Long v. Egnor*, 176 W. Va. 628, 346 S.E.2d 778, Syl. 3 (1986); *accord Giles v. Kanawha Cty. Bd. of Educ.*, No. 17-0139, 2018 WL 300605 (W. Va. Jan. 5, 2018) (memorandum decision).

survive a motion to dismiss." (citations and quotations omitted)); *Hanks v. Wavy Broadcasting, LLC*, Civ. A. No. 2:11cv439, 2012 WL 405065, at \*13 (E.D. Va. Feb. 8, 2012) ("Merely pleading the standard for actual malice in the Complaint without more is insufficient to state a claim.  Since Plaintiff fails to adequately plead actual malice, the Court dismisses Count I on this additional basis.").

Plaintiff also makes a blanket assumption "that the media organization Defendants, and each of them, failed to follow or comply with their own policies and procedures regarding the reporting of criminal convictions."  FAC ¶¶ 231, 245.  This, too, doesn't cut it.  "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, *or would have investigated before publishing*.  There must be sufficient evidence to permit the conclusion that *the defendant* in fact entertained serious doubts as to the truth of his publication."  *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 354, 480 S.E.2d 548, 563 (1996) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)) (emphases added).  The Amended Complaint has no allegation specific to the FiscalNote Defendants' state of mind, much less that they specifically entertained serious doubts as to the truth of the statement.

Plaintiff's defamation claim should be dismissed for doing exactly what *Iqbal, Twombly*, and their progeny expressly prohibit: merely reciting a legal element in hopes of pleading a critical element of his claim.

### B.    Plaintiff Does Not Allege Any Facts that Would Demonstrate the FiscalNote Defendants Intended Harm to Plaintiff by Using One Wrong Word

Plaintiff's defamation claim should also be dismissed for failure to allege sufficient (or *any*) facts that the FiscalNote Defendants *intended* to cause Plaintiff harm.  This is a separate question from actual malice.  "An intent to inflict harm is not actual malice; rather, a plaintiff must prove, by clear and convincing proof, an 'intent to inflict harm through falsehood.'"  *Suriano*, 198

7

W. Va. at 354, 480 S.E.2d at 563 (citation omitted).  Unlike the allegations as to certain other Defendants, there are no allegations that the FiscalNote Defendants engaged in a "clandestine campaign," or a "concerted effort to defeat" Plaintiff, or otherwise harbored any intent to inflict harm on Plaintiff.  *See, e.g.*, FAC ¶¶ 14, 167.  The defamation claim fails for this independent reason.

### C.    Plaintiff's Defamation Claim Must Fail For Failure to Allege Facts Sufficient to Establish a Plausible Causation Claim

Typically, causation is a fact question that is not appropriate for determination on a motion to dismiss.  This case is the rare exception.  It takes a mighty leap of logic to assume that the FiscalNote Defendants' single utterance of the word "felon" caused Plaintiff to lose an election, especially where:

> ➢    Plaintiff alleges that that he had already been called a felon "dozens" of times in the media, and specifically identifies 19 other instances, *before* the Roll Call Article ran on May 7, 2018*, see id.* ¶¶ 15, 16, 18, 22, 149, 151-155, 159, 160, 162, 164-166, 169-172;

> ➢    Plaintiff alleges that he was called a felon 18 other times that same day, and alleges numerous continuing references to him as a felon after that date, *see* FAC ¶¶ 166-168, 174, 176-189, 191-221;

> ➢    In contrast to the Roll Call Article, many of these prior references occurred in conservative media, with a viewership that targets the conservative voters, *see* FAC ¶ 156, and others "were made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, innuendo and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him responsibility for murder," *id.* ¶ 23;

> ➢    Plaintiff alleges concerted and coordinated efforts—which the FiscalNote Defendants were not a part of—by the Republican party and by President Trump to actively undermine Plaintiff's campaign—part of a "clandestine campaign," *see, e.g.*, *id.* ¶¶ 3-4, 14, 150, 199, 202, 203, 233-34;

> ➢    He further alleges that he was the subject of misleading and damaging push polling, *id.* ¶ 151;

> ➢    As is demonstrated by the Roll Call Article itself, Plaintiff was the subject of widespread, reputationally-damaging, and indisputably true, media reporting of his

8

antics, including a variety of offensive and racist comments he had made, *see, e.g.*, *id.* ¶ 211; Ex. 1; and

➢ The Amended Complaint is conspicuously devoid of any allegation that—even if he would have otherwise won the *primary*, that he would have won the general election, but for the one word in one Roll Call Article (much less the statements by any other Defendant).

Plaintiff's allegations simply do not—and cannot—establish a ***plausible*** argument that uttering the word "felon" in the course of an article on other subject matter—and with numerous other intervening causes alleged in the very same complaint—could be a legally relevant cause of Plaintiff's failed Senate bid.

## IV.   PLAINTIFF HAS NOT ADEQUATELY PLED FALSE LIGHT AGAINST THE FISCALNOTE DEFENDANTS

Plaintiff's false light claim should also be dismissed as to the FiscalNote Defendants.  As an initial matter, due to the same First Amendment concerns involved in defamation actions, a public figure must prove that a defendant acted with actual malice to prevail on a false light claim. *Crump v. Beckley Newspapers, Inc.,* 173 W. Va. 699, 718, 320 S.E.2d 70, 89 (1983).  Thus, as discussed above, Plaintiff's failure to adequately plead actual malice is the death knell for his false light claim as well.

The false light claim fails for two additional reasons: (1) "widespread publicity … is an essential ingredient to any false light invasion of privacy claim," *Crump*, 173 W. Va. at 716, 320 S.E.2d at 87-88, but due to prior widespread coverage of the same facts—per Plaintiff's own allegations—this claim fails from the outset; and (2) the Amended Complaint lacks any allegation of harm to Plaintiff's "inner person," as required in a false light claim, *id.* at 83.

