# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

DON BLANKENSHIP,

               Plaintiff,                        CIVIL ACTION NO. 2:19-cv-00236

      vs.                               (Hon. John T. Copenhaver, Jr., District Judge)

HONORABLE ANDREW NAPOLITANO
(RET.), *et al.*,

               Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MEDIA DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

Sean P. McGinley, Esquire, Bar No. 5238
DiTRAPANO BARRETT DiPIERO
McGINLEY & SIMMONS, PLLC
605 Virginia Street, East
Charleston, WV 25301
Tel: (304) 342-0133

Kelli L. Sager (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel.: (213) 633-6800

Alison Schary (*pro hac vice*)
Eric J. Feder (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
New York, New York 10019
Tel.: (202) 973-4248

*Attorneys for Defendants American Broadcasting Companies, Inc.; Capitol Hill Publishing, Inc. d/b/a The Hill; The Daily Beast Company LLC; Daily News L.P., Los Angeles Times Communications, LLC; National Journal Group LLC; Cathleen Decker; Nicole Hensley; Jen Kerns; Josh Kraushaar; David Martosko; and Gideon Resnick*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

I. SUMMARY OF ARGUMENT ............................................................................... 1

II.  FACTUAL BACKGROUND .................................................................................. 3

III.  STANDARD OF REVIEW .................................................................................... 7

IV.  PLAINTIFF CANNOT STATE A CLAIM FOR DEFAMATION ....................... 8

      A.     The Only Statement Complained Of – Referring To Plaintiff As
           A "Felon" – Is Substantially True. ................................................................. 9

      B.     Plaintiff Has Not Pleaded Facts Establishing Actual Malice As
           To Any Of These Media Defendants, And Cannot Plausibly Do So. ..................... 13

IV.  PLAINTIFF'S DUPLICATIVE CLAIM FOR FALSE LIGHT INVASION
      OF PRIVACY SHOULD BE DISMISSED. ......................................................... 19

VI.  CONCLUSION ........................................................................................................ 20

APPENDIX ..................................................................................................................... A-1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Air Wisconsin Airlines Corp. v. Hoeper*,
  571 U.S. 237 (2014) ............................................................................................8

*Anderson v. Cramlet*,
  789 F.2d 840 (10th Cir. 1986) ..........................................................................10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..........................................................................................14

*Anderson v. Stanco Sports Library, Inc.*,
  542 F.2d 638 (4th Cir. 1976) ............................................................................12

*Arpaio v. Cottle*,
  No. 18-CV-02387 (APM), 2019 WL 3767104 (D.D.C. Aug. 9, 2019) ..................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. *passim*

*Ballengee v. CBS Broad., Inc.*,
  331 F. Supp. 3d 533 (S.D.W. Va. 2018), *appeal filed*, No. 18-2078
  (4th Cir. Sept. 18, 2018) ................................................................................9, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................8, 14, 16

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ..............................................................................15

*Bose Corp. v. Consumer Union of U.S., Inc.*,
  466 U.S. 485 (1984) ..........................................................................................13

*Carr v. Forbes, Inc.*,
  259 F.3d 273 (4th Cir. 2001) ............................................................................18

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ........................................................................9, 12

*Church of Scientology Int'l v. Daniels*,
  992 F.2d 1329 (4th Cir. 1993) ..........................................................................13

*Curran v. Amazon.com, Inc.*,
  No. CIV.A. 2:07-0354, 2008 WL 472433 (S.D. W. Va. Feb. 19, 2008) ................19

iii

*Deripaska v. Associated Press*,
   282 F. Supp. 3d 133 (D.D.C. 2017) ............................................................15

*Dostert v. Washington Post Co.*,
   531 F. Supp. 165 (N.D. W. Va. 1982) .......................................................10

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) ........................................................15, 18

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ..................................................................20

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) .......................................................................6

*Hahn v. City of Kenner*,
   984 F. Supp. 436 (E.D. La. 1997) .............................................................11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)......................................................................13, 14, 18

*Hatfill v. The New York Times Co.*,
   532 F.3d 312 (4th Cir. 2008) ......................................................................17

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*,
   836 F. Supp. 1204 (D. Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994) ..................................14

*Hoffman v. Wash. Post Co.*,
   433 F. Supp. 600 (D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978)..................................17

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017) ....................................16

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir.), *cert. denied*, 138 S. Ct. 366 (2017) .................................................3

*Lohrenz v. Donnelly*,
   223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003)............................16

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991).......................................................................2, 9, 13

*Mayfield v. NASCAR, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ..........................................................2, 15, 16, 18

*McFarlane v. Esquire Magazine*,
   74 F.3d 1296 (D.C. Cir. 1996) ..............................................................13, 14

iv

*Medure v. Vindicator Printing Co.*,
273 F. Supp. 2d 588 (W.D. Pa. 2002) ....................................................................16

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) ................................................................3, 14, 15

*Moldea v. N.Y. Times Co.*,
22 F.3d 310 (D.C. Cir. 1994) ................................................................................19

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971) ..............................................................................................13

*Nanji v. Nat'l Geographic Soc'y*,
403 F. Supp. 2d 425 (D. Md. 2005) .........................................................................9

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .................................................................................... *passim*

*Nichols v. Moore*,
396 F. Supp. 2d 783 (E.D. Mich. 2005), *aff'd*, 477 F.3d 396 (6th Cir. 2007) ........10

*Orr v. Argus-Press Co.*,
586 F.2d 1108 (6th Cir. 1978) ...............................................................................10

*Piracci v. Hearst Corp.*,
263 F. Supp. 511 (D. Md. 1966), *aff'd*, 371 F.2d 1016 (4th Cir. 1967) ...................10

*Redd v. McDowell Cty. Bd. of Educ.*,
976 F. Supp. 2d 838 (S.D.W. Va. 2013), *aff'd*, 561 F. App'x 278
(4th Cir. 2014) ..........................................................................................................7

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012) ....................................................................................15

*Seymour v. A.S. Abell Co.*,
557 F. Supp. 951 (D. Md. 1983) .............................................................................10

*Simonson v. United Press Int'l, Inc.*
654 F.2d 478 (7th Cir. 1981) ..................................................................................10

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ..........................................................................................14, 19

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) ....................................................................9, 14, 18

*Time, Inc. v. Hill*,
385 U.S. 374 (1967) ...............................................................................................20

v

*Tiwari v. NBC Universal, Inc.*,
  No. C-08-3988, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) ..............................................11

*United States v. Blankenship*,
  No. 5:14-cr-00244, 2015 WL 1565675 (S.D. W. Va. Apr. 8, 2015) ...............................3, 4, 13

*United States v. Blankenship*,
  No. 5:14-cr-00244, 2015 WL 1565710 (S.D. W. Va. Apr. 8, 2015) ........................................4

*United States v. Blankenship*,
  No. 5:14-cr-00244, 2015 WL 5882982 (S.D. W. Va. Oct. 7, 2015)........................................4

*Woods v. Evansville Press Co.*,
  791 F.2d 480 (7th Cir. 1986) ...............................................................................................13

