IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**DON BLANKENSHIP,**

        **Plaintiff,**

vs.                                               Civil Action No. 2:19-cv-00236

**FOX NEWS NETWORK, LLC,**
*ET AL.*,

        **Defendants.**

**ORDER**

Pending before the Court is ***Plaintiff Don Blankenship's Motion to Compel Production of Documents to Defendant National Republican Senatorial Committee*** (ECF No. 503) ("NRSC"). Since the filing of this pleading, the undersigned hosted several informal telephone conferences to allow Defendant NRSC additional time to comply with Plaintiff's production requests as well as to narrow the unresolved issues related to the discovery disputes that have arisen. During the telephone conference held on August 10, 2020, counsel for Plaintiff and Defendant NRSC represented to the undersigned that a decision concerning Defendant NRSC's First Amendment privilege protections necessitated resolution which may impact less significant discovery issues between these parties, thus prompting the undersigned to set forth a briefing schedule (See ECF No. 530): on August 24, 2020, Defendant NRSC filed its Opposition to Plaintiff's Motion to Compel (ECF No. 549); and on August 31, 2020, Plaintiff filed his Reply Memorandum of Law to Defendant NRSC's Opposition (ECF No. 557).[1] Accordingly, the matters

---

[1] Counsel for Plaintiff emailed the undersigned explaining that Plaintiff's reply brief had inadvertently been filed twice, and advised that the Court should disregard the first filing (ECF No. 556) and to proceed with review of the

have been fully briefed and ripe for decision.

For the reasons stated *infra*, the undersigned **DENIES** Plaintiff's ***Motion***:

## Background

This case concerns a defamation action Plaintiff has asserted against numerous Defendants, primarily news agencies, for allegedly publishing false reports calling Plaintiff a convicted "felon" during the West Virginia 2018 Republican primary for the United States Senate seat against incumbent Senator Joe Manchin, a Democrat. Allegedly as a result of the defamation, Plaintiff lost the primary and has suffered damages to his reputation as well as losses to business opportunities, interests and other employment.

## Plaintiff's Argument for Compelled Disclosure

Plaintiff asserts that this matter has been allowed to proceed on his claim of conspiracy that Defendants engaged in a campaign to defame Plaintiff at a time when he was gaining traction in the United States Senate race for the Republican primary in West Virginia. Accordingly, Defendant NRSC is unique insofar as it is the only organization that is solely dedicated to strengthening the Republican Senate Majority and electing Republicans to the United States Senate, additionally, Defendant NRSC had direction from the Republican Senate Majority Leader, Mitch McConnell, to participate in the conspiracy to defame Plaintiff via major news outlets. Plaintiff points out that this lawsuit is about protecting his own constitutional rights to free speech and expression – and for purposes herein, Defendant NRSC violated these rights by preventing him from winning the West Virginia primary election by participating in the campaign to defame him.

Plaintiff asserts that Defendant NRSC has failed to make a *prima facie* showing that the

---

subsequent filing (ECF No. 557).

2

First Amendment privilege applies to its withholding certain documents identified in its privilege log because defamatory speech is not protected speech, particularly when used to prevent a public figure such as Plaintiff from winning a United States Senate race. Plaintiff spoke out against Senate Majority Leader McConnell by calling for his removal; in retaliation, McConnell conspired with Defendant NRSC and the other Defendants to launch a defamation campaign against Plaintiff to poison the voter pool against him during the West Virginia primary election of May 8, 2018.

