**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**DON BLANKENSHIP,**

                        **Plaintiff,**

**vs.**                                                      **Civil Action No. 2:19-cv-00236**

**FOX NEWS NETWORK, LLC,
ET AL.,**

                        **Defendants.**

## ORDER

Pending before the Court is ***Plaintiff Don Blankenship's Motion to Quash Defendant Fox News Network, LLC's Subpoena to Decisionquest, LLC*** (ECF No. 619). For the reasons stated *infra*, the undersigned **GRANTS** Plaintiff's ***Motion***:

### Background

This case concerns a defamation action Plaintiff has asserted against numerous Defendants, including Fox News Network, LLC (hereinafter referred to as "FNN") for allegedly publishing false reports calling Plaintiff a convicted "felon" during the West Virginia 2018 Republican primary for the United States Senate seat against incumbent Senator Joe Manchin, a Democrat. Allegedly as a result of the defamation, Plaintiff lost the primary and has suffered damages to his reputation as well as losses to business opportunities, interests and other employment.

### Procedural History

On November 2, 2020, Plaintiff filed his Motion to Quash a subpoena issued by FNN to a nonparty, Decisionquest, LLC (hereinafter referred to as "Decisionquest") (ECF No. 619) and

attached two supporting exhibits (ECF Nos. 619-1, 619-2).[1] On November 16, 2020, FNN filed its Opposition to Plaintiff's Motion (ECF No. 652) accompanied by five supporting exhibits (ECF Nos. 652-1, 652-2, 652-3, 652-4, 652-5).[2] On November 23, 2020, Plaintiff filed his Reply Memorandum of Law to FNN's Opposition to his Motion (ECF No. 665). On November 25, 2020, FNN filed a Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Quash Subpoena (ECF No. 672)[3] along with its Surreply with attached exhibits (ECF No. 672-1).[4] Accordingly, this matter is fully briefed and ripe for decision.

## Plaintiff's Argument in Support of Quashing Subpoena

Plaintiff asserts that he retained Decisionquest in the criminal proceedings in this Court, United States of America v. Donald L. Blankenship, No. 5:14-cr-00244, to provide jury consulting

---

[1] The exhibits concern two Declarations, one by Zachary Gidding, one of Plaintiff's counsel of record in this civil proceeding attesting an attempt to meet and confer with opposing counsel on this particular discovery-related matter, and the other Declaration is from Michael Cobo, the Chief Operating Officer for Decisionquest with the subject subpoena attached as an exhibit.

[2] The first exhibit is Plaintiff's "Memorandum in Support of Defense Motion No. 3: Transfer to Another District for Trial" filed in the criminal proceeding in this Court, United States of America v. Donald L. Blankenship, No. 5:14-cr-00244; the second exhibit concerns a "Venue Opinion Study" dated February 19, 2015 and provided by Paul H. Jepsen and Arthur Patterson, Ph.D., of Decisionquest regarding Plaintiff's criminal proceeding; the third exhibit is Paul H. Jepsen's Affidavit dated February 19, 2015; the fourth exhibit is a *Politico* article dated March 26, 2018 entitled "Can the Most Hated Man in West Virginia Win?"; and the fifth exhibit is a *Daily Beast* article dated April 27, 2018 entitled "Don Blankenship is a Villain of Our Time".

[3] FNN asserts in its Motion for Leave to File Surreply that Plaintiff "for the first time" argued about "fact work product" in his Reply, thus satisfying the standard for permitting a surreply. Though the undersigned notes that Plaintiff did not flesh out the distinguishing characteristics between "opinion work product" and "fact work product" and the levels of protection afforded to them, it is noted that in his initial Motion, Plaintiff did argue that protection for nonlawyers' work product extends to discovery in subsequent matters: "Rule 26(b)(4)(D) expressly provides that *facts known* and/or opinions held by an expert retained or specially employed by another party in anticipation of litigation or to prepare for trial, and who is not expected to be called as a witness at trial, are not discoverable." (ECF No. 619 at 8) (emphasis added) Additionally, Plaintiff attached the Declaration of Michael Cobo which specifically mentions venue reports, venue comparative survey findings, juror profiling surveys, jury research, *voir dire* research, juror investigation and consulting research as well as in-court jury assistance, which appears to collectively fall under opinion and fact work product. Accordingly, the undersigned does not necessarily agree with FNN that Plaintiff waived any argument to the extent it pertains to "fact work product", nevertheless, the undersigned **GRANTS** FNN's Motion for Leave to File Surreply (ECF No. 672) given that the surreply is very brief.

