IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**DON BLANKENSHIP,**

                    **Plaintiff,**

**vs.**                                                    **Civil Action No. 2:19-cv-00236**

**FOX NEWS NETWORK, LLC,**
***ET AL.*,**

                    **Defendants.**

## ORDER

Pending before the Court is Defendant ***National Republican Senatorial Committee's*** ***Motion for a Protective Order*** (ECF No. 625). For the reasons stated *infra*, the undersigned **GRANTS** Defendant's (hereinafter referred to as "NRSC") ***Motion***:

### Background

This case concerns a defamation action Plaintiff has asserted against numerous Defendants, primarily news agencies, for allegedly publishing false reports calling Plaintiff a convicted "felon" during the West Virginia 2018 Republican primary for the United States Senate seat against incumbent Senator Joe Manchin, a Democrat. Allegedly as a result of the defamation, Plaintiff lost the primary and has suffered damages to his reputation as well as losses to business opportunities, interests and other employment.

### Procedural History

On November 3, 2020, NRSC filed its Motion for a Protective Order (ECF No. 625) along

with three supporting exhibits (ECF Nos. 625-1, 625-2, 625-3).[1] On November 16, 2020, Plaintiff filed his Opposition Memorandum of Law in response to NRSC's Motion (ECF No. 653) accompanied by five supporting exhibits (ECF Nos. 653-1, 653-2, 653-3, 653-4, 653-5).[2] On November 23, 2020, NRSC filed its Reply in Support of its Motion (ECF No. 667). Accordingly, this matter is fully briefed and ripe for decision.

### NRSC's Argument for Protective Order

NRSC asks this Court to issue a protective order prohibiting Plaintiff from deposing Senators Mitch McConnell and Cory Gardner as well as limiting the scope of Plaintiff's requests for documents. NRSC alleges several grounds in support of its argument that a protective order should be entered:

First, Plaintiff has failed to demonstrate "exceptional circumstances" espoused by the Morgan doctrine[3] to justify deposing Senators McConnell and Gardner. Plaintiff has not shown that either of these high-ranking government officials have personal knowledge relevant to this litigation – the alleged conspiracy to defame Plaintiff during the 2018 West Virginia Senate Republican primary campaign. Plaintiff has not shown that these proposed depositions are essential to his case. Plaintiff has not shown that the evidence sought from deposing these Senators is unavailable through any alternative source or less burdensome means. Plaintiff has not alleged

---

[1] The first exhibit concerns Plaintiff's responses to NRSC's first set of interrogatories; the second and third exhibits are subpoena notices for taking the depositions of Senator McConnell and Senator Gardner with attached document requests.

[2] These exhibits concern: the April 23, 2018 text message from Dana Bash with CNN to Senator Gardner; an email dated April 29, 2018 to/from Kevin McLaughlin stating Plaintiff is a "perfect storm of awful" with a listing of alleged characteristics or attributes, including "a convicted felon"; an email chain dated May 3-4, 2018 between Antonia Ferrier, a Senator McConnell staff member and Martha MacCallum wherein Ms. Ferrier indicated her "boss is pretty ticked" about the "Cocaine Mitch" negative political ads Plaintiff's campaign had published; the March 20, 2018 Politico article entitled "GOP fears another potential electoral disaster"; and the April 17, 2018 Politico article entitled "GOP fears rise over West Virginia Senate fiasco".

[3] Pursuant to U.S. v. Morgan, 313 U.S. 409, 421-422 (1941) (high-ranking government officials not subject to deposition absent extraordinary circumstances).

that either Senator said anything defamatory and does not provide an "actual showing" that any conspiracy existed, let alone that these Senators had any knowledge of it. Instead, Plaintiff only points to two articles from *Politico* wherein national GOP officials indicated that the NRSC expected to create a "menu of options" to intervene against Plaintiff in the primary election and that Senator McConnell and other Republican U.S. Senators met with the NRSC in Senator McConnell's office to discuss how to defeat Plaintiff's candidacy. None of this demonstrates evidentiary support of an alleged conspiracy, but only shows ordinary political meetings, and is therefore not sufficient to satisfy the burden of making an "actual showing" that these Senators had personal knowledge of the alleged conspiracy.

