UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP,

      Plaintiff,

v.                             Civil Action No. 2:19-cv-00236

FOX NEWS NETWORK, LLC et al.,

      Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is a motion to reconsider the court's March 31, 2020 memorandum opinion and order, which denied motions to dismiss from certain defendants, filed by defendants J. W. Williamson and Watauga Watch on May 6, 2020 (ECF No. 438).

## I.   Background

The plaintiff, Don Blankenship, initiated this action on March 14, 2019, in Mingo County Circuit Court, asserting claims of defamation and false light invasion of privacy against numerous media organizations and reporters.  See ECF No. 1.  The action was removed to this court based on diversity jurisdiction.  See id.; 28 U.S.C. § 1332.

The operative amended complaint alleges the following. After an explosion in a West Virginia mine resulted in the death

of twenty-nine miners, the United States government initiated an investigation into the cause of the explosion.  See ECF No. 14 ¶¶ 136-41.  While the plaintiff was not charged with the death of the miners, the government later charged him with three felonies as well as one misdemeanor for conspiracy to violate federal mine safety laws.  See id. ¶ 141.  On December 3, 2015, a jury found the plaintiff not guilty of the felony charges but guilty of the misdemeanor offense.  See id. ¶ 143.  The plaintiff was convicted and sentenced to one year in prison, and he was released in the spring of 2017.  See id. ¶¶ 144-45.

In January 2018, the plaintiff announced his campaign to run as a Republican for a United States Senate seat in West Virginia.  See id. ¶ 146.  The plaintiff lost his bid for the Republican party's nomination in the primary election on May 8, 2018.  See id. ¶ 190.  The plaintiff alleges that media coverage was responsible for his loss due to defamatory statements about the plaintiff that referred to him as a "felon" or a "convicted felon,"[1] despite the fact that he was cleared of the felony charges and was only convicted of the misdemeanor offense.  See id. ¶¶ 152-190.  The plaintiff further alleges that there was an organized effort to defeat his campaign, in part through the

---

[1] The exact reference varies among the defendants.

defamatory media coverage, see id. ¶¶ 150-90, which continued after the primary election, see id. ¶¶ 191-221.

The plaintiff alleges that these defamatory statements injured his reputation, prevented him from pursuing other businesses and opportunities, and caused him to lose in the primary election. See id. ¶¶ 24, 190. In addition, the plaintiff alleges that many of these statements were made in conjunction with reference to the mine disaster and therefore had the additional effect of falsely attributing to him responsibility for murder. See id. ¶¶ 23, 228, 242. The plaintiff asserts four causes of action: (1) defamation, (2) conspiracy to defame (3) false light invasion of privacy, and (4) conspiracy to commit false light invasion of privacy. See id. ¶¶ 222-50.

A number of defendants filed motions to dismiss the amended complaint, asserting among other things, that this court lacks personal jurisdiction over them. See ECF No. 195; ECF No. 197; ECF No. 211; ECF No. 220; ECF No. 236; ECF No. 238; ECF No. 253; ECF No. 292; ECF No. 351; ECF No. 391; ECF No. 392; ECF No. 393. In its March 31, 2020 memorandum opinion and order, the court granted many of the motions to dismiss based on lack of personal jurisdiction, see ECF No. 398 at 35-36, 39, 43, 47-48, 52-53, 57-65, 69-70 76-79, explaining that the plaintiff had not

made a sufficient "show[ing] that the 'general thrust and content' of the [allegedly defamatory] statements [at issue] was focused on West Virginia[] or that the statements were published with the manifest intent of targeting a West Virginia audience," id. at 43; see id. at 35, 39, 47, 52–53, 57–61, 64–65, 69–70.

