**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

DON BLANKENSHIP,

        *Plaintiff*,

v.                                            Case No. 2:19-cv-00236

ANDREW NAPOLITANO, *et al.*,

        *Defendants*.

**DEFENDANTS' MOTION FOR A DISCOVERY CONFERENCE**
**& FOR RELIEF UNDER FED. R. CIV. P. 37(b)(2)(A)**

      Defendants American Broadcasting Companies, Inc. ("ABC"), Cable News Network,

Inc. ("CNN"), Fox News Network LLC ("Fox News"), MSNBC Cable, Inc. ("MSNBC"), and

WP Company LLC ("WaPo") (collectively, "Defendants"), respectfully move this Court for:  (i)

a conference concerning Plaintiff's continued failure to comply with this Court's December 23,

2020 discovery Order (the "Order") and (ii) entry of an order, as described below, pursuant to

Federal Rule of Civil Procedure 37(b)(2)(A).

**FACTUAL BACKGROUND**

      1.      On December 23, 2020, this Court granted Motions to Compel filed by

Defendants.  Order, Dkt. No. 704.[1]  The Court's Order expressed "grave concerns that Plaintiff's

Counsel misrepresented the facts regarding Plaintiff's disclosure of ESI sought by the various

Defendants."  *Id.* at 2 n.2.  The Court granted Defendants' Motions to Compel and further

ordered:

        a.  Plaintiff shall complete production responsive to **all**
            outstanding requests, including **all** ESI, as it relates to
            Plaintiff's email accounts, no later than **January 15, 2021**;

        b.  Plaintiff shall complete production responsive to Defendants'

---

[1] The factual history recounted in those Motions is incorporated here by reference.  Dkt. Nos. 693, 698, 701, 702.

ESI requests as they pertain to the other custodians named by Plaintiff no later than **February 1, 2021**; and

c. These productions shall be **100%** in compliance with Defendants' outstanding discovery requests for production.

*Id.* at 3 (emphases in original).

2. At the conference on Defendants' motions, the Court stated it was "dumbfounded" by the delay in Plaintiff's productions. Exh. A, Dec. 22, 2020 Hr. Tr. at 4:18–21. The Court found that Plaintiff's prior promises to complete productions in early November had been "either flat-out misrepresentations or they are such illogical mistakes that it begs credulity at this point." *Id.* The Court explained that, by the January 15th and February 1st deadlines it set, Plaintiff's productions should be "so completely done that the defendants in good faith can't make any objections." *Id.* at 22:16–22. The Court warned that it was "considering sanctions . . . which aren't going to be insignificant," *id.* at 13:5–7, and set a briefing schedule for Defendants to submit fee applications "[a]ssuming Plaintiff's responses to Defendants' outstanding requests for production are proper and complete," Order, Dkt. No. 704, at 3.[2]

3. Plaintiff's counsel said he heard the Court "loud and clear." Exh. A (Hr. Tr.) at 11:6–8. He represented that an ESI vendor *already* had made "considerable progress" collecting and processing ESI from Plaintiff's own email accounts. *Id.* at 10:19–23. And, as to the "other custodians" at issue (*i.e.*, campaign employees and contractors), Plaintiff's counsel—after earlier being reminded that counsel is an officer of the Court, *id.* at 4:19—represented that he had *already* "*reached out* . . . to the other people involved in the campaign . . . and *they have*

---

[2] Defendants understand the Court's February 15, 2021 fees motion deadline is adjourned, because Plaintiff's responses to Defendants' requests for production clearly are not "proper and complete."

indicated to us they <u>will</u> make their e-mails available to our vendor* and would be included in our production," *id.* at 10:24–11:5 (emphases added).  Yet, two weeks later, Plaintiff told Judge Copenhaver a quite different story in his Rule 72(a) objections:  that "Plaintiff Blankenship *cannot in good faith ask* the[se] designated non-party custodians to surrender fundamental privacy rights by consenting to a search and seizure of information from their personal computing devices."  Dkt. No. 713, at 10.

