**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

---

DON BLANKENSHIP,

                    Plaintiff,

      v.

FOX NEWS NETWORK, LLC, *et al.*,

                    Defendants.

CIVIL ACTION NO. 2:19-cv-00236

(Hon. John T. Copenhaver, Jr.,
District Judge)

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**CABLE NEWS NETWORK, INC.'S MOTION FOR SUMMARY JUDGMENT**

BAILEY GLASSER LLP

    Brian A. Glasser
    209 Capitol Street
    Charleston, WV 25301
    Telephone: (304) 345-6555
    Facsimile: (304) 342-1110
    bglasser@baileyglasser.com

WILLIAMS & CONNOLLY LLP

    Kevin T. Baine
    Stephen J. Fuzesi
    Gloria Maier
    Matthew D. Heins

    725 Twelfth Street, N.W.
    Washington, DC 20005
    Telephone: (202) 434-5000
    Facsimile: (202) 434-5029
    kbaine@wc.com
    sfuzesi@wc.com
    gmaier@wc.com
    mheins@wc.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTS ....................................................................................................................................3

    A.    Blankenship's Conviction .................................................................................3

    B.    Blankenship's Long-Standing Negative Reputation.........................................4

    C.    Blankenship's Candidacy for United States Senate.........................................5

    D.    This Lawsuit......................................................................................................6

        1.    CNN Newsroom.....................................................................................7

        2.    CNN Tonight .........................................................................................8

        3.    S.E. Cupp Unfiltered.............................................................................9

        4.    Blankenship's Alleged Damages ........................................................10

LEGAL STANDARDS .........................................................................................................11

ARGUMENT ........................................................................................................................12

I.      SUMMARY JUDGMENT SHOULD BE GRANTED ON BLANKENSHIP'S
      CLAIM FOR DEFAMATION. .................................................................................12

    A.    There Is No Clear and Convincing Evidence of Actual Malice. ............................12

    B.    There Is No Evidence that CNN Intended to Injure Blankenship, as
        Required  by West Virginia Defamation Law Specific to Political
        Candidates. ...........................................................................................................18

    C.    There Is No Clear and Convincing Evidence of Material Falsity.........................20

    D.    Blankenship Cannot Establish Resulting Injury. ..................................................23

II.     SUMMARY JUDGMENT SHOULD BE GRANTED ON BLANKENSHIP'S
      FALSE LIGHT CLAIM. ..........................................................................................27

CONCLUSION.....................................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AdvanFort Co. v. Mar. Exec., LLC*,
　　2015 WL 4603090 (E.D. Va. July 28, 2015) .......................................................... 14

*Air Wis. Airlines Corp. v. Hoeper*,
　　571 U.S. 237 (2014) ................................................................................................. 21

*Anderson v. Liberty Lobby, Inc.*,
　　477 U.S. 242 (1986) ............................................................................................. 3, 11

*Anderson v. Stanco Sports Library, Inc.*,
　　542 F.2d 638 (4th Cir. 1976) .................................................................................. 12

*Aycock v. Padgett*,
　　516 S.E.2d 907 (N.C. Ct. App. 1999) ..................................................................... 24

*Backus v. City of Parkersburg*,
　　980 F. Supp. 2d 741 (S.D.W. Va. 2013) ................................................................. 19

*Ballengee v. CBS Broad., Inc.*,
　　968 F.3d 344 (4th Cir. 2020) ............................................................................ 20, 28

*Baumback v. ABC*,
　　161 F.3d 1 (Table), 1998 WL 536358 (4th Cir. Aug. 13, 1998) (per curiam).................. 12, 18

*Bose Corp. v. Consumers Union of U.S., Inc.*,
　　466 U.S. 485 (1984) ............................................................................................. 13, 16

*Brewer v. Dungan*,
　　1993 WL 441306 (N.C. Super. Ct. June 30, 1993) ................................................. 21

*Buckley v. Valeo*,
　　424 U.S. 1 (1976) (per curiam) ................................................................................. 2

*CACI Premier Tech., Inc. v. Rhodes*,
　　536 F.3d 280 (4th Cir. 2008) ......................................................................... passim

*Cantrell v. Forest City Publ'g Co.*,
　　419 U.S. 245 (1974) ................................................................................................. 14

*Carr v. Forbes, Inc.*,
　　259 F.3d 273 (4th Cir. 2001) ....................................................................... 2, 11, 16

*Chafin v. Gibson*,
　　578 S.E.2d 361 (W. Va. 2003) (per curiam) .......................................................... 19

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ......................................................................... 12, 23

*Church of Scientology Int'l v. Daniels*,
  992 F.2d 1329 (4th Cir. 1993) ......................................................................... 16, 18

*Colorado v. New Mexico*,
  467 U.S. 310 (1984).............................................................................................. 11

*Contech Stormwater Sols. v. Baysaver Techs.*,
  534 F. Supp. 2d 616 (D. Md. 2008) , *aff'd*, 310 F. App'x 404 (Fed. Cir. 2009) ..................... 24

*Cook v. Cook*,
  607 S.E.2d 459 (W. Va. 2004)............................................................................. 24

*Crump v. Beckley Newspapers, Inc.*,
  320 S.E.2d 70 (W. Va. 1983)...................................................................... 12, 23, 28

*Dobkin v. Johns Hopkins Univ.*,
  172 F.3d 43 (Table), 1999 WL 22901 (4th Cir. 1999) (per curiam) ........................................ 28

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)................................................................................................ 13

*Giles v. Kanawha Cty. Bd. of Educ.*,
  2018 WL 300605 (W. Va. Jan. 5, 2018)................................................................. 19

*Griffo v. Oculus VR, Inc.*,
  2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) ...................................................... 25

*Harte-Hanks Commc'ns v. Connaughton*,
  491 U.S. 657 (1989)..................................................................................... 2, 13, 18

*Hatfill v. N.Y. Times Co.*,
  532 F.3d 312 (4th Cir. 2008) ...................................................................... 11, 13, 15

*Hinerman v. Daily Gazette Co.*,
  423 S.E.2d 560 (W. Va. 1992)............................................................................. 19

*Hugger v. Rutherford Inst.*,
  94 F. App'x 162 (4th Cir. 2004) (per curiam) ...................................................... 24

*Hupp v. Sasser*,
  490 S.E. 2d 880 (W. Va. 1997) (per curiam)....................................................... 23

*Hustler Magazine Inc. v. Falwell*,
  485 U.S. 46 (1988).............................................................................................. 28

*Hutchinson v. Miller*,
   797 F.2d 1279 (4th Cir. 1986) ............................................................. 24

*In re Callaghan*,
   796 S.E.2d 604 (W. Va. 2017) ............................................................. 20

*Jennings v. Telegram-Tribune Co.*,
   210 Cal. Rptr. 485 (Ct. App. 1985) ..................................................... 21

*Lawrence v. Altice USA*,
   841 F. App'x 273 (2d Cir. 2021) (summary order) ............................... 21

*Long v. Egnor*,
   346 S.E.2d 778 (W. Va. 1986) ............................................................. 19

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ......................................................... 3, 20, 22, 23

*Mauck v. City of Martinsburg*,
   280 S.E.2d 216 (W. Va. 1981) ....................................................... 26, 27

*Meade v. Parsley*,
   2010 WL 4909435 (S.D.W. Va. Nov. 24, 2010) ................................... 25

*Milan v. Long*,
   88 S.E. 618 (W. Va. 1916) ............................................................ 26, 27

*Mimms v. CVS Pharmacy, Inc.*,
   889 F.3d 865 (7th Cir. 2018) ............................................................... 14

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ......................................................... 2, 14, 16, 17

*Nanji v. Nat'l Geographic Soc'y*,
   403 F. Supp. 2d 425 (D. Md. 2005) ..................................................... 21

*Peer v. Lewis*,
   2008 WL 2047978 (S.D. Fla. May 13, 2008) ........................................ 24

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ............................................................... 17

*Preston v. City Council*,
   2021 WL 1177586 (E.D. Va. Mar. 26, 2021) ........................................ 12

