UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DON BLANKENSHIP,

          Plaintiff,

v.                                    Civil Action No. 2:19-cv-00236

FOX NEWS NETWORK, LLC;
CABLE NEWS NETWORK, INC.;
MSNBC CABLE, LLC; 35th INC.;
WP COMPANY, LLC d/b/a The Washington Post;
MEDIAITE, LLC; FISCALNOTE, INC. d/b/a Roll Call;
NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL;
AMERICAN BROADCASTING COMPANIES, INC.; TAMAR AUBER;
GRIFFIN CONNOLLY; ELI LEHRER; and
DOES 1-50 INCLUSIVE,

          Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


          Pending are the motion for summary judgment filed by

defendant 35th Inc ("35th PAC"[1]) on May 24, 2021 (ECF No. 892),

and the motion to strike some of 35th PAC's evidentiary

---

[1] In the caption of the operative complaint, the plaintiff
identifies the defendant as "35th Inc" but refers to the
defendant as "35th PAC" throughout the body of the complaint.
ECF No. 14 at 1, 15, 35, 55.  In its summary-judgment briefing,
the defendant explains that it was originally organized as "35th
Inc." but later changed its name to "35th PAC" via a Federal
Elections Commission filing.  ECF No. 893 at 2 & n.1.  Both
parties refer to the defendant as "35th PAC" in their summary-
judgment briefing, <u>see</u> ECF No. 893; ECF No. 916, and the court
does the same herein.

submission filed by the plaintiff on June 11, 2021 (ECF No. 929).

## I.   Background

The plaintiff initiated this action on March 14, 2019, in Mingo County Circuit Court, asserting claims of defamation and false light invasion of privacy against numerous media organizations, reporters, and others.  See ECF No. 1.  The action was removed to this court based on diversity jurisdiction.  See id.; 28 U.S.C. § 1332.

The operative amended complaint alleges the following. After an explosion in a West Virginia mine resulted in the death of twenty-nine miners, the United States Government initiated an investigation into the cause of the explosion, focusing on Massey Energy, which operated the mine, and the plaintiff, who was Massey Energy's chief executive officer.  See ECF No. 14 ¶¶ 7-8, 136-41.  While the plaintiff was not charged with the deaths of the miners, the Government later charged him with three felonies as well as one misdemeanor for conspiracy to violate federal mine safety laws.  See id. ¶ 141.  On December 3, 2015, a jury acquitted the plaintiff of the felony charges but found him guilty of the misdemeanor offense.  See id. ¶ 143.

The plaintiff was convicted and sentenced to one year in prison, and he was released in the spring of 2017.  See id. ¶¶ 144-45.

In January 2018, the plaintiff announced his campaign to run as a Republican for a United States Senate seat in West Virginia.  See id. ¶ 146.  The plaintiff lost his bid for the Republican party's nomination in the primary election on May 8, 2018.  See id. ¶ 190.  The plaintiff alleges that media coverage was responsible for his loss due to defamatory statements about the plaintiff that referred to him as a "felon" or a "convicted felon,"[2] despite the fact that he was cleared of the felony charges and was only convicted of the misdemeanor offense.  See id. ¶¶ 152-190.  The plaintiff further alleges that there was an organized effort to defeat his campaign, in part through the defamatory media coverage, see id. ¶¶ 150-90, which continued after the primary election, see id. ¶¶ 191-221.

The plaintiff alleges that these defamatory statements injured his reputation, prevented him from pursuing other business opportunities, and caused him to lose in the primary election.  See id. ¶¶ 24, 190.  In addition, the plaintiff alleges that many of these statements were made in conjunction with reference to the mine disaster and therefore had the

---

[2] The exact reference varies among the defendants.

additional effect of falsely attributing to him responsibility for murder.  See id. ¶¶ 23, 228, 242.

As for 35th PAC in particular, there is no dispute that it is an "independent expenditure-only political committee" formed in 2017 for the purpose of using independent expenditures to support West Virginia Attorney General Patrick Morrissey's candidacy for the Republican nomination for the same Senate seat that the plaintiff sought in 2018.  ECF No. 892-2 at 1; see ECF No. 14 ¶ 37; ECF No. 893 at 2-3; ECF No. 916 at 2.  There is also no dispute that, on April 10, 2018, in response to a Tweet authored by the plaintiff, 35th PAC – through its Executive Director, David James Eckert – published a Tweet stating:

> You are a convicted felon hurting West Virginia
> families. That's why @realDonald Trump administration
> won't help you #wvsen
> https://www.wvgazettemail.com/news/trump-doj-urges-
> court-to-not-hear-blankenship-appeal/article_ee34035c-
> 568a-508f-a2b8-a1f4a1865fa5.html.

ECF No. 892-2 ¶¶ 5, 11; see ECF No. 916 at 2.

The URL[3] provided at the end of the Tweet was to an August 25, 2017 article published on the Charleston Gazette-Mail's website regarding the government's request that the

---

[3] A URL, shorthand for "Uniform Resource Locator," is an Internet address of a resource, such as a document or a website. See URL, Miriam-Webster Dictionary, https://www.merriamwebster.com/dictionary/URL (last visited August 16, 2021).

