<u>**PUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1198**

---

DON BLANKENSHIP,

                Plaintiff – Appellant,

     v.

NBCUNIVERSAL, LLC; CNBC, LLC,

                Defendants – Appellees,

     and,

DOES 1 - 50, inclusive,

                Defendant.

---

**No. 22-1207**

---

DON BLANKENSHIP,

                Plaintiff – Appellant,

FOX NEWS NETWORK, L.L.C.; CABLE NEWS NETWORK, INCORPORATED; MSNBC CABLE LLC; WP COMPANY LLC, d/b/a The Washington Post; DOES 1-50, inclusive; MEDIAITE, LLC; FISCALNOTE, INC., d/b/a Roll Call; NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER,

                Defendants – Appellees,

     and,

HONORABLE ANDREW NAPOLITANO, (Ret.); NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; ASSOCIATED PRESS; BOSTON GLOBE
MEDIA PARTNERS, LLC; BREITBART NEWS NETWORK, LLC; CLARITY
MEDIA GROUP, INC.; THE WASHINGTON TIMES, LLC; TRIBUNE
PUBLISHING COMPANY, LLC; LOS ANGELES TIMES COMMUNICATIONS,
LLC; NEIL CAVUTO; CHRIS HAYES; SARAH ELIZABETH CUPP;
BRADLEY BLAKEMAN; JOHN LAYFIELD; STEPHANIE HAMILL;
KEVIN MCLAUGHLIN; LEIGH ANN CALDWELL; MICHAEL PATRICK LEAHY;
JOSH DAWSEY; JENNA JOHNSON; BEN WOLFGANG; MICHAEL WARREN;
CATHLEEN DECKER; NBCUNIVERSAL, LLC; CNBC, LLC; DEMOCRATIC
SENATORIAL CAMPAIGN COMMITTEE; THE NATIONAL JOURNAL
GROUP, LLC; WATAUGA WATCH; DOWN WITH TYRANNY; NATIONAL
PUBLIC RADIO, INCORPORATED; THE GUARDIAN NEWS & MEDIA, LLC;
DOW JONES & COMPANY, INCORPORATED, d/b/a Market Watch;
UNIVISION COMMUNICATIONS, INCORPORATED, d/b/a Splinter News;
INTERNATIONAL MEDIA INVESTMENTS FZ, LLC, d/b/a The National; THE
DAILY BEAST COMPANY LLC; HEARST MAGAZINE MEDIA, INC, d/b/a
Esquire Magazine; HAYRIDE MEDIA, LLC; NOWTHIS MEDIA, INC.;
THE UNION LEADER CORPORATION; CAPITOL HILL PUBLISHING, INC,
d/b/a The Hill; COMMIE GIRL INDUSTRIES, INC., d/b/a Wonkette; DAILY
MAIL AND GENERAL TRUST PLC; VICE MEDIA, LLC; THE 74 MEDIA, INC.,
d/b/a The 74 Million; BREAKFAST MEDIA, LLC; THE MCCLATCHY
COMPANY, d/b/a The Sacramento Bee; OBSERVER MEDIA GROUP, LLC, d/b/a
The Observer; GARNETT CO. INC., d/b/a York Daily Record; SALEM MEDIA
GROUP, INC., d/b/a Townhall; VERIZON MEDIA, LLC, d/b/a The Huffington
Post; JOY ANN LOMENA-REID; ZACK COLMAN; LAUREN PASSALACQUA;
BEN RAY; DAVID BERGSTEIN; COURTNEY RICE; JUSTIN LAVOIE;
JOHN KRUSHAAR; HOWIE KLEIN; SUSAN DAVIS; BEN JACOBS;
DAN RATHER; HOLLY FIGUEROA O'REILLY; JOE LOCKHART;
J. W. WILLIAMSON; RACHEL KONING BEALS; CHRIS JONES; JIM HEATH;
NICOLE HENSLEY; PAUL BLEST; RASHMEE ROSHAN LALL;
GIDEON RESNICK; DANA MILBANK; CHARLES PIERCE; MATT HOWERTON;
ELIZABETH MCDONALD; ROB PERSEY; JEN KERNS; DAVID MARTOSKO;
MARTIN PENGELLY; MATT TAYLOR; KEVIN MAHNKEN;
ANDREW FEINBERG; JOHN RABY; BEN BOYCHUK; AMBER PHILLIPS;
BRIAN SCHWARTZ; MICHELANGELO SIGNORILE; BRUCE BIALOSKY;
MIKE ARGENTO; DAVIS RICHARDSON; MARKETWATCH, INC.; 35TH INC.,

Defendants.

---

### No. 22-1326

---

DON BLANKENSHIP,

        Plaintiff – Appellant,

    v.

BOSTON GLOBE MEDIA PARTNERS, LLC; d/b/a The Boston Globe; DOES 1 - 50, inclusive,

        Defendants – Appellees.

---

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., Senior District Judge.  (2:20-cv-00278; 2:19-cv-00236; 2:19-cv-00589)

---

Argued:  December 7, 2022                 Decided:  February 22, 2023

---

Before GREGORY, Chief Judge, NIEMEYER, Circuit Judge, and Patricia Tolliver GILES, District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Giles joined.

---

**ARGUED:**  Eric Peter Early, EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP, Los Angeles, California, for Appellant.  Kevin Taylor Baine, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee.  **ON BRIEF:**  Jeremy J.F. Gray, Lisa M. Zepeda, Padideh Zargari, EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP, Los Angeles, California; Jeffrey S. Simpkins, SIMPKINS LAW, Williamson, West Virginia, for Appellant.  Stephen J. Fuzesi, Gloria K. Maier, Matthew D. Heins, Katelyn R. Adams, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellees American Broadcasting Companies, Inc.; Cable News Network, Inc.; Fox News Network LLC; MSNBC Cable, LLC; WP Company LLC; CNBC, LLC; and NBCUniversal, LLC.  Kelli L. Sager, Los Angeles, California, Eric Feder, DAVIS WRIGHT TREMAINE LLP,

Washington, D.C., for Appellee American Broadcasting, Inc.   Elbert Lin, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellee Fox News Network LLC. Jared M. Tully, Mary Claire Davis, Charleston, West Virginia, Ryan W. Goellner, Cincinnati, Ohio, Kevin T. Shook, FROST BROWN TODD LLC, Columbus, Ohio, for Appellees MSNBC Cable, LLC; CNBC, LLC; and NBCUniversal, LLC.  Lonnie C. Simmons, DIPIERO SIMMONS MCGINLEY & BASTRESS, PLLC, Charleston, West Virginia, for Appellees Mediaite, LLC and Tamar Auber.   Robert M. Bastress, III, DIPIERO SIMMONS MCGINLEY & BASTRESS, PLLC, Charleston, West Virginia, for Appellee The Charleston Gazette-Mail.    Jennifer S. Jackman, WHITEFORD, TAYLOR & PRESTON, LLP, Washington, D.C., for Appellee Eli Lehrer.    Allen M. Gardner, LATHAM & WATKINS LLP, Washington, D.C., for Appellees Fiscal Note, Inc. and Griffin Connolly.  Chris Vlahos, Jenna Harris, RITHOLZ LEVY FIELDS, LLP, Nashville, Tennessee; William D. Wilmoth, STEPTOE & JOHNSON, PLC, Wheeling, West Virginia, for Appellee News and Guts, LLC.

**ARGUED:**  Eric Peter Early, EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP, Los Angeles, California, for Appellant.   Jonathan M. Albano, MORGAN LEWIS & BOCKIUS, LLP, Boston, Massachusetts, for Appellees. **ON BRIEF:** Jeremy J.F. Gray, Lisa M. Zepeda, Padideh Zargari, EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP, Los Angeles, California; Jeffrey S. Simpkins, SIMPKINS LAW OFFICE PLLC, Williamson, West Virginia, for Appellant.  Andrew M. Buttaro, MORGAN, LEWIS & BOCKIUS LLP, Boston, Massachusetts; David K. Henderson, Barbara A. Samples, HENDRICKSON & LONG, PLLC, Charleston, West Virginia, for Appellees.