### A.   Plaintiff's False Light Claim Should Also be Dismissed for Failure to Adequately Plead Widespread Publicity

Plaintiff must allege, and ultimately prove, that the FiscalNote Defendants' alleged false light had "widespread publicity."  *Crump*, 173 W. Va. at 716, 320 S.E.2d at 87-88.  This he cannot

do in light of the extensive other coverage of similar issues prior to publication of the Roll Call Article.

The West Virginia Supreme Court of Appeals recently granted a motion to dismiss in a case that is on all fours with the present matter.  In *Giles v. Kanawha Cty. Bd. of Educ.*, 2018 WL 300605 (W. Va. Jan. 5, 2018) (memorandum opinion), a high school principal was criminally charged with failure to report a sexual assault that happened on the school campus.  A school board member publicly accused the principal of committing a crime for which he was not actually convicted by stating to the media that appointing the principal was "the second worst mistake" he had ever made, and lambasting him for failing to report the assault.  *Id.* at *1.  However, similar to Plaintiff's acquittal of felony charges, the criminal charges were ultimately dismissed against the principal.  *Id.* at *2.

The Supreme Court of Appeals affirmed the lower court's decision to dismiss the false light claim.  *Id.* at *5.  The court noted that "[t]he fact that a sexual assault allegedly occurred at the school, that petitioner was charged with failing to timely report it to authorities, and that he was suspended without pay were fodder for the local news media six days before the challenged statements were made."  *Id.* at *5.  Accordingly, the court concluded that "***it would be disingenuous*** to conclude that Respondent Thaw's statements on February 9, 2015, somehow 'gave publicity' to ***these already widely publicized facts***."  *Id.* (emphases added).

Here, Plaintiff had received far more adverse coverage prior to publication of the Roll Call Article than the *Giles* plaintiff.  As an initial matter, the mine explosion itself received significant coverage, and by Plaintiff's own allegation, President Obama took to the public airwaves "to hold a press conference only ten days after the explosion . . . in which [he] told the world the explosion was the fault of Massey's management—i.e., Don Blankenship."  FAC ¶ 8.  This was followed by

an allegedly "politically supercharged" criminal indictment against Plaintiff. *Id.* ¶ 9. Then, allegedly, prior to the primary election day, "[t]his toxic environment provided the venue in which ***multiple newspersons*** disregarded their obligation to report the truth and lied about Mr. Blankenship, ***reporting ad nauseum in the days leading up to the May 8, 2018 West Virginia Primary*** that he was a 'convicted felon' or had been 'imprisoned for manslaughter.'" *Id.* ¶ 6 (emphases added). Plaintiff further alleges that prominent Republicans, "led by Senate Majority Leader Mitch McConnell, *told all who would listen* that Mr. Blankenship had to be stopped at all costs." *Id.* ¶ 3 (emphasis added). "What followed next was Mr. Blankenship's conviction by the media ***not once, but dozens of times***, of being a felon." *Id.* ¶ 15 (emphasis added); *see also id.* ¶ 21 (alleging that in the week after a televised debate, "multiple news personalities" that were "conservative commentators" (i.e., not Roll Call) "repeatedly and falsely called Mr. Blankenship a 'felon' and 'convicted felon'").

Against this backdrop—including media coverage of the mine disaster in which the U.S. President publicly blamed Plaintiff, and an alleged widespread effort to discredit him and paint him as a felon, all before Roll Call uttered that one word in one article—the Amended Complaint does not plead a plausible claim that the FiscalNote Defendants caused widespread publicity of the alleged false light.

### B. The False Light Claim Should be Dismissed for Failure to Allege Any Damage to Plaintiff's "Inner Person"

A fundamental difference between a defamation claim and a false light claim is that while the former protects one's reputation, the latter "involve injuries to emotions and mental suffering," i.e., the "inner-person." *Crump*, 320 S.E.2d at 83, 87. In a 59-page complaint, Plaintiff alleges nothing of the sort. Instead, the alleged harm focuses on Plaintiff's failed Senate bid. *See, e.g.*, FAC ¶ 28 ("the harm Mr. Blankenship suffered (i.e., the effect on the West Virginia election)");

11

*id.* ¶ 1 ("This lawsuit will help determine whether the media and the political establishment . . . can continue to tell outright lies . . . as part of their effort to sway elections"); *id.* ¶ 5 (alleging that the media "set out to … subvert an election").  For this additional reason, Plaintiff's false light claim should be dismissed for failing to allege any fact to support a necessary element of the claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against FiscalNote and Griffin Connolly should be dismissed.

FISCAL NOTE, INC. and GRIFFIN
CONNOLLY, Defendants,
By counsel:


Dated: August 16, 2019

/s/ *Allen M. Gardner*
Allen M. Gardner (DC #456723)
      (admitted *Pro Hac Vice*)
Sarah M. Gragert (DC #977097)
      (admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2270
Facsimile: (202) 637-2201
allen.gardner@lw.com
sarah.gragert@lw.com

/s/ *John J. Polak*
John J. Polak (WVSB No. 2929)
ATKINSON & POLAK, PLLC
300 Summers Street, Suite 1300
P.O. Box 549
Charleston, WV 25322-0549
Telephone: (304) 346-5100
Facsimile: (304) 346-4678
jjpolak@amplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed the documents by United States Postal Service to the non-CM/ECF participants identified in the Notice of Electronic Filing that will be generated upon the filing of these documents.

*/s/ Allen M. Gardner*

Allen M. Gardner