*Zappin v. Gray Television Grp., Inc.*,
  No. 3:15-cv-13706, 2016 WL 1637211 (S.D. W. Va. Mar. 30, 2016),
  *report and recommendation adopted*, 2016 WL 1629365
  (S.D. W. Va. Apr. 22, 2016) ..................................................................................................6

**State Cases**

*Barnett v. Denver Publ'g Co.*,
  36 P.3d 145 (Colo. Ct. App. 2001) .......................................................................................11

*Becher v. Troy Publ'g Co.*,
  183 A.D.2d 230 (N.Y. App. Div. 1992) ................................................................................11

*Brewer v. Dungan*,
  No. 92-CVS-456, 1993 WL 441306 (N.C. Super. Ct. June 30, 1993) ...................................11

*Crump v. Beckley Newspapers, Inc.*,
  173 W. Va. 699 (1983) .........................................................................................................20

*Drury v. Feeney*,
  505 So. 2d 111 (La. Ct. App. 1987)......................................................................................10

*Fendler v. Phoenix Newspapers, Inc.*,
  636 P.2d 1257 (Ariz. Ct. App. 1981)....................................................................................10

*Handelsman v. San Francisco Chronicle*,
  11 Cal. App. 3d 381 (1970) ..................................................................................................10

*Hovey v. Iowa State Daily Publ'n Bd., Inc.*,
  372 N.W.2d 253 (Iowa 1985) ...............................................................................................10

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ...........................................................................................................19

4827-9354-4349v.13 0026175-000551

*Jennings v. Telegram-Tribune Co.*,
    164 Cal. App. 3d 119 (1985) ..........................................................................11

*Reader's Digest Ass'n v. Superior Court*,
    37 Cal. 3d 244 (1984) ...........................................................................19, 20

*Rouch v. Enquirer & News of Battle Creek Mich.*,
    487 N.W.2d 205 (Mich. 1992) ........................................................................10

*Sivulich v. Howard Publ'ns, Inc.*,
    126 Ill. App. 3d 129 (1984) ............................................................................10

*State ex rel. Blankenship v. Warner*,
    No. 18-0712, 2018 WL 4441845 (W. Va. Aug. 29, 2018) .....................................6

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................. *passim*

U.S. Const. amend. XIV ......................................................................................13

**Federal Statutes**

18 U.S.C. § 331 ....................................................................................................12

18 U.S.C. § 371 ......................................................................................................4

18 U.S.C. § 1301 ..................................................................................................12

18 U.S.C. § 1705 ..................................................................................................12

18 U.S.C. § 3559 ....................................................................................................9

30 U.S.C. § 820(d) .................................................................................................4

**State Statutes**

Cal. Civ. Code § 48a ..............................................................................................7

W. Va. Code Ann. § 17A-8-4 ...............................................................................12

W. Va. Code Ann. § 61-3-34 ................................................................................12

**Rules**

Fed. R. Civ. P. 12 ........................................................................................1, 8, 15

Fed. R. Civ. P. 21 .................................................................................................16

vii

Fed. R. Evid. 201 ...........................................................................................................4

**Other Authorities**

*Blankenship v. Trump Jr.*,
   No. 2:19-cv-00549 (S.D.W.Va.)..............................................................................6

*United States v. Blankenship*,
   No. 5:14-cr-00244, ECF No. 169............................................................................4

*United States v. Blankenship*,
   No. 5:14-cr-00244, ECF No. 589............................................................................4

*United States v. Blankenship*,
   No. 5:14-cr-00244, ECF No. 634............................................................................12

https://arlweb.msha.gov/Fatals/2010/UBB/PerformanceCoalUBB.asp ...........................................4

https://twitter.com/donaldjtrumpjr/status/992127873405341696....................................................6

https://twitter.com/donaldjtrumpjr/status/992183301065662464....................................................6

https://twitter.com/realDonaldTrump/status/993443781281271808 ................................................6

https://www.sandiegouniontribune.com/sdut-sentencing-set-april-6-for-former-
   massey-energy-2015dec10-story.html .....................................................................17

4827-9354-4349v.13 0026175-000551

# I. SUMMARY OF ARGUMENT

Plaintiff Don Blankenship has sued dozens of media companies and journalists for making the same minor error in reporting about his 2015 criminal conviction for conspiracy to willfully violate federal mine-safety laws:  referring to Plaintiff, after he was criminally convicted, served a year in federal prison, and paid a $250,000 fine, as a "felon" rather than a "Class A Misdemeanant."  Plaintiff tries to portray this common error as part of a wide-ranging conspiracy to defame him, involving more than 100 political figures and publishers; he also alleges that it cost him billions of dollars and denied him a victory in the 2018 West Virginia Senate primary, even though he lost in a landslide.[1]  His transparent vendetta against the media and his political opponents does not come close to meeting the requirements of Rule 12.  For the reasons set forth in this Memorandum, Plaintiff's baseless suit against these Media Defendants[2] should be dismissed with prejudice.

*First*, Plaintiff cannot meet his burden of proving that any of the statements at issue are false; under the circumstances here, the description of his criminal conviction is substantially true.  Plaintiff has complained that each of the Media Defendants referred to him as a "felon" in their respective articles.[3]  But it is undisputed that Plaintiff was sentenced to the maximum amount of time possible for the crime for which he was convicted – conspiracy to willfully

---

[1] The latter claim also ignores that most of the Media Defendants' articles at issue were published *after* he lost the West Virginia primary on May 8.  *See* note 9, *infra*, and Appendix.

[2] Given the dozens of other defendants in this action, the Media Defendants anticipate that this Court will receive other motions to dismiss that raise the same legal deficiencies discussed in this Motion, which may be applicable to these Media Defendants as well.  In addition, many of the Media Defendants joining in this motion also are moving concurrently to dismiss the claims against them for lack of personal jurisdiction, in a separate motion filed pursuant to Fed. R. Civ. P. 12(b)(2).

[3] *E.g.*, "convicted felon," "former felon," "coal felon."  *See* Appendix.

1

violate mine safety laws – and he served a **full year** in federal prison.  He also was fined $250,000, which substantially exceeded the federal sentencing guidelines for that crime.  In this context, a fleeting reference to Plaintiff as a "felon" is a "[m]inor inaccuracy" that "do[es] not amount to falsity," since it does not carry a different "gist" or "sting" from the more technically accurate moniker of "ex-convict" or "convicted federal criminal."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991).  In fact, courts routinely have dismissed defamation claims based on this same "minor inaccuracy."  *See* Section IV(A), *infra*.

*Second*, Plaintiff fails to plead any facts whatsoever that could plausibly support a claim that any of the Media Defendants acted with actual malice, as required for defamation claims by public figures like him.  *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  Plaintiff's "formulaic recitation" of the legal standard does not begin to meet the required "well-pleaded factual allegations" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  *See Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (affirming dismissal of complaint under Rule 12(b)(6) where plaintiffs' pleading of actual malice amounted to a "mere recitation of the legal standard").