In response, Defendant NRSC argues that compelled disclosure of a political organization's internal communications will have a chilling effect on its First Amendment rights to association, and will have the effect of dampening the candor of internal communications, deterring participation in campaign activities and revealing campaign strategy and tactics to political opponents.[2] Defendant NRSC asserts that the withheld documents which Plaintiff seeks contain proprietary information, which can be compromised should Plaintiff decide to again run against a Republican senatorial candidate. Defendant NRSC states that in addition to the chilling effect compelled disclosure will have, Plaintiff is unable to show that these documents are essential or crucial to his claims in this case. Plaintiff does not allege that Defendant NRSC defamed him, but that others did – further, even though Defendant NRSC was opposed to his candidacy as the Republican contender in the West Virginia United States Senate race, that is politics, not a conspiracy to defame him. Defendant NRSC argues that Plaintiff is out to punish those who

---

[2] Defendant NRSC has attached three declarations from its members in support of its argument against compelled disclosure: NRSC Political Director Betsy Ankney; NRSC Polling Director Jessie Connelly; and NRSC Research Director Jeff Snow (ECF Nos. 549-1, 549-2, 549-3). Underscoring each declaration is that Defendant NRSC's primary purpose is to assemble information for determining the appropriate campaign strategy for Republican senatorial candidates and that compelled disclosure, especially to a political opponent affiliated with another party, would chill associational rights as well as Defendant NRSC's ability to provide opinions on campaign strategy for Republican candidates. Plaintiff has characterized these declarations as "self-serving" as well as having "minimal" evidentiary value (ECF No. 557 at 12). The undersigned has yet to see a declaration in support of a party opponent's argument that was not "self-serving", but nevertheless, these declarations provide additional evidence to support a *prima facie* showing of a First Amendment privilege. Further, the declarations in and of themselves were not dispositive in the undersigned's decision on this issue.

opposed him in his bid for a seat in the U.S. Senate and his failed senatorial campaign.

Defendant NRSC asserts that no protective order entered in this case can provide the appropriate protections, because disclosure to Plaintiff, who is now a political opponent, runs contrary to Defendant NRSC's asserted privilege. Further, Plaintiff has violated the protective orders by mentioning the names of senders and recipients of confidential communications that are subject to the protective order and privilege log. Defendant NRSC states there is no conspiracy because it has withheld *internal* communications.[3]

In reply, Plaintiff is amenable to the *in camera* review, however, cautions the Court that at this stage in discovery, the evidentiary significance of the withheld information may not be realized unless viewed in the larger context of additional discovery. Nevertheless, Plaintiff asserts that compelled disclosure of the withheld communications will not chill membership in Defendant NRSC, as it has not demonstrated with any objectively reasonable probability that disclosure will deter membership due to fears of threats, harassment or reprisal. With regard to Defendant NRSC's insistence that the withheld information is proprietary and should be withheld from political opponents and to the public, Plaintiff points out that he is not running for U.S. Senate, as he is the Constitutional Party candidate for U.S. President, therefore, he is not a political opponent. Plaintiff also points out that just because an individual is outspoken against "the GOP establishment" would render any such individual a political opponent under Defendant NRSC's definition, which would include the current President. Further, there is a protective order in place that would prevent public disclosure of this information.

Plaintiff contests Defendant NRSC's position that he violated the protective order by

---

[3] Defendant NRSC offered that it would willingly submit the withheld information to the undersigned for *in camera* review, which the undersigned accepted.

naming senders and recipients of communications listed in the privilege log, and asserts that this is not the case at all, as he used this information appropriately in compliance with the terms of the protective order. Regardless, the withheld information is crucial to Plaintiff's case, as it provides necessary circumstantial evidence, or the broader context of the surrounding circumstances, against which he can show he was a viable Republican candidate for the U.S. Senate seat in West Virginia who was capable of winning not just the primary, but also the general election, had it not been for the defamatory attacks launched against him by Defendants, including Defendant NRSC. Circumstantial evidence, especially evidence of a concerted activity directed toward the achievement of a common goal or purpose is as probative as direct evidence. For instance, Plaintiff points out that the privilege log indicates a large volume of entries that indicates Defendant NRSC prioritized eliminating Plaintiff as the Republican nominee for U.S. Senate, thus this withheld information is probative to his conspiracy claim.