[4] The exhibits concern matters related to Plaintiff's criminal proceeding: a "Motion for Leave to File Under Seal Reply in Support of Defense Motion No. 3 and Accompanying Exhibits" accompanied by a proposed order, the "Reply in Support of Defense Motion No. 3: Transfer to Another District For Trial", another Jepsen Affidavit dated March 6, 2015, a "Venue Opinion Study" from Messrs. Jepsen and Patterson dated March 6, 2015, and an email chain among counsel of record in Plaintiff's criminal proceeding regarding these materials.

and jury persuasion services, which included surveys, polls and other investigations in local counties to determine public opinion towards Plaintiff. The subpoena seeks all documents and communications that underlie these investigations as well as analyses carried out on Plaintiff's behalf and documents and communications between Plaintiff and his attorneys and Decisionquest pertaining to the criminal trial. Because this information was prepared for Plaintiff's criminal trial, it is clearly protected from disclosure based upon attorney-client privilege and work-product doctrine.

Plaintiff asserts he has standing to quash the subpoena given that he has a personal right or privilege in the materials sought from Decisionquest. The subpoena seeks communications between Decisionquest and Plaintiff's criminal trial counsel, which are protected by the attorney-client privilege despite the fact that Decisionquest is a third party – Decisionquest was retained specifically and provided guidance concerning the potential jury pool for Plaintiff's criminal trial. Additionally, the materials sought from Decisionquest is protected under the work-product doctrine, which would include not only all communications between Plaintiff's counsel and Decisionquest, but also his counsel's work product provided to Decisionquest, advice provided by Decisionquest, notes taken by Decisionquest in the context of its services to Plaintiff's criminal matters, documents prepared by Decisionquest concerning Plaintiff's criminal case. The protection afforded by the attorney-client privilege and/or work-product doctrine extends to subsequent matters, including this civil action.

**FNN'S Opposition to Plaintiff's Motion**

FNN explains that Plaintiff has waived privilege or work product protections not only to the Decisionquest report itself, which was used to support a change in venue motion during the criminal proceeding, but also to the undisclosed information, including documents and

communications that led to that report. FNN contends that Plaintiff's waiver was intentional; that the disclosed and undisclosed information concerned the same subject matter – Plaintiff's reputation in West Virginia (and Maryland) judicial districts; and that in all fairness, both the undisclosed and disclosed information should be considered together as the information Plaintiff wants to remain undisclosed is highly relevant to his claims against FNN in this action.

FNN further argues that at minimum, the raw factual data Decisionquest relied upon in rendering its report should be disclosed, characterized as "fact work product", as this Court has recognized that "fact work product" is entitled to less protection than opinion work product, which involves mental impressions, conclusions, opinions and legal theory. Since Plaintiff only argued the subpoena should be quashed on the basis of opinion work product, he has waived any argument concerning fact work product.

Regardless, FNN has a "substantial need" for this information because Plaintiff has made his reputation a core issue in this case and the Decisionquest survey and other data directly relates to that claim; the survey even suggests Plaintiff's reputation was damaged long before he alleged FNN and the other defendants in this case defamed him. This is also significant because it goes to material falsity, where calling Plaintiff a "felon" is no worse for Plaintiff's reputation than an accurate description of his crime. FNN is unable to obtain a substantial equivalent of this information because it pertains to observation in 2015 that can no longer be replicated.

FNN asserts further that in the criminal proceeding, Plaintiff filed with the Court the Decisonquest report along with an affidavit that offered expert opinions, and regardless of whether the expert testified or not, Plaintiff already waived the protections afforded to the fact work product underlying the opinion. As a result, that information is discoverable in this case.

FNN alternatively suggests that even if Plaintiff did not waive protection over all the

requested information, the Court should allow production of the facts gathered by Decisionquest, such as survey responses and raw data, and any privileged communications or opinion work product can be logged.

### Plaintiff's Reply

Plaintiff asserts he did not waive prospective attorney-client or work-product protection – not all the work Decisionquest did on his behalf in the criminal matter concerned the public opinion study, but also included jury persuasion, *voir dire*, juror investigation and consulting, and in-court jury selection – this is not the same subject matter. FNN's subpoena is very broad and covers every facet of Decisionquest's relationship with Plaintiff as his professional jury consultant; FNN's characterization of the subject matter in the disclosed documents and communications as the same as the undisclosed materials is disingenuous. Plaintiff also disputes that he selectively disclosed information on a single subject matter in order to gain an advantage in litigation – Plaintiff disclosed the report in his criminal proceeding, and did produce same during discovery in this action, but does not concede it is relevant or admissible herein.