Second, Plaintiff has alternative sources or less burdensome means to obtain this discovery – he has alleged numerous parties and non-parties who are not high-ranking government officials of participating in the conspiracy, thus, he can seek information from them; Plaintiff can also obtain information through a deposition through written interrogatories. Because the scope of the alleged conspiracy is quite narrow – that the conspirators agreed to have others refer to Plaintiff as a convicted felon as opposed to a misdemeanant – less burdensome discovery mechanisms lend themselves more favorably to Plaintiff's requests.

Third, a protective order is necessary to prevent Plaintiff from annoying and harassing Senators McConnell and Gardner. Numerous news articles and other media, including Plaintiff's own statements show that Plaintiff ran on an "anti-establishment campaign" and targeted Senator McConnell in political ads. NRSC contends that Plaintiff is using the courts to exact revenge against Senator McConnell and those like him, who opposed Plaintiff's candidacy and is punishing them for their political speech. NRSC asserts that Plaintiff's recent claims that Senator McConnell interfered in Plaintiff's criminal proceeding in order to prevent him from voiding his conviction

during the primary election underscores that his allegations are meritless, and that Plaintiff should be prevented from using subpoena powers to punish and harass his political opponents.

Fourth, NRSC warns that Plaintiff's subpoenas to depose Senators McConnell and Gardner implicates its First Amendment rights, as NRSC closely associates with both, the former being the leader of the Senate Republican caucus and the latter having served as NRSC Chairman during the 2018 election cycle. NRSC asserts that many of Plaintiff's document requests concern communications with NRSC and its employees and consultants. Because Plaintiff cannot show that the testimony of these Senators is of "crucial relevance" to his case and only offers two Politico articles to substantiate his allegations of a conspiracy, the depositions would simply be a fishing campaign. Therefore, a protective order is necessary to prohibit the depositions of Senators McConnell and Gardner as well as to limit the production of documents that are only of "crucial relevance" to Plaintiff's defamation conspiracy claim.

### Plaintiff's Opposition to NRSC Motion

In response, Plaintiff asserts that Senators McConnell and Gardner have direct personal factual information pertaining to material issues in this case that is not available from any other sources which is demonstrated by the persuasive circumstantial evidence including:

Senator McConnell injected himself into the primary election when he publicly stated he opposed Plaintiff's candidacy; Senator McConnell facilitated the formation and funding of a PAC to run deceptive attack ads against Plaintiff; an ESI text message produced from Senator Gardner from Defendant CNN chief political correspondent Dana Bash that references Plaintiff – less than a week later (ECF No. 653-1), NRSC's current executive director Kevin McLaughlin defamed Plaintiff on CNN during a program hosted by Bash; Senators McConnell and Bash made negative public remarks about Plaintiff when conducting a potentially unlawful campaign meeting in

4

Senator McConnell's office to discuss Plaintiff's candidacy; a staffer of Senator McConnell contacted FNC anchor Martha Bowes MacCallum asserting the Senator "was ticked" about a political ad run by Plaintiff (ECF No. 653-3) and following additional communications with the staffer MacCallum "contrived" a segment on FNC during which Karl Rove, frequent FNC political contributor, referred to Plaintiff as a "moron", a "bigot", and a "crook"; and following Plaintiff's loss after the primary election, Senator McConnell trolled Plaintiff in a tweet on Twitter, stating "Thanks for playing, Don".

Senator Gardner personally injected himself in the campaign and implied Plaintiff was a convicted felon by quipping whether Plaintiff can even vote and if he can leave his house with ankle bracelets; an ESI text message shows that Defendant CNN's Dana Bash was traveling to West Virginia to find Plaintiff and requested Senator Gardner to talk with her off the record (ECF No. 653-1) and less than a week later Karl Rove defamed Plaintiff on Bash's CNN program; and Senator Gardner publicly made jokes about Plaintiff's prison stint.