Defendant Williamson filed pro se motions to dismiss, arguing, among other things, that the complaint should be dismissed as to him for lack of personal jurisdiction.[2] See ECF No. 42; ECF No. 391; ECF No. 392; ECF No. 393. The court denied the motions. See ECF No. 398 at 72–73, 79. With respect to the personal-jurisdiction issue, the court concluded that, although it lacked general personal jurisdiction over Williamson, the plaintiff had "establishe[d] a prima facie case for [specific] personal jurisdiction over Williamson." Id. at 72–73. The court explained that the complaint's allegations, as well as Williamson's pro se assertions, "demonstrate[d] that the 'general thrust and content' of the [statements at issue] was

---

[2] Although Watauga Watch is a separately named defendant, Williamson, in an affidavit, states that Watauga Watch, sometimes referred to as "WataugaWatch" or "Watauga Watch Blog," is merely a political blog website he owns, that he its sole contributor, and that it is not incorporated and does not otherwise constitute a legal entity. See ECF No. 391-1 at 1–2. Although it was unclear from Williamson's pro se filings whether he sought dismissal on behalf of Watauga Watch, the current motion has been filed by counsel expressly on behalf of both Williamson and Watauga Watch. See ECF No. 438.

more likely than not aimed toward West Virginia," as "Williamson admits that the content of his blog focuses on Appalachian regional politics," a region necessarily including West Virginia," and that the articles about the plaintiff were 'in the context of issues in national politics, directed at a regional audience.'"  <u>Id.</u> at 73 (quoting ECF No. 392 at 1, 8).

Having obtained counsel, Williamson, along with defendant Watauga Watch, filed a motion for reconsideration of the court's March 31, 2020 order with respect to the personal-jurisdiction issue.  <u>See</u> ECF No. 438.  The motion is now supported by evidence that was not presented by Williamson and Watauga Watch while acting <u>pro se</u>.  The motion has been fully briefed.

## II.  Legal Standard

Pursuant to Fed. R. Civ. P. 54(b), an interlocutory order "that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b).  An order denying a motion to dismiss is such an interlocutory order.  A district court retains the power to reconsider and modify its interlocutory orders at any time prior to final judgment when such is warranted.  <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326

F.3d 505, 514—15 (4th Cir. 2003); see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

The Fourth Circuit has applied two analyses to determine the applicable standard of a review for a motion to reconsider: (1) comparison to the standards of Rule 59(e) and 60(b) of the Federal Rules of Civil Procedure for amending a final judgment; and (2) comparison to the law-of-the-case doctrine. Under the first analysis, amending a judgment, or reconsidering a judgment, is proper on three grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); see, e.g., Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh, PA, 999 F. Supp. 2d 906, 919 (S.D.W. Va. 2014) (applying the these grounds to review a motion to

reconsider); <u>In re C.R. Bard, Inc.</u>, 948 F. Supp. 2d 589, 649 (S.D.W. Va. 2013) (same).

"Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." <u>Pac. Ins. Co.</u>, 148 F.3d at 403. "[I]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." <u>In re C.R. Bard, Inc.</u>, 948 F. Supp. 2d at 649. If a party relies on newly discovered evidence in its Rule 59(e) motion, the party "must produce a 'legitimate justification for not presenting' the evidence during the earlier proceeding." <u>Pac. Ins. Co.</u>, 148 F.3d at 403 (quoting <u>Small v. Hunt</u>, 98 F.3d 789, 798 (4th Cir. 1996)). In general, reconsideration of a judgment is an "extraordinary remedy [that] should be used sparingly." <u>Id.</u> (quoting 11 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2810.1 (2d ed. 1995)).

Under the second analysis, federal courts cabin revision of interlocutory orders pursuant to Rule 54(b) by treating such rulings as law of the case. <u>Carlson v. Bos. Sci. Corp.</u>, 856 F.3d 320, 325 (4th Cir. 2017). The law-of-the-case doctrine provides that, in the interest of finality, "when a

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).  A court may revise an interlocutory order under the law-of-the-case doctrine under three circumstances: (1) "a subsequent trial produc[ing] substantially different evidence"; (2) a change in applicable law; or (3) clear error causing "manifest injustice." Am. Canoe Ass'n, 326 F.3d at 515 (quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)); see, e.g., U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018) (applying these circumstances to review a motion to reconsider); Hinkle v. Matthews, 337 F. Supp. 3d 674, 677 (S.D.W. Va. 2018) (same).