      4.     Between the December 23 Order and the January 15 deadline, Plaintiff neither produced a single document nor reported to the Court or to Defendants any impediments.  As Plaintiff later explained, in a declaration by his counsel submitted to the Court as a status report six days after the January 15 deadline, the ESI vendor that Plaintiff previously had assured the Court had been selected from among "a variety of vendors . . . in discussion[]," Exh. A (Hr. Tr.) at 7:16–22, and which Plaintiff represented had already made "considerable progress" by December 23, *id.* at 10:21, in fact "was, to say the least, lacking in both professionalism and utility," Gidding Decl., Dkt. No. 722, ¶ 5.  Plaintiff's vendor was "totally incapable" and used a "process" that would be of "no forensic value whatsoever."  *Id.* ¶ 6.  Moreover, Plaintiff's chosen ESI vendor "did not communicate . . . about what its engineers were doing," then spent weeks refusing to provide progress reports and "went on vacation at some point on or about December 23 . . . until January 5." *Id.* ¶ 5.  On January 8, Plaintiff terminated his original vendor and, "within hours, had engaged another vendor to acquire the ESI."  *Id.* ¶ 6.

      5.     Between January 16 and January 18, Plaintiff made three partial productions from one of his email accounts.  Defendants spent more than a week trying to diagnose and catalog

numerous substantive issues with his production[3] and engaged in several meet-and-confers, ultimately leading to Plaintiff promising he would "re-produce" these productions.  Exh. C, Email from Z. Gidding to Defendants (Jan. 26, 2021).  Plaintiff did not do so until 11:46 p.m. on Friday, February 5, when Plaintiff made another production of documents.  Exh. D, Email from Z. Gidding to Defendants (Feb. 5, 2021).  Defendants are currently assessing the status of that production.

6.      While Plaintiff has now reproduced these portions of his production, 24 days after the January 15 deadline, Plaintiff still has not completed production of his ESI.  Nor has Plaintiff produced *any* ESI from the other custodians whose ESI he previously agreed to search.

7.      Plaintiff's latest communication promises to "send [Defendants] a letter . . . laying out . . . what we plan to do, with respect to the ESI productions."  *Id.*  But the Court's December 23 Order did not direct the parties to negotiate new deadlines or invite Plaintiff to try to renegotiate "what [Plaintiff might] plan to do."  The Court directed Plaintiff to comply with the discovery requests in full, by January 15 and February 1.

8.      Plaintiff's ongoing flouting of the Court's discovery Order substantively impairs and prejudices Defendants' abilities to defend this case.

9.      Meanwhile, Plaintiff has continued to notice and pursue depositions of Defendants' witnesses, several of which are scheduled for the coming weeks.

---

[3] These were not mere "technical" or "format" issues; they were prejudicial and rendered the materials unusable as a practical matter.  By way of two examples, several thousand documents were replaced with blank slip sheets stating "Native Document Only," but native files were not provided.  Exh. B, Ltr. from CNN/WaPo to Z. Gidding (Jan. 22, 2021) at 2.  And Plaintiff Bates-numbered the productions incorrectly, duplicating hundreds of numbers, obstructing Defendants' ability to review and tag such documents (without later needing to begin again) for use at depositions and trial.  *Id.*

## ARGUMENT

10.     Federal Rule of Civil Procedure 37(b)(2)(A) states that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may issue further just orders" as "[s]anctions," which "may include the following:

> (i) directing that . . . designated facts be taken as established . . . ;
> (ii) prohibiting . . . designated claims . . . or . . . evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey [the] order . . . .

Fed. R. Civ. P.  37(b)(2)(A)(i)–(vii).  The Rule reflects a simple, equitable principle:  if one wishes to proceed with claims in court, one must comply with the court's discovery orders.

11.     Because Plaintiff has failed even to come close to satisfying the December 23 Order, despite the Court's clear admonitions and Plaintiff's representations he would do so, Defendants respectfully request the Court enter an Order as set forth below.  History demonstrates there can be no expectation that Plaintiff will comply with the Court's December 23 Order, absent the relief requested, if ever.