*Pritt v. Republican Nat'l Comm.*,
   557 S.E.2d 853 (W. Va. 2001) ................................................... 3, 11, 20

*Reuber v. Food Chem. News, Inc.*,
    925 F.2d 703 (4th Cir. 1991) ............................................... 18

*Richard H. v. Rachel B.*,
    2019 WL 6998331 (W. Va. Dec. 20, 2019) ....................................... 26, 27

*Rouch v. Enquirer & News of Battle Creek Mich.*,
    487 N.W.2d 205 (Mich. 1992) ............................................... 20

*Ryan v. Brooks*,
    634 F.2d 726 (4th Cir. 1980) ............................................... 13, 16

*Secord v. Cockburn*,
    747 F. Supp. 779 (D.D.C. 1990) ............................................... 14

*Snyder v. Phelps*,
    580 F.3d 206 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011) ....................................... 28

*Sprouse v. Clay Commc'n, Inc.*,
    211 S.E.2d 674 (W. Va. 1975) ............................................... 3, 12, 19

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ............................................... 13, 17

*State ex rel. Suriano v. Gaughan*,
    480 S.E.2d 548 (W. Va. 1996) ............................................... 22

*Sw. Publ'g Co. v. Horsey*,
    230 F.2d 319 (9th Cir. 1956) ............................................... 24

*Tah v. Glob. Witness Publ'g, Inc.*,
    991 F.3d 231 (D.C. Cir. 2021) ............................................... 2

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) (en banc) ............................................... 11

*Tiwari v. NBC Universal, Inc.*,
    2011 WL 5079505 (N.D. Cal. Oct. 25, 2011),
    *order clarified*, 2011 WL 5903859 (N.D. Cal. Nov. 23, 2011) ............................................... 21

*Tolley v. ACF Indus., Inc.*,
    575 S.E.2d 158 (W. Va. 2002) ............................................... 25

*United States v. Blankenship*,
    846 F.3d 663 (4th Cir.), *cert. denied*, 138 S. Ct. 315 (2017) ............................................... 4

*Workman v. Kroger Ltd. P'ship I*,
    2007 WL 2984698 (S.D.W. Va. Oct. 11, 2007) ............................................... 26

## RULES

Fed. R. Civ. P. 56(a) ................................................................................................ 11

## TREATISES

Restatement (Second) of Torts § 622A (1977) ........................................................... 26

Robert D. Sack, *Sack on Defamation* § 5:5.1 (5th ed. 2017) ....................................... 13

Wayne R. LaFave et al., 1 Criminal Procedure § 1.8(c) (4th ed. 2018) ...................... 22

## OTHER AUTHORITIES

Transcript of Oral Argument at 39,
    *Lange v. California*, No. 20-18 (U.S. argued Feb. 24, 2021) .................................. 21

## INTRODUCTION

Plaintiff Don Blankenship brought this lawsuit against nearly 100 news organizations and journalists, including Cable News Network, Inc. ("CNN"), claiming defamation over references to him as a "felon" because the crime for which he was convicted and served a year in federal prison was technically classified as a misdemeanor.  After more than a year of discovery, it is clear that there is no evidence supporting the overblown allegations in his Complaint with respect to CNN.  There was no campaign of "weaponized defamation."  There was no "search and destroy mission."  There was nothing more than momentary, one-word references to Blankenship's conviction for a serious crime in the midst of political discussions on live television.  Summary judgment should be granted and the case dismissed.

There is no dispute that after an explosion in a Massey Energy mine killed 29 miners, Blankenship was tried, was convicted, and served a year in federal prison for conspiracy to willfully violate federal mine safety laws and regulations.  Judge Berger, who sentenced Blankenship to the maximum allowed under law, described his crime as "dangerous" and "very serious."  Ex. 1 (Blankenship Sentencing Tr.) at 68, 71.  Blankenship himself has remarked that he was sent to a "felony prison."  Ex. 2 (Blankenship Dep. Tr., Apr. 29, 2021) at 348–52, 355, 363–64.

As it relates to CNN, this lawsuit concerns passing references to Blankenship as a "felon" during four live telecasts, when he was still on probation and running in the 2018 Republican primary for U.S. Senator from West Virginia.  In one, on the *CNN Newsroom* program, an unpaid guest referred to Blankenship once as a "felon" in the midst of discussing the primary.  The only statement regarding his conviction by a CNN employee, the host and chief political correspondent Dana Bash, was pointing out that Blankenship "reminds us it was just a misdemeanor."  In another live segment, on *CNN Tonight*, contributor Joe Lockhart commented on a tweet by President

1

Trump discouraging West Virginians from voting for Blankenship, and referred in passing to Blankenship as a "convicted felon."  And, on two episodes of *Unfiltered*, host S.E. Cupp discussed Blankenship's candidacy with her guests, also referring to him as a "felon" once on each program. But there is no evidence that either Lockhart or Cupp knowingly stated any falsehood or possessed any doubts as to the truth of what they said on the air.

It is, of course, axiomatic that "debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.  The First Amendment affords the broadest protection to such political expression." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam).  Indeed, the Supreme Court has long noted the "breathing space" that is required under the First Amendment for both a free press and political debate to flourish. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 272 (1964).

That is why Blankenship must prove by clear and convincing evidence that the passing one-word references to him as a felon were uttered with "actual malice"—in other words, with knowledge of falsity or a "high degree of awareness of probable falsity." *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989).  That is a "famously daunting" standard, *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021), which few public figures can ever meet—and Blankenship certainly cannot meet here.  Courts in the Fourth Circuit and around the nation routinely grant summary judgment for failure to present sufficient evidence of actual malice. *See, e.g.*, *Carr v. Forbes, Inc.*, 259 F.3d 273, 282 (4th Cir. 2001) (affirming summary judgment, noting that "[e]stablishing actual malice is no easy task"); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (same).  Summary judgment is clearly warranted here for that reason.

Summary judgment is also warranted for additional reasons.  There is no evidence that CNN "intended to injure the plaintiff"—an element of defamation under West Virginia law where the plaintiff is a "candidate for political office" or public official.  *Sprouse v. Clay Commc'n, Inc.*, Syl. Pt. 1, 211 S.E.2d 674, 679 (W. Va. 1975).

There is also no evidence, only speculation, that the damages Blankenship alleges were actually caused by the passing references to him as a "felon."

Finally, although this Court addressed the issue of material falsity at the motion to dismiss stage, it should revisit this element now under the "clear and convincing evidence" standard that applies at the summary judgment stage.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853, 861–62 (W. Va. 2001).  There is simply no clear and convincing evidence that referring to Blankenship as a "felon," rather than a convicted criminal who spent a year in federal prison for what the sentencing judge found to be a "very serious" and "dangerous" crime, materially changed "the substance, the gist, the sting" of the statement.  *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).

## FACTS

### A.    Blankenship's Conviction

On April 5, 2010, an explosion at Massey's Upper Big Branch Mine in Raleigh County killed twenty-nine miners.  Am. Compl. ("AC"), ECF No. 14, ¶ 8.  Blankenship acknowledges that, from that day, he became the "face" of what was the worst mining disaster in 40 years.  Ex. 2 at 249–50, 255; Ex. 3 (Blankenship Dep. Tr., Nov. 18, 2020) at 237.  The coverage was "overwhelming in volume and in emotional intensity."  Ex. 2 at 251.  It was "brutally prejudicial," with deceased miners' families calling him a "murderer" and "the devil."  Ex. 4 (Blankenship Renewed Mot. to Transfer Venue) at 6, 11, 12, 23.  In the wake of the tragedy, a federal grand jury indicted Blankenship on multiple charges.  AC ¶ 141; *United States v. Blankenship*, 846 F.3d 663,

3

667 (4th Cir.), *cert. denied*, 138 S. Ct. 315 (2017).  Following a six-week trial, a jury convicted Blankenship of conspiring to willfully violate federal mine safety laws and regulations. *Blankenship*, 846 F.3d at 667.