Supreme Court deny the plaintiff's petition for certiorari to appeal his criminal conviction.  See ECF No. 929-4 at 2-3.  The article discusses the plaintiff's conviction and sentence but does not discuss whether the plaintiff's conviction was for a felony offense.  See id.  In his motion to strike briefing, the plaintiff asserts that the August 25, 2017 article contains a hyperlink to another Charleston Gazette-Mail article that correctly reports that the plaintiff was convicted of a misdemeanor.  See ECF No. 929 at 3.  However, the plaintiff does not provide a copy of this second article or any additional information that would allow the court to locate it.  See id. (citing ECF No. 929-5); ECF No. 929-5 (containing no article).[4]

In his complaint, the plaintiff alleges that 35th PAC's Tweet is false in that it refers to him as a convicted

---

[4] Notably, 35th PAC has not provided the court a copy of the August 25, 2017 article and instead refers the court to the URL address where the article is purportedly found.  See ECF No. 893 at 5 n.1.  However, the article is no longer found at that URL address.  The plaintiff does provide a copy of the August 25, 2017 article, albeit as part of his briefing on the motion to strike rather than his summary-judgment briefing.  See ECF No. 929-4.  As noted above, however, the plaintiff has not provided the court with a copy of the other article to which the August 25, 2017 article purportedly links or any additional information that might allow the court to locate it.  And, notably, although the copy of the August 25, 2017 article he provides includes numerous underlined words and phrases, suggesting hyperlinks to other sources, the copy itself is in a format that contains no actual hyperlinks.  See id.  Herein lie several lessons concerning the submission of exhibits to the court.

felon when he is not a convicted felon.  See ECF No. 14 ¶ 6,
153.  He alleges that 35th PAC knew at the time the Tweet was
published that it was false and that 35th PAC nonetheless chose
to publish the Tweet out of malice toward the plaintiff.  See
id. ¶ 153.  He also alleges that, although he later informed
35th PAC that the Tweet was false, 35th PAC never issued a
correction.  See id.

     The plaintiff further alleges, on information and
belief, that 35th PAC, the National Republican Senatorial
Committee ("NRSC"),[5] Kevin McLaughlin,[6] whom the complaint

---

[5] The plaintiff's complaint named NRSC as a defendant.  See ECF
No. 14.  By a December 17, 2020 order, the court dismissed NRSC
following the plaintiff's and NRSC's submission of a stipulation
of dismissal.  See ECF No. 692; ECF No. 694.

[6] The plaintiff's complaint named Mr. McLaughlin as a defendant
as well.  See ECF No. 14.  In a March 31, 2020 memorandum
opinion and order, the court dismissed Mr. McLaughlin as a
defendant on personal-jurisdiction grounds.  See ECF No. 398 at
52, 78.  On April 17, 2020, the plaintiff filed a complaint
against Mr. McLaughlin in the Eastern District of Virginia,
asserting substantially the same allegations and claims that had
been asserted against Mr. McLaughlin in this case.  See Compl.,
Blankenship v. McLaughlin, No. 1:20-cv-00429-LMB-IDD (E.D. Va.),
ECF No. 1.  As has been noted in other filings in this case, on
November 13, 2020, Mr. McLaughlin notified the plaintiff that he
intended to seek Fed. R. Civ. P. 11 sanctions against the
plaintiff, on the ground that the plaintiff's interrogatory
responses demonstrated the plaintiff had no factual basis for
pursuing his claims against Mr. McLaughlin, unless the plaintiff
agreed to dismiss the claims.  See ECF No. 802-1 (sealed).  On
December 11, 2020, the plaintiff and Mr. McLaughlin stipulated
to dismissal of the claims against Mr. McLaughlin pending in the
Eastern District of Virginia with prejudice.  See McLaughlin,
ECF No. 91.

identifies as the current director of NRSC and "a longtime
Republican Party operative," as well as other unidentified
conspirators shared a common plan to defeat the plaintiff's
candidacy.  Id. ¶ 82; see id. ¶¶ 233-34, 246-47.  He also
alleges that 35th PAC, NRSC, Mr. McLaughlin, and the other
conspirators shared a common plan to defame him and to cast him
in a false light and agreed to publish or cause others to
publish claims that he was a convicted felon, despite knowing
the claims were false.  See id. ¶¶ 234, 247.

        Based on these allegations, the plaintiff asserts four
causes of action against 35th PAC, though the complaint
(somewhat confusingly) lists them in two counts.  See id. ¶¶
222-50.  In all, the plaintiff asserts causes of action for (1)
defamation, (2) conspiracy to defame, (3) false light invasion
of privacy, and (4) conspiracy to commit false light invasion of
privacy.  See id.

        Following discovery, 35th PAC filed its motion for
summary judgment.  See ECF No. 892.  It argues that it is
entitled to summary judgment on all four causes of action
asserted against it.  See ECF No. 893 at 9-20 (arguing expressly
for summary judgment on claims of defamation, conspiracy to
defame, false light invasion of privacy, and conspiracy to

commit false light invasion of privacy).  In response,[7] the plaintiff argues that the court should deny the motion for summary judgment "as to defamation and false light invasion of privacy contained in Counts One and Three of the Amended Complaint."[8]  ECF No. 916 at 5-6.  Thus, it appears that the plaintiff concedes that 35th PAC is entitled to summary judgment with respect to the two conspiracy causes of action.[9]

After submitting his response to 35th PAC's motion for summary judgment, the plaintiff filed his motion to strike portions of 35th PAC's evidentiary submission.  See ECF No. 929.  Specifically, the plaintiff challenges four statements made by Mr. Eckert – 35th PAC's director and the author of the Tweet at

---

[7] The plaintiff filed a one-page response to 35th PAC's motion for summary judgment and attached thereto an exhibit.  See ECF No. 913; ECF No. 913-1.  On the same day, he filed a five-page memorandum in opposition to the motion for summary judgment. See ECF No. 916.  Although the plaintiff's multiple filings are not in keeping with the Local Rules regarding motions practice, see LR Civ P 7.1(a), the court has considered all the plaintiff's filings.

[8] As noted earlier herein, the plaintiff's amended complaint contains only two counts, labeled "Count I" and "Count II."

[9] This view is confirmed by the fact that the plaintiff, although apparently recognizing that there are more than two causes of action asserted in his complaint, see note 8, supra, expressly opposes summary judgment as to only two causes of action.  The view is further confirmed by the fact that the plaintiff's barebones summary-judgment briefing contains no discussion whatsoever of the facts or law related to the two conspiracy causes of action.

issue — in the affidavit Mr. Eckert submitted in support of 35th PAC's motion for summary judgment. See id.; see also ECF No. 892-2.