---

GREGORY, Chief Judge:

Following an unsuccessful campaign for one of West Virginia's U.S. Senate seats, Don Blankenship sued numerous media organizations and individual journalists, alleging defamation, false light invasion of privacy, and civil conspiracy. Blankenship's claims arise from misstatements of his criminal record: he was convicted and served one year in prison for a federal conspiracy offense that is classified as a misdemeanor, but Defendants made statements describing him as a "felon."

Most of the parties Blankenship initially named as Defendants were dismissed early in the litigation, and the sixteen Defendants who remained moved for summary judgment in their respective cases. The district court granted summary judgment to all sixteen Defendants after concluding they did not make the statements with actual malice. Those cases are now before us via two appeals: a consolidated appeal from the district court's decisions granting summary judgment to fifteen Defendants, and a separate appeal from the district court's grant of summary judgment to the Boston Globe. Although we heard oral argument on the appeals in *seriatim*, we consolidate the cases into this single opinion. Finding no error, we affirm.

I.

A.

Don Blankenship previously served as the CEO of Massey Energy Company, a large coal producer. During his tenure as CEO, a 2010 explosion at one of Massey Energy's mines in West Virginia, the Upper Big Branch Mine, killed twenty-nine miners.

Blankenship was indicted on several federal charges in the wake of the Upper Big Branch Mine disaster, including multiple felony counts.  A jury ultimately convicted him of conspiracy to violate federal mine safety laws and regulations, a Class A misdemeanor, but acquitted him of the felony charges.  *See United States v. Blankenship*, 846 F.3d 663, 666–67 (4th Cir. 2017) (affirming conviction), *cert. denied*, 138 S. Ct. 315 (2017).  Blankenship was sentenced to one year in federal prison (the statutory maximum), with another year of supervised release, and was fined $250,000.  He served his sentence at the Taft Correctional Institution in California; of the approximately 2,400 inmates in the prison, Blankenship maintains he was the only one who was not serving a sentence for a felony conviction. Blankenship was released from prison in 2017.

In January 2018, while still on supervised release, Blankenship announced his plans to run for the U.S. Senate in West Virginia.  As a candidate in the Republican primary, he attracted public attention for comments he made about Senator Mitch McConnell and then-Secretary of Transportation Elaine Chao.  Then-President Trump, Senator McConnell, and other prominent Republicans publicly criticized Blankenship and urged West Virginians to support another candidate in the May 8 primary election.  Blankenship ultimately lost the primary election, finishing in third place.  He later tried to run in the general election as the Constitution Party candidate but was unable to get on the ballot.

During Blankenship's Senate campaign, numerous media organizations and journalists broadcast or published statements that referred to him as a "felon" or "convicted felon," even though Blankenship's conviction was classified as a misdemeanor. Defendants are sixteen of those organizations and individuals:  Fox News, MSNBC, CNN, the

6

Washington Post, ABC, News & Guts, Eli Lehrer, Mediaite, Tamar Auber, Griffin Connolly, FiscalNote, HD Media, NBCUniversal, CNBC, 35th PAC, and the Boston Globe. Although Defendants' references to Blankenship's criminal history closely resemble one another, we must consider the facts surrounding each individual statement in turn.

1.

Fox News broadcast several statements that referred to Blankenship as a felon or otherwise misstated his criminal record. First, during an April 25, 2018 appearance on Fox News's *Outnumbered* program, Andrew Napolitano, a Senior Judicial Analyst for the network, remarked that Blankenship "went to jail for Manslaughter after people died in a mine accident." J.A. 3878.[1] Later that day, Blankenship's campaign contacted Fox News and demanded a correction because Blankenship had been convicted of conspiracy to violate federal mine safety laws and regulations, not manslaughter. Upon learning of his mistake, Napolitano expressed a desire to appear on the network to set the record straight. On April 30, his producer emailed producers of multiple Fox News programs to ask if Napolitano could discuss the details of Blankenship's conviction, including one specific request to correct the record, but the producers of those shows were interested in different topics and did not grant his requests.

On May 3, Antonia Ferrier—an aide to Senator McConnell—emailed Martha MacCallum, the host of Fox News's *The Story with Martha MacCallum*. Ferrier

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in the consolidated appeal. Citations to the "G.J.A." refer to the Joint Appendix filed by the parties in the separate Boston Globe appeal.

wrote that McConnell was "pretty ticked" about Blankenship making public comments attacking Chao, McConnell's wife.   J.A. 3928.   On May 4, Fox News contributors Karl Rove and Tammy Bruce appeared on *The Story* and criticized Blankenship, but did not mischaracterize his conviction.  The next day, McConnell emailed Rove and thanked him for his "comments on Martha's show last night."  J.A. 3806.

On May 6, Fox News Chairman Rupert Murdoch emailed two senior executives at the network, writing:  "Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.  Anything during day helpful but Sean and Laura dumping on him hard might save the day."[2]  J.A. 4052.  Earlier that day, Murdoch had received an email stating that "convicted felon" Don Blankenship was "surging in the GOP primary polling," J.A. 4050, but Murdoch did not repeat the "convicted felon" language in his email to the two executives.

On May 7, anchor Neil Cavuto discussed Blankenship during a telecast of his Fox News show *Cavuto Coast to Coast*.  Returning from a commercial break, Cavuto opened: "The president warning Republicans, you know what, we're going to lose West Virginia if Don Blankenship is allowed to win the primary and he does win the primary.  Don Blankenship, of course, is arguing that he's the best qualified for this.  Of course, he's a convicted felon." J.A. 3466.  A couple weeks earlier, on April 25, Fox News correspondent Peter Doocy had appeared alongside Cavuto on the show *Your World with Neil Cavuto* and noted that

---

[2] We understand that Murdoch was referring to Sean Hannity and Laura Ingraham, who anchored evening programs on Fox News at the time.  Blankenship does not allege that either Hannity or Ingraham ever defamed him.

Blankenship "recently served a year in jail on a misdemeanor conviction tied to his role in a mine collapse that killed 29 people." J.A. 3861–62. In addition, on May 2, Cavuto had received a ten-page briefing packet about the 2018 primary elections that described Blankenship as seeking "vindication for his 2015 conviction on a misdemeanor charge related to the Upper Big Branch Mine explosion that killed 29 miners." J.A. 3867.

Between May 7 and May 9, four other Fox commentators also referred to Blankenship as a "felon" or "convicted felon" on air. During the May 7 broadcast of *The Evening Edit* on Fox Business Network, John Layfield described Blankenship as a "felon who's got a probation officer, who could end up in Congress." J.A. 3567. Bradley Blakeman also called Blankenship a "felon" during that same show. J.A. 3564. On the May 7 broadcast of Fox Business Network's *Making Money*, Stephanie Hamill referred to Blankenship as a "convicted felon." J.A. 3570. And on May 9, the day after the West Virginia Senate primary, Elizabeth MacDonald called Blankenship a "felon" on *The Evening Edit*. J.A. 3573.

On May 22, two weeks after the primary election, Cavuto interviewed Blankenship on air during *Your World*. The interview included the following exchange:

> BLANKENSHIP: And it's very disappointing that the news media and this network as well continues to tell people I'm a felon, which—I've never been convicted of a felony. I'm probably less likely to be a felon than anyone, given that I was investigated for four and a half years and they couldn't find anything.
>
> CAVUTO: So what are you if you've served time in jail?
>
> BLANKENSHIP: A misdemeanor [sic]. The only misdemeanor to serve time at a felon prison in California. So I think that should tell us something

9

as well when they're sending misdemeanors to prison so they can't continue to communicate for a year is—is pretty telling.

CAVUTO:   You know, there are those who would disagree with that portrayal, sir.  Saying that it's a little bit bigger than a misdemeanor when 29 people are killed in a mining accident in 2010 for which you—or your company, more to the point, was held accountable for violating safety standards and the rest.  You don't agree with that, and obviously you felt that way afterwards.  But that would be a little more than a misdemeanor, right?

J.A. 3552–53, 5671.  Immediately after the interview, Napolitano appeared on *Your World*. He told Cavuto:  "Let me say first that Don Blankenship is correct.  I once inadvertently said on air that he was a convicted felon.[3]  He was not.  He was acquitted of the charges, the felony charges against him.  The only thing he was convicted of was a misdemeanor." J.A. 5669.  Cavuto responded, "So, just serving a year in jail doesn't make you a convicted felon?"  *Id.*  Napolitano replied, "That's correct."  J.A.  5670.