One need look no further than the case caption here – dozens of journalists and media companies, all sued for the same erroneous word choice – to recognize that referring to Plaintiff as a "felon" was a ubiquitous mistake.  Plaintiff simply could have requested that the errors be corrected, but he chose not to take that most basic step.  Instead, he filed this bloated (and wildly misjoined) billion-dollar suit against what he calls the "establishment media and political establishment," in what appears to be a political PR stunt.  Courts should "expeditiously weed out unmeritorious defamation suits," like this one, to "preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they

2

need to pursue the truth." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir.) (Kavanaugh, J.), *cert. denied*, 138 S. Ct. 366 (2017).  *See also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (dismissal of public-figure defamation claims on the pleadings makes "particular sense" since "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation").  For the reasons discussed in more detail below, Plaintiff's claims against each of the Media Defendants should be dismissed with prejudice, as a matter of law.

## II.  FACTUAL BACKGROUND

Plaintiff Don Blankenship is the former CEO of Massey Energy and a former candidate for the U.S. Senate.  In his First Amended Complaint ("FAC"), Plaintiff boasts that during his tenure Massey was the "largest coal producer in Central Appalachia" and as its CEO, he succeeded in "destroy[ing] the coal miner's union."  FAC ¶ 7.  Plaintiff has previously described himself to this Court as "one of the most outspoken, recognizable, and controversial figures in [West Virginia]."  *United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 1565675, at *5 (S.D. W. Va. Apr. 8, 2015).

On April 5, 2010, 29 miners died in an explosion at the Upper Big Branch mine, which was owned and operated by Massey Energy, with Plaintiff as its CEO.  FAC ¶ 8.  On December 6, 2011, the U.S. Department of Labor's Mine Safety and Health Administration ("MSHA") issued its official investigative report on the UBB explosion, which stated:

> The physical conditions that led to the explosion were the result of a series of basic safety violations at UBB and were entirely preventable.  PCC/Massey disregarded the resulting hazards.  While violations of particular safety standards led to the conditions that caused the explosion, the unlawful policies and practices implemented by PCC/Massey were the root cause of this tragedy.  The evidence accumulated during the investigation demonstrates that PCC/Massey promoted and enforced a workplace culture that valued production over safety, including practices calculated to allow it to conduct mining operations in violation of the law.  The investigation also revealed multiple examples of systematic, intentional,

3

and aggressive efforts by PCC/Massey to avoid compliance with safety and health standards, and to thwart detection of that non-compliance by federal and state regulators.[4]

Several Massey officials and supervisors at the Upper Big Branch mine were criminally prosecuted in the wake of the explosion. *United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 1565710, at *8 (S.D. W. Va. Apr. 8, 2015) (describing convictions of former Massey executive, former mine superintendent, and former security chief).

Plaintiff was indicted by a federal grand jury and charged with conspiracy to willfully violate mine safety laws in violation of 30 U.S.C. § 820(d) and 18 U.S.C. § 371, securities fraud, and making false statements to the Securities and Exchange Commission. *United States v. Blankenship*, No. 5:14-cr-00244, ECF No. 169, at 34-41; *see also* FAC ¶ 141.[5]  On December 3, 2015, a jury found him guilty of conspiring to willfully violate mine safety standards and acquitted him of the securities charges. FAC ¶ 143.  He was sentenced to a year in prison, followed by a year of supervised release, and fined $250,000 – the maximum penalties allowed by law. *See United States v. Blankenship*, No. 5:14-cr-00244, ECF No. 589.  At Plaintiff's sentencing hearing, District Judge Irene Berger found that Plaintiff had "abused a position of private trust" and that he failed to accept responsibility for his actions. *Id.*, ECF No. 634, at 11,

---

[4] *See* U.S. Dep't of Labor, Mine Safety and Health Admin. ("MSHA"), Report of Investigation into Fatal Underground Mine Explosion on April 5, 2010, at the Upper Big Branch Mine-South (Executive Summary), at 2, available at https://arlweb.msha.gov/Fatals/2010/UBB/PerformanceCoalUBB.asp.  This Court can take judicial notice of the contents of these government documents. Fed. R. Evid. 201.

[5] This case is not the first time that Plaintiff has claimed a wide-ranging conspiracy against him. He sought unsuccessfully to have every judge in this District disqualified from hearing his criminal case, alleging that his prosecution was politically motivated. *United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 1565675, at *5 (S.D. W. Va. Apr. 8, 2015) (denying motion to disqualify).  He also tried repeatedly to have his case transferred out of this District, claiming that media coverage was so pervasive that every prospective juror would be biased against him. *United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 5882982 (S.D. W. Va. Oct. 7, 2015) (denying renewed motion to transfer).

24.   Judge Berger further held that the evidence supported a finding that Plaintiff "implemented and oversaw a conspiracy … to increase Massey's profitability by emphasizing production while flouting [the federal Mine Safety and Health Agency]'s safety and health standards." *Id.* at 15. Her sentencing order stated:

> By putting profitability of the company ahead of the safety of your employees, you, Mr. Blankenship, created a culture of noncompliance at Upper Big Branch where your subordinates accepted and, in fact, encouraged unsafe working conditions in order to reach profitability and production targets.  The legacy of that conduct was visible in the testimony of the miners from Upper Big Branch in this case who described dire working conditions where their safety was routinely compromised and preventable hazards were tolerated.

*Id.* at 67.  Judge Berger underscored the seriousness of Plaintiff's offense by imposing a fine above the amount set by federal sentencing guidelines, imposing the maximum statutory amount, on the grounds that "given the nature and extent of [Plaintiff's] conduct … the fine range under the guidelines is simply not sufficient in this case to meet the goals of sentencing."  *Id.* at 70.[6] Judge Berger concluded by expressly rejecting any implication that Plaintiff's conviction could be viewed as a minor infraction simply because it was classified as a "misdemeanor":

> The crime is serious. There's been discussion here about the acquittal of felony offenses and your conviction of a misdemeanor. Those of us in the legal community put tags on offenses. Congress puts tags on offenses.  But when we seek to sentence someone, we sentence based on the conduct, which I find to be very serious not only in its commission but in its potential impact in terms of risk in this particular case.

*Id.* at 71.

Plaintiff served his year-long prison sentence in California and was released from custody in the spring of 2017.  FAC ¶¶ 144, 145.  Less than nine months later, in January 2018, he formally announced plans to run in the Republican Senate primary in West Virginia.  *Id.* ¶ 146.

---

[6] The fine range suggested by the federal sentencing guidelines was only $3,000 to $30,000.  *See id.* at 24-25.

4827-9354-4349v.13 0026175-000551

Plaintiff was a polarizing candidate in the primary campaign.  On May 7, the eve of the primary, President Donald Trump posted a tweet urging West Virginia voters not to vote for Plaintiff, but instead to support one of his opponents.[7]  The president's son, Donald Trump Jr., similarly exhorted West Virginia voters to reject Plaintiff at the polls.[8]

On May 8, 2018, Plaintiff lost the primary election, coming in third behind winner Patrick Morrisey, the state attorney general, and runner-up U.S. Congressional Representative Evan Jenkins.  FAC ¶ 190.  Undeterred, Plaintiff attempted to get his name on the general-election ballot as a third-party candidate, but he was precluded from doing so by West Virginia's "sore loser" law.  *See State ex rel. Blankenship v. Warner*, No. 18-0712, 2018 WL 4441845, at *1 (W. Va. Aug. 29, 2018).