 Plaintiff also asserts that the privilege log, as well as the document production to date, are fatally deficient due to the lack of email communications or text messages, or entries thereof, during the week of the televised Fox News debate among Plaintiff and other candidates for the Republican nomination. There were numerous entries a month prior to the debate, but very few the week of the debate and only one afterwards. This debate was important to Defendant NRSC, having closely monitored all Senate races, because not only was Senator Manchin a top target by the Republican party, but also the contested West Virginia U.S. Senate race was critical to Republicans' endeavors to secure the majority of seats in the U.S. Senate. Plaintiff is unable to obtain the withheld information from other sources. Because Defendant NRSC invested so much into research of Plaintiff's background and engaged in robust efforts to defeat his candidacy, the paucity of these communications is suspect.

**Relevant Law**

As an initial matter, when a court is evaluating the use of the First Amendment as a shield against disclosure, the party asserting the privilege must first make a *prima facie* showing that the privilege applies. Pulte Home Corporation v. Montgomery County Maryland, 2017 WL 11046670, at *4 (D. Md. 2017) (citing Black Panther Party v. Smith, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981)). To make this showing, the party must "demonstrate an objectively reasonable probability that compelled disclosure will chill associational rights, *i.e.*, that disclosure will deter membership due to fears of threats, harassment, or reprisal . . . which may affect members' physical well-being, political activities or economic interests." Id. (quoting In re Motor Fuel Temperature Sales Practices Litig., 707 F. Supp. 1145, 1153 (D. Kan. 2010)). "To demonstrate an objectively reasonable probability of a chilling effect, the party asserting the privilege does not need to prove to a certainty that disclosure will result in chilling. Instead, the party 'need only show that there is some probability that disclosure will lead' to a chilling effect". Id. (quoting Black Panther Party, 661 F.2d at 1268). If the party asserting the privilege is unable to make a *prima facie* showing, then there is no First Amendment privilege protecting against disclosure. Id.

However, if the party asserting the privilege makes a *prima facie* showing, then the burden is largely on the party seeking disclosure to prove that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information. Id. (citing Grandbouche v. Clancy, 825 F.2d 1463, 1466-67 (10th Cir. 1987)). In short, prior to ordering disclosure, a court must weigh the substantiality of the First Amendment interests of the party asserting the privilege against an opposing party's need for the requested information. Id. (citing Perry v. Schwarzenegger, 591 F.3d 1147, 1161 (9th Cir. 2010);

Grandbouche at 1466).

## Discussion

The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble[.]" See U.S. Const. amend. I. Notably absent from this constitutional guarantee is the right to engage in defamatory conduct or to conspire to engage in same. However, after a thorough *in camera* review of the materials that were withheld as indicated by the privilege log provided by Defendant NRSC to Plaintiff, the undersigned is unable to find any indication of defamation or participation in the alleged conspiracy or campaign to defame Plaintiff in his pursuit of the Republican nomination for the West Virginia U.S. Senate seat. The materials submitted for the undersigned's *in camera* review were primarily internal communications among staff members of Defendant NRSC concerning their impressions of the nationwide U.S. Senate race. Many of the materials also consisted of a collection of a wide variety of publications and news articles that were not connected to or generated by Defendant NRSC. In short, not only did these materials fail to demonstrate any conduct by Defendant NRSC to violate or conspire to violate Plaintiff's own First Amendment rights, but also to demonstrate any activity or conduct that prevented Plaintiff from winning the 2018 West Virginia primary. To state it plainly, there was nothing indicative of defamation or engagement in a campaign to defame Plaintiff.