Plaintiff further contends that he did not waive any argument regarding fact work product, as he explicitly cited the Rule in his Motion that provides for "facts known" and/or opinions held by an expert retained by counsel in anticipation of litigation or in preparation for trial; Plaintiff's substantive argument covered work product doctrine as a whole. FNN fails to show it has a "substantial need" for the undisclosed Decisionquest materials, as it has access to the same public, and the 2015 Decisionquest survey is not the only one – there are possibly other public opinion surveys taken immediately prior to the increased media coverage of the West Virginia Senate race by other organizations or Plaintiff's opponents. Plaintiff points out that FNN has access to the "substantial equivalent" of such information given that the Decisionquest report has already been

produced. Plaintiff also disputes that he made Decisionquest a testifying expert – it was retained on matters unrelated to the merits of the criminal case and was not going to be testifying at Plaintiff's trial.

## FNN Surreply

FNN contends that Plaintiff has no fact-work product protection because he disclosed these materials to the government in the criminal case. Even if the fact-work product protection applied, FNN is still unable to obtain this information elsewhere; the Decisionquest survey provides a snapshot of Plaintiff's reputation in 2015, which cannot be replicated today, given the intervening years. The proposed possibility of other surveys does not defeat FNN's substantial need for the undisclosed information. FNN contends that the subpoena should not be quashed on the basis that Decisionquest provided other services for Plaintiff, as some of those materials are not protected, and again, any privileged materials can be logged to be argued later if necessary.

## Relevant Law

Under Rule 45(d)(3)(A), the party that is subject to the subpoena *duces tecum* may move to quash or modify the subpoena. Rule 45(d)(3)(A) provides that:

> On timely motion, the court for the district where compliance is
> required must quash or modify a subpoena that:
>
> (i)     fails to allow a reasonable time to comply;
> (ii)    requires a person to comply beyond the
>         geographical limits specified in Rule 45(c);
> (iii)   ***requires disclosure of privileged or other
>         protected matter, if no exception or waiver
>         applies***; or
> (iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

6

Civ. P. 26(b)(1). Local Rule 26.4 provides that movants must demonstrate with specificity that the information qualifies for protection under Rule 26(c), and that good cause exists for restricting dissemination on the ground that harm would result from its disclosure. See also, Marfork Coal Co., Inc. v. Smith, 274 F.R.D. 193, 206 (S.D.W.Va. 2011); Johnson v. Ford Motor Co., No. 3:13-cv-6529, 2017 WL 1904259, at *2 (S.D.W.Va. May 9, 2019). "Rule 34 provides the procedure by which a party may obtain documents from another party . . . '[t]he leading treatises agree that although Rule 45 may apply to both parties and nonparties, resort to Rule 45 should not be allowed when it circumvents the requirements and protections of Rule 34 for the production of documents belonging to a party.' " See Layman v. Junior Players Golf Academy, Inc., 314 F.R.D. 379, 385 (D.S.C. 2016) (internal citations omitted); Neel v. Mid-Atlantic of Fairfield, LLC, 778 F.Supp.2d 593 (D.Md. 2012); Suntrust Mortg., Inc. v. Busby, 651 F.Supp.2d 472 (W.D.N.C. 2009). Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). Id.; Fed. R. Civ. Pro. 34.

Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the ***same subject matter***. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (internal citations omitted) (emphasis added).

Under Rule 502(a) of the Federal Rules of Evidence, when a party makes a disclosure in a federal proceeding or to a federal office or agency, and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

(1)     the waiver is intentional;
(2)     the disclosed and undisclosed communications or information concern the

same subject matter; and

(3)     they ought in fairness to be considered together.

Fed. R. Evid. 502.

## Discussion

As an initial matter, there is no dispute concerning Plaintiff's standing to challenge FNN's subpoena, as there is no dispute that Plaintiff possesses a personal right or privilege in the materials sought from Decisionquest. United States v. Idema, 118 Fed.Appx. 740, 744 (4th Cir. 2005) (a party has standing to challenge a nonparty subpoena where the party claims some "personal right or privilege in the information sought . . .").