Plaintiff contends that these instances show that both Senators' targeted conduct was personal in nature and that they alone can provide the necessary context and perspective, thus, the "extraordinary circumstances" have been demonstrated justifying the depositions of these high-ranking government officials. Plaintiff has avoided scheduling their depositions that would interfere with their responsibilities and will not be asking questions related to their governmental decision-making process. Plaintiff points out that Senator Gardner lost his reelection bid and will no longer be serving in the U.S. Senate as of January 3, 2021.

Plaintiff also points out that this Court has already ruled that he has alleged enough facts to a raise a reasonable expectation that discovery will reveal evidence of alleged wrongdoing (See ECF No. 398 at 54)(Court denied NRSC's motion to dismiss) Additionally, Plaintiff argues that

West Virginia law recognizes that conspiracies by their very nature are secretive, and not every member of a conspiracy need be aware of the entire scope of the conspiracy or every detail of the conspiracy or the identities of each member, only that Senators McConnell and Gardner shared in the common plan to defame Plaintiff. The existence of a conspiracy may be inferred through a combination of common sense as well as circumstantial and direct evidence.

Plaintiff asserts that *Politico* is a reputable political news publication upon which Defendants CNN, MSNBC and FNN rely as a political information source. The *Politico* articles Plaintiff cites (ECF Nos. 653-4, 653-5) mentioned meetings among NRSC, top GOP officials, and Plaintiff's political opponents from the 2018 West Virginia Republican primary during which a "menu of options" were discussed to defeat Plaintiff's senatorial bid. This serves as the factual support for Plaintiff's allegations that Senators McConnell and Gardner were involved in the campaign to conspire against him. Since these meetings did not take place at NRSC headquarters, and there are no documents verifying that these were official NRSC meetings, its First Amendment associational rights are not triggered. Only Senators McConnell and Gardner can provide first-hand information about these meetings, as the other participants were other Senate Republicans who also enjoy <u>Morgan</u> doctrine protections. Accordingly, the "extraordinary circumstances" have been met in this case, and due to the intrinsically secretive nature of conspiracies coupled with the public statements Senators McConnell and Gardner and others have made against Plaintiff, Plaintiff should be permitted to explore the nature of the conspiracy to defame him via deposition.

Plaintiff further asserts that deposing these Senators is for a legitimate purpose which has no bearing on their official government duties or obligations, and only to procure discovery from nonparties who have direct personal factual information that pertain to material issues in this case that is unavailable from other sources. Plaintiff states that First Amendment rights are not

implicated because Plaintiff seeks information concerning the conspiracy to defame him and defamatory statements are not constitutionally protected speech; also, NRSC First Amendment privileges do not apply here to prohibit nonparty depositions. NRSC First Amendment privileges also do not apply to the negative public statements Senators McConnell and Gardner made against Plaintiff's candidacy, or apply to the subsequent broadcasts involving defamatory remarks against Plaintiff; neither Senator made those statements in an official organizational or governmental capacity.

Plaintiff states that depositions are an efficient and reliable form of discovery, whereas written discovery lacks the inherent spontaneity and authenticity of depositions, therefore, taking the depositions of Senators McConnell and Gardner is the most judicious means to obtain their direct personal factual information.

### NRSC Reply

NRSC contends that Plaintiff takes issue with Senators McConnell and Gardner who engaged in conduct that is not only normal political activity, but is also constitutionally protected activity; Plaintiff has conflated their opposition to his candidacy with an alleged conspiracy to defame him as grounds to obtain their depositions. NRSC states Plaintiff has failed to show that the Morgan doctrine does not apply, and with regard to NRSC raising the matter, courts have routinely found that a party other than the high-ranking government official can raise the doctrine in context of a motion for a protective order; courts have also found it still applies to former high-ranking government officials. To be sure, Plaintiff wants to depose Senator Gardner because he was the Chairman of NRSC during the 2018 election cycle.