     The law-of-the-case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," but it does not limit the court's power. Messenger v. Anderson, 225 U.S. 436, 444 (1912). "Law of the case . . . does not and cannot limit the power of a court to reconsider an earlier ruling.  The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515.

III. Discussion

    Williamson and Watauga Watch move the court to
reconsider the decision to deny their motion to dismiss pursuant
to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.
They assert, based on the newly presented evidence below, that
the focus of the blog is not limited to the Appalachian region
but includes the entire United States of America.  See ECF No.
439 at 4.  Between 2003 and May 1, 2020, Williamson reports that
he posted 7,669 articles on Watauga Watch, only 19 of which (or
less than 0.25%) mention West Virginia.  See id.  Williamson
also argues that the three blog posts in question contain
information about or from locations other than West Virginia or
were posted in a national context.  See id. at 3-4.  In
particular, Williamson alleges that the April 15, 2018 blog post
discussed political issues in Mississippi and West Virginia; the
May 7, 2018 blog post discussed political issues in West
Virginia, Indiana, and Ohio; and the July 24, 2018 blog post
contained a quote from the Washington Examiner and discussed the
plaintiff in West Virginia.  See id. at 3.

    Williamson and Watauga Watch provide "overall current
statistics" about the blog to demonstrate that it is not
generally read in West Virginia, and that Williamson "did not
direct Watauga Watch, in general or through the specific blog

9

articles in question, into West Virginia." See ECF No. 439 at
2-3.  Of the 481 identified Facebook followers of Watauga Watch,
none are from West Virginia but 469 are from North Carolina.
See ECF No. 438-2; ECF No. 439 at 2.  Of the 485 identified
people who viewed Watauga Watch posts on Facebook at least once,
none are from West Virginia but 469 are from North Carolina.
See ECF No. 438-3; ECF No. 439 at 2.  Of the number of people
who had content from or about Watauga Watch "enter their
screen," none are from West Virginia.  See ECF No. 438-4; ECF
No. 439 at 3.  Only one Facebook user from West Virginia talked
about Watauga Watch.  See ECF No. 438-5; ECF No. 439 at 3.
Williamson and Watauga Watch also aver that Blogger, the blog
publishing service used for Watauga Watch, reports that the blog
has 201 followers, 106 of whom could be identified and none of
whom are in West Virginia.  See ECF No. 439 at 3.

     Williamson and Watauga Watch admit that the
statistical information they now provide as evidence of the
court's lack of personal jurisdiction was not discovered through
litigation.  See id. at 5.  They instead assert that they were
unaware that such evidence could be considered in a motion to
dismiss.  See id.  They also argue that reconsideration of their
motion to dismiss for lack of personal jurisdiction would
comport with due process under the Fourteenth Amendment to the

United States Constitution and with the goal of reaching a correct decision under the law.  See id. at 4.

The plaintiff argues that Williamson and Watauga Watch fail to meet their burden under any of the stated grounds for reconsideration.  See ECF No. 447 at 7.  In particular, the plaintiff argues that the defendants' "additional evidence" was available before the motion to dismiss was filed and so does not constitute "substantially different" or "newly discovered" evidence.  See id. at 7-9.  The plaintiff contends that "[t]here is no justified or legitimate reason why the additional material now presented was not presented earlier."  See id. at 9.  The plaintiff also argues that Williamson has failed to show that the court's decision to deny his motion to dismiss was "clearly erroneous causing manifest injustice."  See id. at 10.  The plaintiff also asserts that "the general thrust and content" of the posts were aimed toward West Virginia, regardless that the posts contained information about locations other than West Virginia.  See id. at 12.