12.     For the sake of efficiency, Defendants summarize Plaintiff's derelictions as follows:

a.     **First**, Plaintiff has failed to meet the deadlines set by the Court.  The Court Order required Plaintiff to complete production of his own ESI by January 15 and production from other custodians by February 1.  Document collection and production is nowhere close to being completed.  On top of this, Plaintiff has provided no transparency into the discovery process or status.

b.     **Second**, Plaintiff has produced emails from only a single account, out of

5

many identified in the prior motion briefing and encompassed by the Order.  He has <u>not</u>

produced from other email accounts known to be his (*e.g.*, info@DonBlankenship.com;

info@donblankenship2020.com; info@votedonblankenship.com; or his email(s) at the domain

for McCoy Coal Group).  Plaintiff has not properly produced text or Twitter messages, although

he has attached to Court filings select excerpts of text messages when he believes doing so suits

his interests.[4]  Nor has he collected and produced from other email accounts within his campaign

(*e.g.*, pat.donb@gmail.com; paula.donb@gmail.com; gregthomaswv@gmail.com).

      c.     **<u>Third</u>**, what Plaintiff has produced from even this single email account

does not comply with this Court's December 23rd Order and remains significantly incomplete.

      i.    Plaintiff has inexplicably withheld documents.  Plaintiff represented to this

Court that his new discovery vendor[5] collected 179,000 emails from Plaintiff.  Gidding Decl.,

Dkt. No. 722, ¶ 7.  Plaintiff ignored Defendants' earlier requests for transparency in this

process, and disregarded Defendants' warnings that application of search terms was

---

[4] Plaintiff appears to have produced a handful of text messages and tweets through some primitive means, perhaps placing his phone on a photocopier to capture self-selected texts.  This is not just a "format" issue, as he has failed properly to produce responsive texts.

[5] Plaintiff's claims as to ESI vendors exemplify his penchant for inconsistent and implausible assertions.  In his Rule 72(a) Objections to Judge Copenhaver, Plaintiff's counsel claims they "did not foresee a need to retain a forensic ESI vendor" because "[t]he claims and defenses in this lawsuit do not involve circumstances in which the authenticity of the emails is at issue."  Dkt. No. 713 at 7.  That makes no sense.  "Authenticity" of emails is a basic evidentiary issue and always a potential issue in litigation.  Moreover, the facts of this case cover several years and center on a U.S. Senate campaign that had significant personnel and communications operations.  If the need was not intuitively obvious, a rudimentary inquiry by counsel would have shown that, as we now know, Plaintiff alone had nearly 200,000 emails in just one of his several email accounts.  Gidding Decl., Dkt. No. 722, ¶ 7.  Surely, given how Plaintiff's counsel has described Plaintiff's lack of technology savvy and support staff, counsel did not expect Plaintiff would collect, process and transfer his ESI to counsel's document review platform, *see* Dkt. No. 703 at 2.  Nor could Plaintiff's counsel have done so; they merely have a license to a "document review platform," Gidding Decl., Dkt. No. 722, ¶¶ 2, 3, not the tools to themselves "acquire and process Plaintiff's raw ESI data, . . . provided to . . . the [document review] platform," *id.* ¶ 4.  In sum, Plaintiff's counsel's claim to have "not foresee[n] a need to retain an ESI vendor" is as implausible as would be a claim that counsel did not foresee Plaintiff would need to preserve documents from spoliation or did not foresee Plaintiff would be deposed.