On April 6, 2016, the District Court sentenced Blankenship to one-year imprisonment and assessed a $250,000 fine, both of which were the maximum permitted by law.  *Id.*; *see also* Ex. 2 at 331.  The Court emphasized during sentencing that, despite the classification of his offense as a misdemeanor, Blankenship's "dangerous" crime was "very serious."  Ex. 1 at 68, 71.  In conspiring with others at Massey to willfully violate mine safety and health laws, the Court observed, Blankenship "abused the trust of the Massey Energy shareholders, [his] fellow officers and directors and, most importantly, the trust of the employees who looked to [him] for leadership and for a safe workplace."  *Id.* at 66.  The Court found that Blankenship put "profitability of the company ahead of the safety of [his] employees" and, in doing so, "created a culture of noncompliance at Upper Big Branch where [his] subordinates accepted and, in fact, encouraged unsafe working conditions in order to reach profitability and production targets."  *Id.* at 67.  In fact, miners had to "hide their efforts at safety."  *Id.*

Blankenship served his year of imprisonment at the Taft Correctional Institution in California—referred to by Blankenship as a "felony prison."  Ex. 2 at 348–52, 355, 363–64.  Indeed, out of its 2,400 inmates, Blankenship was the only one convicted of a misdemeanor.  *Id.* at 348–49; AC ¶ 144.  The Fourth Circuit affirmed his conviction.  *Blankenship*, 846 F.3d at 666.

**B.     Blankenship's Long-Standing Negative Reputation**

Blankenship's notoriety long preceded his conviction—let alone the statements at issue in this lawsuit.  He has been called the "most hated man in West Virginia" and has referred to himself as "the most hated man in Mingo County."  Ex. 2 at 451–53.  By his admission, he was "vilified" for decades, "branded with multiple derogatory names," and "subjected to continued ridicule."  Ex.

2 at 228–29, 236–37.  He clashed with everyone from union members to elected officials.  *See, e.g.*, *id.* at 198, 215.  Indeed, as of December 2017, his own assessment was that there was "very little" publicly available about him that was either "positive or factual."  *Id.* at 395–96.  A reputation management firm that he hired at that time found that the "single online location" with positive information about Blankenship was his own website.  *Id.* at 386–88.  Likewise, his own internet searches yielded only "negative" information.  *Id.* at 379, 401–02.

## C.      Blankenship's Candidacy for United States Senate

Nonetheless, mere months after emerging from prison—while still on probation—Blankenship announced plans to run in the 2018 Republican primary for the West Virginia Senate seat held by Democrat Joe Manchin.  AC ¶ 13; Ex. 2 at 439.  Blankenship's candidacy was a "long-shot" from the outset, and he told supporters that he did "not think I can win."  AC ¶ 146; Ex. 6 (Nov. 19, 2017 email); *see* Ex. 2 at 419, 422.

The primary pitted Blankenship against two well-known opponents, Congressman Evan Jenkins and West Virginia Attorney General Patrick Morrisey.  Ex. 2 at 458.  The campaign garnered significant attention—not only from the media, but also from other politicians.  Blankenship ran a divisive campaign that included dubbing then-Senate Majority Leader Mitch McConnell "Cocaine Mitch" and using phrases such as "China Family" and "China person" to refer to Senator McConnell's wife's family—references that Blankenship admits were widely criticized as racist.  Ex. 7 (Blankenship Dep. Tr., Apr. 30, 2021) at 43–47.  Prominent national Republicans spoke out against Blankenship, endorsing his opponents and telling voters that nominating Blankenship could derail the GOP's chances of defeating Senator Manchin.  Ex. 2 at 467–69.  A political action committee associated with Senator McConnell, the Mountain Families PAC, spent more than $1.3 million airing negative attack ads opposing Blankenship.  *Id.* at 472.

5

Families of miners who perished in the Upper Big Branch tragedy spoke out against him. *Id.* at 447–48. Blankenship's opponents also repeatedly attacked him. *Id.* at 477.

By April 25, less than two weeks before the May 8 primary vote, Blankenship had told his campaign manager that "[t]he chances of our winning are next to nil." Ex. 8 (Apr. 25, 2018 email). Then, in the final days leading up to the election, both President Trump (whom Blankenship likens to a "King" politically in West Virginia, with a "very powerful voice") and his son, Donald Trump, Jr. (who Blankenship concedes had "considerable influence with the West Virginia voters likely to cast ballots in the May 8th Primary"), publicly urged West Virginia Republicans to vote against Blankenship. Ex. 7 at 64; Ex. 9 (May 17, 2018 email). President Trump tweeted that Blankenship "can't win the General Election in your State…No way!" Ex. 10 (May 7, 2018 tweet). On the night of the primary, Blankenship conceded that he lost "badly" (placing third by 15 points) and told supporters if there was "any single factor" that caused his loss, it was President Trump's tweet. Ex. 7 at 67–68. In the month that followed, he repeatedly attributed his loss to President Trump, asserting that "Trump did us in." Ex. 11 (May 9, 2018 email).[1]

**D.     This Lawsuit**

In this lawsuit, Blankenship asserts claims of defamation (Count 1) and false light invasion of privacy (Count 2) against CNN—all arising out of four fleeting references to him as a "felon":

---

[1] *See also* Ex. 7 at 68–78; Ex. 12 (May 8, 2018 email: "No idea how it will turn out given Trump tweet."); Ex. 13 (May 8, 2018 email: "I had em pre Trump tweet. Not sure now."); Ex. 14 (May 9, 2018 email: "I had them beat pre Trump tweet. Terrible. I had been told from the beginning that he would not interfere."); Ex. 15 (May 9, 2018 email: "Had em beat pre Trump tweet."); Ex. 16 (May 10, 2018 email: "We had em beat before trump tweeted."); Ex. 17 (May 13, 2018 email: "[Trump] sure stabbed me in the back after his staff promised they would not."); Ex. 18 (May 23, 2018 email: "We would have won had [Trump] stayed out of the Primary.").

1.    *CNN Newsroom*

Forty minutes into the *CNN Newsroom* program on April 29, 2018, guest host and chief political correspondent Dana Bash introduced a segment about the Republican primary in West Virginia and, in particular, debate over whether Blankenship should be the nominee.  At the outset of the segment, Bash made clear that Blankenship "reminds us" that his conviction "*was just a misdemeanor.*"  Ex. 19 (Apr. 29, 2018 *CNN Newsroom* Tr.) at 2 (emphasis added).[2]  Then, after playing a clip of an interview with Blankenship in which he opined that Republican leaders did not want him to win because he is an "extreme Trump supporter," Bash opened up a live discussion with two guests:  Alex Isenstadt, a Politico reporter, and Kevin McLaughlin, a GOP political strategist.  *Id.* at 3.  In the course of the discussion, the following exchange took place:

> McLaughlin:  Well, I mean pick your poison with this guy, right?  I mean he doesn't live in West Virginia, he's a convicted felon.  You know, he says–
> Bash:  Because he's – he's got a house in Nevada –
> McLaughlin:  Exactly.
> Bash:  And his girlfriend lives there.
> McLaughlin:  You know, but I think the biggest concern, what I would have the biggest concern, if I was sitting at the NRSC or involved in elections right now, is the fact that he's the number one choice for Democrats.

*Id.* at 5.

The single reference to "felon" in the midst of this unpaid guest's commentary is the only statement at issue from this telecast.  *See* AC ¶ 160; Ex. 20 (Bash Decl.) ¶ 6; Ex. 21 (McLaughlin Dep. Tr.) at 157.  The program was live, and McLaughlin's statements were not coordinated in advance with CNN or its personnel in any way—it was an "unscripted discussion."  Ex. 21 at 158–

---

[2] Exhibits 19, 23, 27, and 28 are transcripts of the segments of the telecasts at issue.  Exhibits 38, 39, 40, and 41 are DVDs of the full telecasts.

59; Ex. 20 ¶ 6.  When McLaughlin used the word "felon" to describe Blankenship, he believed his statement was true.  Ex. 21 at 159–60.[3]

Bash recalls that, during this live exchange, she had been "focused on Mr. McLaughlin's first part of his sentence regarding whether Mr. Blankenship lived in West Virginia"—and she had "clarif[ied] that remark on the fly for viewers in the midst of Mr. McLaughlin's live response to my question."  Ex. 20 ¶ 9.  She "do[es] not recall digesting that he had used the word 'felon,' let alone that it may [have been] something also worth clarifying."  *Id.*  Blankenship never contacted CNN to request a correction.  Ex. 22 (Pl.'s Resps. to CNN RFAs) at Resp. No. 4; Ex. 20 ¶ 13.