Briefing on 35th PAC's motion for summary judgment and on the plaintiff's motion to strike have completed, and the motions are ripe for disposition.

## II.  Discussion

The court first addresses the plaintiff's motion to strike before turning to 35th PAC's motion for summary judgment.

## A.  Motion to Strike

### 1.  Legal Standard

"When, at the summary-judgment stage, a party asserts that materials cited by an opposing party to [support] a fact[] . . . would not be admissible at trial, 'a motion to strike is no longer the favored (or authorized) method of challenging the inadmissible nature of the evidentiary submission.'" Hall v. Gestamp, W. Va., LLC, No. 2:20-cv-00146, 2021 WL 1240635, at *8 (S.D.W. Va. Apr. 2, 2021) (brackets omitted) (quoting Propst v. HWS Co., Inc., 148 F. Supp. 3d 506, 511 (W.D.N.C. 2015); see also 11 James Wm. Moore et al., Moore's Federal Practice §

56.91[4] (2021).  "Rather, since the 2010 amendments to [Fed. R. Civ. P.] 56, the proper way to raise such a challenge is to 'object that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence.'" Courtland Co., Inc. v. Union Carbide Corp., No. 2:18-cv-01230, 2021 WL 2110876, at *2 (S.D.W. Va. May 25, 2021) (emphasis in Courtland) (quoting Fed. R. Civ. P. 56(c)(2); see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments (explaining that "[t]here is no need to make a separate motion to strike" and that "[t]he objection functions much as an objection at trial, adjusted for the pretrial setting").  "[T]o merit the court's consideration, objections, at a minimum, must specify the material being challenged and state the basis for the objection with sufficient particularity and explanation to permit the court to rule."  Courtland, 2021 WL 2110876, at *3; see id. (collecting cases).

        Upon a proper objection, under Rule 56(c)(2), "the court may consider . . . the content or substance of [the] otherwise inadmissible materials where . . . 'the party submitting the evidence shows that it will be possible to put the information into an admissible form.'"  Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015) (internal brackets and ellipsis omitted) (quoting 11

James Wm. Moore et al., <u>Moore's Federal Practice</u> § 56.91[2] (3d ed. 2015)).  "If [a party] objects to the court's consideration of 'material cited to support . . . a fact,' the [proponent] has the burden 'to . . . explain the admissible form that is anticipated.'"  <u>Id.</u> at 538-39 (internal citations omitted) (quoting Fed. R. Civ. P. 56(c)(2) and advisory committee's note to 2010 amendments).

### 2.   <u>Procedural Challenges</u>

35th PAC raises several procedural challenges to the plaintiff's motion to strike.  Among other things, 35th PAC argues that the motion is untimely because it should have been filed in conjunction with the applicable summary judgment motion deadline; that the plaintiff waived any challenges to Mr. Eckert's affidavit by citing to it to support his summary judgment arguments; and that, under Rule 56(c)(2), the motion is an improper method of challenging 35th PAC's evidentiary submission in support of summary judgment.  <u>See</u> ECF No. 942 at 5-7.

Except in one respect, the court declines to dispose of the motion to strike based on the procedural challenges raised by 35th PAC.  As explained in <u>Courtland</u>, the Rules Committee "has left courts and litigants in the lurch" because,

11

although it "made clear in the 2010 amendments to Rule 56 that
objecting, rather than filing a motion to strike, is the correct
way to challenge the admissibility of submitted materials'
content at the summary judgment stage, it did not specify any
procedural method for raising such objections," and "[t]his
court has not, by Local Rule or otherwise, selected a method for
litigants to raise Rule 56(c)(2) objections." Courtland, 2021
WL 2110876, at *3 (citing 11 Moore, supra, § 56.91[5]-[6]).
Because of the uncertainty as to the proper method for raising
Rule 56(c)(2) objections, the court cannot say that the
objections advanced in the plaintiff's motion would be untimely
or waived for the reasons offered by 35th PAC.

        The court agrees with 35th PAC, however, that the
plaintiff's motion to strike is subject to denial on the ground
that it is an improper vehicle for challenging the admissibility
of 35th PAC's evidentiary submission. See Hall, 2021 WL
1240635, at *8 ("As an initial matter, . . . the . . . motion
to strike . . . must be denied because striking evidence is no
longer the authorized method for addressing challenges to an
evidentiary submission based on inadmissibility." (citing
Humphreys, 790 F.3d at 538-39; Propst, 148 F. Supp. 3d at 511)).
The changes wrought by the 2010 amendments have been in effect
for over a decade now, and, regardless of any uncertainty as to

the proper method of raising objections, it is clear that the kind of challenges raised by the plaintiff here must be raised through objections, not through a motion to strike.  It is incumbent on litigants to bring their challenges through objections, and it is appropriate for courts to deny such challenges brought in motions to strike for the simple reason that they do not conform to the requirements of Rule 56(c).

Although the procedural deficiency identified in the preceding paragraph is sufficient to deny the plaintiff's motion, the court also concludes, as explained further herein, that the motion should be denied on the merits.

3.    <u>Merits</u>

The plaintiff challenges four statements in Mr. Eckert's affidavit.  The court addresses each of these challenges separately.

a.    <u>Paragraph 9</u>

The plaintiff first challenges ¶ 9 of Mr. Eckert's affidavit, which states:

9)    I recall reading news articles describing [the plaintiff] as having been a felon as a result of his criminal conviction.  I do not **expressly** recall which particular articles I read, but they were the types of articles in newspapers and

> other media sources that I would have found in a
> Google search or that would have been shared by
> others across social media.

ECF No. 892-2 ¶ 9.  The plaintiff challenges this paragraph on the ground that it contradicts the Charleston Gazette-Mail's August 25, 2017 article referenced in 35th PAC's Tweet along with other unspecified evidence.  See ECF No. 929 ¶ 12; ECF No. 957 ¶ 14.