2.

The record shows that two MSNBC anchors—Joy Reid and Chris Hayes—referred to Blankenship as a "convicted felon."  Reid made such a statement while she was guest-hosting the show *All In with Chris Hayes* on May 4, 2018.  For his part, Hayes described Blankenship as a "convicted felon" during the April 23 and May 9, 2018 broadcasts of *All In*.  Hayes also posted a tweet to his personal Twitter account on April 16, 2018, that called Blankenship "a felonious coal baron found responsible for dozens of miners' deaths."  J.A. 811.

---

[3] There is no evidence that Napolitano ever called Blankenship a "convicted felon" on air.  The only misstatement by Napolitano in the record is his April 25 remark that Blankenship was convicted of manslaughter.  That appears to be the statement Napolitano was referring to when speaking to Cavuto on May 22.

Hayes had some familiarity with Blankenship prior to 2018. He interviewed Blankenship in 2014, and he exchanged emails about Blankenship with members of the *All In* staff in 2015 and 2016. In December 2015, Denis Horgan, *All In*'s executive producer, sent Hayes and other staff members a New York Times article that reported on Blankenship's conviction. Hayes replied: "He only got nailed on the misdemeanor, tho. Probably not a day in jail." J.A. 845. That email exchange predated Blankenship's sentencing. Later, in an April 2016 email to Hayes and other *All In* staff, producer Brendan O'Melia wrote that "[o]ur old friend Don Blankenship [is] going to the cooler for a year." J.A. 903. Hayes also discussed Blankenship during the November 29, 2017 telecast of *All In*. During that show, *All In* displayed as on-screen graphics the headlines of two articles about Blankenship. The bodies of those articles—but not the headlines—briefly noted that he was convicted of a misdemeanor offense. Hayes apparently did not mention Blankenship's criminal record during the November 29 show.

In a recorded off-air conversation on April 23, 2018—hours before Hayes's first on-air statement calling Blankenship a felon—Hayes and *All In* producer Brian Montopoli discussed plans for a segment of that night's show. Montopoli suggested discussing "our old buddy Don Blankenship's ad," in which Blankenship made calls to arrest and imprison Hillary Clinton. J.A. 492. In response, Hayes remarked, "[T]hat is, like, convicted felon . . . Don Blankenship . . . the man who was found, you know, to have criminally violated the law in the mine that he owned that killed, you know, all those miners." *Id.* Montopoli replied, "Yeah." *Id.*

11

On May 10, 2018, one day after Hayes's second on-air reference to Blankenship as a "convicted felon," an MSNBC viewer emailed Hayes and stated:  "You mentioned that Blankenship was a Felon on your [show].  Unfortunately it was a misdemeanor[.]  Go figure!"  J.A. 847.  Hayes replied, "yes! Caught that after the show, but you're r[i]ght."  *Id.*  There is no evidence in the record that Hayes, Reid, or others at MSNBC publicly corrected the "felon" statements, or that Blankenship ever contacted the network to request a correction.

3.

Blankenship points to four occasions where CNN commentators made similar statements during television broadcasts.  The first occurred during the April 29, 2018 broadcast of *CNN Newsroom*.  While discussing the West Virginia Senate primary, host Dana Bash told the audience that Blankenship "reminds us [his conviction] was just a misdemeanor." J.A. 1383.  However, a few minutes later, commentator Kevin McLaughlin referred to Blankenship as a "convicted felon."  J.A.  1386.  Bash did not correct McLaughlin's statement on air.

S.E. Cupp, the host of the CNN show *S.E. Cupp Unfiltered*, called Blankenship a "felon" on two different occasions.  First, on May 2, 2018, *Unfiltered* played a clip of Blankenship speaking during a West Virginia debate, which showed him saying, "I've had a little personal experience with the Department of Justice; they lie a lot too."  J.A. 1458.  After the clip played, Cupp reacted by saying, "that's because you're a convict, you're a felon.  Oh my God."  *Id.*  Then, on the May 8 telecast of *Unfiltered*, Cupp remarked, "In case you missed it, a former coal baron and convicted felon is running for Senate in West

12

Virginia."  J.A. 1469.  Lastly, CNN commentator Joe Lockhart referred to Blankenship as

a "convicted felon" during the May 7 broadcast of *CNN Tonight*.  J.A. 1428.

There is no evidence in the record that Blankenship contacted CNN to request

corrections for any of these statements, or that CNN issued a correction.

4.

Blankenship takes issue with statements in two stories published by the Washington

Post.  On July 25, 2018, the Washington Post published an online article about Republican

primary candidates, written by reporters Jenna Johnson and Josh Dawsey, which described

Blankenship as "a former coal mine owner and felon."  J.A. 2051.  The same article

appeared in the Post's print edition two days later.  The record indicates that Dawsey

neither wrote nor reviewed the part of the article that contained this language.

A couple weeks later, on August 9, the Washington Post published a blog post by

Amber Phillips that identified Blankenship as one of three "convicted felons" who ran for

office in 2018.  J.A. 2079.  In an earlier story published on May 1, 2018, Phillips had

reported that Blankenship "just finished a year in prison after an explosion at one of his

mines killed 29 people" and that he "was convicted on a misdemeanor for conspiring to

violate mine safety laws."  J.A. 2298.  Between May 2 and May 6, Phillips also received

three mass-distribution emails that referred to Blankenship's conviction as a misdemeanor.

These emails contained detailed updates and commentary on the West Virginia primary

and other political topics, and they made only passing references to Blankenship's

conviction.  One of the three included the transcript for an entire episode of *Face the

Nation*, a weekly political news program on CBS.

13

There is no record evidence that Blankenship ever contacted the Washington Post to request a correction.   The Post issued corrections to both stories after learning of Blankenship's lawsuit in 2019.

5.

Blankenship's claims against ABC revolve around a single story.   On July 23, 2018, ABC published an article by reporter John Verhovek that discussed Blankenship's intentions to run for the Senate as a third-party candidate after he lost the Republican primary.   The article referred to Blankenship as "the former coal baron and convicted felon" and explained that he "was convicted in 2015 for conspiracy to violate mine safety and health standards in the aftermath of the 2010 Upper Big Branch Mine disaster that resulted in the death of 29 miners."   J.A. 2576.   ABC posted links to the article on Twitter and Facebook with descriptions that repeated the "convicted felon" language, and it used the same language in a description of the article in a daily politics email newsletter ABC distributed on July 24.

Verhovek had reported on or discussed Blankenship's criminal history on a few earlier occasions.   In a March 29, 2018 email to a colleague, Verhovek similarly referred to Blankenship as a "convicted felon."   J.A. 2577.   However, in early May, Verhovek had authored or co-authored three articles for ABC which noted that Blankenship was convicted of a misdemeanor.   Also in early May, Verhovek had received multiple emails from his ABC colleague Meridith McGraw that provided updates on the West Virginia primary campaign.   The emails, which McGraw sent to an internal email distribution list,

14

made passing references to Blankenship's conviction on a misdemeanor offense.  The distribution list received dozens of similar political updates each day.

Blankenship's campaign contacted McGraw to request a correction almost immediately after ABC published the July 23 article.  In a text to Verhovek, McGraw explained, "Don Blankenship is not a convicted felon.  He was found guilty of a misdemeanor charge. . . .  It's confusing because he was sent to a federal prison for his misdemeanor charge.  We should correct it!"  J.A. 2736.  Verhovek responded, "Meridith can you send me exact language on this?  Blankenship was sent to federal prison but he was not convicted of a felony?"  J.A. 2735.  Verhovek later apologized to McGraw for the mistake, writing: "Sorry about Blankenship, I thought I had it right on that or [had] seen it in an earlier story, that's my bad."  J.A. 2812.

6.

On appeal, Blankenship devotes almost no attention to the remaining ten Defendants in the consolidated action:  News & Guts, Eli Lehrer, Mediaite, Tamar Auber, Griffin Connolly, FiscalNote, HD Media, NBCUniversal, CNBC, and 35th PAC.  Like the others, these Defendants published articles during the 2018 Senate campaign cycle that described Blankenship as a "felon" or "convicted felon."