Each of the Media Defendants reported on the 2018 congressional elections, including the West Virginia Senate race.  Each of the Media Defendants is accused of authoring or publishing an article, video, or tweet in which Plaintiff was mistakenly referred to as a "felon" rather than a "convicted criminal."[9]

---

[7] *See* https://twitter.com/realDonaldTrump/status/993443781281271808.

[8] *See* https://twitter.com/donaldjtrumpjr/status/992127873405341696; https://twitter.com/donaldjtrumpjr/status/992183301065662464.  Plaintiff has filed a nearly identical lawsuit against Trump Jr. for referring to Plaintiff as a "felon" in his tweets. *Blankenship v. Trump Jr.*, No. 2:19-cv-00549 (S.D. W.Va.).

[9] For the convenience of this Court, the relevant portion of each publication is set out in chronological order in the Appendix, and copies of the entire publication for each of the Media Defendants are attached as exhibits to the Declaration of Eric J. Feder, filed concurrently with this motion.  The Court may properly consider "documents that are explicitly incorporated into the complaint by reference" and undisputedly authentic "document[s] submitted by the movant that … [are] integral to the complaint."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  In a defamation action, the publication at issue may be considered to be part of the complaint even if the plaintiff chose not to attach it to the operative pleading.  *E.g.*, *Zappin v. Gray Television Grp., Inc.*, No. 3:15-cv-13706, 2016 WL 1637211, at *5-6 (S.D. W. Va. Mar. 30, 2016) (video published on defendant's website that formed the basis for plaintiff's defamation claim but was not attached to his complaint was incorporated by reference and could

6

4827-9354-4349v.13 0026175-000551

At the time of the Media Defendants' publications, Plaintiff apparently was not concerned enough about the minor errors in describing his conviction to even ask for a correction:  he never contacted *any* of the Media Defendants to seek a correction of the word "felon" before he filed his lawsuit.  Nonetheless, *all* of the publishers have corrected or removed the original reference to Plaintiff as a "felon," as described in the Appendix.[10]

Plaintiff filed this suit in state court on March 14, 2019.  ECF No. 1-1.  On March 29, 2019, Defendant Fox News Network, LLC removed the case to this Court, and Plaintiff moved to remand.  ECF Nos. 1, 5.  Plaintiff then filed his First Amended Complaint (the operative complaint to date) on April 9, 2019.  ECF No. 14.  This Court stayed the time for all defendants to answer until 30 days after its ruling on Plaintiff's motion to remand (ECF No. 31), and denied Plaintiff's remand motion on July 17, 2019.  ECF No. 133.

### III.  STANDARD OF REVIEW

Under the standards set forth by the United States Supreme Court, a plaintiff must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).[11]  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

---

be considered on motion to dismiss), *report and recommendation adopted*, 2016 WL 1629365 (S.D. W. Va. Apr. 22, 2016).

[10] Under the state law applicable to some of the Media Defendants, Plaintiff's failure to demand a correction in a timely manner precludes him from recovering anything other than provable economic damages.  *E.g.*, Cal. Civ. Code § 48a.  If this case were to proceed, those Media Defendants would invoke Plaintiff's failure to timely demand corrections as an additional defense that defeats his claims.

[11] This pleading standard applies equally to removed cases.  *Redd v. McDowell Cty. Bd. of Educ.*, 976 F. Supp. 2d 838, 851 (S.D.W. Va. 2013) ("Plaintiff's argument that *Twombly* and *Iqbal* are not applicable because she 'did not file her Complaint in Federal Court' is without merit."), *aff'd*, 561 F. App'x 278 (4th Cir. 2014).

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, alterations, and citation omitted).  Although a court must take "well-pleaded factual allegations" as true for purposes of a Rule 12(b)(6) motion, allegations that are simply legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Where, as here, a plaintiff has not "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed."  *Twombly*, 550 U.S. at 570.[12]

## IV.  PLAINTIFF CANNOT STATE A CLAIM FOR DEFAMATION

Plaintiff's complaint fails to state a claim for defamation against each of the Media Defendants for two independent reasons:  (1) Plaintiff cannot meet his burden of proving falsity because the minor error made by Media Defendants in characterizing him after his conviction, year-long prison sentence, and $250,000 fine as a "felon" instead of a "misdemeanant" is substantially accurate; and, independently, (2) Plaintiff has not come close to meeting the strict requirement that he plead *facts* – not just legal conclusions – sufficient to demonstrate that each of the Media Defendants acted with constitutional actual malice.

---

[12] None of the Media Defendants are domiciled or have their principal place of business in West Virginia, and Plaintiff is a domiciliary of Nevada, not West Virginia.  *See* ECF No. 133-2, n.2 ("[P]laintiff does not contest … that he is a Nevada domiciliary"); *see also* concurrently-filed Rule 12(b)(2) Motion To Dismiss.  Consequently, it is neither presumed nor admitted that West Virginia law would govern the claims against any of the Media Defendants.  But this Court need not resolve the choice-of-law issue at this stage:  under controlling federal constitutional law, Plaintiff must demonstrate that the statements at issue are false, and that each of the Media Defendants acted with constitutional actual malice in publishing those statements.  *New York. Times*, 376 U.S. at 279-80 (requiring public figures to plead and prove actual malice); *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) ("we have required more than mere falsity to establish actual malice: the falsity must be 'material.'").

A.    **The Only Statement Complained Of – Referring To Plaintiff As A "Felon" – Is Substantially True.**

It is well established that "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson*, 501 U.S. at 517 (citation omitted). Thus, a "statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Id.* (citation omitted). *See also Ballengee v. CBS Broad., Inc.*, 331 F. Supp. 3d 533, 546 (S.D.W. Va. 2018) ("[I]f something is 'substantially' true in overall effect, minor inaccuracies or falsities will not create falsity.") (citation omitted), *appeal filed*, No. 18-2078 (4th Cir. Sept. 18, 2018). Furthermore, a libel plaintiff cannot simply cherry-pick a phrase from an article; the allegedly defamatory statement "must be read in the context of the entire communication as a whole." *Tavoulareas v. Piro*, 817 F.2d 762, 818 (D.C. Cir. 1987) (*en banc*) (citation omitted); *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993).

The sole basis for Plaintiff's claims against each of the Media Defendants is that they incorrectly referred to him as a "felon" when his conviction was technically classified as a Class A misdemeanor, because it carried a maximum prison term of one year.  18 U.S.C. § 3559.  The next step up in the classification scale is a Class E felony, which denotes an offense with a potential prison term between one and five years.  *Id.*  In other words, the difference in potential prison time between the "misdemeanor" for which Plaintiff indisputably was convicted and the "felony" classification above it is *a single day in prison*.  This minor error of legal jargon is not sufficient to give rise to defamation liability.