When considered in light of the pertinent jurisprudence, the undersigned finds that compelled disclosure of these materials would, in all "objectively reasonable probability", chill associational rights. In particular, membership in the NRSC can be affected to the extent that those members may be subjected to harassment or reprisal *because* of their political activities or their economic interests. In short, if this Court compelled disclosure of internal communications among

members of the Defendant NRSC, the Court would essentially be giving greater weight to Plaintiff's First Amendment right to speech over the membership's collective First Amendment right to assembly or to associate. Taking this to the next logical step, it begs the question, whenever a candidate for a U.S. Senate seat fails to secure a nomination, what is to stop that individual from suing the NRSC or similar entity in order to discern why another individual member or non-member was preferred over him or her? The logical conclusion is that compelled disclosure would cause internal communications, as well as the freedoms of speech and assembly, within and among the membership of Defendant NRSC, would necessarily be chilled, perhaps to the extreme where no such communications or acknowledgement of assembly can be made in any material form, lest they become subject to legal scrutiny in future civil proceedings. Basically, compelled disclosure of Defendant NRSC's internal communications concerning opinions as to campaign strategies, etc. would cause Defendant NRSC to reassess or even modify how its membership can work, associate, communicate and provide any guidance on campaign strategies. It is not difficult to envision that compelled disclosure would chill membership to Defendant NRSC as well as would-be members, and to those Defendant NRSC serves, in their manner of association and/or assembly.

In short, Defendant NRSC has made a *prima facie* showing that compelled disclosure of the withheld information may have a chilling effect on its First Amendment rights.

With regard to the second inquiry, the undersigned recognizes that Plaintiff now carries the burden to show that the information sought is of crucial relevance to his claims, is necessary to prove them, and is unavailable from any other source. Again, after having the opportunity to review these materials, Plaintiff's argument that this information is crucial or essential to his claims is unconvincing. Significantly, none of the withheld materials suggests any relevance to Plaintiff's conspiracy claim. Although the withheld information is exclusive to Defendant NRSC, that is,

specifically created or generated by Defendant NRSC to the extent that they are internal communications among its staff members, the materials also consist of a variety of media sources, such as articles, television and radio programs, news reports, polling queries, as well as statistics that its staff members have reviewed and gleaned for purposes of forming opinions concerning the roster of candidates running for seats in the U.S. Senate, Republican and Democrat, nationwide. Therefore, although these opinions and/or impressions are not available from an alternative source, this information is not actually needed to prove Plaintiff's claims.[4] In any event, perhaps most importantly, there is no evidence before the undersigned that any of these materials, including the opinions and/or impressions made by Defendant NRSC, were shared with outsiders. Moreover, Plaintiff's request for compelled disclosure is not the least restrictive method in obtaining this information, because it would necessarily require this Court to suppress Defendant NRSC's First Amendment rights in the process.

In sum, Plaintiff has not carried his burden in demonstrating that his need for the requested information is more substantial than Defendant NRSC's First Amendment interests.

On the basis of the foregoing, the undersigned **FINDS** that ***Plaintiff Don Blankenship's Motion to Compel Production of Documents to Defendant National Republican Senatorial Committee*** (ECF No. 503) to the extent that Plaintiff seeks the materials withheld by Defendant NRSC pursuant to its asserted First Amendment privilege is neither relevant to Plaintiff's claims that the Court has allowed to proceed in this action, nor sufficiently tailored to the issues concerning this action, and are not proportional to the needs of this case. Accordingly, the undersigned hereby **SUSTAINS** Defendant NRSC's objections to Plaintiff's request for these

---

[4] Indeed, many, if not most of the materials consist of national and local news articles and information that Plaintiff appears to have already in his possession or can be obtained from other Defendants in this action, thus, to the extent that Defendant NRSC has relied on these materials in order to form its own opinions or impressions concerning various candidates, Plaintiff included, those materials are not exclusive to Defendant NRSC.

withheld materials and **DENIES** Plaintiff's *Motion* to the extent set forth herein (ECF No. 503).

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive Motion may be contested by filing within 14 days objections to this Order with District Judge John T. Copenhaver, Jr. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to distribute a copy of this Order to all counsel of record.

**ENTER: September 4, 2020.**

Omar J. Aboulhosn
United States Magistrate Judge