The undersigned notes that in the Declaration of Michael Cobo, he attests that Plaintiff retained Decisionquest to assist in the preparation for the criminal trial by providing jury consulting and jury research services which included surveys, polls and other investigations in local counties to determine public and "***subsequently jury***" opinion towards Plaintiff. (See ECF No. 619-2 at 1) (emphasis added)

The undersigned further notes that in "Schedule A" attached to the subpoena to Decisionquest, FNN included six document requests (ECF No. 619-2 at 11-12) demanding "all" surveys, polls, studies, or investigations as well as "all" documents and communications conducted by Decisionquest as they relate to its retention as a professional jury consultant in Plaintiff's criminal matter. FNN additionally seeks "all" surveys, polls, studies, or investigations as well as "all" documents and communications regarding Plaintiff's reputation or Plaintiff's campaign. FNN wants the questionnaires, scripts, forms, manuals, or other documents and including communications with Plaintiff about these materials; FNN wants "all" documents and communications as they relate to the information collected and analyzed by Decisionquest in connection with any surveys, polls, studies, or investigations concerning Plaintiff's reputation or

campaign including but not limited to the reports, notes, recordings, interviews, transcripts, internal memoranda, or other documents. Finally, FNN wants all the conclusions or findings from all these materials, including "all" documents and communications with Plaintiff.

What is glaring in these requests is that there is no differentiation between Decisionquest's services concerning public opinion of Plaintiff in support of his motion to transfer with services concerning jury selection. There is no question that Decisionquest was hired as a jury consultant, ultimately, with the goal to select a jury most favorable to Plaintiff in anticipation of his criminal trial. There is also no indication whatsoever that any agent or representative of Decisionquest was going to testify on Plaintiff's behalf at his criminal trial.

The issue here concerns whether Plaintiff's filing of the venue opinion study/report and its accompanying documents in support of his motion to transfer his criminal proceeding to another division in this District constituted a voluntary waiver of the attorney-client privilege and/or work product doctrine protections to the documents and communications between Decisionquest and Plaintiff that concerned other subject matter or services. Clearly, the study or report and supporting affidavits that were disclosed in the prior criminal proceeding have lost the protections afforded them. Pursuant to <u>United States v. Jones</u>, *supra*, and its progeny, that loss of the privilege or confidence would extend to the underlying data related to the 2015 report. See also, Fed. R. Evid. 502(a)(2). However, FNN's subpoena does not limit its request to the underlying data to the 2015 report, and asks for "all" communications with Plaintiff (which includes his counsel at the time; see ECF No. 619-2 at 9 ("2. 'Plaintiff' means Don Blankenship, as well as any agents, employees, or representatives acting on behalf of Don Blankenship")). Significantly, FNN defines " '[a]ll' and 'any' shall be construed as encompassing all and any." (<u>Id</u>. at 10) In short, FNN's requests are very broad and endeavor to violate the attorney-client privilege and/or work-product doctrine

between Plaintiff and Decisionquest. Although FNN and Plaintiff at times appear to agree that Plaintiff has no protection for materials that concern the same subject matter that was disclosed in the report (See ECF No. 665 at 2-3, 4-5, 9; ECF No. 672-1 at 2-3), the fact remains that FNN's requests are simply overbroad and concern clearly privileged communications and documents for which there has been no exception thereto or demonstrable, let alone voluntary, waiver by this Plaintiff.

Accordingly, the undersigned **FINDS** that because FNN's subpoena to Decisionquest necessarily requires disclosure of privileged or other protected matter, and that no exception or waiver is applicable herein, the subpoena must be quashed pursuant to Rule 45 of the Federal Rules of Civil Procedure. The undersigned declines to modify the subpoena in accordance with Rule 45 because as noted *supra*, the parties appear to be on the cusp of a compromise that certain communications and documents may be responsive to FNN's requests that will not implicate Plaintiff's privileges that will not require this Court's intervention. Thus, for the foregoing reasons, ***Plaintiff Don Blankenship's Motion to Quash Defendant Fox News Network, LLC's Subpoena to Decisionquest, LLC*** (ECF No. 619) is hereby **GRANTED**.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive Motion may be contested by filing within 14 days objections to this Order with District Judge John T. Copenhaver, Jr. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to distribute a copy of this Order to all counsel of record.

**ENTER: December 8, 2020.**



Omar J. Aboulhosn
United States Magistrate Judge