Plaintiff's proffer of evidence of the conduct does not further his claim that Senators McConnell and Gardner had any personal factual knowledge of the alleged conspiracy to defame

him. None of the texts or emails or news programs provide any factual support that these Senators were knowledgeable or engaged in a conspiracy.

Just because Plaintiff's conspiracy claim survived a motion to dismiss does not mean it satisfies the "exceptional circumstances" test – at the pleadings stage, a court accepts all allegations as true to determine whether a plaintiff has stated a claim for relief, but under "exceptional circumstances" standard, Plaintiff must "make an actual showing" that Senators McConnell and Gardner possess personal knowledge relevant to the litigation, and Plaintiff has failed to show any conspiracy, let alone these Senators had personal knowledge of it. The two *Politico* articles Plaintiff relies on fail to provide the requisite evidentiary or factual support for his claim of conspiracy.

Plaintiff has noticed the depositions of several non-high-ranking government officials which demonstrates that alternative sources exist for the information he seeks; Plaintiff must exhaust these avenues before attempting to depose Senators McConnell and Gardner. Regardless of Plaintiff's preference for deposition testimony over written discovery, this is a less burdensome and adequate alternative that can be properly limited to his claim of a conspiracy to defame him.

NRSC asserts Plaintiff's argument that its First Amendment privilege is not implicated by deposing Senators McConnell and Gardner is meritless, as Plaintiff has taken an inconsistent position by now attempting to distance them from NRSC when throughout this litigation he has alleged that Senator McConnell accomplished the purpose of the conspiracy through NRSC. Plaintiff conceded that the First Amendment privilege encompasses campaign-related communications between NRSC and individuals associated with it for political purposes, including communications between NRSC and Senators McConnell and Gardner concerning the West Virginia primary.

Plaintiff has identified two isolated instances when the Senators made biased remarks against Plaintiff as indicative of them acting independently of NRSC, and not acting in their official organizational or government capacity. However, Plaintiff's interest in deposing Senator Gardner to prove a conspiracy involving NRSC is by virtue of his position as the Chairman of the NRSC. Further, Senator Gardner meeting at Senator McConnell's office regarding Plaintiff's candidacy underscores Senator Gardner's connection to the 2018 West Virginia Senate Republican primary as the NRSC Chairman. Plaintiff's allegation that Senator McConnell's leveraging a Fox News segment about Plaintiff to satisfy a personal vendetta is inconsistent with his allegations of a vast conspiracy to defame Plaintiff in order to defeat Plaintiff's candidacy. Plaintiff has improperly couched the same incident to defeat the <u>Morgan</u> doctrine as well as to avoid implication of NRSC's and the Senators' First Amendment privilege.

NRSC further states that the deposition of Senators McConnell and Gardner is for an improper purpose – Plaintiff aims to harass and to settle old scores, not to prove a legal claim. All Plaintiff offers as reasons to depose these Senators are that they were politically opposed to him, but offers no evidence of a defamation conspiracy.

### Relevant Law

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is . . . the foundation for any request for production, regardless of the individual to whom a request is made." <u>Cook v. Howard</u>, 484 Fed. App'x. 802, 812 (4th Cir. 2012). This Rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." <u>Lynn v. Monarch Recovery Management, Inc.</u>, 285 F.R.D. 350, 355 (D. Md. 2012) (quoting <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 269 F.R.D. 497, 523 (D. Md. 2010)). To

ensure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). "[I]t remains true that 'relevancy in discovery is broader than relevancy for purposes of admissibility at trial.' " In re: American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation, Nos. 2:14-cv-11870, 2:14-cv-28142, 2016 WL 4411506, at *2 (S.D. W.Va. Aug. 17, 2016) (Eifert, M.J.) (quoting Amick v. Ohio Power Co., No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D. W.Va. Dec. 18, 2013)).

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

Local Rule 26.4 provides that movants must demonstrate with specificity that the information qualifies for protection under Rule 26(c), and that good cause exists for restricting dissemination on the ground that harm would result from its disclosure. See also, Marfork Coal Co., Inc. v. Smith, 274 F.R.D. 193, 206 (S.D.W. Va. 2011); Johnson v. Ford Motor Co., No. 3:13-cv-6529, 2017 WL 1904259, at *2 (S.D.W. Va. May 9, 2019).

Pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, a court is required, on motion or on its own, to limit the frequency and extent of discovery, when:

(1) the discovery sought is unreasonably cumulative or duplicative;

(2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(3) the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action; or

(4) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

A "party must demonstrate exceptional circumstances justifying the deposition" of a high-ranking government official. Lederman v. New York City Dep't of Parks & Recreation, 731 F.3d 199, 203 (2d Cir. 2013) (citing United States v. Morgan, 313 U.S. 409, 422 (1941)); see also In re McCarthy, 636 F. App'x 142, 143 (4th Cir. 2015); Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 211 (4th Cir. 1991); Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007); In re United States (Holder), 197 F.3d 310, 313-14 (8th Cir. 1999); In re FDIC, 58 F.3d 1055, 1060 (5th Cir. 1995); In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993); Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985). "High-ranking government officials are generally shielded from depositions because they have 'greater duties and time constraints than other witnesses.' " Lederman, 731 F.3d at 203 (quoting Kessler, 985 F.2d at 512). "If courts did not limit these depositions, such officials would spend 'an inordinate amount of time tending to pending litigation' " to the impairment of their official responsibilities. Id. (quoting Bogan, 489 F.3d at 423). Accordingly, high-ranking government officials "are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge." Hankins v. City of Philadelphia, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996).

The doctrine applies to testimony sought from Members of Congress in connection with matters both related and unrelated to their official duties. See, e.g., Moriah v. Bank of China Ltd., 72 F. Supp. 3d 437 (S.D.N.Y. 2014); McNamee v. Massachusetts, 2012 WL 1665873, at *1 (D. Mass. May 10, 2012); Feldman v. Bd. Of Educ. Sch. Dist. #I City And Cnty. Of Denver, 2010 WL 383154, at *1 (D. Colo. Jan. 28, 2010); Springfield Terminal Ry. Co. v. United Transp. Union,

1989 WL 225031, at *2 (D.D.C. May 18, 2002). The doctrine applies to both current and former high-ranking government officials. See, e.g., Lederman, 731 F.3d at 204; Moriah, 72 F.Supp.3d at 440.

To establish that "exceptional circumstances" are present, a party seeking to depose a non-party high-ranking government official must satisfy three conditions: (1) the party must "make an actual showing that the [government official] 'possesses personal knowledge relevant to the litigation' "; (2) the deposition must be "essential to that party's case"; and (3) the evidence the deposition will elicit "is not available through any alternative source or less burdensome means." Brennan v. City of Philadelphia, 388 F. Supp. 3d 516, 520 (E.D. Pa. 2019) (quoting Robinson v. City of Philadelphia, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006)). The party seeking to depose a high-ranking government official bears the burden of proving that exceptional circumstances are present. Lederman, 731 F.3d at 203; Holder, 197 F.3d at 314.

Courts decline to force high-ranking government officials to testify even in the face of press reports that describe conduct relevant to the violations alleged in the case. See, e.g., Moriah, 72 F.Supp.3d at 440; United States v. Wal-Mart Stores, Inc., 2002 WL 562301, at *4 (D. Md. Mar. 29, 2002); Gibson v. Carmody, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991).

### Discussion

As an initial matter, neither party herein disputes that Senators McConnell and Gardner are high-ranking government officials, accordingly, the Morgan doctrine applies.[4] Additionally, though just briefly addressed by the parties in their respective pleadings (See ECF No. 653 at 5; ECF No. 667 at 4), the issue is nonetheless important, and the undersigned agrees with NRSC's

---

[4] Byrd v. District of Columbia, 259 F.R.D. 1, 6-7 (D.D.C. 2009) ("Although no standard has been established for determining if an official is high-ranking, courts have held that the Mayor of the District of Columbia, United States Senators, the General Counsel to United States House of Representatives, the Attorney General of the United States and certain high administrative heads are high-ranking officials for this purpose.") (internal citations omitted).