## A.   Newly Presented Evidence

The Fourth Circuit has consistently rejected a party's attempt to supplement the record in support of a motion for reconsideration.  See, e.g., Cray Commc'ns, Inc. v. Novatel

Computer Sys., Inc., 33 F.3d 390, 395-96 (4th Cir. 1994)
(affirming the district court's denial of a motion to supplement
the record and to reconsider an award of summary judgment where
the movant provided "no legitimate justification for failing to
present the . . . affidavit and exhibits during the summary
judgment proceedings"); RGI, Inc. v. Unified Indus., Inc., 963
F.2d 658, 662 (4th Cir. 1992) (affirming the district court's
denial of a motion to reconsider an award of summary judgment,
in part, because the mere fact that the party "misunderstood"
its burden of production was not a legitimate justification for
reconsideration); Kontoulas v. A.H. Robins Co., 745 F.2d 312,
316 (4th Cir. 1984) ("[T]he evidence presented with the motion
for reconsideration should have been introduced in the motion to
dismiss, and we are not inclined to consider it now.").  The
court in Kontoulas also noted that the movants "did not even
attempt to set forth reasons why any of their arguments could
not have been made on their original motion."  745 F.2d at 315.
However, "a district court, in its discretion, could accept new
evidentiary material that was attached to a party's
reconsideration motion if the party could justify its failure to
submit the material prior to the entry of summary judgment."
Cray Commc'ns, Inc., 33 F.3d at 395.  The same principle applies
to evidentiary material not submitted prior to a motion to
dismiss for personal jurisdiction because such a motion, like a

motion for summary judgment, may be dispositive to dismiss parties in a case.

Williamson's previous <u>pro se</u> filings must be "liberally construed," and "must be held to less stringent standards than formal pleadings drafted by lawyers." <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)). Williamson could not be expected to know what evidence may have been considered as part of a motion to dismiss for lack of personal jurisdiction, and he has set forth reasons why his evidence was not presented in his original motions. <u>See In re Yankah</u>, 514 B.R. 159, 165 (E.D. Va. 2014) (explaining that "a <u>pro se</u> litigant's inexperience with procedural or evidentiary rules" may warrant reconsideration in some circumstances); <u>cf.</u> <u>Kontoulas</u>, 745 F.2d at 315 (denying a motion to reconsider where the movant "did not even attempt" to explain why arguments were not presented in the original motion). The statistical evidence presented in the instant motion is also very informative to determine whether the "general thrust and content" of Watauga Watch focuses on West Virginia and whether Williamson targeted West Virginia vis-à-vis his blog. The court therefore finds that Williamson's new evidence may be considered in deciding his motion for reconsideration.

B.   <u>Personal Jurisdiction</u>

Rule 12(b)(2) permits a defendant to challenge a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  When a district court considers a Rule 12(b)(2) motion based on the contents of the complaint and supporting affidavits without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing a <u>prima facie</u> case of jurisdiction.  <u>Hawkins v. i-TV Digitalis Tavkozlesi zrt.</u>, 935 F.3d 211, 226 (4th Cir. 2019); <u>Universal Leather, LLC v. Koro AR, S.A.</u>, 773 F.3d 553, 558 (4th Cir. 2014).  The standard or review is by a preponderance of the evidence.  <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60 (4th Cir. 1993).  The court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction.  <u>Universal Leather</u>, 773 F.3d at 560; <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989) ("[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.").  The court must then determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction.  <u>Sneha Media & Entm't, LLC v.</u>

Associated Broad. Co. P Ltd., 911 F.3d 192, 196-97 (4th Cir. 2018).

For a district court to assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute, and (2) the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). Where the state's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996). The West Virginia long-arm statute, W. Va. Code § 56-3-33, is "coextensive with the full reach of due process," so the statutory inquiry merges with the constitutional inquiry, and the court's analysis centers on whether exercising personal jurisdiction over a defendant is consistent with the Due Process Clause. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997); see Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 525 (4th Cir. 1987).

A court's exercise of jurisdiction over a non-resident defendant comports with the due process requirement if the defendant has "certain minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); see also Carefirst of Md., 334 F.3d at 397. In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

A court may exercise personal jurisdiction over a non-resident defendant of the forum state by finding either (a) general jurisdiction, or (b) "specific jurisdiction based on conduct connected to the suit." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). General personal jurisdiction requires "continuous and systemic" contacts with the forum state, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984), and "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," Walden v. Fiore, 571 U.S. 277, 284 n.6 (2014). The "paradigm forum" for general personal jurisdiction over a natural person is the

person's domicile, which is the state in which that person lives "with intent to make it a fixed and permanent home." <u>See</u> <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014); <u>Comm'r of</u> <u>Internal Revenue v. Swent</u>, 155 F.2d 513, 515 (4th Cir. 1946).[3] The court already determined that it lacks general jurisdiction over Williamson because he is not domiciled in West Virginia. Neither party disputes this.

Specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." <u>Goodyear</u> <u>Dunlop Tire Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). Specific personal jurisdiction requires that the defendant have "purposefully established minimum contacts in the forum State" such "that [the defendant] should reasonably anticipate being haled into court there." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." <u>Walden</u>, 571 U.S. at 284. The question "is not where the plaintiff experienced a

---

[3] A natural person's domicile differs from their residence in that a residence simply requires bodily presence as an inhabitant in a given place. <u>Swent</u>, 155 F.2d at 515. A natural person may have multiple residences but only has one domicile. <u>Id.</u>; <u>see also</u> <u>Miss. Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 48 (1989) (noting that a person "can reside in one place but be domiciled in another").

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 290.

The Fourth Circuit considers three factors in determining specific personal jurisdiction: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Carefirst of Md., 334 F.3d at 397 (internal quotation marks omitted).  The plaintiff must prevail on each prong.  See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278-79 (4th Cir. 2009).

The Fourth Circuit has consistently dismissed suits against a non-resident defendant who published information on the Internet for an audience outside the forum state.  See, e.g., ALS Scan, 293 F.3d at 709 (finding no personal jurisdiction over a Georgia-based Internet Service Provider sued for enabling a website owner to publish photographs on the Internet in violation of a Maryland corporation's copyrights); Young v. New Haven Advocate, 315 F.3d 256, 258-59 (4th Cir. 2002) (finding no personal jurisdiction over Connecticut defendants who posted news articles on the Internet that, in the context of discussing a Connecticut policy of housing prisoners

in Virginia institutions, allegedly defamed the warden of a
Virginia prison).  In ALS Scan, the Fourth Circuit concluded
that:

> [A] State may, consistent with due process, exercise
> judicial power over a person outside of the State when
> that person (1) directs electronic activity into the
> State, (2) with the manifested intent of engaging in
> business or other interactions within the State, and
> (3) that activity creates, in a person within the
> State, a potential cause of action cognizable in the
> State's courts.

293 F.3d at 714.  "[A] person who simply places information on
the Internet does not subject himself to jurisdiction in each
State into which the electronic signal is transmitted and
received."  Id.  The "general thrust and content" of a
newspaper's website must manifest an intent of targeting readers
of the forum state.  See Young, 315 F.3d at 263-64.

In light of the evidence presented in Williamson's and
Watauga Watch's motion for reconsideration, the court finds that
the plaintiff has not established specific personal jurisdiction
by a preponderance of the evidence.  Although Williamson
admitted that the content of his blog focuses on Appalachian
regional politics and that the articles about the plaintiff were
"in the context of issues in national politics, directed at a
regional audience," see ECF No. 392 at 1, 8, the statistical
evidence demonstrates that the "regional audience" is
overwhelmingly a North Carolina audience.  The court previously

determined that the "general thrust and content" of Williamson's articles were "more likely than not aimed toward West Virginia," see ECF No. 398 at 73, but the new evidence shows that the reverse is actually true.  West Virginia readers constitute a minuscule percentage of the readers of Watauga Watch.

Neither evidence concerning the overall readership of Watauga Watch nor the specific articles in question demonstrate that Williamson manifested an intent to avail himself of the privilege of conducting business in West Virginia or that he purposefully established minimum contacts in West Virginia.  The court therefore lacks specific personal jurisdiction over Williamson and Watauga Watch.

IV.  Conclusion

For the foregoing reasons, it is ORDERED that the motion for reconsideration filed by J. W. Williamson and Watauga Watch (ECF No. 438) be, and it hereby is, granted, and J. W. Williamson and Watauga Watch are hereby dismissed from the case.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: December 29, 2020

John T. Copenhaver, Jr.
Senior United States District Judge