inappropriate (or at least premature) in some respects. *See, e.g.*, Exh. E, Ltr. from ABC to Z. Gidding (Dec. 28, 2020) at 1–2; Exh. B (CNN/WaPo Ltr.) at 2–3; Exh. F, Email from MSNBC to Z. Gidding (Jan. 17, 2021); Exh. G, Ltr. from Fox News to Z. Gidding at 1–2 (Dec. 28, 2020). Instead, Plaintiff applied search terms to one email account, which yielded 90,000 responsive documents. Gidding Decl., Dkt. No. 722, ¶ 7. Then, without any consultation with Defendants, Plaintiff unilaterally decided to exclude from review and production nearly two-thirds of search-term-responsive documents on the ground that they were communications with what Plaintiff's counsel describes as "the most common senders of irrelevant communications," which included "holiday greetings . . . and . . . requests for job recommendations." *Id.* ¶ 7 (reflecting that Plaintiff's counsel reviewed only 37,000 of the 90,000 documents that had search-term hits). In short, Plaintiff decided *all* communications with these unidentified senders should simply be "excluded . . . from review." *Id.* Defendants have been given no other meaningful information about these "senders," let alone an opportunity to request sampling if warranted; Plaintiff instead merely rationalized *ex post facto*.

      ii.   Plaintiff has "retained for further review" more than 730 responsive documents. On January 26, Plaintiff represented to Defendants that production from one of Plaintiff's Gmail accounts was "substantially complete." Exh. C. Yet, the following day, buried in a footnote in his Rule 72(a) filing to Judge Copenhaver, Plaintiff wrote that "***a number of emails were retained for further review***." Reply Br., Dkt. No. 724, at 6 n.2 (emphasis added). When Defendant's counsel pressed about this specific holdback, Plaintiff's counsel admitted that these "retained documents" are distinct from those excluded unilaterally by sender, *supra ¶* 12.c, are not being withheld on the ground of privilege, and include more than 730 additional documents (comprising an unknown number of pages).

7

d.     **Fourth**, Plaintiff has failed to produce *any* ESI from his campaign's former contractors, vendors and employees, which he represented to the Court he would collect and produce.  At the December 23rd conference, Plaintiff's counsel assured Your Honor that these custodians *already had agreed* to provide ESI, Exh. A at 10:24–11:5.  Plaintiff now claims he "*cannot in good faith ask*" them "to surrender fundamental privacy rights" through a "search and seizure."  Pl. 72(a), Dkt. No. 713, at 10.  He has replaced a "loud and clear" assurance to this Court with a non-sequitur argument that Plaintiff cannot collect ESI from these custodians because:

> [i]t is safe to presume that [these persons], like most people, use the same passwords for home security, bank accounts . . . and other matters. Emails are routinely used to communicate . . . confidential information. Computer hacking, data breaches, and identity theft are becoming increasingly common. Once this information is provided to a forensic ESI vendor, any person or entity affiliated with the company or successor thereof will have access to the designated third-party custodians' past, present, and future confidential information.

*Id.* at 10–11.  And he accompanies this argument with vague assertions that these custodians should "download these documents into a cloud storage system" or "[a]lternatively, Plaintiff Blankenship's counsel can process [their] responsive ESI and produce the same . . . in a standardized format."  *Id.* at 11.

13.     Although it is certainly true that a party may object to discovery orders via Rule 72(a), that right to object does not grant a litigant license to misrepresent to this Court what the party has done and/or agrees to do.  Plaintiff simply cannot square what he told the Court on December 23 about obtaining and producing ESI from these custodians (that they already had agreed) with what he is now saying (that he cannot in good faith ask).

        *          *          *

This case arises from Plaintiff's U.S. Senate campaign.  Tellingly, during that campaign, when Plaintiff was asked about his refusal to disclose certain information "required by law," Plaintiff explained "[t]here isn't 'much of a penalty' for flouting the law."  Exh. H, *Don Blankenship Is a West Virginia Senate Candidate. He Lives in Nevada*, N.Y. TIMES, Apr. 25, 2018, https://www.nytimes.com/2018/04/25/us/politics/don-blankenship-china-west-virginia.html.  He added, "I don't personally think anybody should have to disclose private information" and it's "no one's business."  *Id.*

Compliance with court orders is expressly a court's "business."  The judicial system is governed by the Rule of Law.  And Federal Rule 37(b)(2)(A) provides a fair and necessary bulwark to ensure compliance with rules governing discovery.  It permits a court to enter further Orders that assess appropriate sanctions and/or impose restrictions on a transgressing party with respect to the order and management of discovery proceedings.  Defendants respectfully request the Court do so here to protect their rights.