## 2. *CNN Tonight*

About 40 minutes into the *CNN Tonight* program on May 7, 2018, at 11:38 PM, anchor Don Lemon introduced a segment about the West Virginia Republican primary, noting the White House opposed Blankenship's candidacy.  Ex. 23 (May 7, 2018 *CNN Tonight* Tr.) at 2.  Lemon then introduced three commentators, including Joe Lockhart, a former White House Press Secretary and CNN political contributor, to share their opinions in a live discussion.  *Id.*  In the midst of that discussion, Lockhart commented on President Trump's tweet urging Republicans to vote against Blankenship:

> Let me go with an even bolder idea.  Blankenship wins and Mitch McConnell says, it's better for the country for Joe Manchin to be in, whoever he caucuses with.  What's striking here is in Trump's tweet this morning, he didn't say anything about Roy Moore and his personal problems.  He didn't say don't vote for Blankenship because he went to jail, he's a convicted felon, he's a racist, and he's crazy.  He said, vote for the other guys because we don't want to lose the seat.  You know, I get that from political players and consultants who are in the race, but from the President of the United

---

[3] He explained that his "understanding was, given what had happened in the sentence, that it was obviously a very serious crime," and that prior to his appearance he had "Googled it" and "was led to believe he was a convicted felon."  Ex. 21 at 79, 92.

> States, do we—do we have any—is there any mystery to why things
> are so screwed up?

*Id.* at 6–7.  Again, the single reference to "felon" in the middle of this live commentary by a CNN contributor is the only statement at issue from this program.  *See* AC ¶ 179.

Lockhart is an independent contractor, and his statements were not scripted or coordinated with CNN personnel.  Ex. 24 (Lockhart Decl.) ¶¶ 2, 5; Ex. 25 (Lockhart Dep. Tr.) at 68.  He had no doubts as to the truth of referring to Blankenship as a "felon" at the time.  Ex. 25 at 67–68.  He used the word "felon" to describe Blankenship because he understood Blankenship had been convicted of a serious crime and sent to federal prison for a year, and thus "believed that he was a felon" as Lockhart understood that word.  Ex. 24 ¶ 6.  Lockhart is not a lawyer, and believed he was using the word accurately based on what he knew about Blankenship.  *Id.*  Blankenship never contacted CNN to request a correction.  Ex. 22 at Resp. No. 7; Ex. 24 ¶ 8.

### 3.   *S.E. Cupp Unfiltered*

On May 2, 2018, political commentator S.E. Cupp hosted a round-table discussion as part of *S.E. Cupp Unfiltered* ("*Unfiltered*") on HLN.  Ex. 26 (Cupp Decl.) ¶¶ 4–5.  Cupp and her panelists discussed primaries in multiple states and candidates' allegiances to President Trump. *Id.* ¶ 5.  In discussing the West Virginia primary, she mentioned that Blankenship "served a year in prison" and a clip was played of Blankenship speaking at a May 1 Republican debate where Blankenship alleged corruption at the Justice Department in connection with his conviction.  Ex. 27 (May 2, 2018 *Unfiltered* Tr.) at 11–12.  Providing her opinion, Cupp then paraphrased Blankenship's remarks—"You want to talk about the Justice Department, I know something about the Justice Department"—and responded, "that's because you're a convict, you're a felon.  Oh my God."  *Id.* at 12.

The May 8, 2018 episode of *Unfiltered*[4] similarly covered national political news.  During the show, Cupp and political analyst David Drucker discussed primaries in four states, including West Virginia.  Drucker noted that Blankenship was "found guilty of conspiracy to avoid mine safety standards in . . . federal court" after a coal mining accident in which 29 miners were killed. Ex. 28 (May 8, 2018 *Unfiltered* Tr.) at 4.  Following the Drucker segment and a commercial break, the show included an approximately six-minute segment on Blankenship's candidacy.  As part of the discussion, Cupp commented, "[i]n case you missed it, a former coal baron and convicted felon is running for senate in West Virginia."  *Id.* at 8.

The single word "felon" in the midst of these two telecasts is the only statement at issue. *See* AC ¶¶ 171, 174.  Cupp, who is a CNN independent contractor, had no doubts as to the truth of referring to Blankenship as a "felon" at the time.  Ex. 26 ¶¶ 2, 6–7, 11, 14; Ex. 29 (Cupp Dep. Tr.) at 109–12, 114–15.  She knew that he had been convicted of a serious federal crime and had been sent to federal prison for a year.  Ex. 26 ¶¶ 6–7.  Cupp is not a lawyer, and was using the word consistent with her colloquial understanding.  *Id.*  To her, there was "no doubt" that "an individual like Mr. Blankenship who was convicted of a federal crime and sent to prison for a year was a 'felon.'"  *Id.* ¶ 7.  Blankenship never contacted CNN to request a correction.  Ex. 22 at Resp. Nos. 5–6; Ex. 26 ¶ 13.

### 4.    Blankenship's Alleged Damages

In addition to general "presumed" damages, Blankenship alleges that the references to him as a "felon" were "a material cause of his loss in the Primary."  AC ¶ 190.  He seeks "damages arising out of the effect of" the statements "on the election."  Ex. 30 (Pl.'s Supp. Resps. to CNN

---

[4] The Complaint states that Cupp referred to Blankenship as a convicted felon in a May 7 episode of *Unfiltered*.  AC ¶ 174.  However, the quote that the Complaint refers to is from May 8.

1st Interrogs.) at Resp. No. 6 (p.9).  Blankenship also seeks upwards of $900 million for alleged lost earnings from purported lost business opportunities—which he speculates would have materialized but for the isolated references to him as a "felon"—and other purported expenses.  *Id.* at Resp. No. 6 (pp. 9–11); Ex. 31 (Rpt. of S. Smith).

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Liberty Lobby*, 477 U.S. at 247–48.  In particular, "[w]hen determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times*."  *Id.* at 254.  Accordingly, the question is "whether the plaintiff has proffered sufficient evidence to prove actual malice by clear and convincing evidence."  *CACI Premier Tech.*, 536 F.3d at 293.  A plaintiff also must also demonstrate material falsity by clear and convincing evidence.  *Pritt*, 557 S.E.2d at 862.

The "clear and convincing" standard is "significantly more onerous than the usual preponderance of the evidence standard."  *Tavoulareas v. Piro*, 817 F.2d 762, 776 (D.C. Cir. 1987) (en banc).  The evidence offered by Blankenship would have to "instantly tilt[] the evidentiary scales in the affirmative when weighed against the evidence [CNN] offered in opposition."  *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).  In light of this "onerous" standard, *Tavoulareas*, 817 F.2d at 776, courts in this Circuit and around the country routinely grant summary judgment in libel cases involving public figures.  *See, e.g.*, *Carr*, 259 F.3d at 282; *CACI Premier Tech.*, 536 F.3d at 293; *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 325 (4th Cir. 2008);

*Baumback v. ABC*, 161 F.3d 1 (Table), 1998 WL 536358, at *7 (4th Cir. Aug. 13, 1998) (per curiam); *Preston v. City Council*, 2021 WL 1177586, at *13 (E.D. Va. Mar. 26, 2021). Indeed, "[t]he granting of summary judgment is especially appropriate in libel cases, for prolonging a meritless case through trial could result in further chilling of First Amendment rights." *Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638, 641 (4th Cir. 1976).

## ARGUMENT

### I.  SUMMARY JUDGMENT SHOULD BE GRANTED ON BLANKENSHIP'S CLAIM FOR DEFAMATION.

In West Virginia, the "essential elements" of defamation are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) fault; and (6) resulting injury. *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). In addition, when the plaintiff is a "candidate for political office," he must also prove that "the publisher *intended to injure* the plaintiff through the knowing or reckless publication of the alleged libelous material." *Sprouse*, Syl. Pt. 1, 211 S.E.2d at 679 (emphasis added). "[T]he First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern. Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091–92 (4th Cir. 1993) (citation and footnote omitted). For multiple reasons, Blankenship cannot sustain a claim here.