The plaintiff fails to explain how Mr. Eckert's averment that he recollects reading news articles describing the plaintiff as a felon is (or even can be) contradicted by the August 25, 2017 article describing the government's arguments against the granting of certiorari in the plaintiff's criminal case.  Nor does he explain what other evidence contradicts the averment.  At best, the plaintiff appears to be relying on his own affidavit, in which he avers that, upon information and belief, there were no news articles describing him as a convicted felon prior to 35th PAC's April 10, 2018 Tweet.  See ECF No. 929 ¶ 16; ECF No. 929-1 ¶ 15.  As 35th PAC points out, however, the plaintiff expressly admitted in his response to 35th PAC's interrogatories "that he was falsely referred to as a 'felon' on multiple occasions . . . before . . . [35th PAC]'s Tweet on April 10, 2018," ECF No. 942-1 at 4, and the plaintiff's own complaint identifies three articles or social

14

media posts describing him as a felon on or before April 10, 2018, <u>see</u> ECF No. 14 ¶¶ 149, 152, 154.

Beyond being only half-developed and inconsistent with his own pleadings and discovery responses, the court is not persuaded that the plaintiff's challenge is a proper objection to the admissibility of ¶ 9 that merits the court's consideration.  The gist of the plaintiff's argument appears to be that the court should not consider Mr. Eckert's averment in ¶ 9 because it is inconsistent with other evidence (though, it does not appear to be so).  But, at the summary judgment stage, the court does not make credibility determinations and generally will not reject an otherwise proper affidavit on the ground that the averments therein are not sufficiently corroborated or are inconsistent with other evidence, unless perhaps the averments are too incredible to be accepted by reasonable minds.  <u>See</u> <u>Nnadozie v. Genesis HealthCare Corp.</u>, 730 F. App'x 151, 160 (4th Cir. 2018); <u>Horton v. Dobbs</u>, No. 1:09-cv-00114, 2011 WL 1899760, at *3 (N.D.W. Va. May 19, 2011).  Here, the plaintiff has not shown that Mr. Eckert's averment in ¶ 9 is so incredible that reasonable minds could not accept it, and thus the plaintiff's challenge to its admissibility appears meritless.

Even if Mr. Eckert's averment in ¶ 9 were susceptible to challenge, the court concludes that 35th PAC has met its

burden to show that it will be possible to put the information contained therein into an admissible form at trial.  At trial, Mr. Eckert would be able to testify regarding his own recollections, and the plaintiff would be able to attempt impeaching him if he so chooses.  Accordingly, the court overrules the objection to ¶ 9.

> b.   <u>Paragraph 13</u>

The plaintiff next challenges ¶ 13 of Mr. Eckert's affidavit, which states:

> 13)  The reference to [the plaintiff] as a "felon" was based on what we believed to have been [his] criminal status following [his] conviction in federal court, and was based on our team's research into [his] biography and his criminal conviction.  This Tweet and the link to the Charleston Gazette-Mail article was an attempt to accurately highlight [the plaintiff]'s legal status based on how we understood it as of April 10, 2018, as it pertained to [his] qualifications to serve as a U.S. Senator from West Virginia.

ECF No. 892-2 ¶ 13.  The plaintiff challenges this paragraph on the ground that it is not based on Mr. Eckert's personal knowledge.  <u>See</u> ECF No. 929 at 2-3; ECF No. 957 at 4-5.  He argues that Mr. Eckert has not laid a sufficient foundation to make averments regarding what others of 35th PAC's "team" "believed," "researched," or "understood" regarding the nature of the plaintiff's conviction.  <u>See</u> ECF No. 929 at 2-3; ECF No. 957 at 4-5.  The plaintiff also argues that the averment in ¶ 13

16

is contradicted by the Charleston Gazette-Mail's August 25, 2017 article.  <u>See</u> ECF No. 929 at 3-4.

The court again is not persuaded that the plaintiff's challenges amount to proper objections.  First, as 35th PAC notes, Mr. Eckert states in his affidavit that he served as 35th PAC's executive director; that, in that capacity, he "was responsible for the day-to-day operations of . . . 35th [PAC], including operating [its] social media accounts, including its Twitter account"; and that it was 35th PAC's "usual practice and procedure" to have "all of its communications . . . vetted by legal counsel prior to being disseminated."  ECF No. 892-2 ¶¶ 2, 5-6, 15.  In the court's view, Mr. Eckert's averments regarding his duties in relation to vetting 35th PAC's communications prior to dissemination provide sufficient foundation for him to testify regarding the status of his "team['s]" research, understanding, and belief prior to publishing the Tweet at issue.

Second, the court again fails to see how the Gazette-Mail's August 25, 2017 article contradicts Mr. Eckert's averment in ¶ 13.  More importantly, to the extent the article might be at odds with the averment, it merely calls into question Mr. Eckert's credibility, and, because his averment is not so incredible that it could not reasonably be accepted, the

17

plaintiff's challenge to ¶ 13 based on its purported
inconsistency with the August 25, 2017 article is meritless.
See Nnadozie, 730 F. App'x at 160; Horton, 2011 WL 1899760, at
*3.

Even if the plaintiff's challenges to ¶ 13 were proper
objections, 35th PAC has met its burden to show that it will be
possible to put the information contained in ¶ 13 into an
admissible form at trial.  Mr. Eckert will be able to testify at
trial as to the foundation for his testimony regarding his
team's research, understanding, and belief, and thus he will
also be able to testify as to what his team's research,
understanding, and belief as to the nature of the plaintiff's
conviction was, which testimony the plaintiff may attempt to
impeach.  Accordingly, the court overrules the plaintiff's
objection to ¶ 13.

c.    Paragraph 14

The plaintiff next challenges ¶ 14 of Mr. Eckert's
affidavit, which states:

14)  I had no knowledge that [the plaintiff]'s
criminal conviction may not have classified [him]
as a "felon" for purposes of how that term is
defined under federal and West Virginia law.