7.

Lastly, Blankenship's claims against the Boston Globe focus on a single published article.  The Globe had an agreement with the Associated Press ("AP") that allowed it to republish AP wire stories.  On May 21, 2018, the AP distributed a wire story written by John Raby that discussed Blankenship's possible third-party candidacy in the general

election.   Raby's story referred to Blankenship as a "convicted ex-coal baron" and explained that he "spent a year in federal prison for violating safety regulations in a 2010 mine explosion that killed 29 miners."  G.J.A. 356–59.

The Globe published a condensed version of the AP story on May 22.  While editing the original story, a Globe copy editor named Daniel Coleman changed the phrase "convicted ex-coal baron" to "convicted felon and former coal baron" and removed the description of Blankenship's prison sentence.  G.J.A. 346.  The Globe had previously published three articles which correctly reported that Blankenship was convicted of a misdemeanor but acquitted of felony charges.  Those articles are dated December 5, 2015, April 7, 2016, and May 8, 2018.

After Blankenship filed this lawsuit, the Globe published a correction clarifying that Blankenship's conviction was a misdemeanor.

B.

1.

In March 2019, Blankenship brought a diversity action in the federal district court against more than 100 media organizations, political action committees, and individuals. He alleged claims for defamation, false light invasion of privacy, and civil conspiracy under West Virginia law, arguing that Defendants' descriptions of him as a felon were false, were made with actual malice, and caused him injury by damaging his reputation and contributing to his defeat in the 2018 primary.  Blankenship voluntarily dismissed several original Defendants.  In March 2020, the district court dismissed his claims against many more Defendants (including most individual journalists and commentators) for lack of

16

personal jurisdiction, and dismissed his claims against NBCUniversal and CNBC without prejudice for insufficient service of process.  However, the court denied the remaining Defendants' Rule 12(b)(6) motions to dismiss.  Shortly thereafter, Blankenship refiled a separate action against NBCUniversal and CNBC.  The district court adjudicated both cases in tandem.

The parties conducted extensive discovery, during which Blankenship deposed numerous journalists and other employees affiliated with the organizational Defendants. Nearly all the journalists who made the challenged statements submitted declarations or were deposed, and while the precise contours of their testimony varied, all who provided such testimony asserted that they did not realize their descriptions of Blankenship as a felon were inaccurate at the time.  After discovery concluded, the remaining fifteen Defendants moved for summary judgment.

In three different opinions issued in February 2022, the district court granted summary judgment to all fifteen Defendants.  As to Blankenship's defamation claims, it first concluded that the Defendants' statements were materially false because they were "based on a provably false assertion of fact," and that they constituted defamation *per se* because they falsely attributed a felony offense to Blankenship that "carries significantly greater legal consequences than a misdemeanor."  J.A. 5640 (cleaned up); *see* J.A. 5689, 5764.  But after an extensive analysis of the record, it determined that Blankenship failed to offer sufficient evidence of actual malice to survive summary judgment.

Because Blankenship's false light invasion of privacy and civil conspiracy claims also required him to prove actual malice, the district court granted the Defendants summary

17

judgment on those claims as well.  Blankenship timely appealed the decisions, which were consolidated in a single appeal.

2.

Blankenship filed a separate action against the Boston Globe in West Virginia state court, alleging defamation and false light invasion of privacy (but not civil conspiracy). The Globe removed the case to the district court based on diversity of citizenship. Following discovery, the Globe moved for summary judgment.  As it did in the related cases, the district court granted summary judgment to the Globe after concluding Blankenship failed to show that the Globe acted with actual malice when publishing the inaccurate statement.  Blankenship timely appealed.

II.

This Court reviews de novo a district court's decision to grant summary judgment. *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).  At the summary judgment stage, we view all facts and make all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).  "Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (internal quotation marks omitted).  A party is entitled to summary judgment when "the nonmoving party has

18

failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

III.

A.

We start with Blankenship's defamation claims, which, like his other claims, rely on West Virginia law. To prevail in a defamation action in West Virginia,[4] a public-figure plaintiff like Blankenship must establish that the statements (1) contain a provably false assertion of fact and (2) were published with actual malice. *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853, 861–62 (W. Va. 2001).[5] A plaintiff must prove actual malice by clear and convincing evidence. *Id.* at 862.

At the outset, Defendants argue that we can affirm the district court's decisions on the alternative ground that none of the challenged statements were actionably false. The district court, of course, reached the opposite conclusion. But Defendants contend that a "felony" is often understood to refer colloquially to serious crimes, and that there is no question Blankenship's conviction and sentence were serious. *See Masson v. New Yorker*

---

[4] Technically, Blankenship's claims involving written statements constitute libel claims, but the relevant elements for both actions are identical. *See Greenfield v. Schmidt Baking Co.*, 485 S.E.2d 391, 393–94 (W. Va. 1997). For simplicity, we follow the parties' approach and use the term "defamation" to refer to all claims.

[5] In defamation cases involving plaintiffs who are candidates for public office, West Virginia law appears to additionally require that the defendant intended to injure the plaintiff by publishing the statement. *See Pritt*, 557 S.E.2d at 861. Defendants argue that Blankenship also failed to present sufficient evidence of an intent to injure. Because we conclude that Blankenship failed to create a jury question that any Defendant acted with actual malice, we do not need to address the intent-to-injure element.

*Mag., Inc.*, 501 U.S. 496, 516–17 (1991) (explaining that falsity turns on "the substance, the gist, the sting" of the words the defendant used). Here, we will simply assume that Defendants' statements satisfy the falsity element because we can instead resolve Blankenship's claims based on the actual malice element.

West Virginia's actual malice standard comports with First Amendment limitations on state defamation law, as articulated by the Supreme Court in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny. *See Havalunch, Inc. v. Mazza*, 294 S.E.2d 70, 73 (W. Va. 1983). To prove actual malice, Blankenship must show that Defendants made each statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 279–80. Reckless disregard exists where "the defendant in fact entertained serious doubts as to the truth of its publication" but nonetheless published it. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). In other words, the defendant must have had at least "a high degree of awareness of . . . probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989).

On summary judgment, we must apply the clear and convincing evidence standard when determining whether Blankenship has created a genuine issue of actual malice. To this end, we ask "whether the evidence presented is such that a reasonable jury might find that actual malice ha[s] been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Whether the evidence in the record is sufficient to permit such a finding is a question of law. *Harte-Hanks*, 491 U.S. at 685. We have explained that creating a jury question on actual malice "is no easy task." *Carr v. Forbes, Inc.*, 259 F.3d 273, 282 (4th Cir. 2001). To survive summary judgment, Blankenship must offer

"concrete" and "affirmative evidence" of actual malice, *Liberty Lobby*, 477 U.S. at 256–57, and that evidence must produce an "abiding conviction" that actual malice is "highly probable," *Cannon v. Peck*, 36 F.4th 547, 566 (4th Cir. 2022).   On appeal, we independently review the entire record to determine whether Blankenship has made this showing.  *Harte-Hanks*, 491 U.S. at 688; *Carr*, 259 F.3d at 283.

B.

Blankenship argues that the district court made a few recurring errors in its summary judgment decisions.    In his view, the court erred by making improper credibility determinations, drawing inferences in favor of Defendants rather than Blankenship, and failing to consider the entire record when evaluating his defamation claims.    However, after independently reviewing the full record, we conclude the district court correctly held that Blankenship has not presented sufficient evidence that any Defendant acted with actual malice.

1.

On appeal, Blankenship devotes the most attention to his defamation claims against Fox News, so we begin there.  As an initial matter, Blankenship no longer challenges Andrew Napolitano's statement that Blankenship went to jail for manslaughter.  Instead, Blankenship focuses on the inaccurate on-air statements made by Neil Cavuto and four other Fox News commentators in the days leading up to the West Virginia primary.  We conclude that the record evidence would not permit a reasonable jury to find, by clear and convincing evidence, that these commentators or any other Fox News employees made these statements with actual malice.

21

a.