As courts repeatedly have held, "technical errors in legal nomenclature in reports on matters involving violation of the law" do not rise to the level of "falsity" that warrants imposing liability on speech. *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005)

9

(citation omitted) (collecting cases).  For example, in *Dostert v. Washington Post Co.*, the court

held that a Washington Post headline that read "Judge Dostert Guilty On One Count" was

substantially true even though the plaintiff had entered a plea of nolo contendere, rather than

pleading or being found guilty.  531 F. Supp. 165, 167–68 (N.D. W. Va. 1982).[13]

Indeed, courts routinely have rejected defamation claims that purport to arise from

precisely the same circumstances as Plaintiff's claim here:  the mistaken description of a

---

[13] *See also, e.g.*, *Piracci v. Hearst Corp.*, 263 F. Supp. 511, 515 (D. Md. 1966), *aff'd*, 371 F.2d
1016 (4th Cir. 1967) (newspaper report that plaintiff had been charged with "possession of
marijuana" instead of "delinquency due to the act of possessing marijuana" was substantially
true); *Simonson v. United Press Int'l, Inc.* 654 F.2d 478, 482 (7th Cir. 1981) (use of word "rape"
instead of technically correct term "sexual assault" was substantially accurate); *Orr v. Argus-
Press Co.*, 586 F.2d 1108, 1112 (6th Cir. 1978) ("swindle" substituted for "defraud"); *Anderson
v. Cramlet*, 789 F.2d 840, 844-45 (10th Cir. 1986) (statement that father had "kidnapped" child
was substantially true where father took child from mother without consent in light of non-
technical meaning the word "kidnap" has acquired in child custody context); *Hovey v. Iowa State
Daily Publ'n Bd., Inc.*, 372 N.W.2d 253, 255-56 (Iowa 1985) (report that plaintiff was charged
with "rape" was substantially true when, in fact, he was charged with second degree sexual
assault); *Nichols v. Moore*, 396 F. Supp. 2d 783, 791-92 (E.D. Mich. 2005) (statement that
plaintiff was "arrested in connection with" bombing of federal building was substantially true
even though his arrest was not for the bombing itself), *aff'd*, 477 F.3d 396 (6th Cir. 2007);
*Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983) ("theft" was substantially
accurate "shorthand" for administrative charges of misappropriation); *Fendler v. Phoenix
Newspapers, Inc.*, 636 P.2d 1257, 1261–62 (Ariz. Ct. App. 1981) (finding substantial truth where
newspaper editorial accurately reflected that plaintiff had been found guilty of a crime and
sentenced to prison, but incorrectly stated that he had commenced serving his sentence); *Rouch
v. Enquirer & News of Battle Creek Mich.*, 487 N.W.2d 205, 217 (Mich. 1992) (rejecting libel
claim based on report plaintiff was "charged" with sexual assault when he was never arraigned;
"if technical and common parlance yield different interpretations of the same word, the
constitutionally required breathing space affords protection of the writer's choice"); *Drury v.
Feeney*, 505 So. 2d 111, 112–13 (La. Ct. App. 1987) (where plaintiff had not been convicted of
"21 counts of mail fraud" but only failure to disclose a fee-splitting arrangement, discrepancy
was "an infinitesimal aberrant grain of sand hidden in an entire seashore of reprehensible
conducts and truths"); *Sivulich v. Howard Publ'ns, Inc.*, 126 Ill. App. 3d 129, 131–32 (1984)
(newspaper's report that "charges of aggravated battery have been filed" against plaintiff was
substantially true where only a civil lawsuit had been filed; court rejected plaintiff's reliance on
"technical, legal definition").  *See also Handelsman v. San Francisco Chronicle*, 11 Cal. App. 3d
381, 387 (1970) (publication is "not … judged by the standard of accuracy that would be adopted
if it were the report of a professional law reporter or a trained lawyer").

4827-9354-4349v.13 0026175-000551

Case 2:19-cv-00236   Document 260   Filed 08/16/19   Page 19 of 32 PageID #: 2515

conviction as a "felony" rather than a "misdemeanor." *See, e.g., Tiwari v. NBC Universal, Inc.*, No. C-08-3988, 2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011) (broadcast was substantially true where it erroneously reported that plaintiff had been convicted of a felony rather than a misdemeanor); *Brewer v. Dungan*, No. 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993) (newspaper's reporting that plaintiff had been convicted of a felony was "substantially true" even though the crime "was, technically, a misdemeanor"); *Hahn v. City of Kenner*, 984 F. Supp. 436, 441 (E.D. La. 1997) ("Hahn's arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true."); *Barnett v. Denver Publ'g Co.,* 36 P.3d 145, 147–48 (Colo. Ct. App. 2001) (newspaper's statement that plaintiff was "convicted in a stalking incident" was substantially true even though plaintiff technically pled guilty to "misdemeanor harassment," and "stalking" was classified as a felony). *See also Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (N.Y. App. Div. 1992) (finding news articles to be fair and true reports even though they allegedly stated or implied that plaintiff was "indicted on felony bribery charges, whereas in fact he had only been charged with the misdemeanors of making an apparently false statement … and conspiracy to commit that crime"); *Jennings v. Telegram-Tribune Co.*, 164 Cal. App. 3d 119, 127 (1985) (newspaper articles reporting that architect was convicted of felony "tax fraud" and "tax evasion," where he had pleaded no contest to misdemeanor charges for filing tax returns two years late, was not actionable because the "gist or sting" of the articles was that he pleaded to "several serious tax crimes").

Given the nature of Plaintiff's conviction – a year-long prison sentence and quarter-million dollar fine for conduct expressly described by the sentencing judge as "very serious" and an "abuse of private trust" – the word "felon" does not carry a greater "gist" or "sting" than a full

11

description of the conviction would have conveyed, using the technically accurate phrases "ex-con" or "federal criminal."

Plaintiff's attempt to downplay his criminal history, repeatedly insisting that he was "only" convicted of a misdemeanor,[14] is pure sophistry. He tries to insinuate that his conviction was somehow akin to a traffic violation, whereas being a "felon" somehow conveys the most serious possible crime. But his emphasis on labels is entirely misplaced.[15] His offense was no traffic violation, nor was his conviction a slap on the wrist. To the contrary, Judge Berger not only anticipated, but expressly *rebutted* this very narrative at Plaintiff's sentencing hearing, emphasizing that his conviction was for a "very serious" crime and that he should not consider it less so simply because Congress classified it as a misdemeanor. *United States v. Blankenship*, No. 5:14-cr-00244, ECF No. 634, at 66-71. Against this backdrop, use of the word "felon" is precisely the type of "minor or irrelevant inaccurac[y]" that cannot support a claim for defamation. *Chapin*, 993 F.2d at 1092. *See also Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638, 641 (4th Cir. 1976) (statement that plaintiff claimed to be a "high ranking member of the Mafia" was not substantially false where plaintiff admitted that he claimed to be a member of the Mafia, just not "high ranking"). For this reason alone, Plaintiff's defamation claim against the Media Defendants should be dismissed with prejudice as a matter of law.