contention that it is permitted to raise the <u>Morgan</u> doctrine in the context of a motion for a protective order on behalf of Senators McConnell and Gardner given that other courts, including one in this Circuit, have allowed parties to raise the doctrine on behalf of a high-ranking government official. See, e.g., <u>Feldman v. Bd. Of Educ. Sch. Dist. #1 City & Cnty. Of Denver</u>, 2010 WL 383154, at *1 (D. Colo. Jan. 28, 2010) (allowing defendant to raise <u>Morgan</u> doctrine on behalf of U.S. Senator); <u>Lederman v. New York City Dep't of Parks and Recreation</u>, 901 F. Supp. 2d 464 (S.D.N.Y. 2012), *aff'd*, 731 F.3d 199 (2d Cir. 2013) (allowing defendant to raise <u>Morgan</u> doctrine on behalf of former deputy mayor); <u>United States v. Wal-Mart Stores, Inc.</u>, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002) (allowing plaintiff to raise <u>Morgan</u> doctrine on behalf of former Chair of the Consumer Product Safety Commission).[5]

It is noted that Plaintiff concedes that pursuant to the <u>Morgan</u> doctrine and its progeny, he must demonstrate "exceptional circumstances" to depose Senators McConnell and Gardner. The undersigned further notes that in his responsive pleading, Plaintiff frequently uses language that connotes speculation that Senators McConnell and Gardner have direct personal knowledge of matters related to Plaintiff's claim of a defamation conspiracy: "articles from prominent political publications, personal interposing statements from both Senator McConnell and Senator Gardner, as well as emails that inferentially implicate Senator McConnell and Senator Gardner" (ECF No. 653 at 3); "no mere coincidence that Defendant NRSC's current executive director, Kevin McLaughlin, defamed Plaintiff [] on a CNN program hosted by Bash less than a week later

---

[5] While NRSC asserted Plaintiff provided no authority for his argument that NRSC has limited standing to challenge the subpoenas to depose Senators McConnell and Gardner, Plaintiff referred to <u>U.S. v. Idema</u>, 118 Fed.Appx. 740, 744 (4th Cir. 2005) and <u>Firetrace USA, LLC v. Jesclard</u>, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008) (ECF No. 653 at 5, n.5). However, neither case provided sufficient support for Plaintiff's position, given that the first matter pertained to a criminal defendant seeking to quash subpoenas issued by the government to individuals and entities associated with the defendant to enforce a restitution order and the other involved a court decision denying a motion for a protective order, but not on the basis of standing, but on the movant's failure to articulate a protected interest cognizable under Rules 26(c) and 45(c) of the Federal Rules of Civil Procedure.

[following a text message exchange between Senator Gardner and Bash]" (Id. at 4); "conducting a potentially unlawful campaign meeting" (Id. at 5; "can be inferentially deemed as furthering the conspiracy" (Id.); "[Senator Gardner] implied that Plaintiff [] was a convicted felon by quipping, "I'm not sure if he can[] even vote. Do they let ankle bracelets get out of the house?" (Id. at 10). Nevertheless, from these and other similar allegations and circumstances, Plaintiff concludes that this is evidence that Senators McConnell and Gardner have direct, personal factual information about the defamation conspiracy, and that they alone can provide that information as it is unavailable from any other source. The facts as alleged herein simply do not support a finding that Plaintiff has carried his burden of demonstrating "exceptional circumstances" justify taking the depositions of two high-ranking government officials.

For starters, though understandable that Plaintiff takes issue or offense to Senators McConnell and Gardner being unsupportive of his candidacy for the 2018 West Virginia United States Senate Republican primary, this does not equate to an "actual showing" that either had personal knowledge of an alleged conspiracy to defame Plaintiff to satisfy the exceptional circumstances standard. Moreover, though the undersigned appreciates that a conspiracy can be inherently secretive and that not all participants in a conspiracy need be aware of the entire scope of the conspiracy, Plaintiff's reliance on two *Politico* articles, coupled with the sequence of events leading up to his failed senatorial bid does not "actually show" these two Senators had personal knowledge of any conspiracy to defame Plaintiff.