## CONCLUSION

Defendants respectfully request that the Court (i) schedule a status conference as soon as practicable; (ii) extend *sine die* the deadline for Defendants' to seek attorneys' fees under the December 23 Order; and (iii) with respect to Plaintiff's continued noncompliance, enter an Order providing for just and proper actions to remedy the prejudices incurred by Defendants as a result Plaintiff's noncompliance with the December 23 Order.

With respect to item (iii), Defendants respectfully submit that the Court may consider the following remedial, discovery management actions (or other relief the Court deems proper):

1. With respect to Plaintiff's own ESI (*see* ¶¶ 12.a–c, *supra*), fashioning appropriate sanctions and relief, such as:

   a. As to Plaintiff's failure to complete production of his ESI by January 15 as required by the Court's Order, *see supra* ¶¶ 12.a–b, the Court may:  (i) find that the imposition of a monetary sanction is warranted (for example, $1,000 or more per day for each day between January 15, 2021 and the day Plaintiff fully completes production of his ESI); AND/OR (ii) pursuant to Rule 37(b)(2)(A)(iv) and 28 U.S.C. § 636(e)(6)(B), certify the foregoing facts to the District Court and order that Plaintiff appear on a day certain to show cause why he should not be held in contempt (and subject to a recommended daily fine).[6]

   b. As to the 53,000 search-term-positive documents Plaintiff's counsel has unilaterally declined to review, *see supra* ¶ 12.c.i, the Court may order that Plaintiff provide Defendants with a comprehensive alphabetized list of names and email addresses for all senders, recipients, cc's and bcc's on such documents, as well as the volume of emails from each sender and any other information Defendants may reasonably request to obtain reasonable transparency into whether these materials include information responsive to Defendants' respective requests;

   c. As to the 730+ documents Plaintiff "retained for further review," *see supra* ¶ 12.c.ii, the Court may order Plaintiff to immediately provide a status report as to those documents and complete production within 5 days;

   d. The Court may conditionally order that, if Plaintiff fails to achieve 100% complete production of responsive ESI from all his sources within 14 days hereof, the Court will, as a means to ensure proper collection and production of materials, appoint a competent, neutral third-party vendor at Plaintiff's expense to:  (a) collect and process Plaintiff's ESI from all remaining sources; (b) certify completion of such, including an appropriate summary of the processes; and (c) report to the Court on the quantity of responsive documents and an estimated date for completion of production, so the Court may consider the propriety of further remedies under Rule 37(b)(2)(A), (C); and

---

[6] Courts have held that magistrate judges have authority to impose prospective monetary sanctions for violation of a discovery order.  *See, e.g.*, *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) ("We hold that magistrates may impose prospective sanctions pursuant to Rule 37 where such sanctions are necessary to enforce compliance with a valid discovery order.").  To the extent that authority may be less clear in the Fourth Circuit, *see Reddick v. White*, 456 F. App'x 191, 192 (4th Cir. 2011) (addressing "inherent" authority), the best course—if the Court believes a monetary sanction other than attorneys' fees is warranted—may be to find imposition of such a monetary sanction to be warranted and also contemporaneously to certify the facts to the District Court for Judge Copenhaver "to hear the evidence" and determine "if it is such as to warrant [the] punishment" of civil contempt.  28 U.S.C. § 636(e)(6)(B).

     e.   In the interim, as a means to ensure Plaintiff completes the foregoing, the Court may order, pursuant to Rule 37(b)(2)(A)(iv) and the Court's authority to manage discovery, that Plaintiff complete production of his own ESI before initiating further discovery.