### A.  There Is No Clear and Convincing Evidence of Actual Malice.

More than a year of discovery has not revealed any evidence of actual malice—let alone evidence that would support a verdict by *clear and convincing* evidence.

As this Court already recognized, Blankenship is a public figure to whom the daunting actual malice standard applies.  ECF No. 398 at 17.  "[T]here is a significant difference between proof of actual malice and mere proof of falsity."  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984).  Actual malice "is based on a defendant's subjective state of mind at the time the challenged statement was published."  ECF No. 398 at 27.  The plaintiff must establish that the author *knowingly* uttered a falsehood or, at the least, "*in fact entertained serious doubts* as to the truth of his publication" and said it anyway.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added).  "[T]here must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of probable falsity.'"  *Harte-Hanks*, 491 U.S. at 688 (alteration omitted) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)).  That is, the defendant's conduct must "approach[] the level of publishing a knowing, calculated falsehood."  *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980); *see Garrison*, 379 U.S. at 75; Robert D. Sack, *Sack on Defamation* § 5:5.1, at 5–79 (5th ed. 2017) ("[T]he basic question for determination by the court is:  Did the defendant lie?").

Because it is a "subjective" standard, *Harte-Hanks*, 491 U.S. at 688, actual malice is specifically "*not* measured by whether a reasonably prudent man would have published, or would have investigated before publishing," *St. Amant*, 390 U.S. at 731 (emphasis added); *Harte-Hanks*, 491 U.S. at 665 ("[A] public figure plaintiff must prove more than [even] an extreme departure from professional standards."); *Hatfill*, 532 F.3d at 325 ("Constitutional malice requires much more than a failure to exercise ordinary care.").  And it is not measured on the basis of a news organization's alleged collective knowledge, but rather the state of mind of "the persons . . . having responsibility for the publication" of the allegedly defamatory language.  *N.Y. Times*, 376 U.S. at

13

287; *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) ("It is the state of mind of the speaker that is relevant."); ECF No. 398 at 26.

There is no evidence of actual malice, much less clear and convincing evidence, here. Indeed, Blankenship himself has admitted that he lacks "any evidence of what anybody knew at the time they made the statement." Ex. 7 at 252. Since it is his burden to prove the state of mind of the responsible individuals, that concession itself is fatal to his claim.

As to the three individuals who made the statements on air—McLaughlin, Lockhart, and Cupp—only two are affiliated with CNN in any way. And the uncontradicted testimony from all three of them is that they believed what they were saying was true.[5]

Lockhart referred to Blankenship as a felon because he understood Blankenship had been convicted of a crime and sent to prison for a year, and thus "believed that he was a felon" as Lockhart understood that word. Ex. 24 ¶ 6. He was not aware that Blankenship's conviction was for a misdemeanor. Ex. 25 at 67; Ex. 24 ¶ 7. That testimony is uncontradicted; there is not a shred of evidence to the contrary suggesting his subjective awareness of probable falsity.

Similarly, Cupp used the word "felon" in passing consistent with her understanding that it accurately described Blankenship, and she had "no doubt" that "an individual like Mr. Blankenship

---

[5] Even if there were clear and convincing evidence of actual malice on the part of the speakers—which there is not—it would be insufficient to prove actual malice by CNN, because none of those speakers was a CNN employee. As an unpaid guest, McLaughlin was not affiliated with CNN at all. There would be no basis to suggest that his state of mind is imputed to CNN. And the record is undisputed that Lockhart and Cupp were independent contractors, not employees. Under the doctrine of *respondeat superior*, an employer may be held responsible for an employee's act of publishing a statement with actual malice. *Cantrell v. Forest City Publ'g Co.*, 419 U.S. 245, 253–54 (1974). However, "actual malice 'cannot be imputed from one defendant to another absent an employer-employee relationship.'" *AdvanFort Co. v. Mar. Exec., LLC*, 2015 WL 4603090, at *7 (E.D. Va. July 28, 2015) (collecting cases); *Secord v. Cockburn*, 747 F. Supp. 779, 787 (D.D.C. 1990) (granting summary judgment where "the undisputed facts in the record before this Court provide that the author is an independent contractor").

14

who was convicted of a federal crime and sent to prison for a year was a 'felon.'" Ex. 26 ¶ 7.  Like Lockhart, there is simply no basis from which to conclude that she deliberately decided to knowingly lie about Blankenship's conviction.  At the motion to dismiss stage, Plaintff relied on the assumption that Cupp must have watched a May 1 Fox News debate in its entirety and understood from it that Blankenship was convicted of a misdemeanor, not a felony, because he mentioned it during the debate.  But, after discovery, the undisputed factual record is that Cupp only watched certain clips of the debate (not the entire debate) and does not recall watching any clips in which he referred to his crime as a misdemeanor.  Ex. 29 at 138.  There is simply no evidence that she heard Blankenship refer to a misdemeanor, much less that she focused on those brief references.  Because Blankenship's criminal history was consistent with her colloquial understanding of "felon," she "was not focused on" any "technical distinction between a felony and misdemeanor."  Ex. 26 ¶ 7.

McLaughlin was an unpaid guest appearing in a live, unscripted discussion on *CNN Newsroom*.  Blankenship has explicitly conceded that CNN's employee on the program, Bash, "accurately reported" his conviction by reminding viewers that "it was just a misdemeanor."  Ex. 32 (Pl.'s Resps. to NRSC Interrogs.) at 5.  McLaughlin's state of mind cannot be imputed to CNN. *See supra* n.5.  But, in any event, when McLaughlin used the word "felon" during the discussion, he believed that his statement was true.  Ex. 21 at 159–60.[6]

As in *Hatfill*, "the record contains substantial evidence" that the speakers "*actually believed*" the substance of their statements.  532 F.3d at 324 (affirming summary judgment).  There is no evidence that the references to "felon" were the product of anything more than, at most, an

---

[6] Notably, Blankenship separately sued McLaughlin, pursuing that claim in the Eastern District of Virginia; however, he voluntarily dismissed his claims against McLaughlin, without compensation, as the deadline for summary judgment neared.  Ex. 2 at 24–25.

honest mistake—the use of an imprecise term to convey that the crime was a serious one.  That does not come close to establishing actual malice.  The very premise of *N.Y. Times v. Sullivan* was that "erroneous statement is inevitable in free debate"—and that "it must be protected if the freedoms of expression are to have the breathing space that they need to survive."  376 U.S. at 271–72 (alteration and internal quotation marks omitted).[7]

It is well settled that the use of particular "language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella"—because otherwise "any individual using a malapropism might be liable, simply because an intelligent speaker would have to know that the term was inaccurate in context." *Bose Corp.*, 466 U.S. at 513.  Thus, for example, the Fourth Circuit upheld the grant of summary judgment in *Ryan*, 634 F.2d at 733, where the defendant had accused the plaintiff of "extort[ing]" funds.  Although that was "an unfortunate choice of words," the court held, the evidence failed to show actual malice. *Id.*

If anything, the record shows that any use of imprecise language was particularly understandable here.  Blankenship himself has identified *100 different news outlets* that included the same reference to him as a "felon" in this same time period.  Ex. 7 at 80–81.  They ranged across the political spectrum and included both TV and print.  *See Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) (holding it was "impossible" to find actual malice "[g]iven the volume of published commentary" consistent with author's statements).  And there is

---

[7] *See also, e.g.*, *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir.2001)  ("[T]he First Amendment does not require perfection from the news media.  Were the press subject to suit every time it erred, it would decline to speak out without resorting to the sort of cumbersome due diligence common in security offerings.  For this reason, the Constitution provides the press with a shield whereby it may be wrong when commenting on acts of a public figure, as long as it is not intentionally or recklessly so.").

good reason that all of these journalists came to the same conclusion about his conviction:  Even Blankenship admits that he "do[esn't] know of anyone that's heard of anyone going to prison for a misdemeanor."  Ex. 2 at 367; *see also id.* at 364 (acknowledging that he has "never heard of anyone" going to prison for a year for a misdemeanor, "and I don't know that anyone in the media has").