ECF No. 892-2 ¶ 14.  As with ¶ 9, the plaintiff challenges Mr.
Eckert's averment in ¶ 14 on the ground that it is inconsistent

18

with the Charleston Gazette-Mail's August 25, 2017 article.  <u>See</u>
ECF No. 929 at 3-4.  He also argues that the averment is
"incongruous" with another Charleston Gazette-Mail article
correctly identifying him as a misdemeanant, to which he claims
the August 25, 2017 article provides a hyperlink.  <u>See</u> <u>id.</u> at 4.

The court again concludes that the plaintiff has not
advanced a proper objection.  On its face, Mr. Eckert's averment
in ¶ 14 regarding his knowledge of the nature of the plaintiff's
conviction is not inconsistent with the August 25, 2017 article.
Nor is his averment incongruous with the possibility that
another Charleston Gazette-Mail article – which is not in the
record – identified the plaintiff as a misdemeanant.  No
evidence in the record suggests that Mr. Eckert reviewed this
phantom article or was even aware of it.  At most, the article
might provide a basis for challenging Mr. Eckert's credibility
regarding his knowledge of the nature of the plaintiff's
conviction.  But, even acknowledging this potential challenge,
Mr. Eckert's averment in ¶ 14 is not so incredible that it could
not be accepted by reasonable minds, and thus the plaintiff's
challenge to ¶ 14 is meritless.  <u>See</u> <u>Nnadozie</u>, 730 F. App'x at
160; <u>Horton</u>, 2011 WL 1899760, at *3.

Even assuming the plaintiff's challenge to ¶ 14 were a
proper objection, 35th PAC has shown that it will be possible to

19

put the information contained therein into an admissible form at
trial.  Mr. Eckert would be able to testify at trial as to his
own knowledge, and the plaintiff would be able to attempt to
impeach him.  Accordingly, the court overrules the plaintiff's
objection to ¶ 14.

        d.   <u>Paragraph 16</u>

        Lastly, the plaintiff challenges ¶ 16 of Mr. Eckert's
affidavit, which states:

> 16)  The communication did not knowingly incorrectly
> refer to [the plaintiff] as a felon, as it is my
> practice as an experienced communication
> professional to always seek to make accurate
> statements in my organization's communications.

ECF No. 892-2 ¶ 16.  The plaintiff challenges this paragraph on
the ground that portions of it are not based on Mr. Eckert's
personal knowledge.  <u>See</u> ECF No. 929 at 2-3.  He argues that Mr.
Eckert has not laid a sufficient foundation to make averments
regarding statements in "communications" made by his
"organization[]."  <u>See</u> <u>id</u>.  The plaintiff further argues that
Mr. Eckert's averment that the Tweet did not knowingly
incorrectly refer to the plaintiff as a felon is
"irreconcilable" with the Charleston Gazette-Mail's August 25,
2017 article as well as the other, hyperlinked Charleston
Gazette-Mail article.  <u>See</u> <u>id.</u> at 4.

Yet again, the court is not persuaded that the plaintiff's challenge advances a proper objection.  With respect to Mr. Eckert's personal knowledge, the court concludes, as it has with regard to the averment in ¶ 13, that Mr. Eckert's averments as to his duties in relation to vetting 35th PAC's communications prior to dissemination provide sufficient foundation for him to testify regarding statements made in 35th PAC's communications.  See ECF No. 892-2 ¶¶ 2, 5-6, 15.  With respect to the two Charleston Gazette-Mail articles, the court concludes, as it has previously, that Mr. Eckert's averment that the Tweet was not knowingly incorrect regarding the nature of the plaintiff's conviction is not irreconcilable with either article and that, to the extent Mr. Eckert's credibility regarding his knowledge might be challenged based on the articles, his averment is not so incredible that it could not be accepted by reasonable minds.  See Nnadozie, 730 F. App'x at 160; Horton, 2011 WL 1899760, at *3.  Thus, the court concludes that the plaintiff's challenge to ¶ 16 is meritless.

Even if Mr. Eckert's averment in ¶ 16 were susceptible to an objection, the court concludes that 35th PAC has shown that it will be possible to put the information contained in ¶ 16 into an admissible form at trial.  Mr. Eckert will be able to testify at trial as to the foundation for his testimony

regarding statements made in 35th PAC's communications.  He thus will also be able to testify as to 35th PAC's knowledge at the time the Tweet was published.  Accordingly, the court overrules the plaintiff's objection to ¶ 16.

## B.    Motion for Summary Judgment

### 1.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In deciding a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party.  See Tolan v. Cotton, 572 U.S. 650, 651, 657 (2014) (per curiam).

### 2.    Conspiracy claims

As explained earlier, the plaintiff's complaint asserts two conspiracy claims against 35th PAC.  Under West

Virginia law, "[a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  Syl. pt. 8, <u>Dunn v. Rockwell</u>, 689 S.E.2d 255, 259 (W. Va. 2009).  "A civil conspiracy is not a <u>per se</u>, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Syl. pt. 9, <u>Dunn</u>, 689 S.E.2d at 259.

In its summary judgment briefing, 35th PAC argues that it is entitled to summary judgment on the conspiracy claims because the plaintiff has adduced no evidence that it conspired or even interacted with Mr. McLaughlin, NRSC, or any other person or entity regarding the events giving rise to this lawsuit.  35th PAC further points to evidence that it did not engage in the alleged conspiracy, including its discovery responses stating that it has no records or knowledge of any communications between 35th PAC and NRSC or Mr. McLaughlin, <u>see</u> ECF No. 892-4 at 9-10, as well as affidavits from Mr. Eckert and 35th PAC treasurer Charles Gantt, averring that they did not engage in the alleged conspiracy and that they know of no one else connected with 35th PAC who did so, <u>see</u> ECF No. 892-1 ¶¶ 5-

6; ECF No. 892-2 ¶¶ 18-19.  The plaintiff does not respond to these arguments and points to no evidence of a conspiracy.