Cavuto referred to Blankenship as a "convicted felon" once, during the May 7, 2018 broadcast of his show *Cavuto Coast to Coast*. In a deposition, Cavuto testified that he did not realize this statement was inaccurate at the time, explaining: "It was incorrect, but it was inadvertent. I did not know there was a distinction between going to jail over a felony or going to jail over a misdemeanor, just that he went to jail for a year." J.A. 3556. At the summary judgment stage, we do not credit Cavuto's self-serving testimony about his state of mind over contrary evidence. *See Liberty Lobby*, 477 U.S. at 255. At the same time, though, Blankenship cannot avoid summary judgment "by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of . . . legal malice." *Id.* at 256. Rather, the question is whether Blankenship has offered enough concrete evidence to permit a jury to find, by clear and convincing evidence, that Cavuto acted with actual malice. He has not.

Blankenship highlights two parts of the record that he claims create a genuine dispute of fact as to actual malice. The first is the April 25, 2018 episode of *Your World with Neil Cavuto*, where Peter Doocy, in Cavuto's presence, noted that Blankenship "recently served a year in jail on a misdemeanor conviction tied to his role in a mine collapse that killed 29 people." J.A. 3861–62. According to Blankenship, this shows Cavuto knew it was false to use the term "convicted felon" roughly two weeks later. The second piece of evidence is the briefing packet Cavuto received on May 2, 2018, which mentioned Blankenship's "2015 conviction on a misdemeanor charge related to the Upper Big Branch Mine explosion that killed 29 miners." J.A. 3867.

22

Although a jury could infer that Cavuto processed Doocy's remark and committed the detail to memory, that inference is somewhat tenuous. Doocy's reference to the misdemeanor conviction was a single, brief comment during an hourlong show that covered several different political topics. From that one comment, it would be a stretch to infer that Cavuto, two weeks later, "in fact entertained serious doubts" that Blankenship was a felon. *St. Amant*, 390 U.S. at 731. The note on Blankenship's misdemeanor conviction in the May 2 briefing packet—a single, passing reference in ten pages of material on various 2018 primary campaigns—is even more tenuous evidence of Cavuto's knowledge on May 7. Cavuto testified that he was sure he would have read the packet, but that does not necessarily support an inference that he remembered this one specific detail when speaking on air five days later.

As possible evidence of Cavuto's state of mind, these facts are much less convincing than those in cases where courts have found a genuine issue of actual malice. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071–72 (5th Cir. 1987) (defendant newspaper printed a false story a second time, even though the editors responsible for the second story arguably knew the newspaper had retracted the first one); *Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983) (author of allegedly defamatory story had contemporaneous notes that "clearly indicate[d] her awareness" that her story was false).[6] Doocy's remark and the briefing packet might well permit a finding that a

---

[6] Blankenship also cites to *Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019). But that case was decided at the motion-to-dismiss stage and is inapposite here. *See id.* at 816 (holding only that the plaintiff plausibly alleged that the defendant acted with actual malice).

23

reasonable person in Cavuto's position *should have known* Blankenship was convicted of a misdemeanor, but actual malice requires "much more" than mere negligence. *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 325 (4th Cir. 2008).

And even if a reasonable jury can infer that Cavuto heard and remembered Doocy's "misdemeanor" comment, it still could not find with convincing clarity that Cavuto had serious doubts about the truth of his May 7 statement. Cavuto knew Blankenship was charged with and convicted of a federal conspiracy offense in the wake of a mine disaster that killed twenty-nine people, and that he was sentenced to one year in federal prison— exactly one day less than a felony sentence—and fined a quarter of a million dollars. Blankenship himself admits this was a highly unusual sentence for a misdemeanor offense; he notes that he was the only inmate at his prison who was not serving a sentence for a felony conviction. In light of these facts, no reasonable jury could find by clear and convincing evidence that Cavuto, who is not a lawyer, understood it was inaccurate to describe Blankenship as a "convicted felon." In other words, Blankenship has not presented sufficient evidence disputing Cavuto's belief that it was appropriate to colloquially describe someone who served a one-year prison sentence as a "convicted felon."[7]

---

[7] At first glance, this discussion might seem to overlap with the falsity element, but it is a distinct issue. Even assuming that the "felon" description is not substantially true and therefore satisfies the falsity element, the fact that some might use the word "felon" to refer colloquially to any serious crime informs our actual malice analysis. Specifically, this linguistic issue helps explain why certain journalists might have believed it was acceptable to refer to Blankenship as a felon even if they had heard that his conviction was technically classified as a misdemeanor. Indeed, the record suggests that even Blankenship (Continued)

Cavuto's on-air interview with Blankenship on May 22, 2018, reinforces this conclusion. When Blankenship emphasized that he had never been convicted of a felony, Cavuto asked, "So what are you if you've served time in jail?" J.A. 3552, 5671. Cavuto then asked the same question to Napolitano: "So serving a year in jail doesn't make you a convicted felon?" J.A. 3554–55. These exchanges, which took place just two weeks after Cavuto's May 7 statement, indicate that Cavuto had not understood the inaccuracy of his remark. *See Zerangue*, 814 F.2d at 1071 ("The fact that [an editor] had to ask [the plaintiff] what was inaccurate about the story when [the plaintiff] called to protest tends to indicate that [the editor] did not know of the inaccuracy."). This evidence underscores that Cavuto was confused about Blankenship's criminal status because of the one-year prison sentence, and it precludes a finding by clear and convincing evidence that Cavuto seriously doubted the truth of his May 7 statement.

b.

Less analysis is required for the statements made by the four other Fox News commentators: John Layfield, Bradley Blakeman, Stephanie Hamill, and Elizabeth MacDonald. Blankenship points to no direct evidence of knowledge that rebuts the commentators' testimony that they believed their statements were accurate at the time. He cannot avoid summary judgment simply by asserting that the jury could disbelieve their testimony. *Liberty Lobby*, 477 U.S. at 256.

---

was confused about how to refer to his criminal status; in the May 22 interview with Cavuto, he repeatedly called himself a "misdemeanor." J.A. 5671.

In an attempt to create a jury question, Blankenship claims the record contains sufficient circumstantial evidence of actual malice. "Although courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence[.]" *Harte-Hanks*, 491 U.S. at 668. Here, Blankenship focuses on (1) the emails from Rupert Murdoch and the McConnell aide that requested negative coverage of his campaign, and (2) Fox News's initial failure to retract Napolitano's misstatement.

From the two emails, it is safe to conclude that Murdoch and McConnell wished to damage Blankenship's Senate candidacy. But "while motive [or animus] can be relevant to the actual malice inquiry, it is not dispositive standing alone." *Cannon*, 36 F.4th at 568 (cleaned up); *see Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 573 (W. Va. 1992). As we have explained, "many publications set out to portray a particular viewpoint or even to advance a partisan cause. Defamation judgments do not exist to police their objectivity." *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) (en banc).

Here, the two emails do not establish actual malice because Blankenship fails to show a sufficient nexus between those communications and the Fox News commentators' false statements. Murdoch's May 6 email to the two Fox News senior executives read: "Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time. Anything during day helpful but Sean and Laura dumping on him hard might save the day." J.A. 4052. This does not suggest that Murdoch instructed anchors to falsely call Blankenship a felon or even implied that they should. The same is true of the McConnell aide's May 3 email to Martha MacCallum, which made a tacit request for negative coverage

26

of Blankenship but did not raise the issue of his criminal history.  Karl Rove and Tammy Bruce's comments on MacCallum's show the following day were harshly critical of Blankenship, but they did not mischaracterize his conviction—Blankenship does not allege that Rove or Bruce defamed him.  To be sure, the various Fox News statements calling him a felon all occurred shortly after these two emails were sent, but that temporal relationship, without more, is not nearly enough.  In defamation cases, "the state of mind required for actual malice [must] be brought home to the persons in the . . . organization having responsibility for the publication," *N.Y. Times*, 367 U.S. at 287, and Blankenship offers no concrete evidence connecting the emails to the challenged statements.

Lastly, Blankenship emphasizes that Fox News producers refused to allow Napolitano to appear on air to correct his misstatement.  We have explained that a publisher's failure to retract a statement upon request generally "is not probative of [the speaker's] state of mind at the time of publication."  *Fairfax v. CBS Corp.*, 2 F.4th 286, 295 (4th Cir. 2021).  Even if the network's reticent response to Napolitano's requests is relevant, it is far from clear and convincing evidence that Cavuto and the four other commentators later made their statements with actual malice.  Put simply, Blankenship offers no non-speculative reason to believe there was any connection between the producers' actions and the allegedly defamatory statements.