---

[14] *See, e.g.*, FAC ¶¶ 10, 230.

[15] In fact, the U.S. Code and West Virginia state laws are replete with offenses that are technically classified as "felonies" even though they plainly implicate far less serious criminal acts than Plaintiff's willful violation of federal mine-safety laws, in which twenty-nine people lost their lives. These include such crimes as transporting lottery tickets across state lines (18 U.S.C. § 1301), vandalizing a mailbox (18 U.S.C. § 1705), defacing a penny (18 U.S.C. § 331), borrowing a friend's car twice without their consent (W. Va. Code Ann. § 17A-8-4); or causing more than $1,000 in damage to someone's garden (W. Va. Code Ann. § 61-3-34).

**B.** **Plaintiff Has Not Pleaded Facts Establishing Actual Malice As To Any Of These Media Defendants, And Cannot Plausibly Do So.**

There can be no dispute that Plaintiff is a public figure for purposes of his defamation lawsuit.  Plaintiff was a candidate for U.S. Senator, and previously described himself to this Court as "a major figure in West Virginia politics, industry, and culture" and "one of the most outspoken, recognizable, and controversial figures in the state." *United States v. Blankenship*, 2015 WL 1565675, at *5.  The United States Supreme Court has made clear that "publications concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office," and specifically held that the actual malice standard applies to a candidate for federal office, like Plaintiff.  *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971).

Accordingly, Plaintiff must plead and prove that each defendant in this case acted with actual malice; in other words, he must plead *facts* sufficient to establish that each defendant published each statement at issue "with knowledge that it was false or with reckless disregard of whether it was false or not."  *New York Times*, 376 U.S. at 279–80.  By design, this is a "significant burden" for a public-figure plaintiff to overcome.  *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993).  *See also McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996) ("[t]he standard of actual malice is a daunting one.").  It focuses solely on the defendant's *actual* state of mind "at the time of publication." *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984).  "Mere negligence does not suffice." *Masson*, 501 U.S. at 510.  Instead, the term "[k]nowledge of falsity means … that the defendant was *actually* aware that the contested publication was false," *Woods v. Evansville Press Co.*, 791 F.2d 480, 484 (7th Cir. 1986) (emphasis added), and "reckless disregard" means that "the defendant *actually* had a 'high degree of awareness … of probable falsity.'" *Harte-Hanks*

13

*Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (emphasis added) (citation omitted). It is a subjective test as to the author's knowledge, not an objective one as to the information available:

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.  There must be sufficient evidence to permit the conclusion that defendant *in fact* entertained serious doubts as to the truth of his publication.

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added).  Indeed, even an "extreme departure from professional standards" does not rise to the level of actual malice.  *Harte-Hanks*, 491 U.S. at 665.

Moreover, because "actual malice is a First Amendment protection predicated on a subjective state of mind," it must be independently proven for *each* defendant.  *McFarlane*, 74 F.3d at 1303.  *See also Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F. Supp. 1204, 1212 (D. Md. 1993) ("[plaintiff] must produce clear and convincing evidence that the defendants uttered [each] challenged statement[] with actual malice."), *aff'd*, 34 F.3d 1066 (4th Cir. 1994). Any "serious doubt" or actual knowledge of falsity must be specific to the statement at issue. *See Tavoulareas*, 817 F.2d at 793–-94 ("defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement.").  As an additional safeguard, the First Amendment requires public-figure plaintiffs to prove actual malice by "clear and convincing" evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986).  Plaintiff's complaint fails to meet this exacting standard.

"[A]fter *Iqbal* and *Twombly,* every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."  *Michel*, 816 F.3d at 702 (affirming dismissal of public-figure defamation claim

4827-9354-4349v.13 0026175-000551

for failure to plausibly plead actual malice).  As the Fourth Circuit held in *Mayfield*, a public-figure plaintiff in a defamation case cannot rely on "a mere recitation of the legal standard" for actual malice to satisfy the strict federal pleading standards.  674 F.3d at 378.  Allegations that the defendants "intended to harm" the plaintiff or "failed to follow… procedures" were similarly insufficient, since they "simply do not suggest that [defendants] knew their statements were false or that they were reckless with respect to their veracity."  *Id.*  Instead, "a public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice."  *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 556).

Dismissal for failure to plausibly plead actual malice "makes particular sense" in public-figure suits like this one, where "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel*, 816 F.3d at 702.  Accordingly, courts routinely dismiss public-figure libel claims on a Rule 12(b)(6) motion where, as here, the plaintiff offers only a recitation of the legal standard or allegations that, even if proven, would not prove actual malice.  *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *Biro*, 807 F.3d at 546; *Arpaio v. Cottle*, No. 18-CV-02387 (APM), 2019 WL 3767104, at *4 (D.D.C. Aug. 9, 2019) (dismissing public-figure libel claim on the pleadings where plaintiff "[did] no more than recite the applicable legal standard" and offer "unadorned claim[s] of animus and bias," holding that such allegations "come nowhere close" to plausibly pleading actual malice); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 92 (D.D.C. 2018) (dismissing complaint for failure to plead actual malice where plaintiff alleged that defendant knew her statement was false, failed to follow "professional standards of journalism" and had a "motive to smear" plaintiff); *Deripaska v. Associated Press*,

282 F. Supp. 3d 133, 143 (D.D.C. 2017) (dismissing complaint for failure to plead actual malice where plaintiff claimed publisher "intentionally omitt[ed] 'crucial background'").

Plaintiff's complaint falls far short of the plausibility standard required by *Iqbal* and *Twombly*.  He avers generally that "Defendants, and each of them, made their respective defamatory statements with actual malice, that is, actual knowledge of the falsity of their statements or, at a minimum, with reckless and willful disregard of the truth or falsity of the statements."  FAC ¶ 229.  But "[t]his kind of conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."  *Mayfield*, 674 F.3d at 378.  Moreover, it is not remotely tailored to each individual defendant, or to the facts of each individual publication.[16]  On this basis alone, his lawsuit should be dismissed.

Nor can Plaintiff cure this deficiency.  His complaint makes abundantly clear that it is a common mistake for people to refer to him as a "felon" – likely because it resulted in him serving a year-long federal prison sentence.  Courts do not impose liability for "mere factual error – an everyday occurrence in journalism – unless those errors rise to the level of circumstantial evidence of 'actual malice.'"  *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 55 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).  *See also Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594 (D.C. Cir. 2016) ("[a]n honest misinterpretation does not amount to actual malice even if the publisher was negligent in failing to read the document carefully."), *cert. denied*, 137 S. Ct. 1434 (2017); *Medure v. Vindicator Printing Co.*, 273 F. Supp. 2d 588, 598 (W.D. Pa. 2002) ("a mistake is clearly insufficient to support a finding of actual malice.").  Moreover, the

---

[16] Indeed, Plaintiff's generic pleading of actual malice underscores that this case is fundamentally misjoined, since his claims against each defendant are based on a different "transaction" or "occurrence" under Fed. R. Civ. P. 21.  Plaintiff is required to plead and prove actual malice based on the subjective state of mind of *each* of the dozens and dozens of defendants, as to each of their respective publications.