It is also significant that Plaintiff has scheduled the depositions of several others who would also have personal knowledge of the alleged conspiracy, individuals Plaintiff identifies in his pleadings as being demonstrative of the alleged conspiracy involving these two Senators, including Kevin McLaughlin, a CNN corporate representative, and Dana Bash (See, e.g. ECF Nos. 664, 677,

678).[6] NRSC has also represented that Plaintiff scheduled a Rule 30(b)(6) deposition of NRSC as well as the deposition of the author of the *Politico* articles. (ECF No. 667 at 10-11) In short, it is clear that "alternative source(s)" exist from which Plaintiff can obtain this information. As for Plaintiff's preference to take the depositions of Senators McConnell and Gardner, a less burdensome means is available to him by way of written discovery. Indeed, Plaintiff admits that Senator Gardner "recently produced ESI of a text message from Defendant CNN's chief political correspondent, Dana Bash" (ECF No. 653 at 4), which suggests that less burdensome means have already materialized and have even borne fruit for Plaintiff (See ECF No. 653-1). That in and of itself indicates that the depositions of these Senators are not "essential" to Plaintiff's case.[7]

In sum, based on the foregoing, the "exceptional circumstances" test has not been met here in order to justify the taking of depositions for Senators McConnell and Gardner.

With respect to the First Amendment implications, without belaboring the points made in the Court's previous ruling (See ECF No. 562), Plaintiff's aforementioned allegations as they pertain to Senators McConnell and Gardner, and with respect to NRSC, appear to endeavor to circumvent the Court's previous ruling that communications between the NRSC and those it associates with is protected. In light of Senator Gardner's position as Chairman of NRSC during the 2018 election cycle, and that Plaintiff has consistently alleged that Senator McConnell orchestrated the defamation conspiracy through NRSC, the undersigned is hard-pressed to find that the Senators were acting outside of their official capacities during the "legally dubious" meeting held at Senator McConnell's office in the U.S. Capitol Building where Senator Gardner "focused" on defeating Plaintiff's candidacy.[8] Regardless, having already determined that Plaintiff

---

[6] Additionally, Plaintiff filed a notice of subpoena with respect to Martha MacCallum (ECF No. 611).

[7] See, e.g., <u>Alexander v. FBI</u>, 186 F.R.D. 1, 5 (D.D.C.1998) (denying a request for discovery of a high ranking government official because "there are other avenues of discovery that plaintiffs may purse to establish their theory").

[8] Though Plaintiff alleges that something nefarious was at play given that the meeting was not held at NRSC

failed to meet the "exceptional circumstances" standard, the Court need not entertain what aspects of the Senators' alleged covert and/or public statements, jokes, meetings and/or tweets implicates NRSC's First Amendment privilege.

On the basis of the foregoing, the undersigned **FINDS** that ***National Republican Senatorial Committee's Motion for a Protective Order*** (ECF No. 625) to the extent that it seeks to prohibit the depositions of Senators McConnell and Gardner as well as to prohibit the production of what has already been determined to be privileged communications is **GRANTED**.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive Motion may be contested by filing within 14 days objections to this Order with District Judge John T. Copenhaver, Jr. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to distribute a copy of this Order to all counsel of record.

**ENTER: December 8, 2020.**



Omar J. Aboulhosn
United States Magistrate Judge

---

headquarters and no minutes, agenda or other documentation have been identified or produced to signal that this was an "official NRSC or governmental affair" (ECF No. 653 at 18-19), it would appear to the undersigned that the Senators' alleged misconduct, to the extent that they assembled and associated is actually protected under the provisions of the First Amendment as well. Additionally, the funding of a super PAC for the purpose of running negative political ads, making statements to mainstream news sources in opposition to Plaintiff's candidacy, making public jokes and taunting tweets on social media would likewise be considered protected speech.