2.   With respect to Plaintiff's failure to produce materials from former contractors, vendors and employees of Plaintiff's Campaign identified in Defendants' Motions, *see supra* ¶¶ 12.a, 12.d, fashion appropriate sanctions and relief, such as:

     a.   The Court may order that Plaintiff inform the Court whether it was an accurate statement when Plaintiff's counsel represented that these persons "indicated to [Plaintiff's counsel] they will make their emails available to [Plaintiff's] vendor and . . . be included in [Plaintiff's] production"; and

         i.   If this was an accurate statement, the Court may order Plaintiff to identify with specificity the parties and circumstances of each such communication, whether Plaintiff will complete such production, and the date by which Plaintiff will do so; and (i) find that the imposition of a monetary sanction is warranted (for example, $1,000 or more per day for each day between February 1, 2021 and the day Plaintiff fully completes production of his ESI); AND/OR (ii) pursuant to Rule 37(b)(2)(A)(iv) and 28 U.S.C. § 636(e)(6)(B), certify the foregoing facts to the District Court and order that Plaintiff appear on a day certain to show cause why he should not be held in contempt (and subject to a recommended daily fine);

         ii.   If this was not an accurate statement, the Court may impose such sanctions as it deems appropriate for Plaintiff's prior misrepresentation to this Court.

Dated:  February 8, 2021             Respectfully submitted,

**DEFENDANT AMERICAN**
**BROADCASTING COMPANIES, INC.**

By Counsel:

*/s/ Sean P. McGinley*
Sean P. McGinley WV # 5836
DiPIERO SIMMONS McGINLEY &
BASTRESS, PLLC
604 Virginia Street, East
Charleston, WV 25301
Tel.: (304) 342-0133
Email: Sean.McGinley@dbdlawfirm.com

**DEFENDANTS CABLE NEWS**
**NETWORK, INC, and WP COMPANY**
**LLC, d/b/a THE WASHINGTON POST**

By Counsel:

*/s/ Brian A. Glasser*
Brian A. Glasser WV # 6597
BAILEY GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Tel.: (304) 345-6555

Kelli L. Sager (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel.: (213) 633-6800
Email: kellisager@dwt.com

Eric J. Feder (*pro hac vice*)
Chelsea T. Kelly (*pro hac vice*)
Caesar D. Kalinowski (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Tel.: (202) 973-4248
Email: ericfeder@dwt.com
Email: chelseakelly@dwt.com
Email: caesarkalinowski@dwt.com

**DEFENDANT FOX NEWS NETWORK
LLC**

By Counsel:

*/s/ J. Zak Ritchie*
J. Zak Ritchie WV #11705
Ryan McCune Donovan WV #11660
HISSAM FORMAN DONOVAN RITCHIE
PLLC
P.O. Box 3983
Charleston, WV 25339
Tel.: 681-265-3802
Email: zritchie@hfdrlaw.com
Email: rdonovan@hfdrlaw.com

Elbert Lin WV #12171
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
Tel.: 804-788-8200
Email: elin@Hunton.com
Email: dparker@HuntonAK.com

Email: bglasser@baileyglasser.com

Kevin T. Baine DC # 238600
Stephen J. Fuzesi DC # 496723
Gloria Maier DC # 1012208
Matthew D. Heins DC #241063
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Email: kbaine@wc.com
Email: sfuzesi@wc.com
Email: gmaier@wc.com
Email: mheins@wc.com

**DEFENDANT MSNBC CABLE, LLC**

By Counsel:

*/s/ Jared M. Tully*
Jared M. Tully WV # 9444
Elise N. McQuain WV # 12253
Alex J. Zurbuch WV # 12838
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
Tel.: 304-345-0111
Email: jtully@fbtlaw.com
Email: emcquain@fbtlaw.com
Email: azurbuch@fbtlaw.com

 Kevin T. Shook (*pro hac vice*)
Ryan W. Goellner (*pro hac vice*)
FROST BROWN TODD LLC
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Tel.: (513) 651-6783
Email: kshook@fbtlaw.com
Email: rgoellner@fbtlaw.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Tel.: 212-309-1000
Email: sregan@HuntonAK.com
Email: sostrower@HuntonAK.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 8th day of February 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing to all CM/ECF participants and will cause to send to other parties by U.S. Mail as follows:

Jim Heath
2716 Saratoga Avenue
Lake Havasu City, AZ 86406


/s/Matthew D. Heins
Matthew D. Heins