Ultimately, Blankenship's interrogatory responses effectively concede that he has no evidence of actual malice with respect to CNN.  *See* Ex. 30 at Resp. No. 10.  Asked for his evidence, he relies on an article published by CNN on May 7, 2018, which noted Blankenship's conviction was a misdemeanor.  However, this Court already explained in its motion to dismiss opinion that "[t]he 'mere presence' of previous stories in a [publisher's] files does not establish that the [publisher] knew that a statement was false."  ECF No. 398 at 26 (quoting *N.Y. Times*, 376 U.S. at 287, and holding that "allegations of knowledge based on previous articles or reporting" do not suggest a "plausible inference of actual malice" even at the motion-to-dismiss stage).

Blankenship further relies generically on "freely-available public records" relating to Blankenship's conviction that he believes the speakers here *could* have accessed to determine that his conviction was for a misdemeanor.  Ex. 30 at Resp. No. 10.  But an assertion of what a speaker *could* have done, or even *should* have done, has nothing to do with whether the defendant acted with *subjective awareness* of probable falsity.  *See, e.g.*, *St. Amant*, 390 U.S. at 731 (actual malice "not measured by whether a reasonably prudent man would have . . . investigated before publishing"); *CACI Premier Tech.*, 536 F.3d at 300 (same).[8]  Here, the speakers all subjectively

---

[8] *See also, e.g.*, *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (failure to search federal PACER system to see if plaintiff had in fact filed for bankruptcy was not evidence of actual malice, emphasizing that "failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth").

believed their use of the word "felon" was true, including based on their colloquial understanding of the word and their understanding that Blankenship had been convicted of a serious crime and served a year in federal prison.

Likewise, Blankenship falls back generically on unspecified "viola[tions]" of "journalistic rules and guidelines." Ex. 30 at Resp. No. 10. But, once again, for all the reasons discussed above, it is well-settled that "actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices." *Church of Scientology Int'l*, 992 F.2d at 1334. Not even an "extreme departure" suffices. *Harte-Hanks*, 491 U.S. at 665; *see also, e.g.*, *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 711–12 (4th Cir. 1991). The record, in any event, is devoid of evidence of any departure from journalistic practices; indeed, Blankenship does not proffer any expert testimony on the matter. The only testimony on the question—from CNN's Executive Vice President for Standards—was specifically that there were no violations of CNN's policies. *See* Ex. 33 (CNN 30(b)(6) Dep. Tr.) at 101–02, 104, 107.

In sum, Blankenship has failed entirely to meet the "substantial burden that must be satisfied in order to establish actual malice." *Baumback*, 161 F.3d 1 (Table), 1998 WL 536358, at *5; *see CACI Premier Tech.*, 536 F.3d at 293. Summary judgment should be granted.

**B.    There Is No Evidence that CNN Intended to Injure Blankenship, as Required by West Virginia Defamation Law Specific to Political Candidates.**

Summary judgment must be granted for the separate reason that Blankenship has not identified evidence from which a jury could reasonably find that CNN *intended to injure* Blankenship through the publication of the allegedly defamatory statements.

Under West Virginia law, candidates for political office and public officials "can sustain an action for libel only if"—*in addition to Constitutional actual malice*—they can prove that "*the publisher intended to injure the plaintiff* through the knowing or reckless publication of the alleged

18

libelous material." *Sprouse*, Syl. Pt. 1, 211 S.E.2d at 679 (emphasis added).   In *Sprouse,* the Supreme Court of Appeals stated:   "[I]t is necessary for a candidate for office to prove that false or misleading statements were published with knowledge on the part of the publisher of their falsity or with willful and reckless disregard of their truth, *and further to prove that they were published with a deliberate intent to injure*." *Id.* at 692 (emphasis added).   The Supreme Court of Appeals has repeatedly confirmed the continuing vitality of this additional requirement where the plaintiff is a candidate for political office or a public official.  *See, e.g.*, *Giles v. Kanawha Cty. Bd. of Educ.*, 2018 WL 300605, at \*3 (W. Va. Jan. 5, 2018); *Chafin v. Gibson*, 578 S.E.2d 361, 365–66 (W. Va. 2003) (per curiam); *Long v. Egnor*, 346 S.E.2d 778, 785 (W. Va. 1986) (further noting "that courts generally are more inclined to grant motions for summary judgment in defamation actions filed by public officials or public figures").   And this element, too, must be demonstrated by clear and convincing evidence.  *Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 579 (W. Va. 1992).[9]

While Blankenship's Complaint was replete with allegations of a "bloodthirsty desire to destroy" him, AC ¶¶ 1, 232, a year of discovery has yielded no evidence that CNN intended to injure him through the passing, one-word references to "felon."   For this reason alone, summary judgment must be granted.  *See Backus v. City of Parkersburg*, 980 F. Supp. 2d 741, 748 (S.D.W. Va. 2013) (granting summary judgment where plaintiff failed to "offer more than a scintilla of evidence in support of his argument" that publisher intended to injure him).

---

[9]Although the court in *Hinerman* framed "intent to injure" as part of the actual malice inquiry, it still made clear that it was an additional requirement beyond knowledge or reckless disregard of falsity:  "Because . . . Mr. Hinerman was a public official, no recovery whatsoever could have been had unless the jury were convinced by clear and convincing evidence that the defendant acted from actual malice—i.e., that the defendant published false and defamatory material either knowing that it was false or with reckless disregard of whether it was false, *and with an intent to injure the plaintiff*."  423 S.E.2d at 579 (emphasis added).

**C.      There Is No Clear and Convincing Evidence of Material Falsity.**

Summary judgment is also warranted because there is no clear and convincing evidence that the passing references to Blankenship as a "felon" were materially false.  There are compelling reasons to now hold—at the summary judgment stage—that Blankenship cannot establish material falsity by *clear and convincing evidence*, as required.  *See Pritt*, 557 S.E.2d at 862.[10]

The question of material falsity turns on whether "the substance, the gist, the sting, of the libelous charge [is] justified."  *Masson*, 501 U.S. at 516–17.  What matters is the "overall effect," *In re Callaghan*, 796 S.E.2d 604, 627 (W. Va. 2017), not technical precision.  Indeed, since the Court's ruling on the motion to dismiss, the Fourth Circuit affirmed summary judgment on material falsity in a case brought by a pharmacist over news reports related to the opioid crisis.  *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 351 (4th Cir. 2020).  At issue was a statement that a pharmacy "was filling more than 150 pain prescriptions a day from one clinic alone," when there had only been a handful of days where that number of prescriptions had been filled from a single clinic.  *Id.* at 350–51.  The Fourth Circuit emphasized that, even if not precisely correct, "the sting of the statement . . . was justified by the facts."  *Id.* at 351.