The court concludes that 35th PAC has met its initial burden of demonstrating the absence of a genuine issue of material fact with respect to the conspiracy claims and has shifted the burden to the plaintiff and that the plaintiff has failed to meet his burden to demonstrate the existence of a genuine dispute regarding the claims.  See Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986) (describing burdens in summary judgment context).  Accordingly, 35th PAC is entitled to summary judgment on the conspiracy claim in Counts I and II of the amended complaint.

### 3.   Defamation

Defamation is "[a] false written or oral statement that damages another's reputation."  Pritt v. Republican Nat. Comm., 557 S.E.2d 853, 861 n.12 (W. Va. 2001) (quoting Black's Law Dictionary 427 (7th ed. 1999)).  Defamation published in written form constitutes libel.  Syl. Pt. 8, Greenfield v. Schmidt Baking Co., 485 S.E.2d 391, 394 (W. Va. 1997).

West Virginia law identifies three types of plaintiffs in defamation cases: (1) public officials and candidates for

public office, (2) public figures, and (3) private individuals. See Syl. Pt. 10, Hinerman v. Daily Gazette Co., 423 S.E.2d 560, 564 (W. Va. 1992); see generally Wilson v. Daily Gazette Co., 588 S.E.2d 197 (W. Va. 2003) (discussing types of public figures in defamation suits).  The first step in assessing a claim for defamation is to determine whether the plaintiff is a private individual or is instead a candidate for public office, a public official, or a public figure.  See Zsigray v. Langman, 842 S.E.2d 716, 722 (W. Va. 2020).  35th PAC asserts that the plaintiff in this case qualifies as a candidate for public office and may qualify as a public figure, and the plaintiff does not contest these designations.[10]  See ECF 916 at 4; see also, ECF 953 at 14.  Inasmuch as the statements at issue herein occurred prior to the primary election, it is clear that Mr. Blankenship qualifies as a candidate for public office.

---

[10] Indeed, based on the allegations in the complaint, the court previously determined, by its order of March 31, 2020, that the plaintiff qualifies as a candidate for public office and "may also qualify as a public figure in West Virginia based on his 'prominence and notoriety'".  See ECF No. 398 at 17 (citing State ex rel. Suriano v. Gaughan, 480 S.E.2d 548, 556 (W. Va. 1996)).

Moreover, as Mr. Blankenship concedes, his notoriety in the state of West Virginia, his pervasive involvement in the national political arena, and the extensive national media attention he has received as evidenced by this action make clear that he also qualifies as a public figure.  See Wilson, 588 S.E.2d at 205 (explaining that an individual's "general fame or notoriety in the state and pervasive involvement in the affairs of society" renders that individual an "all-purpose public figure" in a defamation action.).  Regardless of whether Mr. Blankenship is referred to as a candidate for public office or public figure, the First Amendment protections are the same for each.  See Gertz v. Robert Welch, Inc., 418 U.S. 323, 336 (1974) (noting the test set forth in New York Times v. Sullivan applies to both "criticism of 'public figures' as well as 'public officials.'"); see also Monitor Patriot Co. v. Roy, 401 U.S. 265, 271 (1971) (noting that it "might be preferable to categorize a candidate for [public office] as a 'public figure,'" as opposed to a public official, "if for no other reason than to avoid straining the common meaning of words. But . . . it is abundantly clear that, whichever term is applied, publications concerning candidates [for public office] must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office.").

To recover in a defamation action, a plaintiff who qualifies as a candidate for public office must prove that:

> (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion;[11] (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false.

Syl. Pt. 5, Chafin v. Gibson, 578 S.E.2d 361, 363 (W. Va. 2003) (per curiam) (emphasis omitted) (quoting Syl. Pt. 1, Hinerman, 423 S.E.2d at 563); accord Syl. Pt. 7, Pritt, 557 S.E.2d at 855; see also State ex rel. Suriano, 480 S.E.2d at 561 (setting forth

---

[11] In its March 31, 2020, memorandum opinion and order, the court concluded that the challenged statements identified in Mr. Blankenship's complaint are capable of defamatory meaning and may also be considered defamatory per se because they impute a felony conviction.  See ECF 398 at 18-20.  To the extent any of the statements could be considered opinions, the court concluded "they are based on a 'provably false assertion of fact' and thus are not absolutely protected under the First Amendment." Id. at 20.  The court incorporates its previous findings herein and concludes that the challenged statement is not only capable of defamatory meaning but constitutes defamation per se as a matter of law.  The court recognizes that Mr. Blankenship was convicted of a misdemeanor offense, which amounts to a criminal conviction.  Nonetheless, inasmuch as "a felony conviction carries significantly greater legal consequences than a misdemeanor does," the court concludes the per se rule remains applicable.  Myers v. The Telegraph, 332 Ill.App.3d 917, 773 N.E.2d 192, 197 (2002) (concluding the defamation per se rule should still apply given the "little, if any, practical difference between falsely accusing a person of committing a crime and falsely attributing a felony conviction to a person who pleaded guilty only to a misdemeanor.")

nearly identical elements in a defamation action involving a limited purpose public figure).  Further, the Supreme Court of Appeals of West Virginia has also held that, to sustain a defamation action, a plaintiff who qualifies as a candidate for public office must also prove that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material."  Syl. Pt. 4, Chafin, 578 S.E.2d at 363 (quoting Syl. Pt. 1, Sprouse v. Clay Commc'n Inc., 211 S.E.2d 674, 679 (1975)); accord Syl. Pt. 6, Pritt, 557 S.E.2d at 855; see also State ex rel. Suriano, 480 S.E.2d at 561 (noting a limited purpose public figure must also prove a publisher's intent to injure).  A plaintiff who qualifies as a candidate for public office must prove each of the elements of his claim by clear and convincing evidence.  See Chafin, 578 S.E.2d at 366-67; Pritt, 557 S.E.2d at 862; Hinerman, 423 S.E.2d at 572-73.