For these reasons, we conclude that Blankenship's failure to provide sufficient evidence of actual malice defeats his defamation claims against Fox News.

27

2.

Next, we proceed to the defamation claims against MSNBC, which focus on Chris Hayes's two on-air statements describing Blankenship as a "convicted felon."[8]  In a deposition, Hayes testified that he believed his comments were accurate when he made them, asserting:  "I knew [Blankenship] had done a year in federal prison, and I just thought that meant he had been convicted of a felony."  J.A. 515.

In an attempt to create a genuine dispute as to Hayes's knowledge, Blankenship highlights two events.  The first is the November 29, 2017 broadcast of *All In*, during which MSNBC displayed the titles of two news articles about Blankenship as on-screen graphics. The body of each article accurately identified Blankenship's conviction as a misdemeanor, but that detail was not shown on screen or discussed during the November 29 show.  Even viewing the facts in the light most favorable to Blankenship, we cannot infer that Hayes read the two articles in their entirety, or that another staffer read them and relayed the information about Blankenship's conviction to Hayes.  While Hayes noted that MSNBC had relied on the articles as sources, that does not mean he engaged with the specific

---

[8] Blankenship argues in his reply brief that Joy Reid also acted with actual malice when she described him as a convicted felon during a May 4, 2018 telecast.  But he failed to make that argument in his opening brief, and "an issue first argued in a reply brief is not properly before a court of appeals."  *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996).  In any event, there is no evidence in the record disputing Reid's testimony that, at the time she made the statement, she believed Blankenship had been convicted of a felony.

In the district court, Blankenship also alleged that Hayes's April 16, 2018 tweet calling him a "felonious coal baron" was defamatory.  The district court held that the tweet "is insufficient to establish MSNBC's liability inasmuch as it was tweeted from Mr. Hayes' personal account."  J.A. 5725 n.40.  Blankenship does not contest that ruling on appeal, so we do not consider it further.

references to Blankenship's misdemeanor conviction, particularly because the record does not indicate that Hayes discussed that detail during the November 29 broadcast.

The second event is the December 2015 email exchange between Hayes and *All In* staff members, in which Hayes wrote that Blankenship "only got nailed on the misdemeanor" and "[p]robably [would not spend] a day in jail." J.A. 845. The email certainly shows that Hayes knew about the misdemeanor conviction in late 2015, but we are skeptical that this constitutes clear and convincing proof of his state of mind two and a half years later. Crucially, Hayes's 2015 email came before Blankenship was sentenced to and served a year in prison (and therefore before Hayes learned about the sentence)—a fact that very well could lead a non-lawyer like Hayes to believe it was accurate to refer to Blankenship as a felon years later.

In the end, Hayes's communications around the time of his 2018 statements cast too much doubt on the notion that he consciously misrepresented Blankenship's criminal status. During the off-air conversation with Brian Montopoli hours before the April 23 broadcast, Hayes referred to Blankenship as a "convicted felon," and Montopoli did not correct him. This strongly suggests that by April 2018, Hayes had either forgotten about the misdemeanor classification or did not understand it would be incorrect to describe Blankenship as a felon. Hayes's response to the viewer's May 10 email that pointed out

the inaccuracy provides further contemporaneous evidence that he simply made a mistake. *See* J.A. 847 ("Caught that after the show, but you're r[i]ght.").[9]

Nor does Blankenship present any affirmative evidence that Denis Horgan (*All In*'s Executive Producer) or any other staff member acted with a reckless disregard for the truth. The record shows that some of the challenged MSNBC statements were scripted. But the state of mind required for actual malice must be "brought home" to the persons responsible for publication, *N.Y. Times*, 367 U.S. at 287, and the record does not identify which staff members actually inserted the "felon" language into the scripts. In their deposition testimony, neither Horgan nor Reid could recall who wrote the scripted language, but Reid testified that she "did not work with Denis Horgan on the scripts for those shows." J.A. 862–83.

Blankenship argues that circumstantial evidence of actual malice gets this issue to the jury. We are unpersuaded. First, Blankenship asks us to find a genuine issue of actual malice because Hayes and the *All In* team exhibited animus towards him. The December 2015 emails from staff members to Hayes—sent after Hayes wrote that Blankenship "[p]robably [would not spend] a day in jail" and before Blankenship's sentencing—expressed frustration with the conviction. J.A. 845 ("A slap on the wrist for a dude who killed 29 people . . . ."); *id.* ("Very disappointing . . . he's killed more people than most terrorists ever do[.]"). As with Fox News, however, this evidence of possible animus carries little weight in the actual

---

[9] Blankenship also contends that the April 2016 email from a staff member to Hayes stating that "our old friend Don Blankenship is going to the cooler for a year" helps his case, but it is hard to see how that supports an inference that Hayes later remembered the conviction was a misdemeanor rather than a felony. If anything, this email helps explain Hayes's later belief that it was accurate to describe Blankenship as a felon in light of the one-year prison sentence.

malice analysis. *See Cannon*, 36 F.4th at 568.  That is particularly true here, where the hostile comments came two years before the allegedly defamatory statements.

Second, Blankenship makes much of Hayes and Reid's failure to issue corrections after learning their statements were inaccurate, but the lack of a retraction has little to no relevance in the actual malice inquiry.  *See Fairfax*, 2 F.4th at 295; *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("[A]ctual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false.").

Third, and finally, Blankenship suggests that MSNBC's conduct violated NBCUniversal's News Group Policies and Guidelines, which state that MSNBC "stands for accuracy," J.A. 5467, and that corrections "should be addressed as soon as reasonably possible," J.A. 5480.  But "actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices," *Church of Scientology International v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993), and even an "extreme departure" from such standards is inadequate.  *Harte-Hanks*, 491 U.S. at 665.  A violation of journalistic standards may be relevant when combined with other proof of actual malice, but even if we assume that MSNBC violated its policies here, the evidence falls short.  Because the policy Blankenship cites focuses on corrections, this argument essentially restates his failure-to-correct claim.  Once again, a publisher's failure to retract a statement has very little probative value, if any.

Based on the summary judgment record, a reasonable jury could not find that Hayes or any other MSNBC employee made the relevant statements with actual malice.

3.

Turning to CNN, Blankenship alleges that three individuals affiliated with the network made defamatory statements during live broadcasts:  Kevin McLaughlin, S.E. Cupp, and Joe Lockhart.  Here, too, the record does not support a finding by clear and convincing evidence that any of the three made the statements with actual malice.

To start, McLaughlin described Blankenship as a "convicted felon" during an unscripted portion of *CNN Newsroom* on April 29, 2018.  In a deposition, McLaughlin explained that he believed the "convicted felon" description was accurate at the time—his "understanding was, given what happened in the sentence, that it was obviously a very serious crime."  J.A. 1402.  McLaughlin also stated that he had "Googled it" prior to his appearance on CNN and from that search "was led to believe [Blankenship] was a convicted felon."  J.A. 1403.

To be sure, McLaughlin made the "convicted felon" comment only a few minutes after Dana Bash had remarked that Blankenship "served a year in prison" but "reminds us [his conviction] was just a misdemeanor."  J.A. 1383–86.  Bash's reference to the misdemeanor conviction is the only evidence that McLaughlin knew it was inaccurate to describe Blankenship as a convicted felon.  But, if anything, the fact that McLaughlin called Blankenship a felon so soon after Bash's comment indicates that McLaughlin, a non-lawyer, simply did not understand the legal distinction between a felony and a misdemeanor in this case.  Without more, we cannot conclude that a reasonable jury could

32

find with convincing clarity that McLaughlin's statement was a "knowing, calculated falsehood."[10]  *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980).

Moving on, there is no evidence that Lockhart or Cupp knew they were likely making false statements when they called Blankenship a felon.  Both testified that they believed their statements were correct when they made them, and Blankenship presents no evidence to rebut that testimony.  *Unfiltered* played a short clip from the West Virginia primary debate during the May 2 telecast, and, at one point in that debate, Blankenship stated he "beat all three of the felonies" and was "sent . . . to prison for a misdemeanor." Opening Br. 51.  But the transcript of the May 2 *Unfiltered* telecast does not include that portion of the debate, and no facts dispute Cupp's assertion that she did not recall seeing it.  Blankenship asks us to infer that Cupp saw that part of the debate, but without any affirmative evidence, that calls for speculation and goes beyond the reasonable inferences we make in his favor at the summary judgment stage.