4827-9354-4349v.13 0026175-000551

fact that all of the Media Defendants corrected their mistakes is "significant and tends to negate any inference of actual malice." *Hoffman v. Wash. Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978).

None of the other generic allegations that Plaintiff makes as to all defendants *en masse* would be sufficient as a matter of law, even if he could plead supporting facts with respect to each individual defendant and publication.

*First*, Plaintiff asserts that looking at the court records from his trial, and unspecified "previous accurate reports" by some of the defendant media organizations,[17] would have shown that he was convicted only of a misdemeanor, not a felony. FAC ¶ 230. But under the actual malice standard, "it is not enough for a plaintiff to prove simply that the defendant failed to investigate or to check the accuracy" of a particular statement. *Hatfill v. The New York Times Co.*, 532 F.3d 312, 317 (4th Cir. 2008). Indeed, the *Sullivan* Court considered and rejected this same argument:

> Finally, there is evidence that the Times published the advertisement without checking its accuracy against the news stories *in the Times' own files*. The mere presence of the stories in the files does not, of course, establish that the Times 'knew' the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement.… We think the evidence against the Times supports at most a finding of negligence in failing to discover the misstatements, and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice.

*New York Times*, 376 U.S. at 287–88 (emphasis added).

---

[17] Plaintiff only makes this allegation specifically against one of the Media Defendants, claiming that "Ms. Decker and the Los Angeles Times knew [the word "felony"] was false because the newspaper had previously reported his conviction of only a misdemeanor," citing a Dec. 10, 2015 story. FAC ¶ 181 & n.11. In fact, the cited story was an Associated Press wire story, and was not written by Ms. Decker. *See* https://www.sandiegouniontribune.com/sdut-sentencing-set-april-6-for-former-massey-energy-2015dec10-story.html.

4827-9354-4349v.13 0026175-000551

*Second*, Plaintiff alleges, on information and belief, that "the media organization Defendants, and each of them, failed to follow or comply with their own policies and procedures regarding the reporting of criminal convictions."  That also is insufficient; even an "extreme departure from professional standards" does not rise to the level of actual malice.  *Harte-Hanks*, 491 U.S. at 665.  *See also Mayfield*, 674 F.3d at 378 (allegation that defendant "failed to follow … procedures" does not support plausible pleading of actual malice); *Fairbanks*, 314 F. Supp. 3d at 92 (dismissing complaint for failure to plead actual malice where plaintiff alleged that defendant failed to follow "professional standards of journalism").

*Finally*, Plaintiff alleges that each of the 100-plus defendants in this case, including the Media Defendants, "intended to cause injury to Mr. Blankenship."  But allegations that defendants "intended to harm" a public-figure plaintiff "simply do not suggest that [defendants] knew their statements were false or that they were reckless with respect to their veracity." *Mayfield*, 674 F.3d at 378.  *See also Harte-Hanks*, 491 U.S. at 665  ("a newspaper's motive in publishing a story … cannot provide a sufficient basis for finding actual malice."); *Fairbanks*, 314 F. Supp. 3d at 92 (allegation that journalist had a "motive to smear [plaintiff]'s reputation" did not "come[] close to satisfying the First Amendment's demanding standard for public figures bringing defamation actions"); *Tavoulareas*, 817 F.2d at 795 ("[i]t is settled that ill will toward the plaintiff or bad motives are not elements of actual malice and that such evidence is insufficient by itself to support a finding of actual malice.").

In short, what happened here – a minor inaccuracy in reporting about a public figure, which was subsequently corrected – is precisely the kind of constitutionally-protected speech that the actual malice standard is designed to shield from liability.  "[T]he First Amendment does not require perfection from the news media." *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir.

2001).  To the contrary, the Supreme Court has recognized "[t]hat erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the breathing space that they need to survive." *New York Times*, 376 U.S. at 271–72 (citation and internal quotation marks omitted).  *See also St. Amant*, 390 U.S. at 732 ("to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones.").  Plaintiff's defamation claim against each of the Media Defendants should be dismissed with prejudice.

### IV.  PLAINTIFF'S DUPLICATIVE CLAIM FOR FALSE LIGHT INVASION OF PRIVACY SHOULD BE DISMISSED.

Plaintiff's claim for false light invasion of privacy is based on the same facts as his defamation claim.  FAC ¶¶ 238-245.  Where, as here, a plaintiff's defamation claim is constitutionally barred, his false light claim cannot survive either.  "[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) (dismissing defamation and false light claims where statements were substantially true) (citation omitted). *See also Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 265 (1984) ("constitutional protection does not depend on the label given the stated cause of action").

A false light claim consists of "(1) the false (2) publication (3) of private facts (4) portraying the plaintiff in a false light (5) which would be highly offensive to a reasonable person." *Curran v. Amazon.com, Inc.*, No. CIV.A. 2:07-0354, 2008 WL 472433, at *8 (S.D. W. Va. Feb. 19, 2008) (Copenhaver, J.) (internal citations omitted).[18]  As in a defamation claim, a

---

[18] New York does not recognize a common-law claim for false-light invasion of privacy. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 123 (1993).  Accordingly, if New York law is applied to any of the Media Defendants based in that state, Plaintiff would not be able to assert a false light claim against those defendants as a matter of law.

public figure plaintiff like Blankenship is required to plead and prove that the publication was made with actual malice under the *New York Times* standard. *Time, Inc. v. Hill*, 385 U.S. 374, 390-91 (1967). *See also Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 718 (1983) (recognizing a "pronounced overlap" between claims for defamation and false light, "particularly in the area of their first amendment implications").

Here, Plaintiff's false light claim fails for the same reason as his defamation claim:  the use of "felon" in each of the Media Defendants' publications is substantially true, and Plaintiff did not and cannot plausibly allege actual malice as to any of the Media Defendants over this minor error. *See Ballengee*, 331 F. Supp. 3d at 554 (dismissing defamation and false light claims where statements at issue were substantially true); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (dismissing false light and defamation claims "based upon the same allegedly defamatory speech"); *Reader's Digest Ass'n*, 37 Cal. 3d at 265 (dismissing plaintiff's false light and other tort claims "based upon the same facts as the cause of action for libel" where public figure plaintiff failed to demonstrate actual malice).  For each of these independent reasons, Plaintiff's false light claims against each of the Media Defendants should be dismissed as a matter of law.

## VI.  CONCLUSION

Plaintiff Don Blankenship's dissatisfaction with news reports about his criminal conviction and his failed Senate race do not give him a legal basis for punishing individual journalists and media companies through a meritless defamation lawsuit.  To the contrary, the First Amendment was designed to prevent the wealthy and powerful from engaging in this kind of heavy-handed attempt to stifle speech.  This Court should protect these constitutional principles, and for the reasons set forth above, dismiss Plaintiff's claims against each of the Media Defendants with prejudice.