In particular, the Fourth Circuit has recognized that a reasonable listener does not adhere to technical definitions contained "in the U.S. criminal code," because ordinary people do not adhere to such "narrow, legalistic" meanings.  *CACI Premier Tech.*, 536 F.3d at 297.  The law thus protects "[t]echnical inaccuracies in legal terminology."  *Rouch v. Enquirer & News of Battle Creek Mich.*, 487 N.W.2d 205, 216–17 (Mich. 1992) ("[I]f technical and common parlance yield different interpretations of the same word, the constitutionally required breathing space affords

---

[10]  CNN incorporates by reference herein its prior briefing relating to the substantial truth doctrine, including the joint motion for reconsideration filed on April 15, 2020.  *See* ECF No. 196 at 9–12; ECF No. 360 at 2–5; ECF No. 416 at 13–17; ECF No. 441 at 9–14.

protection of the writer's choice.").  As the Second Circuit explained earlier this year, "A media defendant's characterization of criminal allegations . . . is substantially true if the characterization comports with the common understanding of the terms employed"—"even if that reporting does not satisfy '[a] fussy insistence upon literal accuracy.'"  *Lawrence v. Altice USA*, 841 F. App'x 273, 275–76 (2d Cir. 2021) (summary order); *see also, e.g.*, *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 255 (2014) ("[I]t is irrelevant whether trained lawyers or judges might with the luxury of time have chosen more precise words.").[11]

Here, "felon" is often described simply as "a person who has committed a serious crime." Ex. 34 (*Merriam-Webster.com Thesaurus*); *see also* Ex. 35 (*Collins English Thesaurus*) (describing "felon" as "a person who committed a serious crime"); Ex. 36 (*Webster's New World College Dictionary* (5th ed. 2014)) (defining "felon" as "a person guilty of a major crime"). Likewise, both the Merriam-Webster Thesaurus and Collins Thesaurus offer synonyms for "felon" that include such labels as "criminal," "convict," "con," "offender," "crook," "lawbreaker," "jailbird," and "perp."  Ex. 34; Ex. 35.[12]

---

[11] A "long line of cases holds that 'technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence.'"  *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) (collecting cases); *see, e.g.*, *Tiwari v. NBC Universal, Inc.*, 2011 WL 5079505, at *14–15 (N.D. Cal. Oct. 25, 2011), *order clarified*, 2011 WL 5903859 (N.D. Cal. Nov. 23, 2011) (not materially false to report that plaintiff had been convicted of "attempted lewd and lascivious acts with a child"—a felony—instead of the misdemeanor offense of "attempting to communicate with [a child] for the purpose of . . . luring . . . [the child] away from home"); *Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 489 (Ct. App. 1985) (not materially false to report that plaintiff, who had pleaded no contest to misdemeanor tax offenses, had been convicted of felony "tax fraud" and "tax evasion" because the "gist or sting of the articles [was] that Jennings was convicted on his no contest plea to several serious tax crimes"); *Brewer v. Dungan*, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993) (not defamatory to say that plaintiff was convicted of "felony assault" instead of misdemeanor "aggravated assault").

[12] Even as a technical matter, as Chief Justice Roberts recently observed, "[t]he line between felonies and misdemeanors is . . . very hard to draw," and "[i]n many cases, it's counterintuitive, and it certainly varies from state to state."  Transcript of Oral Argument at 39, *Lange v. California*, No. 20-18 (U.S. argued Feb. 24, 2021), *available at* https://www.supremecourt.gov/

As the record reflects, the undisputed facts surrounding Blankenship's conviction for conspiracy to willfully violate federal mine safety laws meet this common understanding. Blankenship's prosecution followed what he concedes was the worst mining disaster in four decades. Ex. 2 at 249–50. His crime was found by the sentencing judge to be "very serious"— and even "dangerous"—regardless of the formal legal "tag[]" (misdemeanor vs. felony) that applied to his offense. Ex. 1 at 68, 71. He was then imprisoned for a year. Blankenship himself has remarked that he was sent to a "felony prison." Ex. 2 at 348–52, 355, 363–64. He "would agree that the sentencing would indicate, to a casual observer, that [Judge Berger] considered it a very serious crime." *Id.* at 347. And he has conceded that the offense of conspiring to violate mine safety standards "*sounds horrible*." *Id.* at 340 (emphasis added).

Ultimately, there would have been no "different effect on the mind of the [viewer]," *Masson*, 501 U.S. at 517, if instead of referring to him as a "felon," the speakers had said Blankenship was convicted of the federal crime of conspiracy to violate mine safety standards and sentenced to a year in "felony prison" for what the judge described as a "very serious" and even "dangerous" crime. The "substance" or the "gist" would have been unchanged. *See id.*; *see also State ex rel. Suriano v. Gaughan*, 480 S.E.2d 548, 561–62 (W. Va. 1996). Despite a year of discovery, Blankenship has produced no evidence whatsoever showing there would be any

---

oral_arguments/argument_transcripts/2020/20-18_986b.pdf. "The federal system and roughly half of the states classify as felonies all offenses punishable by a term of imprisonment of more than one year," while others "classify as a felony any offense punishable by death or imprisonment in a state penitentiary." Wayne R. LaFave et al., 1 Criminal Procedure § 1.8(c) (4th ed. 2018). Some states simply "do[] not utilize a misdemeanor/felony distinction." *Id.* In this case, as the Court previously described, the U.S. Code's applicable framework is complicated. ECF No. 398 at 21. But even according to the rule that felonies are offenses punishable by a term of imprisonment of more than one year, Blankenship's sentence was right on the dividing line—one year.

different effect—let alone evidence by which a jury could reach that conclusion by clear and convincing evidence.  He cannot establish *material* falsity on this record.

Additionally, in considering the effect on the "mind of the [viewer]," the references to "felon" must be considered in context.  *Masson*, 501 U.S. at 517; *Crump*, 320 S.E.2d at 87.  With respect to the *CNN Newsroom* program, it again bears emphasis that Blankenship has conceded that Ms. Bash accurately told viewers that Blankenship was convicted of a "misdemeanor."  Ex. 19 at 2.  A guest's fleeting and colloquial reference to "convicted felon" shortly thereafter cannot render the telecast materially false as a whole, when CNN's own host specifically stated that it was a misdemeanor—and also correctly noted that Blankenship had "served a year in prison."  In the *Unfiltered* telecasts, viewers were also informed that Blankenship "served a year in prison recently" and "was running a coal mining company, an energy company, and after a mining disaster left 29 miners dead, he was found guilty of conspiracy to avoid mine safety standards in . . . federal court."  Ex. 27 at 11; Ex. 28 at 4.  And on *CNN Tonight*, Lockhart specifically pointed out right before using the word "felon" that Blankenship "went to jail."  Ex. 23 at 6; *see Hupp v. Sasser*, 490 S.E. 2d 880, 887 (W. Va. 1997) (per curiam) ("[d]efamation law requires that you consider the alleged defamatory words in the context in which they were made"); *see also Chapin*, 993 F.2d at 1098 ("we would err if we did not consider the article as a whole").

In short, summary judgment should be granted because the record does not support material falsity by clear and convincing evidence.

### D.     Blankenship Cannot Establish Resulting Injury.

Finally, summary judgment should be granted because Blankenship cannot establish yet another "essential element[]" of his claim:  "resulting injury" from any of the passing references to him as a felon in the midst of live TV.  *Crump*, 320 S.E.2d at 77.  His assertion of damage is

based on sheer speculation, not any actual evidence of causation.  There is not a shred of evidence linking any of the four words at issue during CNN's coverage to damages.

"To ward against speculative, abstract or purely theoretical claims, the trial court bears the responsibility for examining the evidence in each case in order to withhold . . . flawed claims from jury consideration."  *Cook v. Cook*, 607 S.E.2d 459, 466 (W. Va. 2004); *see also, e.g.*, *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 167–68 (4th Cir. 2004) (per curiam) (affirming summary judgment where allegations of damage were "conclusory"); *Contech Stormwater Sols. v. Baysaver Techs.*, 534 F. Supp. 2d 616, 632 (D. Md. 2008), *aff'd*, 310 F. App'x 404 (Fed. Cir. 2009) (granting summary judgment on defamation claim "for the [claimants'] failure to demonstrate causation and damages").

Here, Blankenship purports to seek damages flowing from his election loss.  But as a matter of law, "federal courts are not available for awards of damages to defeated candidates," as "[t]he legitimacy of democratic politics would be compromised if the results of elections were regularly to be rehashed in federal court."  *Hutchinson v. Miller*, 797 F.2d 1279, 1280 (4th Cir. 1986).  In particular, courts have held that "the loss of an election is not compensable in damages in a libel action, being too uncertain and too speculative."  *Sw. Publ'g Co. v. Horsey*, 230 F.2d 319, 322 (9th Cir. 1956); *see also Aycock v. Padgett*, 516 S.E.2d 907, 910 (N.C. Ct. App. 1999) (affirming dismissal of defamation claims); *Peer v. Lewis*, 2008 WL 2047978, at *10 (S.D. Fla. May 13, 2008) (collecting cases).  After all, "[t]here may be not less than a thousand factors which enter into the vagaries of an election."  *Sw. Publ'g Co.*, 230 F.2d at 322–23.  And the record here shows there were myriad reasons that Blankenship lost—up to and including President Trump's call for voters to oppose his candidacy, which Blankenship himself repeatedly blamed for his loss.  *See supra* pp. 5–6 & n.1.  In fact, Plaintiff has admitted that he is unable to identify a single individual

24

who did not vote for him in the 2018 West Virginia Republican Senate Primary because of the CNN coverage at issue.  Ex. 37 (Pl.'s Resps. to CNN 2d Interrogs.) at Resp. No. 11.