        Of particular note here, to satisfy the essential elements of a defamation cause of action, a plaintiff who qualifies as a candidate for public office must prove "actual malice" on the part of the publisher, that is, that the publisher made the defamatory statement "'with knowledge that the statement was false or with reckless disregard of whether it was false or not.'"  Chafin, 578 S.E.2d at 366 (brackets

omitted) (quoting <u>N.Y. Times v. Sullivan</u>, 376 U.S. 254, 280 (1964)).  The actual malice standard derives from the United States Supreme Court's decision in <u>Sullivan</u> and its progeny, which, as recognized by the West Viriginia Supreme Court of Appeals, **"placed a [F]irst [A]mendment, free speech gloss upon all prior law of defamation."**  <u>Havalunch, Inc. v. Mazza</u>, 294 S.E.2d 70, 73 (W. Va. 1983); <u>see</u> <u>id.</u> (noting that **First Amendment concerns and concomitant protections provided by the actual malice standard, are at their "strongest" when the statement at issue concerns** "a public official or candidate for office because of the need for full, robust, and unfettered public discussion of persons holding or aspiring to offices of public trust.").  Thus, "'application of the state law of defamation' is limited . . . by the First Amendment," <u>CACI Premier Tech., Inc. v. Rhodes</u>, 536 F.3d 280, 293 (4th Cir. 2008) (quoting <u>Milkovich v. Loarin Journal Co.</u>, 497 U.S. 1, 14 (1990)), and the court applies federal law in assessing the element of actual malice, <u>see</u> <u>Berisha v. Lawson</u>, 973 F.3d 1304, 1314 n.6 (11th Cir. 2020).

A plaintiff who is a candidate for public office bears the heavy burden of proving actual malice by clear and convincing evidence.  <u>See</u> <u>CACI</u>, 536 F.3d at 293 (citing <u>Carr v. Forbes, Inc.</u>, 259 F.3d 273, 282 (4th Cir. 2001); <u>see also</u> **<u>Carr</u>,**

259 F.3d at 282 (4th Cir. 2001) ("Establishing actual malice is no easy task . . . ."). At the summary judgment stage, the appropriate inquiry for the court is "whether the evidence in the record could support a reasonable jury finding . . . that the plaintiff has shown actual malice by clear and convincing evidence." Anderson, 477 U.S. at 255-56; see Harte-Hanks Commc'ns v. Connaughton, 491 U.S. 657, 685 (1989) ("The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law.").

Here, 35th PAC argues that the plaintiff has not adduced evidence from which a jury could reasonably find actual malice under a clear and convincing evidence standard. Specifically, 35th PAC argues that the plaintiff has not adduced evidence that Mr. Eckert, or any other 35th PAC employee, knew at the time Mr. Eckert published his Tweet that its reference to the plaintiff as a felon was false or misleading. Nor, 35th PAC asserts, has the plaintiff adduced sufficient evidence to permit the conclusion that Mr. Eckert or any other 35th PAC employee in fact entertained serious doubts as to the Tweet's truth. See St. Amant v. Thompson, 390 U.S. 727, 731 (1968) (discussing reckless-disregard definition); see also Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 511 n.30 (1984) (defining

"reckless disregard" as when the defendant "subjectively
entertained serious doubt as to the truth of his statement");
CACI, 536 F.3d at 300 (explaining that reckless disregard
requires "sufficient evidence to permit the conclusion that the
defamatory statement was 'made with a high degree of awareness
of its probable falsity" (brackets omitted) (quoting Garrison v.
Louisiana, 379 U.S. 64, 74 (1964))).

        35th PAC points to evidence that Mr. Eckert did not
know that the Tweet was false when he published it and that he
did not publish the Tweet with reckless disregard for its
potential falsity.  35th PAC notes that, in his affidavit, Mr.
Eckert avers that he had no knowledge that the plaintiff's
conviction might not be classified as a felony; that he did not
refer to the plaintiff's conviction as a felony knowing that it
was not a felony; and that the Tweet's reference to the
plaintiff as a felon was based on his recollection of articles
referring to the plaintiff as a felon as well as research and
vetting performed by 35th PAC's employees and counsel.  See ECF
No. 892-2 ¶¶ 6, 8-9, 13-16.

        In response, the plaintiff argues that evidence of
actual malice is demonstrated by the fact that Mr. Eckert "did
nothing to investigate the accuracy of his [Tweet]."  ECF No.
916 at 5.  He also argues that Mr. Eckert's averments that he

relied on 35th PAC's vetting process and had read previous
articles describing the plaintiff as a felon "appear[] dubious."
Id.

        The court is not persuaded by the plaintiff's
arguments.  First, the plaintiff's arguments cannot be squared
with the only evidence in the record on these issues, namely,
Mr. Eckert's affidavit, in which he avers that 35th PAC did
investigate the accuracy of the Tweet by, among other things,
monitoring articles about the plaintiff and vetting the Tweet
through counsel.  See ECF No. 892-2 ¶¶ 6, 8-9, 15.  Second,
because "[a]ctual malice is a subjective standard," Reuber v.
Food Chem. News, Inc., 925 F.2d 703, 714 (4th Cir. 1991) (en
banc), a publisher's "failure to investigate before publishing,
even when a reasonably prudent person would have done so, is not
sufficient to establish reckless disregard" on its own.  Harte-
Hanks Commc'ns, 491 U.S. at 688, 692.[12]  Thus, the plaintiff's

_____

[12] More specifically, "'[t]he failure to investigate, where there
was no reason to doubt the accuracy of the sources used[,]
cannot amount to reckless conduct.'"  Horne v. WTVR, LLC, 893
F.3d 201, 211 (4th Cir. 2018) (emphasis added) (internal
quotation marks, brackets, and ellipsis omitted) (quoting Church
of Scientology Int'l v. Daniels, 992 F.2d 1329, 1334 (4th Cir.
1993); see also Ryan v. Brooks, 634 F.2d 726, 734 (4th Cir.
1980) ("As long as the sources of the libelous information
appeared reliable, and the defendant had no doubts about its
accuracy, the courts have held the evidence of malice
insufficient to support a jury verdict, even if a more thorough
investigation might have prevented the admitted error."); id.
(collecting cases).  However, "[a]lthough failure to investigate

argument that Mr. Eckert failed to investigate the accuracy of

his Tweet, even if supported by citation to record evidence, is

insufficient to demonstrate actual malice.