Blankenship once again tries to shore up his case with circumstantial evidence.  He contends that CNN demonstrated animus, violated its internal standards, and failed to investigate his criminal history before broadcasting the statements in question.  These facts do not create a genuine issue of actual malice.  When he called Blankenship a felon, Lockhart also expressed his view that Blankenship was "crazy" and a "racist," likely referring to comments he had made about Secretary Chao's Chinese heritage.  J.A. 1428.

---

[10] For her part, Bash's unrebutted testimony is that McLaughlin's on-air comment did not "register[] with [her] at the time."  J.A. 1396–97.  Regardless, Bash's failure to correct the record does not establish that she acted with actual malice.

But, again, that cannot substitute for the complete lack of direct evidence that Lockhart knew his statement was false.  Next, the internal CNN standards Blankenship cites express a general commitment to "accurate, fair, and responsible" reporting and explain what qualifies as defamation.  J.A. 1690–91.  In essence, Blankenship argues that the statements violated CNN policies because they were inaccurate.  But this is not helpful to the actual malice inquiry.  *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984) ("[T]here is a significant difference between proof of actual malice and mere proof of falsity.").

Blankenship's failure-to-investigate argument also falters.  The "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard," *Harte-Hanks*, 491 U.S. at 688; such inaction rises to the level of actual malice only if it amounts to a "purposeful avoidance of the truth," *id.* at 692.  This is not such a case.  Blankenship's prison sentence placed him as close to felony status as possible; for non-lawyers like McLaughlin, Cupp, and Lockhart, describing Blankenship as a felon was not "inherently improbable," and there were not "obvious reasons to doubt the veracity" of such a statement.  *St. Amant*, 390 U.S. at 732.

For these reasons, the cumulative record, viewed in the light most favorable to Blankenship, does not permit a reasonable jury to find that anyone at CNN acted with actual malice.

4.

Blankenship's defamation claim against the Washington Post focuses on two published statements:  a July 25, 2018 article authored by Jenna Johnson and Josh Dawsey that described

34

him as a "felon," and an August 9, 2018 blog post by Amber Phillips that referred to him as "one of three convicted felons" running for office in 2018. We conclude that Blankenship has failed to establish a genuine issue that either was made with actual malice.

Starting with the July 25 article, nothing suggests that Dawsey or Johnson had serious doubts about the accuracy of the "felon" statement. The uncontested record shows that Dawsey neither wrote nor reviewed the relevant part of the article, and even if he had, no evidence suggests that Dawsey knew the statement was incorrect. Nor do any facts rebut Johnson's declaration that she did not realize the term "felon" was inaccurate at the time of publication, that she used the word "because [she] understood [Blankenship] had been convicted of a serious crime and sent to prison," and that she "recall[ed] having seen or heard him referred to as a felon." J.A. 2057.

Blankenship also cannot establish a genuine issue of actual malice as to Phillips's August 9 blog post. In her declaration, Phillips, like all the other journalists thus far, stated she believed her description of Blankenship as a "convicted felon" was correct at the time. She noted that she "knew Mr. Blankenship had gone to prison for a serious crime," and that her "understanding [was] that the word 'felon' could be used to refer to someone who has been convicted of a crime." J.A. 2079.

In response, Blankenship points out that (1) one of Phillips's earlier blog posts, published on May 1, 2018, referred to Blankenship's conviction "on a misdemeanor for conspiring to violate mine safety laws" (and his one-year prison sentence), J.A. 2298, and (2) Phillips received three mass-distributed emails in early May 2018 that briefly mentioned the same. But these facts do not make it "highly probable" that Phillips

demonstrated a reckless disregard for the truth when she wrote the August 9 story.  *Cannon*, 36 F.4th at 573.  For starters, we doubt it is reasonable to infer that Phillips even read the three mass emails in their entirety, let alone that she remembered this particular detail while writing the August 9 blog post.  And it seems tenuous to infer from Phillips's May 1 story that she remembered the details of Blankenship's conviction on August 9, particularly because she wrote more than 100 stories in the intervening three months.  But even if we drew that inference, a jury could not find with convincing clarity that Phillips was not simply confused about the meaning of the term "felon."

As with the prior Defendants, circumstantial evidence does not create a genuine issue of actual malice here.  Blankenship focuses solely on the Washington's Post's failure to fact-check the articles before publication.  The Post's Policies and Standards provide that "reporters have primary responsibility for reporting, writing, and fact-checking their stories," and that stories "are subject to review by one or more editors."  J.A. 2274. However, as previously discussed, inadequate fact-checking cannot by itself establish that Johnson or Dawsey published their article with actual malice.  *See Daniels*, 992 F.2d at 1334.  Nor does it get Blankenship's challenge to Phillip's story over the summary judgment hurdle.  *See Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 126 (2d Cir. 2013) ("Even the failure to review one's own files is inadequate to demonstrate malice by the party responsible for publishing a statement.").

Thus, we conclude there is legally insufficient evidence that the Washington Post published these statements with actual malice.

5.

Blankenship's defamation claim against ABC centers on the July 23, 2018 article by John Verhovek.  In the article, Verhovek referred to Blankenship as "the former coal baron and convicted felon" and stated he "was convicted in 2015 for conspiracy to violate mine safety and health standards in the aftermath of the 2010 Upper Big Branch Mine disaster that resulted in the death of 29 miners."  J.A. 2633.

Like the authors of the other Defendants' statements, Verhovek asserted that he did not realize the term "convicted felon" was false when he placed it in the article.  He explained that he "had always understood and used the term 'felony' to mean 'serious crime,' and the term 'felon' to mean 'someone who committed a serious crime,'" and that he therefore used the term "convicted felon" to "refer to someone who served significant time in prison after being convicted of a crime."  J.A. 2576.  Verhovek further stated that he was aware Blankenship "had spent a significant amount of time in federal prison" but "did not know the details about his criminal case" or that "he was acquitted of some charges."  J.A. 2573.

While we cannot credit Verhovek's testimony regarding his state of mind over contrary record facts, contemporaneous evidence indicates that he did not realize the "convicted felon" language was false.  Most relevant is Verhovek's response when Meridith McGraw contacted him about the error in the article.  After McGraw explained that Blankenship was convicted of a misdemeanor, Verhovek responded, "Meridith can you send me exact language on this?  Blankenship was sent to federal prison but he was not convicted of a felony?" J.A. 2735.  In a later text to McGraw, Verhovek again admitted his confusion, writing:  "Sorry about Blankenship, I thought I had it right on that or [had]

seen it in an earlier story, that's my bad." J.A. 2812. These exchanges strongly suggest that Verhovek's error was a mistake based on his confusion about how to refer to a person who served a one-year sentence in federal prison. Further, the record shows that Verhovek had previously described Blankenship as a "convicted felon" in a March 2018 email to an editor, and that the editor did not flag the description as inaccurate. J.A. 2577.

Blankenship contends there is a genuine dispute as to Verhovek's knowledge because (1) he had authored or co-authored three earlier articles for ABC that accurately called the conviction a misdemeanor; and (2) he had received multiple distribution-list emails from McGraw in May 2018 that did the same. But this evidence, viewed in the context of the entire record, does not allow a finding by clear and convincing evidence that Verhovek "entertained serious doubts as to the truth" of the "convicted felon" language in his July 23 article. *St. Amant*, 390 U.S. at 731. In light of the whole record—particularly Verhovek's contemporaneous messages to McGraw—Blankenship cannot establish that the language in the July 23 article was anything more than a careless mistake, caused by Verhovek's confusion about the appropriate use of the word "felon."

Undeterred, Blankenship argues that Verhovek should have consulted his prior reporting or otherwise fact-checked the July 23 article before publishing it. But, as was the case for Phillips's Washington Post story, Verhovek's or another editor's failure to fact-check is not enough to manufacture a genuine issue of actual malice here.