4827-9354-4349v.13 0026175-000551

/s/Kelli L. Sager
Kelli L. Sager (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel.: (213) 633-6800

Alison Schary (*pro hac vice*)
Eric J. Feder (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
New York, New York  10019
Tel.: (202) 973-4248

Sean P. McGinley, Esq., Bar No. 5238
DiTRAPANO BARRETT DIPIERO
McGINLEY & SIMMONS, PLLC
605 Virginia Street, East
Charleston, WV 25301
Tel: (304) 342-0133


*Attorneys for Defendants American Broadcasting Companies, Inc.; Capitol Hill Publishing, Inc. d/b/a The Hill; The Daily Beast Company LLC; Daily News L.P., Los Angeles Times Communications, LLC; National Journal Group LLC; Cathleen Decker; Nicole Hensley; Jen Kerns; Josh Kraushaar; David Martosko; and Gideon Resnick*

21

**APPENDIX**

| PUBLICATION/<br>Author | DESCRIPTION OF ARTICLE AT ISSUE<br>(reference to "felon" in bold)[19] |
|---|---|
| **NATIONAL JOURNAL**<br><br>**Josh Kraushaar** | <u>Date</u>: April 10, 2018,<br><br><u>Title</u>: "Senate Republicans Growing Anxious About Their Majority"<br><br><u>Description</u>: The article surveyed primary races in a number of states and noted that "Republicans have been concerned they could blow a winnable race against Sen. Joe Manchin of West Virginia if a **convicted felon** (Don Blankenship) ends up as their nominee – an all-too-real possibility." Ex. 10.  *See* FAC ¶ 154.<br><br><u>Correction</u>: The article was subsequently corrected to replace the phrase "convicted felon" with "candidate convicted of a misdemeanor."  Ex. 11. |
| **DAILY BEAST**<br><br>**Gideon Resnick** | <u>Date</u>: May 8, 2018<br><br><u>Title</u>: "Primary Preview: What to Watch for in Indiana, West Virginia, and Ohio"<br><br><u>Description</u>: The article discussed the primary elections taking place that day in Indiana, West Virginia and Ohio.  The subheading of the article stated: "West Virginia Republicans could choose a **felon** who was responsible for the death of 29 miners to be their candidate for the U.S. Senate."  The body of the article explained that Blankenship was a "former coal executive who went to federal prison for conspiring to violate mine safety standards after 29 miners were killed in an explosion at a mine his company owned." Ex. 2.  *See* FAC ¶ 188.<br><br><u>Correction</u>:  The article subsequently was updated to remove the word "felon," with a note indicating that Blankenship was "convicted of a misdemeanor, not a felony."  Ex. 3. |
| **LOS ANGELES TIMES**<br><br>**Cathleen Decker** | <u>Date</u>: May 8, 2018<br><br><u>Title</u>: "West Virginia voters side with a safer Republican candidate in hotly contested U.S. Senate race" |

---

[19] All exhibits referenced herein are exhibits to the Declaration of Eric J. Feder, filed concurrently.

**APPENDIX**

| | |
|---|---|
| | Description: Reporting on the results of the West Virginia primary, the article stated that "Don Blankenship, a wealthy **felon** who ran racially charged ads aimed at Senate Republican leader Mitch McConnell and his family, came in third" in the primary.  The article further states that Blankenship was the "former chief executive of Massey Energy" and had "served a year in prison for actions connected to the 2010 explosion that killed 29 miners at the Upper Big Branch mine." Ex. 8.  *See* FAC ¶ 181.<br><br>Correction: A subsequent correction clarified that Blankenship was "convicted on a misdemeanor charge; he was not found guilty of felony charges." Ex. 9. |
| **NEW YORK DAILY NEWS**<br><br>**Nicole Hensley** | Date: May 8, 2018<br><br>Title: "Mitch McConnell blows away ex-coal baron Don Blankenship for 'Cocaine Mitch' ad after failed senate bid"<br><br>Description: Reporting on McConnell's reaction to the results of the West Virginia primary, the articles notes that "Blankenship, a **convicted felon**, conceded the Republican primary to State Attorney General Patrick Morrisey.  He served one year in prison for a deadly mine disaster under his watch as CEO of Massey Energy." Ex. 12.  *See* FAC ¶ 186.<br><br>Correction: The article was subsequently corrected to remove the word "felon" and to explain that Blankenship served a year in prison "after being convicted of a misdemeanor for conspiring to violate mine safety standards."  Ex. 13. |
| **THE HILL**<br><br>**Jen Kerns** | Date: May 10, 2018<br><br>Title: "Trump's White House shakes off boogeyman Roy Moore with West Virginia win"<br><br>Description: An opinion column by contributor Jen Kerns posited that the West Virginia primary results showed President Trump had "grown in political sophistication" since Roy Moore's failed Alabama Senate campaign.  The column explained: "The fact that Trump personally engaged in the West Virginia primary when it appeared that **convicted felon** Don Blankenship was gaining in the polls, speaks volumes about the White House's understanding of what is at stake in 2018.  Blankenship, who served a year in prison and faced a $250,000 fine for his unapologetic role in one of the state's worst mining explosions that killed 29 people, was an |

A-2

**APPENDIX**

| | |
|---|---|
| | unacceptable choice according to the White House and concerned Republican leaders." Ex. 6.  *See* FAC ¶ 199.<br><br>Correction: The column was subsequently corrected to remove the phrase "convicted felon" and clarify that Blankenship was "found guilty in 2015 of a misdemeanor charge of conspiring to violate mine safety and health standards."  Ex. 7. |
| **DAILY MAIL**<br><br>**David Martosko** | Date: May 11, 2018<br><br>Title: "Hunting season starts early for Don Jr. this year"<br><br>Description:  The article states that Trump Jr. was expected to campaign in West Virginia for the Republican general-election candidate, Patrick Morrisey, who had "prevailed in a nasty Republican primary this week that included **convicted felon** Don Blankenship, whose comments about 'Chinapeople' drove voters to abandon him."  The article quoted a tweet by Trump Jr. in the days before the West Virginia primary urging West Virginia voters to "make a wise decision and reject Blankenship."  It further explained that "Blankenship spent a year in prison for flouting mine safety standards, following an explosion that killed more than two dozen workers."  Ex. 4.  *See* FAC ¶ 201.<br><br>Correction: The article was subsequently corrected to replace the word "felon" with "criminal" and to note that "The original version of this article referred to Don Blankenship as a "convicted felon." In fact, Mr. Blankenship was convicted of a misdemeanor."  Ex. 5. |
| **ABC** | Date: July 24, 2018<br><br>Description: ABC published a tweet reporting on Blankenship's efforts to get on the general-election ballot as a third-party candidate.  The tweet stated that "Don Blankenship, the former coal baron and **convicted felon**, wades back into the state's U.S. Senate race, this time attempting to file paperwork to run as a member of the Constitution Party." Ex. 1.  FAC ¶ 215.<br><br>Correction: ABC tweeted a correction changing the description to "Don Blankenship, the former coal baron who spent time in federal prison."  Ex. 1. |

A-3