Blankenship's claims for actual monetary losses (special damages) are likewise entirely speculative.  Blankenship seeks alleged lost earnings from upwards of $900 million in supposed lost "business opportunities"—but lacks a scintilla of evidence demonstrating that these opportunities would have suddenly materialized but for the fleeting references to him as a "felon" on CNN.  Indeed, it is undisputed that when Blankenship departed Massey more than a decade ago, he "retired," Ex. 2 at 29, 90; he remains retired, *id.* at 154; he has not sought or made any efforts to find employment since his retirement, *id.* at 155; and he has not received any offers of employment since retirement, *id.* at 162–63.  He and his damages expert have not even attempted to explain how the few references on CNN specifically accounted for his alleged damages, let alone disaggregate other far more plausible causes for his purported lack of business opportunities than any passing reference to him as a felon—like the fact that he was convicted of a federal crime and went to prison for a year, and was the CEO of a company with the worst mining disaster in 40 years, not to mention the other extensive negative publicity he faced for decades and at the very same time of this coverage.  *See supra* pp. 3–5; Ex. 5 (Smith Dep. Tr.) at 184, 199, 223–24; *id.* at 74 (cannot identify any CEO who has spent a year in federal prison).[13]

---

[13] As this Court has observed, "'indeterminate expert testimony on causation that is based solely on possibility . . . is not sufficient to allow a reasonable juror to find causation.'"  *Meade v. Parsley*, 2010 WL 4909435, at *7 (S.D.W. Va. Nov. 24, 2010) (Copenhaver, J.) (quoting *Tolley v. ACF Indus., Inc.*, 575 S.E.2d 158, 168 (W. Va. 2002)).  Blankenship's expert, Stan Smith, is a "prolific expert testifier" whose opinions have been excluded on several occasions due to his "unsupported speculation" and lack of reliable foundation.  *See Griffo v. Oculus VR, Inc.*, 2018 WL 6265067, at *6, 15 (C.D. Cal. Sept. 18, 2018) (finding Smith's expert report inadmissible, citing cases in which Smith's opinions have been excluded, and granting in part defendants' motion for summary judgment on the issue of damages).

It is long-established that "[s]pecial damages cannot be recovered" without "proof of loss or damages as a consequence of the publication."  *Milan v. Long*, Syl. Pt. 4, 88 S.E. 618, 620 (W. Va. 1916); *Richard H. v. Rachel B.*, 2019 WL 6998331, at *3 (W. Va. Dec. 20, 2019) ("special damages . . . have to be proven").  That is, "there can be no recovery for the special harm unless the defamation is a legal cause of it."  Restatement (Second) of Torts § 622A (1977).

Blankenship simply has no evidence of such causation.  He admits that he cannot identify *any* individual who believed he was convicted of a felony because of the CNN coverage at issue—or even *any* individual whose opinion of him changed because of that coverage—let alone evidence showing that a real business opportunity was denied because of the few references on CNN to him as a "felon."  *See* Ex. 37 (Pl.'s Resps. to CNN 2d Interrogs.) at Resp. No. 13.[14]

Without a genuine path to actual damages, Blankenship asserts that he also is seeking "presumed" general damages.  But the statements on CNN were not defamatory *per se*, and thus "harm to reputation is not presumed and a plaintiff is required to prove special damages." *Workman v. Kroger Ltd. P'ship I*, 2007 WL 2984698, at *8 (S.D.W. Va. Oct. 11, 2007). References to Blankenship as a felon did not falsely impute a crime to a man innocent of serious criminal conduct.  *See Mauck v. City of Martinsburg*, 280 S.E.2d 216, 219 n.3 (W. Va. 1981); *Milan*, 88 S.E. at 619.  Blankenship *did* commit a "serious," "dangerous" crime.  Ex. 1 at 68, 71. An alleged error in the *classification* of the crime for which Blankenship indisputably was

---

[14] The same is true with respect to his apparent bid to recover money spent *since 2004* purportedly to "restore his business reputation."  Ex. 30 at Resp. No. 6 (p. 11).  This is baseless.  It ignores the admitted state of Blankenship's public reputation as late as 2017 and 2018—prior to any of the statements at issue.  *See supra* pp. 3–5.  It also ignores what Blankenship is actually attempting to recover—everything from fees on his criminal habeas petition to contributions to West Virginia Right to Life, churches and community charity funds, political causes, and even a scholarship fund in his mother's name.  *See* Ex. 7 at 190–203.  There is no conceivable argument that CNN should be liable for those expenses.

convicted is not among the specifically limited categories of defamation *per se*. *Mauck*, 280 S.E.2d at 219 n.3.[15]

Regardless, Blankenship is not entitled to presumed general damages, because presumed damages must be "related to 'the natural and probable consequence[s] of the words so spoken or written[.]'" *Richard H.*, 2019 WL 6998331, at *3 (quoting *Milan*, 88 S.E. at 618). For all of the reasons already addressed, there is no evidence of that here. The *Richard H.* case is particularly instructive. There, the defendant wrote that the plaintiff was "a 5 time convicted felon," including a "murderer," when the plaintiff was a 3-time convicted felon and was not a murderer, although his crimes "could have ultimately led to a person's violent death." *Id.* at *1–3. The Supreme Court of Appeals held "there was no factual basis" on which to "presume general damages as the natural and probable consequences of respondent's false statements . . . where the falsity of respondent's statements was only a matter of degree." *Id.* at *2–3. If that was "only a matter of degree," then surely it is here as well. *Id.* at *3. Just as in *Richard H.*, damages may not be presumed.

Accordingly, summary judgment should be granted on the independent ground that Blankenship cannot establish causation of damages from the words at issue.

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED ON BLANKENSHIP'S FALSE LIGHT CLAIM.

Blankenship's claim for false light invasion of privacy fails for the same reasons as his libel claim. "[R]egardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the

---

[15] Although the Court previously stated that the statements at issue in this lawsuit "may be considered defamatory *per se* because they impute a felony conviction," ECF No. 398 at 20, this issue should be reexamined in light of the full record on summary judgment and Defendants' briefing. CNN did not raise this issue at the motion to dismiss stage. CNN also incorporates by reference here the additional arguments raised by ABC, Fox, and MSNBC in their summary judgment briefs relating to damages and causation, which also apply to CNN.

defendant's speech." *Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011).  "[C]ourts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation." *Crump*, 320 S.E.2d at 87; *see also Hustler Magazine Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Dobkin v. Johns Hopkins Univ.*, 172 F.3d 43 (Table), 1999 WL 22901, at *4 (4th Cir. 1999) (per curiam) (affirming summary judgment on defamation and false light claims because of lack of evidence of actual malice); *Ballengee., Inc.*, 968 F.3d at 351 (affirming summary judgment on defamation and false light claims where statements were substantially true).

## <u>CONCLUSION</u>

For all of the foregoing reasons, summary judgment should be granted to CNN on all claims.

Dated:  May 24, 2021

Respectfully submitted,

By: /s/ Brian A. Glasser

BAILEY GLASSER LLP

Brian A. Glasser WV # 6597
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com

WILLIAMS & CONNOLLY LLP

Kevin T. Baine DC # 238600
Stephen J. Fuzesi DC # 496723
Gloria Maier DC # 1012208
Matthew D. Heins DC #241063
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbaine@wc.com

sfuzesi@wc.com
gmaier@wc.com
mheins@wc.com

*Attorneys for CNN*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th of May 2021, a copy of the foregoing was filed using CM/ECF, the Court's electronic notification system, which provided notice to all counsel of record.

/s/ *Matthew D. Heins*
Matthew D. Heins