The plaintiff also appears to argue that the "personal

nastiness" exhibited in the Tweet is evidence of "malice."  ECF

No. 916 at 5.  The court is not persuaded by this argument

either.  The United States Supreme Court has "emphasiz[ed] that

the actual malice standard is not satisfied merely through a

showing of ill will or 'malice' in the ordinary sense of the

term."  Harte-Hanks, 491 U.S. at 666; see also Daniels, 992 F.2d

at 1335 ("[E]vidence . . .  show[ing] that [the publisher]

bore ill will toward [the plaintiff] does not help [the

plaintiff's] claim.").[13]  Here, because the plaintiff relies only

---

will not alone support a finding of actual malice, the
purposeful avoidance of the truth" may.  Harte-Hanks, 491 U.S.
at 692 (internal citation omitted).  Thus, "'[r]ecklessness may
be found where there are obvious reasons to doubt the veracity
of the informant or the accuracy of his reports.'"  Horne, 893
F.3d at 211 (alteration omitted) (quoting CACI, 536 F.3d at
300).  Here, the plaintiff has not argued, let alone adduced
evidence supporting the notion, that there were obvious reasons
for Mr. Eckert to doubt the accuracy of prior articles or the
vetting process 35th PAC employed.

[13] Although, without more, mere evidence of ill will is
insufficient to demonstrate actual malice, when accompanied by
additional circumstantial evidence, it may still be relevant to
the question of whether actual malice exists.  See Spirito v.
Peninsula Airport Comm'n, 350 F. Supp. 3d 471, 482 (E.D. Va.
2018); see also Harte-Hanks, 491 U.S. at 668 ("[I]t cannot be
said that evidence concerning motive or care never bears any
relation to the actual malice inquiry.").

on evidence that the Tweet was borne from ill will, he has failed to adduce sufficient evidence that could reasonably support a jury finding of actual malice by clear and convincing evidence.  Accordingly, 35th PAC is entitled to summary judgment on the plaintiff's defamation cause of action.

### 4.   False light invasion of privacy

West Virginia recognizes a legally protected interest in privacy.  Tabata v. Charleston Area Med. Ctr., Inc., 759 S.E.2d 459, 464 (W. Va. 2014).  "Publicity which unreasonably places another in a false light before the public is an actionable invasion of privacy."  Syl. Pt. 12, Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 74 (W. Va. 1983).  Although the West Virginia Supreme Court of Appeals has not definitively set forth elements for the cause of action, it appears that, for a plaintiff who qualifies as a candidate for public office to establish a case for a false light invasion of privacy, he must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread, (3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be "highly offensive to a reasonable person," and (5) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized

matter and the false light in which the [plaintiff] would be placed" (i.e., actual malice).  Taylor v. W. Virginia Dep't of Health & Human Res., 788 S.E.2d 295, 315–16 (W. Va. 2016) (citing Restatement (Second) of Torts § 652E (1977)); see Crump, 320 S.E.2d at 87–88.

Although "false light invasion of privacy is a distinct theory of recovery entitled to separate consideration and analysis," claims of false light invasion of privacy are similar to defamation claims, and courts often treat them in essentially the same manner as they treat defamation claims. Crump, 320 S.E.2d at 87.  As the West Virginia Supreme Court of Appeals has recognized, the First Amendment-derived actual malice standard announced in Sullivan applies to claims for false light invasion of privacy brought by plaintiffs who are public officials or public figures.  See Crump, 320 S.E.2d at 88–89 (citing Curtis Publ'g Co. v. Butts, 388 U.S. 130 (1967); Time, Inc. v. Hill, 385 U.S. 374 (1967)).

Thus, to withstand summary judgment on his false light invasion of privacy claim, the plaintiff, as a matter of federal constitutional law, must adduce sufficient evidence that could reasonably support a jury finding of actual malice by clear and convincing evidence.  See Anderson, 477 U.S. at 255–56; see also Howard v. Antilla, 294 F.3d 244, 248–49, 252 (1st Cir. 2002)

(requiring actual malice to be proved by clear and convincing evidence for false light invasion of privacy claim); <u>Solano v. Playgirl, Inc.</u>, 292 F.3d 1078, 1084 (9th Cir. 2002) (same); <u>Ashby v. Hustler Mag., Inc.</u>, 802 F.2d 856, 860 (6th Cir. 1986) (same); <u>Douglass v. Hustler Mag., Inc.</u>, 769 F.2d 1128, 1140 (7th Cir. 1985) (same); <u>cf. Parson v. Farley</u>, 800 F. App'x 617, 623 (10th Cir. 2020) (affirming jury instructions requiring actual malice to be proved by clear and convincing evidence for false light invasion of privacy claim); <u>Peoples Bank & Tr. Co. of Mountain Home v. Globe Int'l Publ'g, Inc.</u>, 978 F.2d 1065, 1067 & n.2 (8th Cir. 1992) (same).

As explained earlier, the plaintiff has failed to adduce sufficient evidence that could reasonably support a jury finding of actual malice by clear and convincing evidence. Accordingly, 35th PAC is entitled to summary judgment on the plaintiff's cause of action for false light invasion of privacy.

### III. Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's motion to strike (ECF No. 929) be, and hereby is, denied and that 35th PAC's motion for summary judgment (ECF No. 892) be, and hereby is, granted.  It is further ORDERED that

35th PAC be, and hereby is, dismissed as a defendant in this action.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: February 2, 2022

John T. Copenhaver, Jr.
Senior United States District Judge