Finally, it is significant that ABC promptly corrected the article after Blankenship's campaign contacted McGraw to request a correction. While the failure to issue a correction cannot establish actual malice, the "readiness to retract tends to negate 'actual malice,'"

*Zerangue*, 814 F.2d at 1071, and Verhovek worked with editors to correct the article and social media posts within hours of their publication.

In sum, the district court correctly concluded that the facts related to Verhovek's July 23 article "fail to tip the scales towards clear and convincing evidence of actual malice when viewed in connection with the entirety of the evidentiary record." J.A. 5714.

6.

The district court also correctly held that there is insufficient proof of actual malice with respect to the ten other Defendants in the consolidated appeal: News & Guts, Eli Lehrer, Mediaite, Tamar Auber, Griffin Connolly,[11] FiscalNote, HD Media, NBCUniversal, CNBC, and 35th PAC.

Nothing in the record suggests that any of these Defendants had the required state of mind when they published statements describing Blankenship as a felon. The authors of these statements all asserted that they were unaware the term "felon" was incorrect at the time of publication. While at least two Defendants, HD Media and NBC, had previously reported that Blankenship's conviction was a misdemeanor, there is no evidence that the authors of the allegedly defamatory statements had seen those earlier publications or any other materials that correctly described Blankenship's conviction. In fact, several said they recalled seeing references to Blankenship as a felon in other stories—which is unsurprising, given that Blankenship initially identified more than 100 publications that

---

[11] The district court granted summary judgment to Griffin Connolly based on the uncontested fact that he was not involved in publishing the statement Blankenship had attributed to him. Blankenship does not contest that decision on appeal and therefore forfeits the issue.

included such references.  *See Daniels*, 992 F.2d at 1334 (concluding it was "impossible" to find actual malice "[g]iven the volume of published commentary" consistent with the author's statements).

Nor is there enough circumstantial evidence of actual malice as to these Defendants. Blankenship repeats his refrain that these Defendants' animus, violation of journalistic standards, and failure to correct the statements produce a genuine issue of actual malice. But his arguments are mostly speculative and do not come close to the quantum of evidence needed to create a jury question.

7.

Finally, we reach Blankenship's defamation claim against the Boston Globe.  As we noted above, Blankenship takes issue with a single article, which the Globe repurposed from an AP wire story and published on May 22, 2018.  The original AP story described Blankenship as a "convicted ex-coal baron" who had "spent a year in federal prison for violating safety regulations in a 2010 mine explosion that killed 29 miners."  G.J.A. 356–59.  The Globe copy editor who condensed the story, Daniel Coleman, changed the description to "convicted felon and former coal baron" and removed the reference to Blankenship's prison sentence.  G.J.A. 346.  Here, too, we hold that the record would not permit a jury to find actual malice by clear and convincing evidence.

There is no evidence that Coleman knew the "convicted felon" language was likely false.  Blankenship did not depose Coleman during discovery.  David Dahl, the Globe's Deputy Managing Editor for Print and Operations, was deposed as the Globe's Rule 30(b)(6) corporate representative.  Dahl testified that "what happened here was an honest

mistake by an editor looking at a story about a very serious incident and editing an incorrect characterization" into the article, and further stated that the Globe "took the mistake seriously and . . . regret[ted] making the error." G.J.A. 416. This explanation makes sense; in the condensed article, Coleman substituted the word "felon" for the longer description of Blankenship's prison sentence, which suggests he believed that an offense punishable by one year in prison could be described as a felony.

Nothing in the record indicates that Coleman's edit was anything more than a simple accident. Blankenship calls our attention to three earlier Globe articles that accurately reported on Blankenship's misdemeanor conviction. But there is no reason to believe that Coleman—or any other Globe employee involved in publishing the May 22 article—was aware of those earlier stories.

Without any evidence of Coleman's subjective knowledge, Blankenship returns to a well-trodden path, arguing that the district court's actual malice analysis did not account for Coleman's failure to fact-check before publishing the article. Standing alone, though, an editor's "failure to investigate before publishing . . . is not sufficient to establish reckless disregard." *Harte-Hanks*, 491 U.S. at 688. That includes the failure to review news stories in the newspaper's own files. *See N.Y. Times*, 376 U.S. at 287. Blankenship claims that Coleman also violated journalistic standards, but those standards relate to fact-checking, so this contention merely duplicates his failure-to-investigate argument.

A copy editor might well be negligent for publishing a story without confirming the accuracy of certain information in it, but actual malice demands subjective knowledge of

41

likely falsity.  On these facts, a reasonable jury could not conclude that Coleman acted with such a state of mind.[12]

                                        *        *        *

Like the district court in its well-reasoned analysis, we reach these conclusions without crediting Defendants' denials of actual malice over contrary facts, discounting certain evidence, or drawing inferences in Defendants' favor.  Rather, the cumulative record simply does not permit a finding, by clear and convincing evidence, that any Defendant "in fact entertained serious doubts as to the truth" of the statements it published. *St. Amant*, 390 U.S. at 731.  Some of the statements may have been the product of carelessness and substandard journalistic methods.  But at the end of the day, the record does not contain evidence that the commentators and journalists responsible for the statements were anything more than confused about how to describe a person who served a year in prison for a federal offense.[13]

---

[12] Blankenship also complains that the Boston Globe's later correction to the May 22 article was defamatory because it stated he "was convicted of a misdemeanor *for his role in connection with a deadly 2010 mine disaster*."  G.J.A. 314 (emphasis added).  However, in the district court, he did not bring a defamation claim based on the language in the correction. In any event, it is far from clear that this description of Blankenship's conviction is even false, and there certainly is no evidence it was published with actual malice.

[13] In his briefing, Blankenship separately argues that *New York Times v. Sullivan* should be overturned.  But, of course, this Court "cannot overrule Supreme Court precedents."  *In re Grand Jury Subpoena*, 870 F.3d 312, 319 n.3 (4th Cir. 2017).

Because there is legally insufficient evidence that any of the Defendants published a statement with actual malice, the district court correctly granted summary judgment to Defendants on Blankenship's defamation claims.

IV.

For the same reasons, the district court also did not err in granting summary judgment to Defendants on Blankenship's false light invasion of privacy and civil conspiracy claims.

West Virginia recognizes false light invasion of privacy as an independent cause of action. *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 88 (W. Va. 1983). The elements of defamation and false light invasion of privacy are not identical, but as with a defamation claim, a public-figure plaintiff alleging false light must prove that the defendant made a false statement with actual malice. *Taylor v. W. Va. Dep't of Health & Human Res.*, 788 S.E.2d 295, 315–16 (W. Va. 2016). For the reasons we have discussed, Blankenship has not established a genuine dispute of material fact that any Defendant acted with actual malice. His false light claims therefore fail.

Blankenship's civil conspiracy claims meet the same fate. Under West Virginia law, civil conspiracy is defined as "a combination to commit a tort." *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009). While West Virginia recognizes a separate cause of action for civil conspiracy, "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Id.* at 259. A conspiracy claim enables a plaintiff to recover damages against additional defendants "who

43

did not actually commit a tort themselves," but the claim cannot stand without proof of the underlying tort. *Id.* at 269. As the West Virginia Supreme Court explained, "[a] conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort. A conspiracy is not, itself, a tort. *It is the tort, and each tort, not the conspiracy, that is actionable.*" *Id.* (quoting *Segall v. Hurwitz*, 339 N.W.2d 333, 338 (Wis. App. 1983)) (emphasis added). This rule makes particular sense in defamation cases; to comply with *New York Times v. Sullivan*, a public-figure plaintiff must show that some defendant actually published a false statement with actual malice.

At this stage, Blankenship's only remaining civil conspiracy claims are against Fox News. Because he has not offered sufficient evidence of actual malice to support his defamation or false light claims against Fox News, he cannot establish an underlying tort, and his conspiracy claims fail as a matter of law. *See, e.g.*, *Long v. M&M Transp., LLC*, 44 F. Supp. 3d 636, 652 (N.D.W. Va. 2014) (holding civil conspiracy claim failed because there was "no underlying tort to support [it]").

## V.

For the reasons set forth in this opinion, we affirm the district court's orders granting summary judgment to Defendants and dismissing these actions.

*AFFIRMED*

44